No. _______

# United States Court of Appeals for the Fifth Circuit

U S COURT OF APPEALS
RECEIVED
JUN 05 2026
FIFTH CIRCUIT

**IN RE TIMOTHY L. BARTON,**
*Petitioner*

Related District Court Case:
*SEC v. Barton*, No. 3:22-CV-2118-X (N.D. Tex.)
The Honorable Brantley Starr, United States District Judge

## PETITION FOR WRIT OF MANDAMUS

**Timothy L. Barton, Pro Se**
3926 Vista Woods Drive
Carrollton, TX 75007
Phone: 214-673-8714
Email: Timothy.Barton@proton.me

No. ________

# United States Court of Appeals for the Fifth Circuit

IN RE TIMOTHY L. BARTON,
*Petitioner*

Related District Court Case:
*SEC v. Barton*, No. 3:22-CV-2118-X (N.D. Tex.)
The Honorable Brantley Starr, United States District Judge

## PETITION FOR WRIT OF MANDAMUS

**Timothy L. Barton, Pro Se**
3926 Vista Woods Drive
Carrollton, TX 75007
Phone: 214-673-8714
Email: Timothy.Barton@proton.me

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned certifies that the following persons and entities have an interest in the outcome of this case:

**Petitioner:**

Timothy L. Barton (Pro Se)

**District Court Judge:**

The Honorable Brantley Starr, U.S. District Judge

**Court-Appointed Receiver:**

Cortney C. Thomas

**Receiver's Counsel:**

Allan Carrillo

**SEC Counsel:**

Keefe M Bernstein, counsel for plaintiff-appellee Securities and Exchange Commission;

*/s/ Timothy L. Barton*
**Timothy L. Barton,**
**Pro Se Petitioner**

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................ ii
TABLE OF CONTENTS ........................ iii
TABLE OF AUTHORITIES ........................ vi
INTRODUCTION ........................ 1
STATEMENT OF JURISDICTION ........................ 4
RELATIONSHIP TO PENDING PROCEEDINGS ........................ 5
A. Distinction from Prior Fifth Circuit Appeals (Dismissed) ........................ 5
REQUEST FOR PANEL ASSIGNMENT ........................ 6
STATEMENT OF THE ISSUES ........................ 7
STATEMENT OF THE CASE ........................ 9
A. Factual Background ........................ 9
B. Key Procedural Events ........................ 10
September 2022: First Receivership ........................ 10
November 2022: DOJ Stay Order ........................ 10
May 2023: Privilege Protocol Order ........................ 11
August 2023: Fifth Circuit Vacates Receivership ........................ 11
November 2023: Second Receivership ........................ 11
March 2024: Lawsuits for recovery against family members, lawyers, advisors and associates (Case No 3:24-cv-00612-X ND Tex and Case 3:24-cv-00512-X ND Tex) ........................ 12
June 23, 2025: Third Receivership Order ........................ 12
July 2025: Administrative Closure ........................ 13
May 2026: Receiver's Fifteenth Status Report — Announced Plan for Further Litigation and Liquidation ........................ 13
March–May 2026: Petitioner's Pro Se Motion and Counsel's Motion to Withdraw — Pending Without Ruling ........................ 14
C. The Harm ........................ 15
REASONS WHY THE WRIT SHOULD ISSUE ........................ 15
I. THE DISTRICT COURT NEVER RULED ON SECURITIES JURISDICTION—THE CASE IS THEREFORE INVALID ........................ 15

A. Judge Starr Never Made a Securities Ruling ........................ 15
B. The Fifth Circuit Acknowledged That Judge Starr Never Ruled on Securities Jurisdiction ........................ 17
C. Without a Jurisdictional Ruling, the Case Is Invalid and All Orders Are Void ........................ 18
II. JUDGE STARR VIOLATED HIS OWN STAY ORDER (Dkt. 64) ........................ 19
A. The Stay Order Was Never Vacated or Amended ........................ 19
B. Actions Taken in Violation of the Stay ........................ 21
C. Evidence Tainting of the Criminal Case ........................ 22
III. PREJUDGMENT AND BIAS ........................ 23
A. Orders Treating Barton as Already Guilty ........................ 23
B. Receivership as Punishment, Not Preservation ........................ 24
IV. FALSE 'PECUNIARY PURPOSE' FINDING ........................ 25
A. The Case Is Purely Pecuniary ........................ 25
B. The § 362(b)(4) Exception Does Not Apply ........................ 25
V. BANKRUPTCY COURT OVERREACH ........................ 26
A. Seizure of Assets Not in Defendant's Possession ........................ 26
B. Usurpation of Bankruptcy Court Jurisdiction ........................ 27
VI. MANDATE VIOLATIONS ........................ 28
VII. ADDITIONAL CONSTITUTIONAL VIOLATIONS ........................ 29
A. Privilege Order Violations ........................ 29
B. Defense Asset Seizure (Luis Violation) ........................ 30
VIII. RECUSAL IS REQUIRED UNDER 28 U.S.C. §§ 144 AND 455 ........................ 31
A. Judge Starr's Prejudgment Language Demonstrates Personal Bias Under § 144 ........................ 32
B. Judge Starr Authorized Punitive Actions Against Third Parties Before Any Adjudication of Liability ........................ 33
C. Judge Starr's Restriction on Bar Complaints Reveals Extrajudicial Motivation ........................ 34
D. A Reasonable Person Would Question Judge Starr's Impartiality Under § 455(a) ........................ 34
E. Judge Starr's Conduct Exceeds Mere Adverse Rulings ........................ 35

F. Recusal or Reassignment Is Required ........ 36
NO ADEQUATE ALTERNATIVE REMEDY ........ 37
APPROPRIATENESS UNDER THE CIRCUMSTANCES ........ 40
RELIEF REQUESTED ........ 40
CONCLUSION ........ 43
CERTIFICATE OF SERVICE ........ 44
CERTIFICATE OF COMPLIANCE ........ 44

# TABLE OF AUTHORITIES

**Cases**

Andrade v. Chojnacki, 338 F.3d 448, 455 (5th Cir. 2003) ............36, 37
BE&K Construction Co. v. NLRB, 536 U.S. 516, 525 (2002) .............35
Bowling v. Dahlheimer, No. 20-40642, 2022 WL 670150 (5th Cir. Mar. 7, 2022) ..........33
Cheney v. U.S. Dist. Court, 542 U.S. 367, 380-81 (2004) ..............4, 39
Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869)) ......................19
Ex parte Republic of Peru, 318 U.S. 578 (1943) ...........................4, 20
Garcia v. Woman's Hosp. of Tex., 143 F.3d 227, 230 (5th Cir. 1998).38
Gene & Gene LLC v. BioPay LLC, 624 F.3d 698, 702 (5th Cir. 2010) ..........29
Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999) ..........5, 8, 25, 34
In re Ford Motor Co., 211 F.3d 137 (5th Cir. 2000) ..........................41
In re Gee, 941 F.3d 153, 157 (5th Cir. 2019) ................................4, 40
In re Grand Jury Proceedings, 43 F.3d 966, 972 (5th Cir. 1994) .......41
In re Grand Jury Subpoena, 561 F.3d 408 (5th Cir. 2009) ........5, 9, 30
In re Grand Jury Subpoena, 920 F.2d 235, 239 (5th Cir. 1991) .........40
In re Murchison, 349 U.S. 133, 136 (1955) ..................................33, 37
In re Paxton, 60 F.4th 252 (5th Cir. 2023) ..............................4, 8, 19
In re Snyder, 472 U.S. 634, 647 (1985) ............................................35
In re Volkswagen of Am., Inc., 545 F.3d 304, 311 (5th Cir. 2008) .......4
La Buy v. Howes Leather Co., 352 U.S. 249 (1957) .......................5, 42
Liteky v. United States, 510 U.S. 540, 555 (1994) ...............24, 33, 37
Luis v. United States, 578 U.S. 5 (2016) .................................. passim
Netsphere, Inc. v. Baron, 703 F.3d 296 (5th Cir. 2012) ......................11
Nken v. Holder, 556 U.S. 418 (2009) ..........................................37, 42
NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934, 942 (6th Cir. 1986) ..........26
SEC v. Barton, 79 F.4th 573 (5th Cir. 2023) ....................11, 25, 29, 44
SEC v. First Fin. Grp., 659 F.2d 660, 666 (5th Cir. 1981) ...........25, 34
SEC v. Jarkesy, 603 U.S. 109 (2024) ...............................................32
Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998) ...........8, 19
Talon Mgmt. Servs., L.L.C. v. Goliath Asset Mgmt., L.L.C., No. 22-10379, 2022 WL 17901921, (5th Cir. Dec. 23, 2022) ......................34
United States v. Brocato, 4 F.4th 296, 301 (5th Cir. 2021) ..........33, 36
United States v. Lee, 358 F.3d 315, 321 (5th Cir. 2004) ...........5, 9, 29

**Statutes**

11 U.S.C. § 362(a) .........................................................................44
11 U.S.C. § 362(b)(4) ...................................................2, 8, 26, 44

28 U.S.C. § 1334(e) ........................................................ 29
28 U.S.C. § 144 ........................................................ 32, 38, 44
28 U.S.C. § 1651(a) ........................................................ 1, 4

**Rules**

5th Cir. R. 21 ........................................................ 44
5th Cir. R. 28.2.1 ........................................................ ii
Fed. R. App. P. 21(a)(1) ........................................................ 44
Fed. R. App. P. 21(d)(1) ........................................................ 44
Fed. R. App. P. 32(a)(5) ........................................................ 44
Fed. R. App. P. 32(f) ........................................................ 44
N.D. Tex. Local Civil Rule 83.12 ........................................................ 15

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ........................................................ 35
U.S. Const. amend. V ........................................................ 32
U.S. Const. amend. VI ........................................................ 28, 31
U.S. Const. amend. VII ........................................................ 28, 32

# INTRODUCTION

Petitioner Timothy L. Barton respectfully petitions this Court for a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), and Federal Rule of Appellate Procedure 21.

This case presents an extraordinary situation: a District Judge who violated his own stay order, prejudged the defendant, made a false finding to evade bankruptcy protections, let the receiver sue the family members and lawyers for recovery against an unproven violation and permitted a receiver to seize assets that were not even in the defendant's possession. These are not close calls. They are clear abuses of judicial power requiring immediate correction.

The Core Violations:

- Judge Starr Violated His Own Stay Order. In November 2022, Judge Starr entered a stay at DOJ's request (Dkt. 64, App. Tab A at App-003-005). He never vacated or amended that order. Yet he permitted the receiver to conduct investigations, gather evidence, and share material with DOJ—all in direct violation of his own order. The evidence gathered during this period has tainted the pending criminal case.

- Judge Starr Prejudged the Case. His orders treat Petitioner as already guilty—imposing asset seizures, business shutdowns, authorizing liquidations without a plan and restrictions on constitutional rights—all before any trial, any verdict, or any finding of liability. The receivership operates as punishment, not preservation.

- Judge Starr Made a False 'Pecuniary Purpose' Finding. To evade the bankruptcy automatic stay, Judge Starr found that this case is 'not in furtherance of a pecuniary purpose.' (Dkt. 650, App. Tab D at App-064). This is factually false. The SEC seeks disgorgement and civil penalties—quintessentially pecuniary remedies. The § 362(b)(4) exception does not apply.

- Judge Starr Let the Receiver Seize Bankruptcy Assets. The Wall entities (Wall007–Wall019), BM318 and 2999TC were already in Chapter 11 bankruptcy when Judge Starr ordered the receiver to take control. These assets were under the exclusive jurisdiction of the bankruptcy court—not in Petitioner's possession. The receiver usurped bankruptcy court jurisdiction.

- The Receiver Exceeds Preservation Functions. Rather than preserving assets, the receiver has: sued Petitioner's children

and former counsel; spent enormous fees on litigation either later dismissed or had no-success already known; shared evidence one-sidedly with DOJ; and operated as an arm of the prosecution rather than a neutral fiduciary.

- The Receiver's Announced Next Steps Threaten Imminent, Irreversible Harm. The Receiver's Fifteenth Status Report announces a near-term course of further litigation and further real-estate liquidation that, once executed, cannot be undone. Sold property cannot be unsold to bona fide purchasers; new suits cannot be un-filed once they enter the record; and dismissed bankruptcy proceedings cannot be revived after the bankruptcy court's jurisdiction is extinguished. With direct appellate review concluded, only this Court's immediate intervention can preserve the possibility of meaningful relief.

With the direct appellate channels now concluded, this petition presents the sole remaining vehicle in which this Court can correct the district court's clear abuses of judicial power before further irreversible harm occurs. It asks this Court to correct clear violations of Judge Starr's own orders, constitutional requirements, and this Court's mandate. The grounds are organized as follows: (I) the absence of any securities-jurisdiction ruling; (II) violation of the stay order; (III)

prejudgment and bias; (IV) the false pecuniary-purpose finding; (V) bankruptcy-court overreach; (VI) mandate violations; (VII) additional constitutional violations; and (VIII) the need for recusal.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a). Mandamus is proper where a petitioner demonstrates: (1) no other adequate means to attain the relief sought; (2) a clear and indisputable right to relief; and (3) that the writ is appropriate under the circumstances. See Cheney v. U.S. Dist. Court, 542 U.S. 367, 380-81 (2004); In re Gee, 941 F.3d 153, 157 (5th Cir. 2019); In re Volkswagen of Am., Inc., 545 F.3d 304, 311 (5th Cir. 2008) (en banc).

This Court has repeatedly recognized that mandamus is especially appropriate where:

- A district court proceeds despite its own stay order — See Ex parte Republic of Peru, 318 U.S. 578 (1943);
- A district court fails to ensure its own jurisdiction — See In re Paxton, 60 F.4th 252 (5th Cir. 2023);
- A mandate has been violated — See United States v. Lee, 358 F.3d 315, 321 (5th Cir. 2004);

- Privilege violations cause irreparable harm — See In re Grand Jury Subpoena, 561 F.3d 408 (5th Cir. 2009);
- A court exceeds Article III limits — See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999);
- Structural constitutional errors occur — See Luis v. United States, 578 U.S. 5 (2016);
- A pattern requires supervisory intervention — See La Buy v. Howes Leather Co., 352 U.S. 249 (1957).

All of these triggers are present here.

## RELATIONSHIP TO PENDING PROCEEDINGS

This petition is complementary to, not duplicative of, any prior appellate proceedings. The exhaustion of those direct channels is precisely what makes mandamus the only remaining vehicle to address Judge Starr's ongoing conduct in the district court.

### A. Distinction from Prior Fifth Circuit Appeals (Dismissed)

Petitioner's prior Fifth Circuit appeals challenging various receivership and sale orders have now been dismissed. Dismissal of those direct channels does not extinguish, but sharpens, the need for mandamus: this petition addresses categories of ongoing district-court

harm for which no direct appellate vehicle now exists—Judge Starr's violation of his own stay order, the absence of any explicit securities-jurisdiction ruling, evidence tainting now infecting the parallel criminal case, prejudgment infecting every order below, bankruptcy overreach now extending to active dismissal motions, and the Receiver's post-closure litigation and liquidation announced in his Fifteenth Status Report.

## REQUEST FOR PANEL ASSIGNMENT

Petitioner respectfully requests that this petition not be assigned to a panel including the Honorable Judge Don R. Willett, for independent reasons:

- Prior Professional Relationship. Judge Willett has a prior professional relationship with Judge Starr: Judge Starr served as a law clerk to then-Justice Willett on the Texas Supreme Court, and both previously served in the Texas Attorney General's Office. This creates at minimum an appearance concern under 28 U.S.C. § 455(a).
- Prior Ruling on Reassignment. Judge Willett authored the opinion denying Petitioner's request to reassign this case from Judge Starr. Fairness requires that he does not adjudicate this petition.

- In SEC v. Barton, 135 F.4th 206 (5th Cir. 2025) (No. 23-11237, consol. with No. 24-10004), Judge Willett authored the panel opinion addressing the district court's subject-matter jurisdiction over the alleged securities and Petitioner's request for reassignment on grounds of prejudgment against a record that was not presented on the appeal. Petitioner respectfully submits that assignment to judges who have not previously opined on these questions would best preserve the appearance of impartiality. See 28 U.S.C. § 455(a).

## STATEMENT OF THE ISSUES

Issue 1 (Securities Jurisdiction Never Ruled): Whether mandamus should issue where Judge Starr never ruled on whether the instruments at issue are "securities"—a threshold jurisdictional question—yet proceeded to appoint receivers and exercise sweeping equitable power, rendering the SEC's complaint invalid and all subsequent orders void. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998); In re Paxton, 60 F.4th 252 (5th Cir. 2023).

Issue 2 (Stay Order Violation): Whether mandamus should issue where Judge Starr entered a stay order at DOJ's request (Dkt.

64, App. Tab A at App-003-005), never vacated or amended it, yet permitted extensive receiver activity in violation of his own order—including evidence gathering that has tainted the pending criminal case.

Issue 3 (Prejudgment): Whether mandamus should issue where Judge Starr's orders not only treated Petitioner but ruled as already guilty, imposing punitive measures before any adjudication of liability, in violation of due process and Grupo Mexicano, 527 U.S. at 318-22.

Issue 4 (False Pecuniary Finding): Whether mandamus should issue where Judge Starr made a factually false finding that this case is 'not in furtherance of a pecuniary purpose' (Dkt. 650, App. Tab D at App-064) to evade the bankruptcy automatic stay under 11 U.S.C. § 362(b)(4).

Issue 5 (Bankruptcy Overreach): Whether mandamus should issue where the receiver seized assets of entities (the Wall entities, BM318 and 2999TC) that were already under the exclusive jurisdiction of the bankruptcy court—not in Petitioner's possession.

Issue 6 (Mandate Violations): Whether mandamus should issue where Judge Starr reinstated and expanded a receivership that this Court vacated in 2023, in violation of the mandate rule. See United States v. Lee, 358 F.3d 315 (5th Cir. 2004).

Issue 7 (Privilege Violations): Whether mandamus should issue where the district court entered a privilege order that has never been enforced. See In re Grand Jury Subpoena, 561 F.3d 408 (5th Cir. 2009).

Issue 8 (Defense Assets): Whether mandamus should issue where the receiver seized Petitioner's legal files and untainted defense funds, in violation of Luis v. United States, 578 U.S. 5 (2016).

## STATEMENT OF THE CASE

### A. Factual Background

This case arises from an SEC civil enforcement action filed in September 2022, alleging that Petitioner Timothy Barton violated antifraud provisions in connection with agreements with Chinese national lenders. A parallel criminal case, United States v. Barton, No. 3:22-cr-00352-K (N.D. Tex. Dallas Division), is pending.

The foundational question—whether the instruments at issue are 'securities'—has never been answered by the district court. The

lenders themselves call the instruments loans: they filed an involuntary bankruptcy treating the instruments as loans, and sued for breach of loan agreements, not securities fraud. When the lenders were finally called to prove up their claims, not one appeared, and that involuntary case (No. 20-31131 (HDH), Bankr. N.D. Tex.) was dismissed on December 7, 2020, for want of any proof of claim.

Petitioner candidly acknowledges the district court's preliminary findings against him in its Preliminary Injunction Order (Dkt. 418, App. Tab Y at App-654, App-657) stating that the petitioner violated the SEC laws without any adjudication, showing a clear bias and prejudgment.

**B. Key Procedural Events**

**September 2022: First Receivership**

The district court imposed a receivership without a securities finding, without a Howey or Reves analysis, and without a jurisdictional hearing.

**November 2022: DOJ Stay Order**

At DOJ's request (Dkt. 64, App. Tab A at App-003-005), Judge Starr entered a stay order. This order has never been vacated or amended. Yet Judge Starr permitted the receiver to continue

operating, conducting investigations, and sharing evidence with DOJ—all in violation of his own stay.

**May 2023: Privilege Protocol Order**

The district court issued a privilege protocol order which it never enforced for implementation and let the receiver full access to the privileged content.

**August 2023: Fifth Circuit Vacates Receivership**

In SEC v. Barton, 79 F.4th 573 (5th Cir. 2023), this Court vacated the First Receivership Order—effective ninety days after issuance of the mandate—for failure to apply the receivership factors of Netsphere, Inc. v. Baron, 703 F.3d 296 (5th Cir. 2012), and, pending that vacatur, partially stayed the receiver's power to sell or dispose of receivership property.

**November 2023: Second Receivership**

On remand, Judge Starr reinstated the same receiver, expanded his authority, ordered investigative reports (Dkt. 305, App. Tab Q at App-404-405), did not rule on the defense objections raised at the hearing (Dkt. 359, App. Tab S at App-413-627) and in numerous motions (Dkt. 397, 401, 402, and 407, App. Tab O at App-376), permitted new litigation—directly contravening the mandate—and

issued a blessing order (Dkt. 419, App. Tab E at App-090-099) ratifying the vacated receiver's actions. Petitioner's direct appeals of those orders have been dismissed, leaving mandamus the only vehicle to halt the harm that continues to compound below.

**March 2024: Lawsuits for recovery against family members, lawyers, advisors and associates (Case No 3:24-cv-00612-X ND Tex and Case 3:24-cv-00512-X ND Tex)**

Judge Starr permitted the receiver to sue for recovery of the assets of JMJ Development LLC and related entities—not shown through any forensic audit or jury finding to hold Chinese-lender funds—before the underlying allegations were adjudicated and notwithstanding statute-of-limitations concerns, while declining to sever the claims against the individual defendants. The stayed litigation has clouded the lives of Mr. Barton's daughter, son, ex-wife, and counsel for three years.

**June 23, 2025: Third Receivership Order**

Judge Starr entered the Third Receivership Order (Dkt. 650, App. Tab D at App-061-089). This order: (a) falsely states the case is 'not in furtherance of a pecuniary purpose' (p.3); (b) gives the receiver control over the Wall entities' bankruptcy proceedings (¶¶ 101-104); (c) requires court permission before filing bar complaints (¶ 85(a)); and

(d) continues to treat Petitioner as already guilty. Petitioner's appeal of this order (No. 25-10871) has been dismissed; the order remains the operative instrument under which the Receiver continues to act.

**July 2025: Administrative Closure**

Judge Starr administratively closed the case, yet the receiver continues to operate under pre-closure orders—including drawing fees and moving to dismiss bankruptcy cases. The closure appears to be one in name only: approximately eighty filings have been entered since, with the Receiver permitted to proceed on every action he has requested, even to Petitioner's detriment, though the case has never been reinstated to active status. Continued adjudication without reinstatement is itself a procedural irregularity.

**May 2026: Receiver's Fifteenth Status Report — Announced Plan for Further Litigation and Liquidation**

Notwithstanding the administrative closure and the absence of any jurisdictional ruling, the Receiver has filed his Fifteenth Status Report announcing a further course of action—additional litigation against parties associated with Petitioner, and further liquidation of receivership real estate—that will inflict immediate and irreversible harm if not enjoined. Each proposed action would convert presently

recoverable property into cash distributions and adversarial judgments that no later remedy can undo.

**March–May 2026: Petitioner's Pro Se Motion and Counsel's Motion to Withdraw — Pending Without Ruling**

On March 16, 2026, Petitioner moved for leave to proceed pro se and to file electronically (Dkt. 717, App. Tab U at App-635-639), explaining that urgent matters continue to arise on the docket and that the depletion of his assets has left him unable to retain counsel. On March 25, 2026, the District Court denied that motion (Dkt. 720, App. Tab V at App-640-641) on the narrow ground that counsel of record had not yet moved to withdraw. To cure that defect, counsel moved to withdraw under N.D. Tex. Local Civil Rule 83.12 on April 14, 2026 (Dkt. 724, App. Tab W at App-642-648), with Petitioner's consent, and the SEC filed a Notice of Non-Opposition on May 4, 2026 (Dkt. 729, App. Tab X at App-649-651). The unopposed motion remains undecided. Petitioner thus remains without effective representation and without authorized means to respond pro se even as the Receiver announces further litigation and liquidation. The court's sustained inaction on an unopposed, procedurally compliant motion is itself part of the pattern this petition asks the Court to correct.

### C. The Harm

The receiver has shared evidence one-sidedly with DOJ during the stay period, tainting the criminal case; seized assets of entities not in Petitioner's possession; sued Petitioner's children and former counsel; spent enormous fees on litigation later dismissed or known to be futile; and operated as an arm of the prosecution rather than a neutral fiduciary. The damage to Petitioner's ability to defend the criminal case is ongoing and irreparable.

## REASONS WHY THE WRIT SHOULD ISSUE

## I. THE DISTRICT COURT NEVER RULED ON SECURITIES JURISDICTION—THE CASE IS THEREFORE INVALID

The foundational defect in this case is simple: Judge Starr never ruled on whether the instruments at issue are "securities." Without that threshold jurisdictional ruling, the SEC's complaint lacks a valid basis, and every order entered in this case—including all three receivership orders—is void. A federal court cannot exercise power it has never established.

### A. Judge Starr Never Made a Securities Ruling

From the inception of this case in September 2022 to the present day, Judge Starr has never ruled that the loan agreements at issue constitute "securities" under federal law. He has never conducted a

Howey analysis to determine whether they are "investment contracts," nor a Reves analysis to determine whether they are "notes." He has never held a hearing on the securities question, nor issued any order, memorandum, or finding addressing whether the SEC has jurisdiction over this matter.

The SEC's complaint contained conclusory allegations that the instruments were securities. But allegations are not rulings. The jurisdictional question was contested from the outset. The lenders themselves characterized the instruments as loans—they filed an involuntary bankruptcy petition treating them as loans, and sued in state court for breach of loan agreements, not securities fraud. When jurisdiction is contested, the court must rule on it before exercising any power. Judge Starr never did.

The record also lacks the evidentiary foundation a securities determination requires. The Commission conducted no complete asset tracing; its witness performed only a limited sampling of transactions rather than a full tracing. That witness is not a certified public accountant and has no formal accounting training, as she testified under oath; when the question of designating her as an expert arose, and she was neither qualified nor offered as an expert on tracing.

No forensic audit was ever performed to support treating the instruments as securities, and nothing in the record established that they offered investors a share of profits or otherwise satisfied Howey or Reves. A jurisdictional predicate cannot rest on sampling and conclusory characterization in place of the foundation the governing test demands.

### B. The Fifth Circuit Acknowledged That Judge Starr Never Ruled on Securities Jurisdiction

This is not a matter of interpretation. When the Second Receivership Order (Dkt. 417, App. Tab C at App-032-060) was appealed to the Fifth Circuit as Case No. 23-11237 (consolidated with 23-10004), Judge Willett expressly stated in his opinion that the securities jurisdiction was not ruled upon by Judge Starr explicitly. Judge Willett acknowledged that the district court did not decide the securities question explicitly. He further recognized that if these instruments were not securities, the district court lacked jurisdiction.

This acknowledgment is dispositive. The Fifth Circuit itself has recognized that the threshold jurisdictional question remains unruled explicitly. Yet the case has proceeded for over two years, with three receivership orders, asset seizures, investigations, litigation against

third parties, and ongoing receiver activity—all without the district court ever ruling explicitly that it has jurisdiction.

Petitioner invokes the panel's recognition not to impugn the court of appeals but as evidence bearing on the district court: the appellate record itself reflects that Judge Starr never explicitly decided the threshold securities question, even as the case proceeded as though he had..

### C. Without a Jurisdictional Ruling, the Case Is Invalid and All Orders Are Void

The law is unequivocal: a court that has not ruled explicitly on its jurisdiction has no authority to act. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869)).

Because Judge Starr never ruled that the instruments are securities, the SEC's complaint lacks a valid jurisdictional basis. Every order entered in this case—including the First Receivership Order, the Second Receivership Order, and the Third Receivership Order—was entered without established jurisdiction. These orders are void ab

initio. See In re Paxton, 60 F.4th 252, 257 (5th Cir. 2023) (mandamus appropriate where district court fails to establish jurisdiction).

## II. JUDGE STARR VIOLATED HIS OWN STAY ORDER (Dkt. 64) App. Tab A at App-003-005

### A. The Stay Order Was Never Vacated or Amended

In November 2022, at DOJ's request, Judge Starr entered a stay order at (Dkt. 64, App. Tab A at App-003-005). The purpose of the stay was to protect the integrity of the criminal investigation and prevent interference with DOJ's case.

That order remains on the docket. It was never vacated. It was never amended. It was never modified. Yet Judge Starr proceeded as if the stay did not exist—permitting extensive receiver merit based investigative activity that directly contradicted the stay's purpose.

When a court enters a stay order, it is bound by that order until it is properly vacated. See Ex parte Republic of Peru, 318 U.S. 578, 586 (1943). A district judge cannot simply ignore his own orders.

The scope of what the stay suspended is established by the government's own motion. In moving to intervene and stay, the United States represented that the criminal securities charges and the SEC's civil allegations were 'similar, and in some instances virtually identical,' sharing numerous issues of fact and law—including the

elements of the alleged securities violations. (Dkt. 44, App. Tab I at App-121) Those shared merits issues were the very subject matter the stay suspended.

The stay carved out a single, narrow exception. At the government's request, the Court excepted the Receiver from the stay solely to "perform[] the duties and obligations, and... exercise the powers and rights," set forth in the October 18, 2022 Order Appointing Receiver. (Dkt. 64, App. Tab A at App-004-005; Dkt. 44, App. Tab I at App-120, App-126, App-129) That limited exception authorized the Receiver to administer and preserve assets; by its terms it did not authorize merits investigation, evidence development, or the generation of fact findings concerning the conduct at the heart of the stayed proceeding.

Petitioner does not contend that a stay strips a court of all power—a court ordinarily retains authority to determine its own jurisdiction. The point is one of scope. A stay entered to protect a parallel criminal prosecution suspends substantive, merits-oriented activity; and the Receiver's merits investigation, together with any first-time securities determination made on an undeveloped record, exceeded what the stay left in place.

The Commission itself declined to expend its own resources on the tracing or investigation; that merits work was instead carried out by the Receiver, at the estate's expense, accomplishing through the receivership precisely what the stay was designed to prevent.

Petitioner did not waive these objections. Responding to the stay motion, he declined to oppose a properly limited stay while expressly reserving the right to challenge the Receiver's appointment, existence, and actions, including by reconsideration or appeal; the stay framework preserved exactly that right. (Dkt. 54, App. Tab T at App-628-634)

**B. Actions Taken in Violation of the Stay**

Despite the stay order, Judge Starr permitted the receiver to:

- Conduct investigations into Petitioner's business activities (Dkt. 305, App. Tab Q at App-404-405);
- Gather evidence and prepare investigative reports (Dkt. 308, App. Tab K at App-140-319);
- Share evidence and information one-sidedly with DOJ, making all the information publicly accessible and the DOJ on the active docket for the case;

- Generate self-acclaimed and storytelling factual findings, used in subsequent orders for excessive control and ratification of sales orders;
- File suits against third parties including Petitioner's family members.

Each of these actions violated the stay. And each created facts that now contaminate both the civil and criminal proceedings.

**C. Evidence Tainting of the Criminal Case**

The criminal case has not yet gone to trial. The receiver's one-sided sharing of information with DOJ during the stay period has irreparably tainted that proceeding. The receiver operated under Judge Starr's 'shelter'—conducting investigations DOJ itself could not have conducted under its own stay request—and then fed the fruits of those investigations to DOJ.

This is not a harm that can be remedied on appeal. The evidence is already in DOJ's hands, the criminal case is proceeding, and appeal after final judgment cannot un-share evidence or un-taint a prosecution. The taint is permanent.

# III. PREJUDGMENT AND BIAS

## A. Orders Treating Barton as Already Guilty

Judge Starr's orders do not preserve assets pending adjudication. They punish Petitioner for unproven wrongdoing. The third Receivership Order, Second receivership order, and the first receivership order, all state that Barton 'has misused and mismanaged' the entities' properties and 'has, and is likely to continue to, misuse, dissipate and/or conceal investor funds.' (Dkt. 650, App. Tab D at App-063), and (Dkt. 417, App. Tab C at App-034).

These are findings of fact regarding conduct that has not been adjudicated. No trial has occurred, no verdict has been rendered, and no liability has been established—yet Judge Starr treats Petitioner as a proven fraudster and imposes receivership as punishment. The receivership orders recite that the action serves to 'penaliz[e] past unlawful conduct,' the full pecuniary-purpose finding being quoted in Part IV below. (Dkt. 650, App. Tab D at App-064; Dkt. 417, App. Tab C at App-035; Dkt. 29, App. Tab B at App-008.)

This prejudgment reflects disqualifying bias. See Liteky v. United States, 510 U.S. 540, 555 (1994) (bias may be shown by 'opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings').

**B. Receivership as Punishment, Not Preservation**

A receivership is an equitable remedy for preservation, not punishment. See SEC v. First Fin. Grp., 659 F.2d 660, 666 (5th Cir. 1981). Equity cannot impose remedies before adjudication. See Grupo Mexicano, 527 U.S. at 318-22.

Yet the receiver here has sued Petitioner's children, ex-wife, and former counsel (punitive, not preservative); spent enormous sums fighting the defendant rather than preserving assets; used 'sins of the father' rhetoric in filings against family members; and operated as an advocate for the SEC rather than a neutral fiduciary. Judge Starr permitted the receiver to declare (Dkt. 308, App. Tab K at App-229) that, because all receivership entities 'either received Wall Investor Funds, the proceeds of Wall Investor Funds, or benefited from Wall Investor Funds,' limiting the receivership to certain entities 'would be tantamount to allowing Judas to use Peter's funds to repay Paul... Such a result would be grossly inequitable.'

This Court limited the receiver to 'narrow preservation functions' in its 2023 opinion. SEC v. Barton, 79 F.4th 573, 585 (5th Cir. 2023) (App. Tab L at App-333). Judge Starr ignored that limitation; the receiver's conduct demonstrates that he operates as an arm of the prosecution, not a preservationist.

## IV. FALSE 'PECUNIARY PURPOSE' FINDING

### A. The Case Is Purely Pecuniary

(Dkt. 650, App. Tab D at App-064), contains this finding:

> [T]he Court finds that the SEC has brought this action to enforce the federal securities laws, in furtherance of the SEC's police and regulatory powers, and the relief sought by the SEC and provided in this Order is in the public interest... and is not in furtherance of a pecuniary purpose.'

This finding is factually false. The SEC seeks: disgorgement of allegedly ill-gotten gains; civil monetary penalties; and asset recovery for distribution to alleged victims. These are quintessentially pecuniary remedies. The SEC is seeking money.

### B. The § 362(b)(4) Exception Does Not Apply

The 'police or regulatory' exception under 11 U.S.C. § 362(b)(4) applies only to governmental actions that are NOT 'in furtherance of a pecuniary purpose.' See NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934, 942 (6th Cir. 1986).

Judge Starr's false finding was made to circumvent the bankruptcy automatic stay. Without this finding, the stay would have halted the receivership's interference with the Wall entities' bankruptcy proceedings. The finding was necessary to the receiver's takeover of bankruptcy assets—and it was wrong.

## V. BANKRUPTCY COURT OVERREACH

### A. Seizure of Assets Not in Defendant's Possession

The Wall entities (Wall007, Wall009, Wall010, Wall011, Wall012, Wall016, Wall017, Wall018, Wall019, Carnegie Development LLC), 2999 TC and BM318 having approved BK plans fully adjudicated, were already in Chapter 11 bankruptcy proceedings (In re WALL007 LLC, et al., No. 22-41049, Bankr. E.D. Tex.; In re 2999TC, No. 21-31954 Bankr, N.D. Tex.; In re BM318, LLC, No. 20-42789, Bankr. N.D. Tex.) when Judge Starr ordered the receiver to take control.

These assets were not in Petitioner's possession. They were under the exclusive jurisdiction of the bankruptcy court; the bankruptcy estate, not Petitioner, controlled them. Yet Judge Starr ordered the receiver to seize them anyway, depriving the creditors of any benefit the bankruptcy process could provide.

(Dkt. 650, App. Tab D at App-084-085, ¶¶ 101-104) expressly grants the receiver 'sole and exclusive authority and control over the Wall Entities, as debtors-in-possession' and directs him to determine whether to continue, convert, or dismiss the bankruptcy cases. A further order lifting the stay for the sole purpose of dismissing those cases (Dkt. 660, App. Tab H at App-115-117) confirmed the design to

deprive Petitioner and the creditors of any benefit owed. Petitioner's appeal of this order (No. 20-11044) has been dismissed, even as the Receiver presses the dismissal campaign forward—leaving mandamus the only means to preserve the bankruptcy court's jurisdiction before it is extinguished.

This intrusion was also unnecessary. Before the receivership reached these entities, Petitioner had voluntarily placed the entities that received co-lender funds into bankruptcy and had notified the Commission, so that a single, transparent forum could trace those funds and determine with finality what value should be returned to any legitimate claimant. The orderly and efficient course was to permit that bankruptcy process to run. Instead, the receivership—expanding beyond any ordinary preservation role—displaced the bankruptcy court, at the expense of the rights Petitioner asserts under the Fifth, Sixth, and Seventh Amendments.

**B. Usurpation of Bankruptcy Court Jurisdiction**

The bankruptcy court has exclusive jurisdiction over property of the bankruptcy estate. 28 U.S.C. § 1334(e). Judge Starr's order directing the receiver to take control of the Wall entities' bankruptcy cases impermissibly invades that jurisdiction.

The receiver has moved to dismiss the bankruptcy cases (BM318, 2999TC, and the Wall entities)—not to preserve assets, but to bring them under Judge Starr's control. This is not preservation; it is jurisdictional conquest.

## VI. MANDATE VIOLATIONS

The mandate rule is 'jurisdictional in effect.' See Gene & Gene LLC v. BioPay LLC, 624 F.3d 698, 702 (5th Cir. 2010). A district court 'must implement both the letter and the spirit of the mandate.' See United States v. Lee, 358 F.3d 315, 321 (5th Cir. 2004).

In SEC v. Barton, 79 F.4th 573 (5th Cir. 2023), this Court vacated the First Receivership and limited any future receiver to narrow preservation functions. On remand, Judge Starr:

- Ordered investigative reports and new fact-finding;
- Expanded the receiver's authority beyond the original order;
- Reinstated the same receiver this Court had vacated;
- Injuncted all entities not under the receivership, even included those which never had bank accounts and no business;
- Issued a blessing order (Dkt. 419, App. Tab E at App-090-099) and ratified all the actions of the vacated receiver as if they were never vacated;

- Permitted new litigation against family members and counsel;
- Gave the receiver control over bankruptcy proceedings.

Each of these actions exceeds 'narrow preservation functions.' The mandate has been nullified.

## VII. ADDITIONAL CONSTITUTIONAL VIOLATIONS

### A. Privilege Order Violations

The district court entered a privilege order at (Dkt. 235, App. Tab F at App-100-111) That order has not been enforced. Privileged materials—including attorney-client communications and attorney work product—have never been returned to Petitioner.

This Court has held that mandamus is appropriate for privilege violations because 'appellate review after final judgment will come too late.' See In re Grand Jury Subpoena, 561 F.3d 408, 412 (5th Cir. 2009)

The privilege intrusion here is not a routine dispute over a discrete set of documents. The materials swept up included the entire working files of Petitioner's counsel before the Commission—a sole practitioner who maintained office space within Petitioner's offices—along with the files and notes of other attorneys who worked there, leaving the defense without the records needed to represent Petitioner.

The Receiver and his staff were permitted to review privileged defense materials, including counsel's work product, with attendant exposure to the parallel criminal matter. Petitioner's own working files and records—including materials needed to reconstruct events predating the complaint—were likewise taken and, despite repeated requests, have not been returned.

**B. Defense Asset Seizure (Luis Violation)**

In Luis v. United States, 578 U.S. 5 (2016), the Supreme Court held that the Sixth Amendment right to counsel of choice prohibits freezing untainted assets needed for a criminal defense. If DOJ cannot freeze such assets, a civil receiver certainly cannot.

The receiver seized Petitioner's legal files, untainted personal savings, and documents needed for both civil and criminal defense. Petitioner cannot mount a defense while these seizures continue. Petitioner further contends that the District Court has denied the defense's motions with near-uniform regularity—a pattern Petitioner submits is inconsistent with the due-process guarantees of the Fifth Amendment.

The same seizure implicates the jury-trial guarantee. In SEC v. Jarkesy, 603 U.S. 109 (2024), the Supreme Court held that when the

Commission seeks civil penalties for securities fraud, the Seventh Amendment entitles the defendant to a trial by jury. Petitioner contends that using an equitable receivership to seize and liquidate his assets before any jury has determined liability accomplishes through equity what Jarkesy forbids through administrative adjudication—imposing the practical equivalent of a penalty without the jury trial the Constitution requires, in a process the district court directed in concert with the Receiver.

## VIII. RECUSAL IS REQUIRED UNDER 28 U.S.C. §§ 144 AND 455

Section 144 requires recusal when a judge "has a personal bias or prejudice" against or in favor of a party. 28 U.S.C. § 144. "A legally sufficient affidavit must: (1) state material facts with particularity; (2) state facts that, if true, would convince a reasonable person that a bias exists; and (3) state facts that show the bias is personal, as opposed to judicial, in nature." See United States v. Brocato, 4 F.4th 296, 301 (5th Cir. 2021).

"Section 455(a) sweeps broader than § 144." Id. Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

"[W]hat matters is not the reality of bias or prejudice but its appearance," Liteky v. United States, 510 U.S. 540, 548 (1994), because "justice must satisfy the appearance of justice," In re Murchison, 349 U.S. 133, 136 (1955). The test is "whether a reasonable and objective person, knowing all of the facts, would harbor doubts concerning the judge's impartiality." Brocato, 4 F.4th at 301.

Critically, "[u]nder either statute, adverse rulings or comments by a judge 'will support a claim of bias only if they reveal an opinion based on an extrajudicial source or if they demonstrate such a high degree of antagonism as to make fair judgment impossible.'" Brocato, 4 F.4th at 302; Bowling v. Dahlheimer, No. 20-40642, 2022 WL 670150, at *1 (5th Cir. Mar. 7, 2022). While "a consistent pattern" of ruling in one party's favor is alone "utterly insufficient" to require recusal, Talon Mgmt. Servs., L.L.C. v. Goliath Asset Mgmt., L.L.C., No. 22-10379, 2022 WL 17901921, at *4 n.10 (5th Cir. Dec. 23, 2022), Judge Starr's conduct goes far beyond adverse rulings and satisfies both statutory standards.

### A. Judge Starr's Prejudgment Language Demonstrates Personal Bias Under § 144

Judge Starr's receivership orders contain explicit language treating Petitioner as guilty before any adjudication, directing the

receivership toward what Petitioner characterizes as punishment for 'previous bad acts' never proven. This reveals prejudgment of the SEC's claims and use of the receivership not for asset preservation but as a punitive measure. See SEC v. First Fin. Grp., 659 F.2d 660, 669 (5th Cir. 1981); Grupo Mexicano, 527 U.S. at 318-19.

Judge Starr further permitted the Receiver to employ rhetoric such as 'the son is responsible for the sins of his father'—language that presumes both guilt and hereditary liability without any evidentiary foundation, and that reveals alignment with the Receiver's adversarial posture rather than neutral adjudication.

**B. Judge Starr Authorized Punitive Actions Against Third Parties Before Any Adjudication of Liability**

Judge Starr permitted the Receiver to pursue litigation against Petitioner's family members, lawyers, and associates for 'recovery' before any determination of Petitioner's liability. Equity does not authorize punitive actions against third parties on unproven allegations against a defendant, yet Judge Starr authorized these expansive actions prematurely.

### C. Judge Starr's Restriction on Bar Complaints Reveals Extrajudicial Motivation

Perhaps most egregiously, Judge Starr's Third Receivership Order (Dkt. 650, App. Tab D at ¶ 85(a) at App-079) includes a provision requiring Petitioner to seek leave of court before filing bar complaints against the Receiver or his attorneys. This extraordinary restriction constitutes a prior restraint on Petitioner's First Amendment right to petition for redress of grievances. See In re Snyder, 472 U.S. 634, 647 (1985) (attorneys have First Amendment rights to criticize judicial proceedings); BE&K Construction Co. v. NLRB, 536 U.S. 516, 525 (2002) (right to petition includes complaints to regulatory bodies).

### D. A Reasonable Person Would Question Judge Starr's Impartiality Under § 455(a)

Even if Judge Starr's conduct could be characterized as judicial rather than personal, it demonstrates "such a high degree of antagonism as to make fair judgment impossible." Brocato, 4 F.4th at 302. The following pattern would cause any "well-informed, thoughtful and objective observer" to question his impartiality. See Andrade v. Chojnacki, 338 F.3d 448, 455 (5th Cir. 2003).

Denial of Stay Pending Appeal While Permitting Irreversible Actions. Despite Petitioner's requests for stays pending appeal (Dkt. 71, App. Tab P at App-377-403; Dkt. 691, App. Tab J at App-130-137),

Judge Starr has consistently denied relief while permitting the Receiver to pursue emergency sales even where clouds on title exist due to pending appeals—ensuring that any eventual appellate relief is rendered meaningless by the dissipation of assets.

Of particular significance, the Fifth Circuit expressly referred Petitioner's stay motion (Dkt. 691, App. Tab J at App-130-137) back to the District Court for adjudication. See SEC v. Barton, No. 25-10871. On January 8, 2026, the District Court summarily denied the motion (Dkt. 700, App. Tab G at App-112-114), notwithstanding the appellate directive and without meaningful application of the governing standard. See Nken v. Holder, 556 U.S. 418 (2009).

**E. Judge Starr's Conduct Exceeds Mere Adverse Rulings**

Petitioner acknowledges that 'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.' Liteky, 510 U.S. at 555. But Judge Starr's prejudgment language, his tolerance of inflammatory rhetoric, his restriction of Petitioner's constitutional rights, his refusal to address defense objections, and his authorization of expansive actions against third parties before any adjudication—taken together—demonstrate a 'high degree of antagonism' that 'make[s] fair judgment impossible.' Id.

'[J]ustice must satisfy the appearance of justice.' In re Murchison, 349 U.S. at 136. A well-informed, thoughtful, and objective observer—not a 'hypersensitive, cynical, and suspicious person,' Andrade, 338 F.3d at 455—would harbor serious doubts about Judge Starr's impartiality here.

**F. Recusal or Reassignment Is Required**

For these reasons, Petitioner respectfully submits that Judge Starr's conduct requires either voluntary recusal or this Court's issuance of a writ directing his disqualification under 28 U.S.C. §§ 144 and 455(a). While “the tenor of § 455's language is mandatory,” disqualification “is committed to the sound discretion of the district court.” Garcia v. Woman's Hosp. of Tex., 143 F.3d 227, 230 (5th Cir. 1998). Judge Starr has abused that discretion by failing to recuse despite overwhelming evidence of bias.

Continued adjudication by Judge Starr denies Petitioner the fundamental right to a fair and impartial tribunal guaranteed by the Due Process Clause. Mandamus is therefore appropriate to direct his disqualification and reassignment to a neutral jurist.

Reassignment is especially appropriate because the routine administration of a receivership of this kind does not demand the

personal attention of an Article III judge. Much of it—routine sale approvals, fee applications, status reports, and ancillary disputes such as the lis pendens matter already referred to a magistrate judge—could have been handled by a magistrate judge or special master. Once the Department of Justice obtained a stay to protect the parallel criminal case, the prudent course was for the district judge to insulate himself from the receivership's contested, fact-laden activity by referring it elsewhere, precisely to preserve the appearance and reality of impartiality. That the judge instead remained personally engaged in nearly every receivership filing reinforces that reassignment is warranted.

## NO ADEQUATE ALTERNATIVE REMEDY

Mandamus is appropriate only when the petitioner has "no other adequate means to attain the relief he desires." See Cheney v. U.S. Dist. Court, 542 U.S. 367, 380 (2004). This requirement is satisfied because appeal after final judgment cannot remedy the ongoing, irreversible harms caused by Judge Starr's violations. Each ground for relief presents injuries that, once inflicted, cannot be undone.

Direct Appellate Channels Are Concluded. Petitioner's direct appellate challenges to the orders described in this petition have been

dismissed. With no direct appeal pending, there is no procedural mechanism—other than the writ—by which this Court can halt the ongoing district-court conduct or forestall the Receiver's announced next steps. The exhaustion of direct review does not diminish the case for mandamus; it sharpens it.

Imminent Irreversible Harm from the Receiver's Fifteenth Status Report. The Report announces a course of action that, if executed, will moot any meaningful relief: further litigation against parties associated with Petitioner and further liquidation of receivership real estate. Sold property cannot be unsold to bona fide purchasers; new litigation cannot be un-filed once it enters the record; and dismissed bankruptcy cases cannot be revived once the bankruptcy court's jurisdiction is extinguished. See In re Gee, 941 F.3d 153, 161 (5th Cir. 2019).

The estate faces no liquidity emergency justifying sale of Rock Creek (Petitioner's residence) and other properties,. The Receiver's Fifteenth Status Report (Dkt. 728, App. Tab Z at App-768) and attached SFAR report a Main Receivership Account ending balance of $1,245,547.36 as of March 31, 2026. The only unpaid administrative expenses are the Receiver's own fees, deferred since April 2023. A true

emergency would be paid first; the asserted urgency cannot justify an irreversible sale before this Court rules.

Each ground independently confirms the inadequacy of appeal. The case rests on no securities-jurisdiction ruling, so every order is void and a federal court cannot exercise power it never established. Evidence gathered in violation of the stay has already been shared with DOJ; the bell cannot be unrung. See In re Grand Jury Subpoena, 920 F.2d 235, 239 (5th Cir. 1991). Prejudgment has infected every order, and an appeal cannot restore neutrality to a proceeding that was never neutral. The false pecuniary finding enabled seizure of bankruptcy assets, and once the bankruptcy court's jurisdiction is extinguished no appeal can restore it. Privilege, once breached, is waived forever. See In re Grand Jury Proceedings, 43 F.3d 966, 972 (5th Cir. 1994); In re Ford Motor Co., 211 F.3d 137 (5th Cir. 2000). And the seizure of untainted defense funds denies the right to counsel now, as the criminal case proceeds. See Luis v. United States, 578 U.S. 5 (2016).

Evidence shared with prosecutors cannot be unshared; bias embedded in proceedings cannot be extracted; seized bankruptcy assets cannot be unseized after the bankruptcy court loses jurisdiction;

waived privilege cannot be restored; and constitutional rights denied today cannot be vindicated by a post-trial appeal. Each harm is ongoing and irreversible. Only mandamus can halt the continuing violations and preserve the possibility of meaningful relief.

## APPROPRIATENESS UNDER THE CIRCUMSTANCES

This is not a case of isolated error. The cumulative pattern—violation of the stay, the absence of any securities-jurisdiction ruling, prejudgment, a false pecuniary finding, bankruptcy overreach, mandate violations, an unenforced privilege order, and the seizure of defense assets—demonstrates a breakdown in orderly judicial administration requiring supervisory mandamus. La Buy, 352 U.S. at 256-58.

The issues have significance beyond this case: Can a district judge ignore his own stay order? Can he make false findings to evade bankruptcy protections? Can a receiver seize assets under the exclusive jurisdiction of another court? This Court's guidance is needed.

## RELIEF REQUESTED

Petitioner respectfully requests that this Court issue a writ of mandamus granting the following relief:

Interim Stay (pending disposition). Under Nken v. Holder, 556 U.S. 418 (2009), an order holding the status quo as of the Receiver's Fifteenth Status Report, directing that pending disposition the Receiver shall not:

(a) sell, encumber, or seek ratification of any further disposition of receivership real property;

(b) commence, intervene in, or move to resolve any litigation, or dismiss any bankruptcy proceeding (Wall entities, 2999TC, BM318);

(c) pay further professional fees or distribute estate proceeds beyond what is needed to maintain present assets; and

(d) shall file a sworn asset, litigation, and bankruptcy inventory within 14 days.

Tier One — Dismissal for Lack of Jurisdiction (primary). Because the district court never ruled that the instruments are "securities," direct it to:

(a) dismiss the action for lack of subject-matter jurisdiction;

(b) vacate, as void, all orders entered in the action (receivership, blessing, sale, contempt, fee, and litigation-authorizing orders);

(c) disgorge all fees paid to the Receiver and his professionals;

(d) restore the status quo ante (return all assets, funds, legal files, and privileged materials; dissolve the Receivership; dismiss the ancillary suits; vacate Receivership liens); and

(e) unwind any orders in related proceedings entered in reliance on the void orders.

Tier Two — Pecuniary Purpose (first alternative). Direct the district court to declare this action subject to the automatic stay, 11 U.S.C. § 362(a) (the § 362(b)(4) exception inapplicable), and grant the vacatur, disgorgement, and restoration relief above.

Tier Three — Specific Relief (second alternative). Direct:

(a) disclosure to DOJ and the criminal court of evidence gathered in violation of the stay (Dkt. 64, App. Tab A at App-003-005);

(b) vacatur of orders exceeding the scope this Court's decision in SEC v. Barton, 79 F.4th 573 (5th Cir. 2023), left in place;

(c) return of all privileged materials, with an injunction against further use; and

(d) return of defense files and untainted funds under Luis v. United States, 578 U.S. 5 (2016).

Tier Four — Recusal (independent of the relief granted). Direct recusal under 28 U.S.C. §§ 144 and 455 or reassignment to a different judge, and appointment of a special master to wind up the Receivership.

Such other relief as is just and proper.

## CONCLUSION

Judge Starr violated his own stay order. He never ruled explicitly on the jurisdiction for securities. He prejudged the defendant. He made a false finding to evade bankruptcy protections. He let the receiver seize assets not in the defendant's possession. He violated this Court's mandate. He failed to enforce his own privilege order. He permitted the seizure of defense assets. He operated a receivership without a jurisdictional finding.

These are not close calls. They are clear abuses requiring immediate correction. With direct appellate channels now concluded, no ordinary remedy remains. Only this Court's exercise of its supervisory mandamus power can halt the ongoing harm, protect its own mandate, and restore the integrity of these proceedings before the Receiver's announced course of further litigation and liquidation,

signaled in the Fifteenth Status Report, places relief permanently beyond reach.

The writ should issue.

Respectfully submitted,

Dated: June 5, 2026

*/s/ Timothy L. Barton*
**Timothy L. Barton, Pro Se Petitioner**
3926 Vista Woods Drive
Carrollton, TX 75007
Phone: 214-673-8714
Email:
Timothy.Barton@proton.me

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, I filed the foregoing Petition for Writ of Mandamus with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system, which will send notification to all counsel of record.

I further certify that I have provided a copy of this petition to the Honorable Brantley Starr, United States District Judge, as required by Fed. R. App. P. 21(a)(1), by electronic mail.

*<u>/s/ Timothy L. Barton</u>*
Timothy L. Barton

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because, excluding the parts exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 21, it contains 7793 *words.*

This petition complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*<u>/s/ Timothy L. Barton</u>*
Timothy L. Barton