U S COURT OF APPEALS
RECEIVED
JUN 05 2026
FIFTH CIRCUIT

# BINDER
# 2 of 2

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

August 31, 2023

Ms. Karen S. Mitchell
Northern District of Texas, Dallas
United States District Court
1100 Commerce Street
Earle Cabell Federal Building
Room 1452
Dallas, TX 75242

No. 22-11132 SEC v. Barton
USDC No. 3:22-CV-2118

Dear Ms. Mitchell,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Sincerely,

LYLE W. CAYCE, Clerk

Christina Rachal

By: _______________________
Christina C. Rachal, Deputy Clerk
504-310-7651

cc:
Mr. Keefe Michael Bernstein
Mr. Michael Christopher Dingman
Mr. Michael J. Edney
Mr. Ezekiel Levenson Hill
Mr. Edwin A. Huffman
Mr. John Joseph Kane
Ms. Charlene Cantrell Koonce
Mr. David B. Reece
Mr. Andrew Robertson
Mr. Richard Bratton Roper III
Mr. Cortney Christopher Thomas

# TAB M

## FIFTH CIRCUIT OPINION ON SECOND RECEIVERSHIP

No. 23-11237 (Consolidated with No. 23-10004) (April 2025)

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

June 23, 2025

Ms. Karen S. Mitchell
Northern District of Texas, Dallas
United States District Court
1100 Commerce Street
Earle Cabell Federal Building
Room 1452
Dallas, TX 75242

No. 23-11237 SEC v. Barton
USDC No. 3:22-CV-2118
Consolidated with:
No. 24-10004 SEC v. Barton
USDC No. 3:22-CV-2118

Dear Ms. Mitchell,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Sincerely,

LYLE W. CAYCE, Clerk

By: Angelique B. Tardie (signature)
Angelique B. Tardie, Deputy Clerk
504-310-7715

cc:
Mr. Keefe Michael Bernstein
Mr. Michael J. Edney
Mr. Ezekiel Levenson Hill
Ms. Charlene Cantrell Koonce

Case: 23-11237 Document: 124-2 Page: 1 Date Filed: 06/23/2025

# United States Court of Appeals
# for the Fifth Circuit

No. 23-11237
CONSOLIDATED WITH
No. 24-10004

United States Court of Appeals
Fifth Circuit
**FILED**
April 17, 2025
Lyle W. Cayce
Clerk

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff—Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant—Appellant.*

Appeals from the United States District Court for the Northern District of Texas
USDC No. 3:22-CV-2118

Before HIGGINBOTHAM, and WILLETT, *Circuit Judges.**

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED we AFFIRM the imposition and scope of the receivership and the grant of a preliminary injunction. We DISMISS Barton's appeal of administrative orders

* These appeals are being decided by a quorum. 28 U.S.C. § 46(d).

unrelated to sales for lack of jurisdiction. And we DENY his request to reassign the case to another district-court judge.

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See Fed. R. App. P. 41(b). The court may shorten or extend the time by order. See 5th Cir. R. 41 I.O.P.

# United States Court of Appeals for the Fifth Circuit

No. 23-11237
CONSOLIDATED WITH
No. 24-10004

United States Court of Appeals
Fifth Circuit
**FILED**
April 17, 2025
Lyle W. Cayce
Clerk

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff—Appellee,*

*versus*

TIMOTHY BARTON,

*Defendant—Appellant.*

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

Before HIGGINBOTHAM and WILLETT, *Circuit Judges.* *

DON R. WILLETT, *Circuit Judge*:

This case involves a receivership and preliminary injunction in an ongoing securities enforcement action. Timothy Barton was involved in a scheme to develop underutilized land with assistance from loans given by Chinese nationals. Eventually, the Securities and Exchange Commission and the Department of Justice opened parallel civil and criminal proceedings

* These appeals are being decided by a quorum. 28 U.S.C. § 46(d).

against Barton and his associates. As relevant here, the SEC alleged violations of antifraud provisions of the Securities Act, 17 U.S.C. § 77q(a), and the Exchange Act, 15 U.S.C. § 78j(b). In an effort to preserve lenders' assets, the SEC sought a receivership. Barton now appeals various district-court orders imposing and administering a receivership and preliminary injunction freezing Barton's assets (those which were not included in the receivership). He also requests reassignment of the case on remand. As there was no abuse of discretion by the district court, we AFFIRM the imposition and scope of the receivership and the grant of a preliminary injunction. We DISMISS Barton's appeal of certain orders administering the receivership for lack of jurisdiction. And we DENY Barton's request to reassign the case to another district-court judge.

## I

In 1990, Timothy Barton founded JMJ Development, an entity focused on developing "underutilized land into single family homes, apartments, and hotels." Since then, Barton and JMJ Development have engaged in "major, revenue-producing projects."

Nearly thirty years later, in 2017, Barton worked with Texas builder Stephen Wall and Chinese businessman Haoqiang Fu to offer investment opportunities to Chinese investors. To implement this scheme, they established a series of special-purpose entities, each responsible for funding the purchase and development of a specific parcel of land. The SEC refers to these as "Wall Entities." And in pitching the project to Chinese nationals, Barton, Fu, and Wall highlighted it as an opportunity for them to "invest to avoid risk" and attain "higher profit[s] than overseas bond investment[.]" Those who participated were promised a high fixed rate of interest—10%—in exchange for their loans.

The loan agreements indicated that funds would go to the purchase and development of a specified property. But instead, according to the SEC's complaint, Barton spent investor funds on his lavish lifestyle and developments not contemplated in the loan agreements.

Following an investigation, the SEC and Department of Justice opened parallel civil and criminal proceedings against Barton and his associates. Relevant here, the SEC alleged Barton violated the antifraud provisions of the Securities Act and Exchange Act.

Despite these legal proceedings, Barton's spending continued. Remarkably, in the period following the SEC's complaint, Barton spent, at the very least, hundreds of thousands of dollars in traceable investor funds by paying lawyers, moving funds to other entities, making payments on his personal credit card, and spending on "meals, car payments, educational expenses, . . . payments to [his] ex-wife and children, and mortgage payments on the residence [he] lived in." Barton also purchased a private plane.

To curtail this spending of investor funds, the SEC sought to establish a receivership over any company controlled by Barton. The district court granted it, and Barton appealed in 2023. On appeal, our court vacated the receivership order.[1] We found that the district court erred in both determining that the receivership was necessary and determining the scope of the entities covered by the receivership. As to propriety of the receivership, we emphasized that the district court used the wrong standard in determining whether a receivership was warranted. Our court instructed the district court to, on remand, apply the test set forth in *Netsphere, Inc. v. Baron* ("*Netsphere I*").[2] As to the receivership's scope, we determined that

---

[1] *See SEC v. Barton*, 79 F.4th 573, 575 (5th Cir. 2023).

[2] 703 F.3d 296, 305 (5th Cir. 2012)

the receivership swept too broadly and stated that "a receivership's jurisdiction extends only over property subject to the underlying claims[.]"[3] So "the district court abused its discretion by including all Barton-controlled entities in the receivership without first finding that they had received or benefited from the ill-gotten funds."[4]

On remand, the SEC again asked the district court to impose a receivership. Following extensive briefing and evidentiary hearings, the district court granted a new receivership. The district court determined that the receivership was proper under *Netsphere I* and set the scope of the new receivership to include all entities that "received or benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation." The SEC requested that the receivership cover 82 entities, but the district court ultimately included only 54 of those entities.

After it had established the receivership and appointed a receiver, the district court performed its role in supervising the receivership. It ratified certain actions taken in the course of the prior receivership. And it later approved the sale of certain properties held by the receivership. Additionally, the district court issued a preliminary injunction freezing the assets of Barton-controlled entities outside the receivership.

Barton again appeals. In this second appeal, Barton challenges the district court's jurisdiction to appoint the receiver, its decision to appoint the receiver, the scope of the receivership, the district court's administration of the receivership, and the preliminary injunction. And he asks us to, on remand, reassign the case to a different district-court judge.

---

[3] *Barton*, 78 F.4th at 580.

[4] *Id.* (citation omitted).

## II

Because jurisdiction is a threshold matter, we address it first.[5] Barton claims that the district court failed to determine whether the loan agreements qualified as "securities[.]" In Barton's view, such an error is relevant to both "whether the Commission had the power to bring this case and whether the District Court had the power to hear it." He relies on two out-of-circuit cases to suggest that "[i]f the transaction does not involve a 'security' the court lacks subject matter jurisdiction."[6]

Barton is correct that "if the [loan agreements] are not securities, there is not only no federal jurisdiction to hear the case but also no federal cause of action on the stated facts."[7] However, "[a]lthough the district court did not expressly address" whether the loan agreements are securities, "a finding that it had subject matter jurisdiction is implicit" in its imposition of a receivership and grant of a preliminary injunction.[8] And moreover, it

---

[5] *See United States v. Shkambi*, 993 F.3d 388, 389 (5th Cir. 2021).

[6] *Mishkin v. Peat, Marwick, Mitchell & Co.*, 744 F. Supp. 531, 553 (S.D.N.Y. 1990); *see also GBJ Corp. v. Sequa Corp.*, 804 F. Supp. 564, 565 (S.D.N.Y. 1992).

[7] *Williamson v. Tucker*, 645 F.2d 404, 416 (5th Cir. 1981); *see also United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 859 (1975) (holding the court had no federal jurisdiction at when so-called "stock" did not qualify as "securities" under federal securities laws).

[8] *Passmore v. Baylor Health Care Sys.*, 823 F.3d 292, 295–96 (5th Cir. 2016) ("Although the district court did not expressly address this issue, a finding that it had subject matter jurisdiction is implicit in its dismissal of the Passmores' suit based on Texas law. *See Cadle Co. v. Neubauer*, 562 F.3d 369, 371 (5th Cir. 2009) (district court's denial of motions to vacate was implicit finding of subject matter jurisdiction)."); *see also Blanchard 1986 Ltd. v. Park Plantation LLC*, No. CV 04-1864, 2007 WL 2381268, at *6 (W.D. La. July 30, 2007) ("In *Royal*, the court issued a final judgment on the merits of the case without discussing jurisdictional-related issues. Implicit in that court's judgment, therefore, was a finding that the court had subject matter jurisdiction." (citing *Royal Insurance Co. of America v. Quinn-L Capital Corp.*, 960 F.2d 1286 (5th Cir. 1992))), *report and*

expressly stated it had subject matter jurisdiction in the initial appointment of a receiver—after the SEC argued in its motion that the loan agreements were securities.

Even if the district court erred by failing to explicitly address whether the loan agreements were securities prior to imposing the receivership, any error was harmless. The district court later answered the very question Barton contests, when granting the preliminary injunction: "[T]he Court finds, by a preponderance of the evidence, that the loan agreements are securities because they are investment contracts and notes[.]"

We agree. A preponderance of the evidence shows that the loan agreements are investment contracts, regardless of whether they are notes, thus establishing subject matter jurisdiction.[9]

By its terms, 15 U.S.C. § 78c(a)(10) defines securities to include investment contracts, among other instruments. "[T]he essential ingredients of an investment contract[,]" as the Supreme Court instructed in *SEC v.*

---

*recommendation adopted sub nom. Blanchard 1986 Ltd. v. Park Plantation, LLC*, No. CV 04-1864, 2007 WL 9813122 (W.D. La. Aug. 17, 2007), *aff'd sub nom. Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405 (5th Cir. 2008).

[9] *See Reule v. Jackson*, 114 F.4th 360, 365 (5th Cir. 2024) (requiring a preponderance of the evidence to establish that the court has subject matter jurisdiction); *see also id.* ("The issue of subject matter jurisdiction cannot be waived, and federal courts are duty-bound to examine the basis of subject matter jurisdiction at all stages in the proceedings and dismiss if jurisdiction is lacking." (internal quotation marks and citations omitted)); *Sentry Ins. v. Morgan*, 101 F.4th 396, 398 (5th Cir. 2024) ("As the party invoking federal jurisdiction, [plaintiff] has 'the burden of proving subject matter jurisdiction by a preponderance of the evidence.'" (citation omitted)). Even if the district court did *not* consider this issue—though we find it did—we may still consider it. *See Masel v. Villarreal*, 924 F.3d 734, 743 (5th Cir. 2019), *as revised* (June 6, 2019) ("Before proceeding to the merits of plaintiffs' securities-fraud claims, we must first address the threshold question—not considered by the district court—whether plaintiffs have successfully pleaded the existence of a security.").

Accordingly, the loan agreements qualify as investment contracts, and thus as securities—so we need not assess whether they also qualify as notes. And as a result, the district court correctly found it had subject-matter jurisdiction.

III

As the district court had jurisdiction, we now turn to the heart of Barton's appeal: the imposition of a receivership. Barton argues that the district court abused its discretion by again granting a receivership. Not so.

We have jurisdiction over the imposition of the receivership pursuant to 28 U.S.C. § 1292(a)(2), which grants jurisdiction for "interlocutory orders appointing receivers[.]"[17] We review the imposition of a receivership for abuse of discretion.[18]

Federal Rule of Civil Procedure 66 permits "anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer" to seek appointment of a receiver.[19] "Correspondingly, a district court has authority to place into receivership assets in litigation 'to preserve and protect the property pending its final disposition.'"[20]

---

[17] 28 U.S.C. § 1292(a)(2) ("[T]he courts of appeals shall have jurisdiction of appeals from: . . . *[i]nterlocutory orders appointing receivers*, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property[.]" (emphasis added)).

[18] *See, e.g.*, *Barton*, 79 F.4th at 577; *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 904 (5th Cir. 1980).

[19] *Netsphere I*, 703 F.3d at 305 (quotation marks and citation omitted).

[20] *Id.* (citing *Gordon v. Washington*, 295 U.S. 30, 37 (1935)).

As we previously instructed,[21] the district court applied *Netsphere I*, and in doing so, it determined that a receivership was necessary. Under *Netsphere I*, a receivership is appropriate where there's "1) a clear necessity to protect the defrauded investors' interest in property, 2) legal and less drastic equitable remedies are inadequate, and 3) the benefits of receivership outweigh the burdens on the affected parties."[22] Contrary to Barton's arguments, the district court did not abuse its discretion because these factors weigh in favor of the SEC.

A

First, the receivership is "clear[ly] necess[ary] to protect a party's interest in property[.]"[23] The investors' property interests face numerous threats—from Barton, market conditions, and third-party actions.

Without a receivership, Barton's actions threaten to further dissipate the investment assets. Recall that Barton continued his spending spree even after he had been indicted. And accordingly, there is no indication that he has been deterred from his conduct.

Furthermore, the value of the assets will decline if they are not well managed. Indeed, as the district court recognized, "[a] number of the properties require active management, including an operating hotel, apartment complexes, and properties in development." Without such management, investors' assets—and the ability to gain interest as well—will deteriorate. A receivership provides a mechanism to actively manage the property without Barton at the helm.

---

[21] *See Barton*, 79 F.4th 573.

[22] *Id.* at 578–79 (citing *Netsphere I*, 703 F.3d at 305).

[23] *Id.* at 578; *Netsphere I*, 703 F.3d at 305.

Additionally, the receivership is necessary because it protects investor assets from third-party actions. The district court noted that the assets included in the receivership are "mired in liens, lawsuits, and foreclosures that threaten to further diminish the value of the assets." And "[e]very piece of real property but one in the initial receivership is encumbered by debt[.]" A receivership allows the court to issue a parallel stay of litigation and foreclosure while the receiver works "to mollify secured creditors' concerns." Without such a stay, "foreclosures would have eliminated millions of dollars in property value" from the assets in the receivership. Therefore, the receivership was necessary to protect investor's property interests from creditors.

Barton argues for a standard outside the confines of *Netsphere I*, requesting that we require "a significant and imminent risk of asset flight that cannot be controlled by other means[,]" such as "where liquid assets are at high risk of being transferred outside the court's jurisdiction." But *Netsphere I* only suggested a receivership may be justified "to prevent the threatened diversion of assets through fraud or mismanagement[,]" "to prevent the corporation from dissipating corporate assets[,]" and "to pay defrauded investors"[24]—not the higher standard that Barton now requests. Barton fails to show why we should hold real-property receiverships to a different standard than those for liquid assets; indeed, his reliance on the Stanford securities fraud litigation[25] is misplaced, given that it, like Barton's, included real property.[26] And regardless, the district court aptly "held that there

---

[24] *Netsphere I*, 703 F.3d at 306.

[25] *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 836 (5th Cir. 2019).

[26] *See* Order Approving Procedures for Sales of Real Property by the Receiver, *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-cv-298 (N.D. Tex. Jan. 25, 2010), ECF No. 979.

was . . . asset flight" based on Barton's spending of investor funds after the SEC filed its civil enforcement action.

B

Second, any "less drastic remedies" would be inadequate. Barton's proposed alternative arrangements all involve Barton exerting some degree of control over investor assets—which increases the risk of asset dissipation.[27]

Barton proffered an alternative arrangement consisting of a monitorship paired with a temporary injunction freezing asset transfer. The district court rejected both monitorships and asset freezes. It found monitorships unsuitable because such an arrangement would still allow Barton too much control over the relevant assets and would not provide a method to stay litigation. And it rejected asset freezes because the assets required dynamic management due to operational requirements and potential exposure to liability or waste.

But while the district court considered each potential remedy in isolation, it did not consider them as a combination. Barton proposes a hybrid monitorship-injunction that would "prohibit certain categories of transactions without appropriate approvals, including selling or incumbering any asset, taking out a loan, and making an expenditure over a certain threshold."

Barton's authorities in support of this hybrid monitorship-injunction miss the mark. For example, he cites a monitorship order seemingly without

[27] Barton also advocates for a standard "closely akin to the strict scrutiny standard applied against restrictions of fundamental constitutional rights." But Barton identifies no authority for such a standard, so we proceed by applying *Netsphere I*.

any explicit power to enjoin or approve certain transactions.[28] Even if monitorships *with* power to enjoin or approve transactions exist,[29] such an arrangement is not preferable to a receivership in this case. The district court made a strong showing that keeping Barton in charge comes with an unacceptably high risk of further asset dissipation. Moreover, Barton has been held in contempt for violating certain requirements in place under the previous receivership order. Barton has made no showing that a monitorship would police his conduct any more effectively than a contempt order. And the district court was correct that "[s]uch a gamble of a remedy is insufficient to protect investors' interests."

In sum, a receivership is the only appropriate remedy because no other remedy insulates the investor assets from Barton while also allowing for a litigation stay and active management.

C

Finally, the benefits of a receivership—evidenced by the two prior factors discussed—outweigh its burdens. If there's no receivership, creditors will chip away at the assets, assets requiring active management will fall into disrepair or disuse, and Barton may further dissipate investor assets—as he has done already. Without the receivership, the foreclosures alone would cost, as the receiver and district court noted, millions of dollars that would be "otherwise available for satisfaction of Investor claims." These costs would

---

[28] *See In re American Registrar & Transfer Co.*, Exchange Act Release No. 77,922, at 8 (May 25, 2016) (monitor shall "conduct a comprehensive review . . . and recommend corrective measures"), https://www.sec.gov/files/litigation/admin/2016/33-10082.pdf.

[29] *See, e.g.*, *SEC v. GPB Capital Holdings, LLC*, No. 23-8010-CV, 2024 WL 4945247, at *1 (2d Cir. Dec. 3, 2024) (discussing order affirming "monitor's 'authority to approve or disapprove of' " certain corporate decisions).

severely limit recovery for the defrauded investors in the future. In short, a benefit of the receivership is that it virtually eliminates all of these risks.

Barton contends that this receivership is without benefit due the appointed receiver's alleged incompetence. But such a claim overlooks the significant benefits a receivership offers, as noted above. It also ignores the receiver's experience in managing disputes and consultation with other professionals, which are highly relevant—and helpful—in navigating the myriad issues plaguing receivership property. The only real burdens of the receivership fall upon Barton—and we recognize that difficulty. While the district court considered these burdens, it soundly exercised its discretion to conclude that the above benefits to the defrauded investors outweigh the burdens on Barton.

Accordingly, the district court, after assessing the *Netsphere I* factors, did not abuse its discretion in imposing the receivership.

IV

We next turn to the scope of the receivership, which is within this court's jurisdiction over interlocutory appeals from orders imposing receiverships.[30] Barton contends that the district court included property which is not the subject matter of the litigation. We disagree.

"[A] court's equitable powers do not extend to property unrelated to the underlying litigation[.]"[31] So the equitable remedy of a receivership cannot cover "property that is not the subject of an underlying claim or controversy."[32] Applying this principle, we previously instructed the district

---

[30] *Cf. Barton*, 79 F.4th at 577, 580–81; 28 U.S.C. § 1292(a)(2).

[31] *Netsphere I*, 703 F.3d at 310.

[32] *Id.*

court that any possible receivership "can only extend over entities that *received or benefited from* assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation."[33] And that's exactly the scope of the receivership at issue here.

Barton argues the district court committed eight legal errors regarding the scope of the receivership, including:

1. "[D]etermining that it was sufficient that a company [benefited] from lender funds to seize it";
2. "[D]etermining that receipt of a small amount of lender funds was sufficient to seize a whole company";
3. "[H]olding that, once a company received some assets traced to lender funds, everything that company spent thereafter was lender funds";
4. "[F]inding that temporary receipt of alleged lender funds sufficed to seize an entire company and all its assets";
5. "[N]ot demanding that the Commission use the Wall and other entities' accounting records, which documented the sources and uses of the lender funds";
6. "[N]ot requiring competent expert testimony on the apparently complex accounting issue of tracing lender funds through multiple business entities";
7. "[A]ccepting purported tracing evidence from the receiver, whose appointment and seizure of records was illegal"; and
8. "[N]ot exercis[ing] any discretion over what assets should be included in the receivership."

---

[33] *Barton*, 79 F.4th at 580–81 (emphasis added).

In practice, these supposed "errors" boil down to three arguments: The district court included entities who did not receive or benefit *enough* from lender funds; failed to require proper tracing evidence; and finally, did not exercise discretion.

A

Start with the first category—whether the included entities received or benefited *enough* from lender funds. The district court followed the rule we previously articulated: "Should the district court decide that a new receivership is justified on remand, *it can only extend over entities that received or [benefited] from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation.*"[34] Nothing in this rule sets a proportionality limitation or requires that the receipt of lender funds be permanent. Indeed, if the rule did so, it would encourage rapid reshuffling of assets—the very problem which has confounded tracing efforts so far in this case, let alone those to come. Accordingly, the district court did not abuse its discretion in following a rule our court already set, and we do not change that rule now, following the rule of orderliness.[35]

More tellingly, the received-or-benefited-from rule is the rule Barton himself requested in the initial district court proceedings and appeal.[36] Barton cannot have a second bite at the apple to change the standard after

---

[34] *Id.* (emphasis added).

[35] *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.").

[36] *See Barton*, 79 F.4th at 580 ("Barton . . . argues that the district court erred by placing multiple entities he controls in the receivership without any showing that they received or [benefited] from ill-gotten investor funds.").

Additionally, courts in this circuit routinely allow testimony from the receiver.[39] And the receiver's testimony—which Barton argues should not have been admitted—was especially useful here because the receiver was tasked with tracing funds under the first receivership order.

The district court committed no abuse of discretion in its admission and assessment of the tracing evidence.

C

Finally, look at the district court's use of discretion. The district court's "marching order[]"—which Barton argues showed a *lack* of discretion—was merely a legal rule to determine what types of property or assets over which a receivership *may* extend. As such, our court's standard was a ceiling for the receivership, not a floor. And the district court properly applied the received-or-benefited-from rule as a floor: *Using its discretion*, it only included 54 of the 82 entities the SEC sought the receivership to cover. For instance, the exclusion of certain entities that owned (or were higher in the ownership chain above) entities that benefited from the investor funds demonstrates that the district court's application of the received-or-benefited-from principle was anything but mechanical. And, again *using its discretion*, the district court froze other assets via preliminary injunction, rather than placing them in the receivership.

---

[39] *See, e.g.*, *Taylor v. U.S. Bank Nat. Ass'n*, No. H-12-3550, 2015 WL 507526, at *14 (S.D. Tex. Feb. 6, 2015) ("The court finds that the advocate-witness rule is not applicable because the receiver is not serving as the attorney for the receivership."); *cf.* *Janvey v. Romero*, 817 F.3d 184, 190 (5th Cir. 2016) (discussing receiver testimony); *In re Ondova Ltd. Co.*, No. 09-34784-SGJ-11, 2012 WL 5879147, at *8 (Bankr. N.D. Tex. Nov. 21, 2012) (similar).

D

Barton draws attention to "several significant entities" that, in his view, erroneously fell within the scope of the receivership due to a combination of these supposed "errors." These include companies which owned four apartment complexes, FHC Acquisitions LLC (which was allegedly "funded through identified third parties unrelated to the Chinese-national lenders at issue in this case"), companies which JMJ Development had ownership claims to, and "the Defendant's only home, which was held by an LLC[.]" For each of these entities, Barton re-emphasizes some subset of the errors described above.

Though these examples are illustrative of Barton's arguments, none change the outcome. Indeed, none of the supposed "errors" Barton asserts rise to the level of an abuse of discretion. Accordingly, we affirm the orders related to the scope of the receivership.

V

Next, we turn to Barton's challenges to the district court's administration of the receivership. Specifically, Barton contends the district court erred when it ratified actions taken during the prior receivership, approved appraisals, and confirmed the sale of assets from the receivership estate. But we only have jurisdiction to review the orders approving sales of property, thanks to a "wrinkle" in our precedent.[40] And we hold that the district court did not abuse its discretion in confirming those sales.

---

[40] *Netsphere, Inc. v. Baron ("Netsphere II")*, 799 F.3d 327, 333 (5th Cir. 2015); *see United States v. "A" Manufacturing Co., Inc.*, 541 F.2d 504, 506 (5th Cir. 1976) (relying mainly on cases interpreting the final-judgment doctrine); *SEC v. Janvey*, 404 F. App'x 912, 914 (5th Cir. 2010).

A

The text of 28 U.S.C. § 1292(a)(2) precludes our jurisdiction to review receivership orders: "[T]he courts of appeals shall have jurisdiction of appeals from: . . . [i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property[.]"

In *Netsphere II*, we held that § 1292(a)(2) permits interlocutory appeals only for "orders appointing receivers" or orders "refusing . . . to take steps to accomplish the purposes of [winding up receiverships]."[41] To reach that conclusion, we looked at the text and structure of § 1292(a)(2). We "interpret[ed] the verb phrase 'refusing orders' to modify both the infinitive phrase 'to wind up receiverships' and the infinitive phrase 'to take steps to accomplish.' The parallel structure of both infinitive phrases suggest that is a reasonable outcome."[42] We also recognized that "every circuit to squarely consider this question has reached the same result."[43] And, most importantly, such a conclusion relied on our circuit's prior caselaw applying this statute,[44] in cases such as *Belleair Hotel Co. v. Mabry*[45] and *Wark v. Spinuzzi*.[46] Where a district court had "not refused an order to wind up the

[41] *Netsphere II*, 799 F.3d at 331–34.

[42] *Id.* at 332 (cleaned up).

[43] *Id.*

[44] *See id.*

[45] 109 F.2d 390 (5th Cir. 1940).

[46] 376 F.2d 827 (5th Cir. 1967) (per curiam).

receivership or to take appropriate steps to that end[,]" we did not have jurisdiction.[47]

The receivership orders Barton appeals are not "orders appointing receivers" or a district court's "*refus[al]* ... to wind up receiverships or to take steps to accomplish the purpose" of winding up the receivership.[48] Nevertheless, Barton argues we have jurisdiction under *United States v. "A" Manufacturing Co., Inc.*, which found jurisdiction under § 1292(a)(2) for an interlocutory appeal of an order confirming a sale of property.[49] But that court—decades after *Belleair Hotel Co.* and *Wark*—based its conclusion on three cases untethered to § 1292(a)(2): a case "taken from a final decree and not from an interlocutory order[;]"[50] an out-of-circuit case concerning sale of property by a receiver without reference to the then-existing interlocutory appeal statute (which is similar to today's § 1292(a)(2));[51] and a case which "[wa]s final, so far as title under the sale is concerned" and which found

[47] *Belleair Hotel Co.*, 109 F.2d at 390–91 ("[S]ection 129 of the Judicial Code, as amended, 28 U.S.C.A. §§ 225, 227"—a precursor to § 1292(a)(2) with nearly identical phrasing—"makes provision for appeals from interlocutory orders refusing to take appropriate steps to wind up a pending receivership, such as directing a sale or other disposal of the property, but we have no such order before us. In this case, the court has not refused an order to wind up the receivership or to take appropriate steps to that end."); *see also Wark*, 376 F.2d at 827 ("Under 28 U.S.C.A. 1292(2) 'interlocutory orders appointing receivers or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of [property]' are appealable. This is not such an order nor is it a final decision ... The appeal is therefore [d]ismissed.").

[48] 28 U.S.C. § 1292(a)(2) (emphasis added); *see Netsphere II*, 799 F.3d at 331.

[49] 541 F.2d 504, 506 (5th Cir. 1976).

[50] *Id.* at 506 (citing *First Nat'l Bank v. Shedd*, 121 U.S. 74, 85 (1887)).

[51] *New York v. Kilsheimer*, 251 F.2d 175, 176 (2d Cir. 1957). *Kilsheimer* followed *Belleair* by almost twenty years, but *Kilsheimer* didn't cite to the jurisdictional statute relied upon by the court in *Belleair Hotel Co.*—nor could it. *See Belleair Hotel Co.*, 109 F.2d at 390–91. *Belleair Hotel Co.* precluded the availability of that statutory basis for interlocutory appeal for *Kilsheimer*'s set of facts. *See id.*

"[w]e have often decided that a decree confirming a sale, if it is final, may be appealed from."[52] *"A" Manufacturing*, standing alone, would ordinarily give us jurisdiction to at least review the sale orders.

But the rule of orderliness prohibits such a conclusion now. *"A" Manufacturing*'s conclusion—that appellate courts have jurisdiction under § 1292(a)(2) for interlocutory appeals of property-sale orders—conflicts with that of the earlier courts in *Belleair Hotel Co.* and *Wark*—that "interlocutory orders which do not refuse orders to wind-down a receivership are not reviewable[.]"[53] Accordingly, the rule of orderliness mandates that we follow the earlier reading of the statute[54]—the *Belleair Hotel Co.-Wark* approach—which does not permit interlocutory appeals for these types of administrative receivership orders and which *Netsphere II* faithfully applied.

Even though § 1292(a)(2) does not grant us jurisdiction for the *administrative* orders in this case, the collateral-order doctrine does grant us jurisdiction to review the *sales* orders.

We have previously found a district court's approval of a receiver's distribution plan was within the collateral-order doctrine (without discussing any statutory basis for jurisdiction), and thus, we had jurisdiction.[55] Our

---

[52] *"A" Manufacturing*, 541 F.2d at 506 (quoting *Sage v. Cent. R. Co. of Iowa*, 96 U.S. 712, 714 (1877)).

[53] *Netsphere II*, 799 F.3d at 334 (first citing *Belleair*, 109 F.2d at 390–91; then citing *Wark*, 376 F.2d at 827 (5th Cir. 1967)). The fact that *Belleair Hotel Co* and *Wark* involved a lease of property and turnover of bonds to the receiver, respectively, are of no consequence. The central conclusions about the statutory basis for jurisdiction over interlocutory orders are in direct conflict with *"A" Manufacturing*. *See id.*

[54] *See Rios v. City of Del Rio*, 444 F.3d 417, 425 n.8 (5th Cir. 2006).

[55] *See SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330–31 (5th Cir. 2001).

reasoning reflected the finality of the manner in which the assets would be distributed and the actual distribution of those assets, thus making the assets "likely unrecoverable" and the order "effectively unreviewable."[56]

That same reasoning applies with equal force to reviewing property sales—in other words, we can review "likely unrecoverable" assets and "effectively unreviewable" orders—but nothing more. This conclusion aligns with *"A" Manufacturing*'s reasoning (aside from its incorrect reading of § 1292(a)(2)) based on the finality of property sales. Accordingly, our jurisdiction over interlocutory appeals of receivership orders is limited to those related to sales or distributions under the collateral-order doctrine.

In sum, we have jurisdiction to review the district court's orders approving property sales, but we do not have jurisdiction to review the orders refusing the use of receivership funds for defense costs and blessing certain actions of the earlier (vacated) receivership. As for the latter category, the district court only ratified orders that approved the receiver's settlement of claims (none of which were sale orders).[57]

B

Having established that we have jurisdiction to review *only* the orders approving sales of assets in the receivership, we turn to the merits of those orders. "It is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity

---

[56] *Id.* at 330.

[57] *See Netsphere II*, 799 F.3d at 332 (summarizing Fifth and sister circuits' refusal of jurisdiction for "orders directing the payment of monies or the transfer of property to receivers and their professionals" and "other orders issued in the course of a receivership, such as authorizing the execution of a lease by a receiver").

Case: 23-11237 Document: 124-3 Page: 25 Date Filed: 06/23/2025



receivership."[58] The district court acted within its discretion to approve the sales of certain assets from the receivership. The district court only approved the sales after determining that it was in the best interests of the receivership estate and otherwise complied with the law. Indeed, the district court considered changes in market conditions and all statutory requirements before determining the sales were in the best interest of the receivership estate and approving the sales. And as the SEC notes, evidence showed market conditions had deteriorated since the prior approvals of the sales, which reinforced that sales would be better than allowing the property value to decrease. Accordingly, the district court did not abuse its discretion when it approved certain sales of assets from the receivership estate.

## VI

Next, we turn to the preliminary injunction, which froze the assets which the district court did not include in the receivership. We have appellate jurisdiction over the preliminary injunction freezing Barton's assets pursuant to 28 U.S.C. § 1292(a)(1). We review the issuance of a preliminary injunction for abuse of discretion.[59] And we review any findings of fact for clear error and conclusions of law *de novo*.[60]

Barton argues that the district court "misinterpreted and misapplied the legal standard" in granting the injunction. But Barton is incorrect.

---

[58] *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–73 (5th Cir. 1982) (internal quotation marks and citation omitted).

[59] *See Perez v. City of San Antonio*, 98 F.4th 586, 594 (5th Cir. 2024).

[60] *See id.*

A

In *Starbucks Corp. v. McKinney*, the Supreme Court required that "absent a clear command from Congress, courts must adhere to the traditional four-factor [*Winter v. Natural Resources Defense Council, Inc.*] test."[61] Admittedly, the district court focused its analysis on the then-prevailing test from *SEC v. First Financial Group of Texas*.[62] That test was a Commission-specific test to obtain a preliminary injunction and required "a proper showing . . . by the SEC that there is a reasonable likelihood that the defendant is engaged or about to engage in practices that violate the federal securities laws."[63]

Contrary to Barton's argument, however, the district court *did* address the traditional *Winter* four-factor test for injunctions, albeit in a footnote. The Supreme Court has not mandated that such analysis is in the body of the opinion versus a footnote—only that the analysis is completed.[64] Accordingly, the district court did not err.

Additionally, the district court did not abuse its discretion when it imposed a preliminary injunction based on the traditional four factors. Under that test, a plaintiff seeking a preliminary injunction must make a clear showing that he is "likely to succeed on the merits," "likely to suffer irreparable harm in the absence of preliminary relief," "that the balance of equities tips in his favor," and that "an injunction is in the public interest."[65]

---

[61] 602 U.S. 339, 346 (2024) (discussing *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008)).

[62] *See* 645 F.2d 429, 434 (5th Cir. 1981).

[63] *Id.* (cleaned up).

[64] *See, e.g.*, *Starbucks*, 602 U.S. at 346; *Winter*, 555 U.S. at 20, 22.

[65] *Starbucks*, 602 U.S. at 345–46 (quoting *Winter*, 555 U.S. at 20, 22).

First, the SEC has sufficiently shown a substantial likelihood of success on the merits.[66] To establish a violation of the specified securities laws, the SEC must prove by a preponderance of the evidence that in connection with the purchase, offer, or sale of any security, Barton made a material misrepresentation or omission of material fact with the requisite mental state.[67] And the district court found, by a preponderance of the evidence, "a reasonable likelihood that defendants, acting with scienter, obtained money from Wall Investors by making false statements about the use of the investments, misappropriating the money, misstating land purchase prices, and making false statements about whether the investments were fully guaranteed, in violation of § 17(a) of the 1933 Act and § 10(b) of the 1934 Act and Rule 10bn-5." We agree. The record reflects extensive fraudulent activity by which Barton, with scienter,[68] solicited investments from Chinese nationals for real estate development projects but misappropriated those funds and used them for improper, personal purposes. Moreover, Barton inflated land purchase prices to increase investments and falsely told investors that the investments were fully guaranteed, even though the guaranteeing company had no assets.

Second, the SEC has also shown irreparable harm to the defrauded investors through further dissipation of assets. If those assets were distributed, there would be no recovery for the defrauded investors—thus

---

[66] The SEC's complaint alleged that Barton violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Section 17(a) of the Securities Act, 17 U.S.C. § 77q(a).

[67] *See generally SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009); *SEC v. Seghers*, 298 F. App'x 319, 327 (5th Cir. 2008).

[68] *See SEC v. Sethi*, 910 F.3d 198, 206 (5th Cir. 2018) (citing *Broad v. Rockwell, Int'l Corp.*, 642 F.2d 929, 961 (5th Cir. 1981) (en banc)) (requiring a showing only of "severe recklessness" to prove scienter).

making the harm irreparable. And freezing the assets which are not in the receivership is appropriate to prevent such irreparable harm, given that Barton's commingling of funds and transferring of properties hindered tracing efforts. Such an injunction provides the SEC and the district court additional time to trace funds and prevent further dissipation of assets which would cause irreparable harm.

Barton's suggestion that the SEC should already know exactly which entities received or benefited from lender funds—and thus, any entities which should be enjoined—ignores the reality that the SEC and receiver haven't been able to "trace all entities that have 'received or benefited from' [investor funds]" due to Barton's conduct. The asset freeze is necessary to permit additional tracing *before* more assets are dissipated.[69] While the "[t]he general federal rule of equity is that a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment[,]"[70] as Barton emphasizes, such a rule does not apply here. The asset freeze is merely to determine which assets are the subject matter of the litigation.

Third, the concern for dissipation of assets and the defrauded investors' irreparable harm outweighs any harm to Barton if he is enjoined from transferring assets. Indeed, Barton's most significant interests are his

---

[69] *See Barton*, 79 F.4th at 580 ("Under [*FDIC v. Faulkner*, 991 F.2d 262, 267-68 (5th Cir. 1993)], the SEC could have sought an injunction freezing asset transfers while it traced the funds and determined which entities should be placed in the receivership."); *see also In re Fredeman Litig.*, 843 F.2d 821, 825 (5th Cir. 1988) (commenting that "orders issued (a) to preserve property that might be the subject of a final decree or (b) to enjoin conduct that might be enjoined under a final decree . . . would be permissible because '[a] preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally'" (alterations in original) (citations omitted)).

[70] *In re Fredeman Litig.*, 843 F.2d at 824.

defense costs and alleged homelessness. But neither of these are impacted by the injunction; instead, they are relevant to the receivership.[71] Accordingly, these interests—and any others which Barton could claim—do not outweigh recovery for the defrauded investors.

Finally, as the district court found, "seeking to protect the interests of defrauded investors and uphold federal securities law is in the public interest."

As a result, the district court did not abuse its discretion in granting the preliminary injunction according to the *Winter* factors.

B

Barton's other challenges to the injunction are unavailing. He contends that the district court should not have relied on what the SEC "alleges" as evidence. But the district court relied on SEC filings, which contained ample record evidence—including deposition and investigative testimony, loan agreements, investor presentations, and declarations—to reach its conclusion.

Relatedly, Barton faults the district court for failing to demand that the SEC prove that he knowingly made false statements to lenders when procuring the loans. But the district court found by a preponderance of the evidence "a reasonable likelihood that defendants, acting with scienter, obtained money from [investors] by making false statements about the use of the investments, . . . misstating land purchase prices, and making false

---

[71] *See SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993) (collecting cases) ("Just as a bank robber cannot use the loot to wage the best defense money can buy, . . . a swindler in securities markets cannot use the victims' assets to hire counsel who will help him retain the gleanings of crime.").

statements about whether the investments were fully guaranteed." Nothing more was required,[72] and we do not impose a more onerous standard today.

Barton also argues that "evidence of past violations is not sufficient for a preliminary injunction." But evidence of Barton's "past violations" is irrelevant to the *Winter* analysis now required, rather than the test in *First Financial*.

Accordingly, there was no abuse of discretion.

## VII

Finally, we address Barton's request that we reassign the case on remand to someone other than Judge Starr. Reassignment is an "extraordinary" and "rarely invoked" remedy[73]—one that is nowhere near warranted here.

We have two tests for determining whether to reassign a case—a "stringent" one and an "informal" one. The stringent test considers three factors: (1) "whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his mind or her mind previously-expressed views or findings determined to be erroneous . . . [,]" (2) "whether reassignment is advisable to preserve the appearance of justice," and (3) "whether reassignment would entail waste and duplication

---

[72] *See, e.g.*, *First Fin. Grp. of Tex.*, 645 F.2d at 434; *Gann*, 565 F.3d at 936; *Seghers*, 298 F. App'x at 327; *Aaron v. SEC*, 446 U.S. 680, 695–97 (1980) (requiring proof of scienter for violation of Section 17(a)(1) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5); *Sethi*, 910 F.3d at 206 (citing *Broad*, 642 F.2d at 961) (requiring a showing only of "severe recklessness" to prove scienter); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011) (noting the "default rule for civil cases" is preponderance of the evidence).

[73] *Fort Bend Cnty. v. U.S. Army Corps of Engineers*, 59 F.4th 180, 202 (5th Cir. 2023) (cleaned up).

out of proportion to any gain in preserving the appearance of fairness."[74] The lenient test asks whether an objective observer would reasonably "question the judge's partiality."[75] Because the stringent test's second factor "aligns with the question posed by the [lenient] test[,]"[76] we will address the factors of the stringent test—each of which shows why reassignment is unwarranted.

First, Judge Starr cannot "reasonably be expected" to have "difficulty" putting aside "previously-expressed views" determined on appeal to be erroneous.[77] Far from "fail[ing] . . . to address our earlier opinion on this matter,"[78] Judge Starr followed what he termed our "marching orders" after we found he initially did not apply the correct legal test. Indeed, he dutifully implemented the remand and applied *Netsphere I*, conducting a thorough analysis on why the receivership was proper under that test and establishing its scope.

Second, as to the appearance of justice, Barton claims that the district court's reference to "defrauded investors" and Barton's likelihood to "dissipate, conceal, or transfer assets" and "alter or destroy documents relevant to this action" show that Judge Starr pre-judged the case against

---

[74] *Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 495–96 (5th Cir. 2022) (internal quotation marks and citation omitted) (reassigning antitrust case where judge "candidly revealed his disdain for antitrust law and antitrust plaintiffs" and "repeatedly stymied [Plaintiff's] legitimate requests to engage in critical discovery").

[75] *Id.* at 495 n.25 (internal quotation marks and citation omitted).

[76] *United States v. Khan*, 997 F.3d 242, 249 (5th Cir. 2021); *see also Pulse Network*, 30 F.4th at 495 n.25 ("[T]he two tests are 'redundant' . . . So, we needn't apply the second test." (cleaned up)).

[77] *Pulse Network*, 30 F.4th at 495.

[78] *In re DaimlerChrysler Corp.*, 294 F.3d 697, 701 (5th Cir. 2002).

him.[79] But that's not true. Judge Starr was required to find fraud before granting a preliminary injunction. And that finding was supported by significant record evidence. Moreover, the district court was similarly required to make findings, based on Barton's conduct, relevant to the necessity of a receivership and injunction. Barton can't complain that the district court seemed biased merely because it ruled against him. If such a ruling was a basis for showing judicial bias, *every* losing party would make the same argument (but they don't).[80]

Third, given the length and complexity of the proceedings, reassignment risks significant delay and waste. Despite this risk, Barton argues that "reassignment will not involve waste or duplicative proceedings" because the case is "still in its procedural infancy." Regardless that Barton hasn't filed an Answer and discovery hasn't started, the nearly 600 docket entries in the district court and 16,815-page record on appeal indicate otherwise.

Reassignment here is not just unwarranted; it would be highly inefficient and wasteful of judicial resources.

* * *

The abuse-of-discretion standard is a high bar, and one that Barton has failed to meet across the board. The district court did not abuse its discretion in imposing the receivership, setting its scope, administering the

---

[79] Barton also takes the extreme approach of accusing the district court of freezing assets "to aid the Commission in winning a case." Such an accusation, in this case, is both baseless and improper.

[80] Indeed, the district court has denied relief sought by the SEC and receiver: "I want to preserve [receivership assets] as much as possible for either a return to Barton, if he wins, or sending back to the . . . investors, if Mr. Barton loses." But the SEC and receiver do not complain of judicial bias.

receivership's sales, or in granting a preliminary injunction. Moreover, there is no basis to reassign the case on remand.

Accordingly, we AFFIRM the imposition and scope of the receivership and the grant of a preliminary injunction. We DISMISS Barton's appeal of administrative orders unrelated to sales for lack of jurisdiction. And we DENY his request to reassign the case to another district-court judge.

# TAB N

## FIFTH CIRCUIT ORDER REFERRING STAY MOTION TO DISTRICT COURT

No. 25-10871 (2025)

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

November 04, 2025

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 25-10871 SEC v. Barton
USDC No. 3:22-CV-2118

Enclosed is an order entered in this case.

Sincerely,

LYLE W. CAYCE, Clerk

By: ______________________
Casey A. Sullivan, Deputy Clerk
504-310-7642

Mr. Timothy Barton
Mr. Keefe Michael Bernstein
Mr. Ezekiel Levenson Hill

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 4, 2025

Lyle W. Cayce
Clerk

No. 25-10871

Securities and Exchange Commission,

*Plaintiff—Appellee*,

*versus*

Timothy Barton,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118

UNPUBLISHED ORDER

Before Southwick, Duncan, and Engelhardt, *Circuit Judges*.

Per Curiam:

IT IS ORDERED that Appellant's opposed motion for stay pending appeal is DENIED. Appellant has not justified his failure to file for a stay initially in the district court.

IT IS FURTHER ORDERED that Appellee's motion for clarification of the Court's order dated October 17, 2025 is DENIED as moot.

# TAB O

## INDEX OF DENIED DEFENSE MOTIONS

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

The following motions and objections filed by Petitioner were either directly denied or not considered by the District Court, demonstrating a pattern of 100% denial of defense motions :

| Dkt. No. | Document Description | Date Filed | Ruling/Order |
|---|---|---|---|
| 71 | Motion for Stay Pending Appeal | 11/28/22 | Denied (Dkt. 132, Jan, 17 2023) |
| 114 | Motion for stay pending appeal and expedited briefing (ECF No. 109). | 12/27/2022 | Denied by Order DKT 219. |
| 397 | Petitioner's Opposition To Receiver's Expedited Motions (ECF Nos. 372, 374, 376, 378). | 11/10/23 | Court Granted all the Motions of Receiver without considering the Defendant Opposition. See DKT 419, Dkt 420 Orders |
| 401 | Defendant Timothy Lynch Barton's Brief In Support Of Proposed Findings Of Facts And Conclusions Of Law | 11/11/23 | Denied - Instead issued the Receivership order, Preliminary Injunction Order and Blessing Order. |
| 402 | Defendant Timothy Lynch Barton's Motion For Leave To File A Corrected Memorandum | 11/11/23 | Denied - Instead issued the Receivership order, Preliminary Injunction Order and Blessing Order. |
| 407 | Defendant Timothy Lynch Barton's Corrected Opposition To Receiver's Expedited Motion (ECF 396). | 11/15/23 | Receiver Motion granted via Order DKT 415 without considering the Defendant Opposition. |
| 555 | Sealed Motion for Leave to File Documents Under Seal | 8/22/2024 | Denied by Order DKT 585 |
| 604 | Defendant Motion for More Definite Statement against 10th Quarterly Report | 2/19/2025 | Denied by DKT 653 Order |
| 625 | Motion for Order to Show Cause | 4/4/2025 | Denied by Order DKT 632 |
| 662 | Norred's Motion to withdraw | 7/29/2025 | Denied by Order DKT 674 |
| 673 | Motion to Withdraw as Attorney | 8/7/2025 | Denied by Order DKT 674 |
| 697 | Motion to Withdraw as Attorney | 12/22/2025 | Denied by Order DKT 698 |
| 691 | Motion for Stay Pending Appeal | 11/09/25 | Denied (Dkt. 700, Jan. 8, 2026) |

# TAB P

**DEFENDANT BARTON'S MOTION FOR STAY PENDING APPEAL**

**Dkt. 71 (Nov. 2022)**

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **No. 3:22-CV-2118-X** |
| | § | |
| **TIMOTHY LYNCH BARTON** | § | |
| **CARNEGIE DEVELOPMENT, LLC** | § | **Jury Trial Demanded** |
| **WALL007, LLC** | § | |
| **WALL009, LLC** | § | |
| **WALL010, LLC** | § | |
| **WALL011, LLC** | § | |
| **WALL012, LLC** | § | |
| **WALL016, LLC** | § | |
| **WALL017, LLC** | § | |
| **WALL018, LLC** | § | |
| **WALL019, LLC** | § | |
| **HAOQIANG FU (a/k/a MICHAEL FU)** | § | |
| **STEPHEN T. WALL** | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| **DJD LAND PARTNERS, LLC** | § | |
| **LDG001, LLC** | § | |
| | § | |
| *Relief Defendants.* | § | |

**DEFENDANT BARTON'S MOTION FOR STAY PENDING APPEAL**

Defendant Timothy L. Barton moves for this Court to stay its Order Appointing Receiver [ECF No. 29], its Order Granting Receiver's Motion to Supplement Order Appointing Receiver [ECF No. 62], and its Order Granting Motion for Order Governing Administration of Receivership Estate, Etc. and Approving Disposition of Certain Personal Property [ECF No. 63], while all three Orders are pending appeal to the Fifth Circuit.

## TABLE OF CONTENTS

I. Introduction ..... 1
II. Background ..... 2
III. Argument ..... 4
A. The Defendant is Likely to Establish that the Court Erred in Appointing and Empowering the Receiver ..... 5
1. The SEC sought a receivership on the basis of the wrong legal standard ..... 5
2. The Court failed to consider the inequitable timing of the SEC's request for a receivership ..... 11
3. The Court's orders improperly use the vehicle of a prejudgment receivership to penalize Timothy Barton ..... 13
4. The Court's order placing named third-party entities into the receivership contravened Fifth Circuit precedent ..... 14
5. The Court's order approving the Receiver's liquidation plan was an abuse of discretion ..... 14
B. Mr. Barton will suffer irreparable injury absent a stay pending appeal ..... 15
C. Other parties face minimal, if any, injury from a stay, and the public interest lies in granting a stay ..... 17
IV. Conclusion ..... 19

## TABLE OF AUTHORITIES

**CASES**

*Campbell v. Pa. Indus.*,
99 F. Supp. 199 (D. Del. 1951) ... 7

*E.T. v. Paxton*,
19 F.4th 760 (5th Cir. 2021) ... 18

*Earl v. Boeing Co.*,
21 F.4th 895 (5th Cir. 2021) ... 19

*Eberhard v. Marcu*,
530 F.3d 122 (2d Cir. 2008) ... 14

*Index Newspapers LLC v. US Marshals Svc.*,
977 F.3d 817 (9th Cir. 2020) ... 19

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) ... 8, 9, 14

*Kimmis v. Atchley*,
No. 3:10-CV-1535-D, 2014 WL 6805478 (N.D. Tex. Dec. 3, 2014) ... 7

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ... 19

*Los Angeles Trust Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) ... 15

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) ... passim

*Nken v. Holder*,
556 U.S. 418 (2009) ... 4, 17

*Opulent Life Church v. City of Holly Springs*,
697 F.3d 279 (5th Cir. 2012) ... 15

*People v. Trump*,
No. 452564/2022 (N.Y. Sup. Ct. Oct. 13, 2022) ... 10

*In re Search Warrant Issued June 13, 2019*,
942 F.3d 159 (4th Cir. 2019) ... 17

*SEC v. ABS Manager, LLC*,
No. 13CV319-GPC JMA, 2013 WL 1164413 (S.D. Cal. Mar. 20, 2013) ... 8, 9

*SEC v. Ahmed*,
No. 3:15CV675 (JBA), 2019 WL 11824928 (D. Conn. Nov. 26, 2019) .......... 16

*SEC v. Am. Bd. of Trade, Inc.*,
830 F.2d 431 (2d Cir. 1987) .......... 14

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992) .......... 14

*SEC v. Faulkner*,
No. 3:16-CV-1735-D, 2018 WL 4362729 (N.D. Tex. Sept. 12, 2018) .......... 8, 14

*SEC v. First Fin. Grp. of Tex.*,
645 F.2d 429 (5th Cir. 1981) .......... 5, 6

*SEC v. Phillip A. Michael Sec., Inc.*,
No. 74 CIV. 2158, 1974 WL 416 (S.D.N.Y. June 26, 1974) .......... 7, 13

*SEC v. S & P Nat'l Corp.*,
360 F.2d 741 (2d Cir. 1966) .......... 15

*SEC v. Spence & Green Chem. Co.*,
612 F.2d 896 (5th Cir. 1980) .......... 6

*SEC v. Zale Corp.*,
650 F.2d 718 (5th Cir. 1981) .......... 6

*Tex. Democratic Party v. Abbott*,
961 F.3d 389 (5th Cir. 2020) .......... 4, 15

*United States v. Michelle's Lounge*,
126 F.3d 1006 (7th Cir. 1997) .......... 17

*United States v. Ritchey*,
No. 1:21-CR-6-HSO-RPM, 2022 WL 3023551 (S.D. Miss. June 3, 2022) .......... 17

*Wages and White Lions Invs., LLC v. FDA*,
16 F.4th 1130 (5th Cir. 2021) .......... 15

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) (Costa, J., dissenting) .......... 17

**STATUTES & RULES**

15 U.S.C. § 78u(d)(5) .......... 5, 11

18 U.S.C. § 985 .......... 12

18 U.S.C. § 3142(c)(2) .......... 11

28 U.S.C. § 3103(b)(1)(B) .......... 16

Fed. R. Crim. P. 16 .......... 12

Fed. R. Crim. P. 32.2(b)(1)(A) .......... 11

**OTHER AUTHORITIES**

Wright & Miller, 11A Fed. Prac. & Proc. § 2946 (3d ed. 2022) .......... 7, 11, 18

Megan Smith, *SEC Receivers and the Presumption of Innocence: The Problem with Parallel Proceedings in Securities Cases and the Ever Increasing Powers of the Receivers* .......... 12

SEC Fraud Cases, WALL ST. J. (Oct. 12, 2022) .......... 10

TAX L.J. 203, 229 (2011) .......... 12

## I. Introduction

Congress authorized immediate appeals from an order appointing a receiver because a court's imposition of a receiver before final judgment has dramatic effects on a defendant's interests and rights. This case demonstrates the irreparable harm that a receiver can inflict on a private party against whom there has been no adjudication of wrongdoing or underlying finding of liability. The Receiver has kicked the defendant out of his personal home and is poised to sell it and all its contents. The Receiver has also removed the defendant from his office and is threatening to destroy documents without regard to whether they are essential to the preparation of his defense in a parallel criminal matter.

This has occurred *without any showing of irreparable harm on the other side of the ledger.* Specifically, all parties acknowledge that there are more than enough assets in corporations associated with the defendant to cover any alleged liability associated with the loan agreements at issue in this case. At the same time, no party has made any meaningful showing of asset flight risk.

The Defendant has appealed the Court's orders relating to the receivership, and this Court should stay them pending the resolution of that appeal.

Importantly, the defendant is likely to succeed on the merits of the appeal. The question is not whether the Securities and Exchange Commission ("SEC") has alleged securities fraud. Instead, to take a defendant's property prior to judgment, the Government must show a lack of resources to meet the alleged liability and the imminent flight of assets. The SEC chose to show neither of these issues in any compelling way, even though it had investigated its claims for two years before filing this lawsuit. The SEC is not hiding these shortcomings, and instead states in its proposed order that a receivership was necessary to penalize the Defendant, a finding that made its way into the Court's receivership order. *See* Order Appointing Receiver [ECF No. 29] at p. 2. But

the use of a prejudgment receivership to "penalize" a defendant against whom there has been no adjudication of liability or wrongdoing is improper.

The particular terms of this Court's receivership order are especially likely to be overturned on appeal as they contravene binding precedent. In addition to the impropriety of having any receivership in this case, one of the most objectionable terms of the Court's existing receivership orders is the extraordinary green-lighting of the Receiver's liquidation of the estate's assets within weeks of the Receiver being appointed. When there are proper grounds for a receivership in other cases, the purpose of *prejudgment receiverships is to maintain the status quo and preserve estate assets at the outset,* pending final judgment. This Court's order to the contrary, attempting to go straight to liquidation, crashes through these principles. So too has the Court's order placing more than one hundred corporate entities in receivership *without any attempted showing by the Receiver that these entities received funds traceable to an alleged violation of the securities laws.*

In the alternative, therefore, the Court should stay aspects of the receivership order that permit the Receiver to liquidate assets, review documents that are privileged without a protocol to ensure that this information is not shared with the Government, to destroy records and property that are essential to the preparation of a defense in the criminal prosecution pending against Mr. Barton, to seize the property of non-defendant entities, and to keep Mr. Barton out of his personal home.

## II. Background

The SEC filed this action on September 23, 2022, after a two-year investigation. ECF No. 1; Order Directing Private Investigation (Barton Opp. to SEC Receivership Mot. App. [ECF No. 25] at 006). The SEC's Complaint alleges that, from March 2017 to June 2019, the Defendants obtained funds from Chinese lenders under false pretenses and invested those funds in real estate projects and other ventures in purported violation of contractual terms. *See* ECF No. 1. The

Defendant has yet to answer the Complaint, and there has been no discovery or disclosure of the evidence underlying the SEC's allegations.

Three days after this lawsuit was filed, the SEC filed an Expedited Motion for Appointment of Receiver. ECF No. 6. In that motion, the SEC identified 29 companies that it believed should be placed into receivership. *See* Hahn Decl. Ex. C (SEC App. [ECF No. 7-1] at 018). The SEC did not seek a preliminary injunction or temporary restraining order.

On October 18, 2022, the Court granted the SEC's motion over the Defendant's opposition and without granting Mr. Barton the evidentiary hearing he requested. ECF No. 29; Def. Opp. to SEC Receivership Mot. at 25 [ECF No. 24] (requesting an evidentiary hearing). Although the Court adopted the SEC's proposed order nearly verbatim, the final Receivership Order notably deviated from the SEC's request that the receivership be managed by an individual with "extensive experience . . . handling receiverships involving real estate issues." *See* ECF No. 6 at 20. With no notice to the parties much less opportunity for briefing on its propriety, the Court instead appointed an attorney without any documented experience in managing large real estate development projects.

The first two days of the receivership were not dedicated to understanding the tens of millions of dollars of real estate assets managed by the corporate entities placed into receivership. Instead, that critical time was spent harassing the Defendant. The Receiver used the blank check order from the Court to seize Mr. Barton's personal residence titled in the name of a limited liability corporation, the sole purpose of which was to hold Mr. Barton's private residence. The Defendant sought emergency relief to stay in his home, but the Court denied the request within thirty minutes, without awaiting a response from the Receiver or the Government. *See* ECF No. 33 (denying ECF No. 32). The Receiver has since evicted Mr. Barton and now attempts to sell his personal residence at over $500,000 less than its appraised value, with no explanation of why this

action will do anything to materially advance a legitimate end of the receivership. *Compare* ECF No. 58 (Barton Opposition to Receiver's Mot. to Supplement App. 004-043), *with* Coldwell Banker Realty, 4107 Rock Creek Dr. Dallas, TX 75204, https://www.coldwellbankerhomes.com/tx/dallas/4107-rock-creek-dr/pid_50600836/ (last visited Nov. 22, 2022).

On November 1, 2022, the Receiver moved to supplement the Receivership Order to expressly name 131 new entities that were never previously raised by the SEC in the initial motion practice. ECF No. 41. The Receiver did not attempt to show that any of these new entities received funds traceable to the allegations in the underlying complaint. The Court, nevertheless, granted this motion. ECF No. 62.

On November 4, 2022, the Receiver separately moved for additional authority to liquidate, abandon, and destroy property belonging to Mr. Barton, the receivership entities, and numerous other third parties. ECF No. 47; *see also* ECF No. 56. Among other things, the Receiver's motion specifically asked for permission to *shred documents* in his possession, including business records, litigation files, and mail. ECF No. 56 at 10. The Court again granted the Receiver's motion over Mr. Barton's opposition. ECF No. 63.

On November 17, 2022, Mr. Barton filed a notice of interlocutory appeal of the Court's receivership orders. He now requests a stay pending the outcome of that appeal.

## III. Argument

When deciding whether to grant a stay, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Likelihood of success and irreparable injury are the most important factors. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020). Each factor favors a stay here.

### A. The Defendant is Likely to Establish that the Court Erred in Appointing and Empowering the Receiver

The Court of Appeals is likely to hold that this Court erred in multiple respects. *First*, the SEC sought a receiver based on case law sanctioning the use of receiverships as a means to implement injunctive relief. Here, the SEC did not seek such relief, rendering such authority inapplicable. The SEC failed to meet the required Fifth Circuit standards to obtain a receivership, including requirements that a receivership be proven "necessary and appropriate," that any benefits outweigh the burdens, and that no less drastic remedy be available. *Second*, the Court failed to consider the equities (which weigh against imposing a receiver) before imposing an equitable remedy. *Third*, the Court's Orders impermissibly reflect an intent to penalize Mr. Barton before he has been adjudged liable for any allegations raised in the SEC's Complaint. *Fourth*, the terms of the receivership ordered by the Court impermissibly go beyond measures to secure the status quo, by authorizing the Receiver to pursue early liquidation of assets prior to a judgment and reaching non-defendant corporate entities without any analysis of whether they received funds derived from the alleged violations of the securities laws.

#### 1. The SEC sought a receivership on the basis of the wrong legal standard

The SEC moved for a receivership under Section 21(d)(5) of the Exchange Act, which authorizes "equitable relief" when "appropriate or necessary." 15 U.S.C. § 78u(d)(5). But rather than focus its argument on that inquiry, the SEC directed this Court to inapposite caselaw involving the appointment of a receiver as "an ancillary *to preliminary injunctive relief*." SEC's Mot. for Receiver [ECF No. 6] at pp. 11-14 (emphasis added) (citing cases).[1] The SEC never sought a

---

[1] The cases cited by the SEC in its receivership motion include *SEC v. First Financial Group of Texas*, in which Fifth Circuit held that "the appointment of a temporary receiver is often a necessary ancillary form of relief in a SEC civil enforcement action for injunctive relief." 645 F.2d 429, 438 (5th Cir. 1981); *see also Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012) (highlighting significance of cases in which "a receivership was proper as *an adjunct to injunctive relief* for a securities fraud" (emphasis added)). The SEC's motion practice also relies on *SEC v. Evolution Capital Advisors, LLC*, for the proposition that "a

preliminary injunction against the Barton Defendants and has presented no evidence to meet the heightened burden for obtaining one. To do so, the SEC would have needed to prove by a preponderance of the evidence that the Barton Defendants are engaged in or about to engage in a substantive securities violation, *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 434-35 (5th Cir. 1981), and that there is a "reasonable likelihood" of future transgressions. *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981) (holding that the "mere fact of a past violation does not ipso facto establish the SEC's right to injunctive relief"). The SEC also would have needed to establish that the preliminary injunction was necessary to avoid irreparable harm, which (at a minimum) would have required a showing of an imminent risk of asset flight that the Government has assiduously avoided throughout the briefing process.

Because the SEC's request is unconnected to a previously obtained preliminary injunction, the Fifth Circuit requires showings by the SEC that it did not even attempt to make in this case. Under binding Fifth Circuit precedent, the imposition of a receivership is a "drastic measure" that a district court cannot order unless there is (1) a clear need for such extraordinary relief, (2) the benefits of the receivership outweigh its burdens, and (3) there are no less drastic measures available. *See Netsphere, Inc. v. Baron*, 703 F.3d 296, 305 (5th Cir. 2012); *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 904 (5th Cir. 1980).

*First*, the SEC has not shown a "clear necessity" for a receivership as it submitted no evidence of an imminent asset flight or dissipation risk. Nor could the SEC make such a showing. The assets here primarily consist of *real property*, which cannot be easily disposed of, concealed, or dissipated. (SEC App. [ECF No. 7-1] at 017); *see First Fin. Grp.*, 645 F.2d at 439 (ordering a

receiver 'becomes a necessary implementation *of injunctive relief*,'" 866 F. Supp. 2d 661, 668 (S.D. Tex. 2011). Similarly, the SEC relies on *SEC v. AmeriFirst Funding, Inc.*, which provides that "the appointment of a receiver is a 'well-established equitable remedy available to the SEC in its civil enforcement proceedings *for injunctive relief*.'" No. CIV A 307-CV-1188-D, 2007 WL 2192632, at *3 (N.D. Tex. July 31, 2007) (emphasis added)).

receiver based on factors such as that "the nature of the assets (cash and securities) [was] such that they may be easily disposed, concealed, or dissipated"); *see also, e.g., Kimmis v. Atchley*, No. 3:10-CV-1535-D, 2014 WL 6805478, at *2 (N.D. Tex. Dec. 3, 2014) (denying receivership after considering, inter alia, that there was no "imminent danger that property will be concealed, lost, or diminished in value").

Rather than establish any imminent asset flight risk, the crux of the SEC's receivership motion was based on events that occurred between 2017 and 2019, when lender funds were consolidated and accounted for at the parent level. *See* Decl. of C. Hahn [ECF No. 7-1] ¶ 11 ("[M]y review focused on the time period starting from January 1, 2017 through July 2019."). But events in 2017 and 2019 have nothing to do with whether there is an imminent risk of asset dissipation today. *See Kimmis*, 2014 WL 6805478, at *2 (denying receivership where there was no showing of an "imminent danger that [the defendant's] property will be concealed, lost, or diminished in value."); *cf. Campbell v. Pa. Indus.*, 99 F. Supp. 199, 206 (D. Del. 1951) (observing "there is no indication of that imminent danger of serious loss which appears to be a necessary condition precedent to the exercise of such drastic powers" to wind up corporation through receivership).

No doubt had the SEC believed any Defendant-held asset was a flight risk during its more than two-year investigation, it would have intervened much earlier. *See* Wright & Miller, 11A Fed. Prac. & Proc. § 2946 (3d ed. 2022) ("[U]nnecessary delay . . . may be viewed as inconsistent with a claim that plaintiff is suffering great injury or . . . that there is an urgent need for immediate relief [such] that a judgment would be rendered ineffective unless some restraint is imposed on defendant pending an adjudication on the merits."); *see also SEC v. Phillip A. Michael Sec., Inc.*, No. 74 CIV. 2158, 1974 WL 416, at *1 (S.D.N.Y. June 26, 1974) (denying receivership relief for alleged securities violation due to, in part, the SEC's inaction despite knowledge of security violation).

If nothing else, the SEC's own evidence dispels the notion that a receivership was clearly necessary. The SEC's factual record clearly shows that the Defendant's myriad real estate projects include substantial assets that far exceed the $26 million at issue in this litigation. *See* SEC App. [ECF No. 7-1] at 017. These real property assets are illiquid by nature and pose no risk of being hidden or absconded. *Cf. SEC v. ABS Manager, LLC*, No. 13CV319-GPC JMA, 2013 WL 1164413, at *6 (S.D. Cal. Mar. 20, 2013) ("In support of its motion to freeze assets, the SEC has offered no evidence that [the defendant] will likely dissipate his own personal assets or the corporate assets."). Indeed, the Defendant has already offered to organize and consent to a sale of three apartment complexes in the receivership estate, which would net sums approaching the $26 million allegedly at issue in this matter. *See* Def. App. [ECF No. 57] at 4-7. This course of action is not speculative; it is backed by hard offers. *See* App. to Mot. for Stay at 004-008, Letter of Intent by Cypress Equity Investments, dated Nov. 21, 2022.

The Court's Orders are additionally improper because they expand the receivership estate beyond bounds permitted by applicable precedent. The Fifth Circuit specifically dictates that "equity does not allow a receivership to be imposed over property that [is] not the subject of the underlying dispute." *Netsphere*, 703 F.3d at 306. It is not enough for a party to propose an unrelated property "as a possible fund for paying . . . claims" as a basis to toss it into a receivership. *Id.* Rather, to justify an expansion of a receivership to include non-party assets, the movant must show that the non-party (1) received ill-gotten funds, and (2) has no legitimate claim to the funds. *Janvey v. Adams*, 588 F.3d 831, 834 (5th Cir. 2009); *see also* ECF No. 6 at 13 (the SEC arguing the same standard). District courts applying this test have required the movant to show that the non-party entity is (i) controlled by the defendant and (ii) in possession of funds traceable to the alleged fraud. *See, e.g., SEC v. Faulkner*, No. 3:16-CV-1735-D, 2018 WL 4362729, at *5 (N.D. Tex. Sept. 12, 2018); *see also Netsphere*, 703 F.3d at 310 (holding that the district court could not impose a

receivership over "personal property and assets" not traceable to the underlying subject matter of the dispute). The SEC has never made a showing that each entity directly or indirectly controlled by Mr. Barton owns property that is the subject of the underlying dispute. And the Receiver merely asserted, without citing any evidence, that "upon information and belief" 131 non-party entities have used or otherwise benefited from lender funds. *See* ECF No. 41 at 5. But mere assertions "upon information and belief" are not enough to demonstrate the nexus between the alleged ill-gotten funds underlying this matter and the entities the Receiver ultimately subsumed. *See Janvey*, 588 F.3d at 834.

*Second,* while the potential benefit of any receivership remains questionable at best, the harm is certain to be significant. Many of the entities that are subject to the Court's receivership orders are real estate development companies. The owner and manager of those companies, with experience running them, has now been extracted by the Court. There is nobody left to man the ship to ensure that these companies and their development projects have any chance of future success. The current Receiver lacks such documented experience, *see* Receiver's Initial Status Report at 15 n.5 [ECF No. 67], and he has already complained of his inability to juggle the projects under his remit. *See, e.g.*, ECF No. 67 at 4 (recounting "immense challenges for the Receiver to carry out his most fundamental duties"). The Receiver has turned instead to liquidation, at any price, rather than managing in progress real estate development projects to maturity. But that outcome will result in substantial losses to projects that are years in the making, which benefits nobody.

Further, any receivership inherently includes substantial receivership fees and third-party attorney costs, none of which will contribute to the future success and profitability of the companies. These fees will only result in a further dissipation of assets, which is the opposite of what the SEC professes to seek. *See, e.g., ABS Manager*, 2013 WL 1164413, at *8 (denying a

motion to appoint a receiver because it would "only further dissipate the assets of the investors"); Ted Bunker, Investors Question Receivership Cost in SEC Fraud Cases, WALL ST. J. (Oct. 12, 2022), https://www.wsj.com/articles/investors-question-receivership-costs-in-sec-fraud-cases-11665603351 ("The cost of the receiver and her team exceeded $255,000 just for the first two weeks of their involvement, court filings show.").

*Third*, there is nothing in the record to indicate that the Court considered any "less drastic equitable remedies" than a receivership, even though the Fifth Circuit prohibits a receivership absent such a determination. *See Netsphere*, 703 F.3d at 305. In his opposition to the SEC's motion, however, the Defendant proposed an equally effective and less burdensome alternative to a receivership that would serve the same general purpose as a receiver without destroying the Barton entities: a court-appointed monitor. ECF No. 24 at 25-26; *see, e.g.*, App. to Mot. for Stay at 019, Order Appointing Independent Monitor, *People v. Trump*, No. 452564/2022, at 10 (N.Y. Sup. Ct. Oct. 13, 2022) (explaining that an independent monitor "is the most prudent and narrowly tailored mechanism to ensure" compliance with the law for the pendency of the action). The proposed monitor would have the power to approve budgets, oversee all major transactions such as the sale or transfer of assets, and freeze the use of assets for non-mission critical purposes. Meanwhile, the Defendant and his development team, while operating under the oversight of the monitor, would continue to utilize their comprehensive knowledge toward maximizing the ongoing development on the properties and create value for all interested parties. This type of monitor would have been a suitable alternative to the drastic receivership relief ordered by the Court.

Yet another option proposed by the Defendant—to no avail—would have been to sell a limited number of high-value assets. Such sales would net profits approaching the amount allegedly at issue in this case. *See* Resp. to Mot. for Order Governing Administration of Receivership Estate [ECF No. 56] at 5; Def. App. [ECF No. 57] at 4-7.

**2. The Court failed to consider the inequitable timing of the SEC's request for a receivership**

Mr. Barton is also likely to succeed on appeal because the Exchange Act authorizes "equitable relief" only in appropriate or necessary circumstances, whereas the current Receivership Order was sought for inequitable reasons and under inequitable circumstances. *See* 15 U.S.C. § 78u(d)(5). After running an investigation for two years, the SEC claimed for the first time to need emergency equitable relief mere days after the U.S. Attorney for the Northern District of Texas filed a separate criminal action against Mr. Barton individually. *See* Order Directing Private Investigation (Barton Opp. to SEC Receivership Mot. App. [ECF No. 25] at 006) (October 8, 2020 notice of SEC investigation); Barton Dep. Tr. (SEC App. [ECF No. 9-2] at 229), from May 24, 2021 (investigatory interview of Timothy Barton from 17 months ago). The SEC has yet to substantiate any reason for needing an emergency receivership this past month, but one thing is clear—its timing undermines its claimed need for equitable relief. *See* Wright & Miller 11A Fed. Prac. & Proc. § 2946 (3d ed. 2022) ("[U]nnecessary delay . . . may be viewed as inconsistent with a claim that plaintiff is suffering great injury or . . . that there is an urgent need for immediate relief [such] that a judgment would be rendered ineffective unless some restraint is imposed on defendant pending an adjudication on the merits.").

The government's coordinated request for a receivership, in practical effect, makes an end-run around the protections of the criminal justice system by using more lenient civil mechanisms to seize the assets in question. Recognizing the dangers of prosecuting a criminal defendant while starving that defendant of resources, the Federal Rules of Criminal Procedure and relevant statutes provide important protections for those defendants. *See, e.g.*, Fed. R. Crim. P. 32.2(b)(1)(A) (generally limiting criminal forfeiture to seizing property that is involved in the particular offenses for which the defendant is convicted); 18 U.S.C. § 3142(c)(2) (requiring that conditions of pretrial

release not "impose a financial condition that results in the pretrial detention of the person"). Even civil judicial forfeiture requires the government to prove in court, through the introduction of admissible evidence and subject to cross-examination of witnesses, that the specific property being forfeited was linked to criminal activity. 18 U.S.C. § 985. These rights have all been inequitably stripped by the Court's entry of its receivership orders in these parallel civil proceedings. Indeed, there is no "fundamental fairness [in] allowing a receiver broad powers, even to liquidate an entire corporation, before a jury is even impaneled." Megan Smith, *SEC Receivers and the Presumption of Innocence: The Problem with Parallel Proceedings in Securities Cases and the Ever Increasing Powers of the Receivers*, 11 HOUS. BUS. & TAX L.J. 203, 229 (2011).

That is only the beginning of how the receivership compromises the fairness of parallel criminal proceedings. The receivership orders have given the receiver possession over privileged documents in the Defendant's home and office. Yet there are no safeguards in place to stop the Receiver from ingesting these privileged materials into his review and substantive reports to the prosecution team and opposing counsel in this matter with his findings and observations. At the same time, the receivership order authorizes the Receiver to destroy documents without any protocol for first determining whether they that are material to the preparation of the defense. *Compare* Fed. R. Crim. P. 16 (requirement government preservation and disclosure of information material to the preparation of the defense). That is not to mention the unnecessary disruption of the Defendant's displacement from his home and business, while preparing to defend himself from criminal charges. The collective result of these actions is that Mr. Barton has been stripped of many materials necessary to defend himself against the Government's claims.

Finally, the Court's receivership orders authorizing liquidation of the estate also will not serve a legitimate equitable purpose. Rapid liquidation at bargain prices, rather than management of the development projects and assets held by the estate, will only destroy value for any of the

defendant firm in litigation under the Securities Act or the Securities Exchange Act") (citing *SEC v. S & P Nat'l Corp.*, 360 F.2d 741, 750 (2d Cir. 1966)); *Los Angeles Trust Deed & Mortg. Exch. v. SEC*, 285 F.2d 162, 182 (9th Cir. 1960) (criticizing "additional penalty" by proposed liquidation). There are no special circumstances here that justify a prejudgment liquidation of assets under receivership.

**B. Mr. Barton will suffer irreparable injury absent a stay pending appeal**

A stay is also necessary because the Receiver's actions are certain to cause irreparable injury. *See Tex. Dem. Party*, 961 F.3d at 412 (noting that courts "determin[e] irreparable harm not in denying the plaintiffs' requested relief outright but in temporarily staying [order at issue] pending a full appeal").

As an initial matter, the Court's receivership order takes the extraordinary step of authorizing the liquidation of real property assets. This liquidation process is irreparable harm per se. *See Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that a church established irreparable harm where it would lose its lease on property because the deprivation of an interest in real property constitutes irreparable harm). Even if there could be some theoretical compensation for the improper disposition of real property, the receivership order immunizes the Receiver from any liability for money damages, and the Government is protected by principles of sovereign immunity. *See Wages and White Lions Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021) ("[F]ederal agencies generally enjoy sovereign immunity for any monetary damages."). These conditions make a stay pending appeal the only method to avoid irreparable harm.

The effects on real property have not just been theoretical, but also personal. The Receiver has evicted Mr. Barton, seized his family home, and already determined to sell that property "as expeditiously as possible." ECF No. 67 at 15-16. Should that sale continue and the Receiver's

seizure of Mr. Barton's personal residence ultimately be deemed improper, Mr. Barton will suffer undeniably irreparable harm in the loss of his home.

Although of lesser sentimental value, the liquidation of the real estate portfolio that Mr. Barton has spent his career constructing will also result in irreparable harm. *See SEC v. Ahmed*, No. 3:15CV675 (JBA), 2019 WL 11824928, at *4 (D. Conn. Nov. 26, 2019) (staying liquidation by receiver after noting "substantial risk of irreparable harm resulting from the liquidation of assets which cannot be retrieved even if those assets ultimately prove unnecessary to satisfy the judgment").

The SEC notably proposed the appointment of a *different* individual as receiver, who has the necessary experience to serve in that role. *See* ECF No. 6 at 20 (characterizing David Wallace as an individual with "extensive experience . . . handling receiverships involving real estate issues"); ECF No. 9-2 (SEC App. 312) (describing Wallace's qualifications). No document filed in this case has addressed why a trial attorney was appointed as the receiver instead. Given that the receivership entities own and manage numerous ongoing real estate projects, the identity of the receiver is likely to lead to unnecessarily lost value and thus irreparable harm. *Cf.* 28 U.S.C. § 3103(b)(1)(B) (requiring, in related federal debt collection context, that "[a] receiver appointed to manage residential or commercial property shall have demonstrable expertise in the management of these types of property").

Further problematic, the Court has granted the Receiver power to abandon, sell, and destroy all personal property in his possession. ECF No. 63 at 2-5; *id.* at 7-9. Under this authority, the Receiver may now abandon and destroy company records and other personal property belonging to both receivership entities and other third parties. The Court's Order also permits the Receiver to *shred documents*, including company records and files owned by third parties. ECF No. 63 at 8. There is no limitation in place to meaningfully protect documents material to Mr. Barton's defense

in parallel criminal proceedings, and this issue will ultimately taint those proceedings. *See* ECF No. 47 at 10.

Moreover, the Receiver has full access to attorney-client privileged documents, over Mr. Barton's objections, purely by virtue of their location in the Defendant's home or office, both of which the Receiver now occupies. To be clear, many of these documents are covered by an attorney-client privilege held by Mr. Barton individually. Neither the Court's Receivership Order nor its subsequent orders set forth any protocols governing how the Receiver is to handle privileged materials now in its possession. Violation of one's attorney-client privilege, of course, amounts to irreparable harm. *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019) ("[A]n adverse party's review of privileged materials seriously injures the privilege holder."); *Whole Woman's Health v. Smith*, 896 F.3d 362, 378 (5th Cir. 2018) (Costa, J., dissenting) (noting that mandamus is appropriate when a district court errs in ordering discovery of privileged documents, as piercing that privilege causes irreparable harm); *United States v. Ritchey*, No. 1:21-CR-6-HSO-RPM, 2022 WL 3023551, at *7 (S.D. Miss. June 3, 2022) (explaining that inadequate filtering that creates a risk of opposing party review of privileged materials risks irreparable injury).

The Receivership also strips Mr. Barton of important assets and funds with which to defend himself. In doing so, "the wound could be deep: wrongful imprisonment." *United States v. Michelle's Lounge*, 126 F.3d 1006, 1008 (7th Cir. 1997) (affirming a district court order releasing civilly forfeited funds to a defendant in a parallel criminal proceeding).

### C. Other parties face minimal, if any, injury from a stay, and the public interest lies in granting a stay

"[H]arm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. But that does not mean that the SEC's

interest is synonymous with the public interest. Instead, the SEC cannot legitimately argue that it would be harmed by a stay. Nor is a stay in the public interest.

A stay will not harm the SEC's interests. This is underscored by the fact that the SEC waited two years to seek a receivership, long after the substantive part of its investigation completed. *Compare* Order Directing Private Investigation (Barton Opp. to SEC Receivership Mot. App. [ECF No. 25] at 006) (October 8, 2020 notice of SEC investigation) *with* ECF No. 6 (motion filed on September 26, 2020). Failure to "request[] emergency relief" by the opposing party militates in favor of granting a stay, particularly because "maintenance of the status quo is an important consideration." *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021); *see also* Wright & Miller 11A Fed. Prac. & Proc. § 2946 (3d ed. 2022) ("[U]nnecessary delay . . . may be viewed as inconsistent with a claim that plaintiff is suffering great injury or . . . that there is an urgent need for immediate relief [such] that a judgment would be rendered ineffective unless some restraint is imposed on defendant pending an adjudication on the merits."). If the Receiver is allowed to continue toward total liquidation, Mr. Barton could strive for only pyrrhic victory on appeal. In the interest of preserving the status quo, the Court should implement a stay. *E.T.*, 19 F.4th at 770.

While the SEC might claim that a stay should be denied to promote its mission to prosecute securities fraud, such an argument is inapplicable here. The SEC remains in a position to pursue that mission in the absence of a receivership, having conducted a lengthy investigation and having sued Mr. Barton to recover a sum that is far less than the assets now encumbered by the receivership estate. *See, supra,* pp. 7-8. And Mr. Barton has even indicated his willingness to consent to a court-appointed monitor that would permit him to continue managing the numerous assets at issue while ensuring full transparency and court control over important financial decisions. Such a monitor would be able to consent to the sale and transparent conservation of assets that would substantially cover the alleged principal of the loans subject to the SEC charges, despite the

fact that the lenders have no direct legal recourse against those particular assets. *See* ECF No. 24 at 25-26. Under such an arrangement, there is little risk that the SEC would be harmed.

A stay would promote the public interest as well, as the public interest is best served when the government complies with the law. *Cf. League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."). It is also in the public interest to protect Mr. Barton's constitutional rights. *See Index Newspapers LLC v. US Marshals Svc.*, 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights."). Mr. Barton's rights are in grave danger due to the speed at which the Receiver is barreling toward liquidation. Mr. Barton has not even *answered* the SEC's complaint. Nor has he been adjudged liable in this proceeding or guilty in the parallel criminal proceeding. Nevertheless, his life's work is being held by a court-appointed agent who is content to liquidate rather than preserve and manage. The Court should not allow such result before Mr. Barton has a chance to vindicate his rights on appeal.

Finally, a stay serves the public interest by preserving judicial resources. "[T]he public interest supports staying district court proceedings to avoid potentially wasteful and unnecessary litigation costs where . . . the appellant has shown a substantial likelihood of success on appeal." *Earl v. Boeing Co.*, 21 F.4th 895, 900 (5th Cir. 2021). If a stay is not granted, the parties, and the Court, will continue in this litigation over the Receiver's continued conduct. When Mr. Barton prevails on appeal, all of that would be a waste of valuable resources.

## IV. Conclusion

For the foregoing reasons, Defendant Timothy L. Barton respectfully requests that the Court stay the Order Appointing Receiver [ECF No. 29], the Order Granting the Receiver's Motion to Supplement Order Appointing Receiver [ECF No. 62], and the Order Granting Motion for Order Governing Administration of Receivership Estate, Etc. and Approving Disposition of Certain

Personal Property [ECF No. 63], while all three Orders are pending appeal to the Fifth Circuit. To the extent the Court does not stay all three Orders in their entirety, Defendant Barton respectfully requests a stay of the most oppressive and overreaching features of the receivership, including by staying these Orders to the extent they authorize the Receiver to (1) take control of any of the non-defendant entities identified in the Court's Order Granting the Receiver's Motion to Supplement Order Appointing Receiver [ECF No. 62]; (2) sell, destroy, or abandon any property or files; (3) infringe or waive any privilege rights of Defendant Timothy Barton; (4) manage the receivership estate without appropriate real estate professionals in place; and/or (5) maintain possession or attempt to dispose of Mr. Barton's personal residence and any personal property located there.

Dated: November 28, 2022

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 *(admitted to NDTX)*
medney@huntonak.com
Sean B. O'Connell
State Bar No. 24103142 *(application for admission forthcoming)*
soconnell@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 (*admitted pro hac vice)*
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
HUNTON ANDREWS KURTH LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

COUNSEL FOR TIMOTHY LYNCH BARTON

**CERTIFICATE OF SERVICE**

On November 28, 2022, I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney

# TAB Q

**DKT 305 ELECTRONIC ORDER: ORDER THE RECEIVER TO FILE BY SEPTEMBER 14, 2023 A DECLARATION**

No. 3:22-CV-2118-X (N.D. Tex.)

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

**Full docket text for document 305:**
ELECTRONIC ORDER: The Court ORDERS the SEC to move for entry of a new receivership order by September 7, 2023, with a response due by September 28, 2023, and any reply due by October 5, 2023. Additionally, the Court ORDERS the Receiver to file by September 14, 2023 a declaration providing all information obtained since his appointment that he believes is relevant to the Courts consideration of a proposed new receivership order, or anything else he believes will assist the Court or help inform the Courts deliberation on this matter. (Ordered by Judge Brantley Starr on 8/31/2023) (chmb)

---

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 02/05/2026 13:05:53 | | | |
| **PACER Login:** | Timothybarton | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 3:22-cv-02118-X |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# TAB R

**DKT 550 ORDER REGARDING THE BM318, LLC'S SETTLEMENT AGREEMENTS WITH THE DIXON WATER FOUNDATION AND LUMAR LAND & CATTLE, LLC**

No. 3:22-CV-2118-X (N.D. Tex.)

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:22-CV-2118-X |
| TIMOTHY BARTON, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| DJD LAND PARTNERS, LLC, and LDG001, LLC | § | |
| | § | |
| *Relief Defendants.* | § | |

**ORDER REGARDING THE BM318, LLC'S SETTLEMENT AGREEMENTS WITH THE DIXON WATER FOUNDATION AND LUMAR LAND & CATTLE, LLC**

Before the Court is a motion to ratify settlement agreements (Doc. 524). The Court **GRANTS** the motion.

## I. Background

Entity BM318, LLC (BM318) is an entity in the receivership because it received funds traced to Wall investors.[1] BM318 asserted claims in a bankruptcy proceeding against The Dixon Water Foundation ("Dixon") and Lumar Land & Cattle, LLC ("Lumar"). The Receiver believes these claims were expensive to litigate and unlikely to win. This Court previously lifted the stay as to the BM318 litigation.

[1] The Court outlined this case's general background exhaustively in its order establishing a receivership and need not do so again here. *See* Doc. 416 at 2–6.

When BM318, Dixon, and Lumar reached a settlement for BM318 to receive $175,000 ($100,000 from Dixon and $75,000 from Lumar), the bankruptcy court held an evidentiary hearing where Timothy Barton appeared through counsel. The bankruptcy court made findings of fact and conclusions of law on the record and approved the settlement as in the best interest of the bankruptcy estate. Barton did not appeal that ruling.

## II. Hearing

As an initial matter, the Court must address Barton's request for an evidentiary hearing. Barton argues the settlement is an interest in real estate and the mandate for a hearing in 28 U.S.C. § 2001 applies. The Receiver argues a hearing is only required for a sale of real property. The Court continues to agree with the Receiver that sales of real property require the hearing in section 2001. Barton's strongest argument that BM318 had a legal interest in property is on BM318's avoidance claims against Dixon arising under the Bankruptcy Code. But BM318 was at best only holding bare legal title to the property at issue. The Fifth Circuit has rejected that such a position constitutes a debtor's interest in property, including in the context of bankruptcy-law avoidance actions.[2] And in any event, Barton had his evidentiary hearing on this matter in the bankruptcy court.

---

[2] *See, e.g.*, *Matter of Maple Mortg., Inc.*, 81 F.3d 592, 597 (5th Cir. 1996) (holding that a debtor's legal title in transferred funds did not constitute, under the Bankruptcy Code, "an interest of the debtor in property" because the debtor did not have equitable ownership of the alleged property).

## III. Legal Standard

"Receivership courts, like bankruptcy courts, may also exercise discretion to approve settlements of disputed claims to receivership assets, provided that the settlements are fair and equitable and in the best interests of the estate."[3] Because of the bankruptcy relatedness and the applicability of Bankruptcy Rule 9019, the Fifth Circuit has instructed bankruptcy courts to consider the following elements when approving Rule 9019 motions: (1) the probability of success in the litigation with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and (3) all other factors bearing on the wisdom of the compromise.[4]

## IV. Analysis

The Receiver argues ratification is in the best interest of the receivership because prevailing on BM318's claims was unlikely and litigating them would have been expensive, especially for an underfunded entity in bankruptcy. The Receiver adds that the settlement was prompted by arms-length negotiation and mediation before Judge Hale.

Barton argues the Court lacks jurisdiction because of his appeal of the receivership order and such an order is not in the best interest of the receivership estate or anyone else. Barton contends that BM318 paid Dixon $2,100,000 in cash to

---

[3] *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (cleaned up).

[4] *Conn. General Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).

purchase the property along with a seller-financing arrangement (of $32,946,900). But hard times caused by COVID and other factors made BM318 fall behind on payments, and BM318 and Dixon worked out a plan to return title to Dixon with a right to repurchase the property for $27 million (the original sales price minus payments BM318 had made). But when BM318 tried to repurchase the property with the help of its broker, the broker organized a group of purchasers working through Lumar and bought the property for himself. According to Barton, Lumar intends to sell the property for $47 million. And Barton contends litigating the claims would have a high likelihood of returning a $47 million property to the receivership estate.

As an initial matter, this Court adopts the findings and conclusions of the bankruptcy court as to the settlements. While Barton's lack of a timely appeal means the Court is not obligated to reevaluate those findings and conclusions, the Court has done so independently and found no error in them.

Next, the Court concludes the settlements are in the best interest of the receivership estate (not just the narrower inquiry of the bankruptcy court on whether the settlements are in the best interest of the bankruptcy estate). The real question here is what benefit the settlement will bring to the receivership estate separate and apart from the bankruptcy estate and whether the receivership estate is in a position to litigate the claims. The vast majority of Barton's arguments focus on his belief that the claims will return a $47 million property. But the bankruptcy court appropriately concluded that the Receiver conducted sufficient due diligence to reach the settlements (and the purported evidence on this point that Barton offers now, and

did not provide to the bankruptcy court, is not credible). The question here is what is going on in the receivership beyond the scope of BM318's bankruptcy estate. Barton's arguments on this front are (1) that the Court lacks jurisdiction (it doesn't) and (2) that prudentially the Court shouldn't do anything pending the resolution of the current and forthcoming appeals. But the Court previously ruled that Barton's jurisdictional arguments are flawed.

As to his prudential argument, the Court disagrees. Using the Fifth Circuit's factors, the Court must assess the probability of the success of the BM318 litigation and the complexity. The Court agrees with the Receiver's assessment that the probability of success on such claims is low. Claims like fiduciary duty breach are inherently hard to prove. But the dominant factor here is the complexity of the litigation. If the receivership were a cash rich one, perhaps it would allow a rolling of the dice and paying long-running costs for litigating a low percentage chance claim. But this receivership estate is anything but rolling in cash. Just one example is the Receiver had not sought (until mere weeks ago) compensation for services from April 1, 2023, because of the cash-starved receivership estate. As the Receiver put it:

> [T]o date the Receiver has been unable to close on the sale of any of the real estate assets that are part of the Receivership, resulting in a continued dearth of available cash. Indeed, to date, the Receiver has been unable to service any of the extensive debt that encumbers the Receivership's real estate assets. While significant equity remains in many of the assets held by the Receivership, the continued delay of the Receiver's proposed (and previously approved) sales continues to cost the Receivership between $2 million and $3 million annually.[5]

[5] Doc. 539 at 2.

The Court notes that the inability to close deals stems from Barton's appeal of every order and his personal contacting of prospective buyers (in violation of the Court's order) to scare them from closing for fear he will sue them too. Barton cannot starve a cash-depleted receivership and then argue it should expend considerable cash. Because protracted litigation is not something the receivership estate can afford in addition to paying its own bills, the Court finds that the proposed settlement is in the best interest of the receivership estate.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS** the motion.

It is **SO ORDERED**, this 14th day of August, 2024.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

# TAB S

**DKT 359: TRANSCRIPT OF THE HEARING BEFORE THE HONORABLE BRANTLEY STARR UNITED STATES DISTRICT JUDGE Dallas, Texas October 11, 2023**

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

CASE NO. 3:22-cv-2118-X

---------------------------------------x

SECURITIES & EXCHANGE COMMISSION,

Plaintiffs,

v.

TIMOTHY BARTON, et al.,

Defendants.

---------------------------------------x

TRANSCRIPT OF THE HEARING

BEFORE THE HONORABLE BRANTLEY STARR

UNITED STATES DISTRICT JUDGE

Dallas, Texas

October 11, 2023

1:13 p.m.

A P P E A R A N C E S:

FOR THE PLAINTIFF:

SECURITIES & EXCHANGE COMMISSION
801 Cherry Street
Suite 1900
Fort Worth, Texas 76102
BY: KEEFE M. BERNSTEIN, ESQ.
bernsteink@sec.gov
(817) 900-2607

FOR THE DEFENDANT BARTON:

HUNTON ANDREWS KURTH, LLP
2200 Pennsylvania Avenue NW
Suite 905
Washington, DC 20037
BY: MICHAEL J. EDNEY, ESQ.
ROGER GIBBONI, ESQ.
medney@HuntonAK.com
(202) 778-2204

FOR THE RECEIVER:

BROWN FOX, LLP
8111 Preston Road
Suite 300
Dallas, Texas 75225
BY: CHARLENE KOONCE, ESQ.
TIM WELLS, ESQ.
charlene@brownfoxlaw.com
(214) 327-5000

COURT REPORTER: MS. KELLI ANN WILLIS, RPR, CRR, CSR
United States Court Reporter
1100 Commerce Street
Room 1528
Dallas, Texas 75242
livenotecrr@gmail.com

Proceedings reported by mechanical stenography and transcript produced by computer.

* * * *

# I N D E X

CORTNEY THOMAS
Direct Examination by Mr. Bernstein ..... 14
Cross-Examination by Mr. Edney .......... 44
Redirect Examination by Mr. Bernstein ... 79
Recross Examination by Mr. Edney ........ 85

ANTHONY CECIL
Direct Examination by Mr. Bernstein ..... 88
Cross-Examination by Mr. Edney .......... 96

CAROL HAHN
Direct Examination by Mr. Bernstein ..... 107
Cross-Examination by Mr. Edney .......... 120
Redirect Examination by Mr. Bernstein ... 138

GREGG GINN
Direct Examination by Mr. Edney ......... 143
Cross-Examination by Mr. Bernstein ...... 166

# E X H I B I T S

Plaintiff's Exhibit 35 .................... 44
Plaintiff's Exhibit 1 .................... 141
Plaintiff's Exhibit 2 .................... 141
Plaintiff's Exhibit 3 .................... 141
Plaintiff's Exhibit 32 .................... 141
Plaintiff's Exhibit 33 .................... 141
Plaintiff's Exhibit 34 .................... 141
Remaining Documents ...................... 142

Defendants' Exhibit A ..................... 128
Remaining Documents ...................... 165
Defendants' Exhibit E ..................... 165

- P R O C E E D I N G S -

-o-

THE COURT SECURITY OFFICER: All rise.

THE COURT: Thank you.

You can be seated.

Okay. I'm calling for receivership hearing. This is Case No. 3:22-cv-2118-X that is SEC versus Barton, et al.

Let's do appearances, first for the Government.

MR. BERNSTEIN: Your Honor, Keefe Bernstein on behalf of the Plaintiff, the Securities & Exchange Commission.

THE COURT: Thank you, Mr. Bernstein.

And how about for Barton?

MR. EDNEY: Your Honor, Michael Edney on behalf of Defendant. I have with me here at the counsel table, Roger Gibboni, but I will be doing the talking today, and the Defendant, Tim Barton.

THE COURT: Thank you for being here.

Good morning. Oh, or afternoon, whatever it is. I have been in court all day, so it is confusing to me on whether it's morning or afternoon. Thank you, Mr. Edney.

MR. EDNEY: I am disoriented my own self.

THE COURT: Very good. Very good.

And for the Receiver?

MS. KOONCE: Charlene Koonce and Tim Wells on behalf of Cort Thomas, the Receiver.

THE COURT: Okay, thank you.

Let me ask if there is anyone in the audience who wants to make an appearance. We need you to come to the podium, just so we can actually hear anyone that wants to make an appearance.

And I'll say for everyone else at counsel table, permission to stay seated the rest of the time that you are at counsel table. When you stand up, out of respect, then I can't hear you because of the microphone.

But if you are at the podium questioning a witness later on, then don't worry. Standing up is the only option you have.

Okay, appearances.

MS. CHANDLER: Good afternoon, your Honor.

Carina Chandler and Daniel Alexander on behalf of judgment creditor, David Ramolia.

THE COURT: Okay. Thank you for being here.

MS. CHANDLER: Thank you.

THE COURT: Okay. Anyone else

appearance-wise?

Okay. So we are back here in a remand posture because I used the wrong legal standard at the outset. I shouldn't have used "owns or controls," I should have used "tracing principles." So we are back to figure that out.

As I see it, the highest level scope of this proceeding is to figure out, one, if there should be a receivership.

Two, if so, what the scope is.

And three, if there is any other ancillary relief that the SEC is requesting that is warranted, like an injunction on sale or transfer of other assets.

And y'all know based on the docket that I allocated 90 minutes per side between SEC and Barton to go in an evidentiary fashion.

Mr. Edney, I did see your motion for oral argument time. I will think about that at the end. I know they haven't responded yet, but a lot of times what I like to do, instead of oral argument at the end of the proceeding or later on, is to have y'all maybe file just some sort of short supplemental brief, once you have ordered the transcript.

And that way, none of us are operating in a hindsight posture where y'all have been in the heat of battle for the last three hours and you can't remember what was said or was not.

So I'll think about that. But I'm also mindful of my timeline that November 29th, 2023 is my date to tie off whatever I'm going to do, according to the Fifth Circuit, based on their 90-day stay posture.

So I have got to keep this train moving on time so that I follow orders.

With that, any issues before we start with the SEC's first witness?

Mr. Edney?

MR. EDNEY: Yes, your Honor.

THE COURT: Can you stay seated because I can't hear you when you are standing up.

MR. EDNEY: You told me about that. I'm sorry.

THE COURT: It is okay.

MR. EDNEY: Yes, your Honor, on that last point, we are perfectly happy to come back in short order, if you want us. I agree with it would be better if we all had a little bit time to digest what happened today. And if you wanted a writing

and/oral argument, we would happy to do that. But we would like an opportunity to address some of the bigger issues, in light of what occurs today.

THE COURT: I understand that.

So I won't cut off that right, I'm just trying to figure how it is most helpful to me, if that makes sense and most effective for you.

MR. EDNEY: For your Honor. That is the important thing, your Honor.

THE COURT: Understood.

With that, what about first witness? Who are you going to call?

MR. BERNSTEIN: Your Honor, our first witness will be Cort Thomas, the Receiver. But before I call Mr. Thomas, I did have just two quick issues on the witnesses.

THE COURT: Yes.

MS. KOONCE: First, I provided a notebook of the materials that were included in our appendixes and filed with the Court as well as Mr. Thomas' declaration.

We would like to move to preadmit those exhibits for use during the hearing today.

THE COURT: Understood.

Mr. Edney, what is your position on the

notebook?

MR. EDNEY: Well, your Honor, I think -- I think it would probably be best to take those one-by-one, as they come up.

I haven't -- I haven't -- obviously, I'm familiar with the whole thing. But, you know, from an evidentiary and admissibility standpoint, I think that is probably the better course.

THE COURT: So here is what I will plan on doing, and I learned this from a variety of judges I appeared before as a lawyer. In a bench trial, or a PI posture, every time I made an evidentiary objection, the judge would sit there, scratch the goatee, and say, I will give the weight to which it is due.

So what I can tell you, because you want to go one-by-one, we can. But you can paper up your objections but you can't take a lot of his time. That is what I don't want to do. Because I will look at your objections in not the heat of battle and then decide how much weight, if any, I will give any exhibit.

But I don't want you sitting there and buying five minutes of his time on thinking of what your objections are.

So just tell me your objections in short form. I will say, I will give it the weight to which it is due, and I will rule on those objections, once I issue a written judgment.

MR. BERNSTEIN: Your Honor, so we submitted all of these materials with our motion, and we want the Court to consider these materials in connection with its ruling on the motion.

There has been no objection to any of these exhibits in response. So I was not planning to spend the Court's time going through each of the exhibits to our submission today.

I can do that, but it is just going to take time.

THE COURT: I wouldn't expect you to take time doing that. I would expect for you to move for admission. You can see what his objection is, and if you think there is a weakness there, you can shore it up. But you don't necessarily need to do that because I'm going to let you talk about the exhibit with the witness.

Does that make sense?

MR. BERNSTEIN: It does, your Honor. Except I wasn't -- so a lot of these are exhibits that we have submitted in support of our motion that

we are not planning to necessarily cover with a witness at the hearing. I just want to make sure that the Court is aware of them and is able to consider them in connection with the decision on our motion.

We submitted them with our brief. He didn't object to them. They have been filed as of record in connection with this motion.

THE COURT: Okay. Let's take it this way.

When you have a witness that will talk about an exhibit, offer it. He can object. At the end, when you are done with your witnesses, then you can move for all other exhibits in the binder that weren't otherwise admitted and he can make any objections he wants to. And then I will tell you that I will give it the weight to which it is due.

Fair enough?

MR. BERNSTEIN: Absolutely, your Honor.

THE COURT: Okay. Who's our first witness?

Mr. Thomas, you can come on over to the witness stand. But you are not going to take a seat yet, because we will have to swear you in, once you get in the general vicinity of the witness stand.

Okay. If you would raise your right hand.

Mr. Frye will swear you in.

(CORT THOMAS was duly sworn by the Courtroom Deputy.)

THE COURT: All right. You can take a seat, Mr. Thomas.

And then I will just ask for some space between their questions and your answers, and vice versa. That way we can have a clean record and it lets me rule on any objections before you have to answer.

You can proceed, Mr. Bernstein.

You are on the clock.

DIRECT EXAMINATION

BY MR. BERNSTEIN:

Q. Mr. Thomas, can you please state your name for the record?

A. Cortney Christopher Thomas.

Q. Mr. Thomas, you are the court-appointed receiver in this matter?

A. Yes, I am.

Q. Approximately how many entities does the receivership currently include?

A. Roughly 165.

Q. Are you the corporate representative and custodian of records for the receivership entities?

A. Pursuant to the receivership order, yes.
Q. Mr. Thomas, if you go to Exhibit 35 in the notebook in front of you, there is a copy of a declaration and interim report you recently submitted to the Court in this case.
A. Yes, I see it.
Q. If you go to paragraph 20 of your declaration, you discuss several challenges facing the receivership.
Can you describe what the state of the receivership assets were at the outset of this receivership?
A. Sure.
So what comes to mind, first, I'm still turning there, but the receivership has been cash starved from the very outset. When I was appointed, October 18th of last year, there was less than $75,000 in the receivership accounts.
As we sit here today, there is more than that, but still not sufficient funds to continue administering the various properties that are within the receivership.
Q. And can you describe what the state of the receivership assets were at the outset of this receivership?

A. So there is a variety of real estate assets.

One in particular, the Marigold Suites was in a state of disrepair. There were a lot of vacant units. And so we have done our best to start getting some of those back online.

But there were properties on the verge of foreclosure. We could go one-by-one through the assets, but there was -- my declaration here and probably the other filings from the case lay it out better than I can.

Q. And you touched on this a little bit in your earlier answer, Mr. Thomas, but what are the challenges currently facing the receivership?

A. Sure.

So the biggest current hurdle is the lack of significant cash flow to continue administering the receivership.

Q. All right.

Moving to paragraph 22 of your declaration, when you began to obtain the receivership entities' financial records, did you encounter commingling of funds?

A. Yes, we did.

Q. Do you provide examples of that commingling in your declaration?

A. Yes, we do.
Q. Based on your experience, how would you describe the scale of commingling in this case?
A. So it was extensive. I haven't spent as much time in the bank records as other members of my team and the accounting -- the accountants that have helped me, but I have spent a decent amount of time and it is extensive commingling.
Q. Mr. Thomas, could you go now to paragraph 33 of your declaration?
A. I'm there.
Q. Did you determine whether Mr. Barton controlled the receivership entities?
A. Yes, I did.
Q. How did you make that determination?
A. Well, so we looked a host of different documents in the main office at 2999 Turtle Creek. There were corporate formation binders that we looked at. We looked at tax returns; we spoke to individuals, yeah. A host of different things, as detailed in my declaration.
Q. You stated that there are approximately 165 receivership entities, is that correct?
A. That is correct.
Q. Did you determine whether these receivership

entities were operating independently?
A. We did look at that. They were operating, I would say, inter-dependently. They were -- it was kind of common enterprise, is what it appeared to be.
Q. And can you explain that a little more for the Court?
A. Sure. So back to commingling point, it seemed that most funds flowed through either JMJ Development or Carnegie Development.
No matter the source, they kind of flowed through there and then went out to the various different companies. And that, again, is detailed more in this section that you pointed me to in my declaration.
Q. Could you go now, please, to paragraph 46 of your declaration?
A. Sure. I'm there.
Q. You identified bank records and other receivership entity business records in your declaration as the financial records, correct?
A. Correct.
Q. Are those financial records voluminous?
A. They are.
Q. Are the financial records the records you

analyzed and summarized in your declaration?
A. Yes, they are.
Q. Are the summaries attached to your declaration and your statements in the declaration regarding financial transactions and tracing derived from those financial records?
A. Yes. They are derived from the bank records, the QuickBooks files and the documents from title companies.
Q. And have those financial records been made available to Mr. Barton?
A. Those ones just listed have, yes.
Q. All right.
Mr. Thomas, I want to talk to you now about the potential entities for a new receivership.
Have you analyzed and summarized the financial records to determine which of the current receivership entities received or otherwise benefited from assets traceable to the WALL entity offerings at issue in this lawsuit?
A. Yes, I have.
Q. What did you do to determine the entities that fall into that category?
A. So I worked hand-in-hand with my accountants. We examined, like I said before, the bank records

were the big thing to determine where the WALL investor funds flowed. We came up with an example. It is not all examples; it is just an example for each entity that we saw receiving or benefiting from WALL investor monies.

Q. You mentioned accountants.

Did you, as the receiver, retain an accounting firm to assist you in your work as the receiver in this matter?

A. Yes. From the outset, we retained Ahuja & Clark.

Q. Why did you initially retain an accounting firm?

A. So for a variety reasons. One, I knew that we would have to file taxes eventually, and so I needed a tax accountant to help.

I also knew, based on prior receivership experience, that we would need a forensic accounting at the end of the day, both on the front end, determining investor monies that come in, and then on the back end, trying to figure out who received those monies, who were the fraudulent transferees.

And so the taxes, the taxes and the forensic accounting were the main reasons they were hired early on.

Q. Is Anthony Cecil one of the accountants that you worked with from Ahuja & Clark?
A. Yes.
Q. And did Mr. Cecil review the tracing information and other summaries in your declaration?
A. We worked hand-in-hand in preparing them, so yes.
Q. Can you now go, Mr. Thomas, to Exhibit 34 in the notebook in front of you, which is the SEC's list of proposed receivership entities?
A. Yes, I see it.
Q. Are all the entities listed on Exhibit 34 entities that fall within the group of entities that you determined received or benefited from investor funds from the WALL entity offerings?
MR. EDNEY: I'm going to object to that question. It calls for an expert conclusion and he's not one.
THE COURT: I will allow him to answer and give it the weight to which it is due.
You can answer.
THE WITNESS: Sorry. Just give me a couple more seconds to look through this list.
I'm sorry.

BY MR. BERNSTEIN:
Q. Again, just to be clear, Mr. Thomas, all I'm asking is that all the entities on your list are on the list that appears on Exhibit 34?
A. I understand. I just haven't looked at this list, so I wanted to make sure. Yes, they -- they are included in my declaration.
Q. So in fact, the list of proposed receivership assets the SEC has proposed is a subset of the entities that you identified in your declaration as entities that received or benefited from the investor funds?
MR. EDNEY: I'm going to lodge the same objection for the record.
THE COURT: The same ruling.
You can answer.
THE WITNESS: It appears to be fewer entities, so yes, a subset would be correct.
BY MR. BERNSTEIN:
Q. And are all the entities addressed in your declaration?
A. Yes.
Q. Can you go back to your declaration at paragraph 54?
Did you provide entity-by-entity examples of

funds or benefits received by each of the proposed receivership entities?
A. Yes. I went category-by-category through the entities.
Q. But in addition to going -- and we will talk about the categories in a moment -- but in addition to going category-by-category, didn't you also address each entity, entity-by-entity?
A. Yes, yes.
Q. So let's talk about the categories.
You divided the entities into several categories.
Could you explain for the Court what those categories are?
A. Sure. So there are 12 of them. They are listed here in paragraph 54 of my declaration.
The first category was entities which were the WALL entities that directly received funds from the WALL investors. The second category was entities that received -- received or benefited from WALL investor monies and hold real estate, currently hold real estate.
I think the third category was used to real estate, no longer holds real estate. And then it goes from there.

The idea was to try to make buckets of entities that would be treated similarly as each other to just try to parse through the 165 entities that are currently in the receivership.

Q. And you mentioned that you also went entity-by-entity in your declaration and gave an example for each entity, correct?

A. For certain of those categories, yes. We gave examples for each entity. And then others, more categorically, if the category alone applied.

Q. Could you walk the Court through an example of the results of your tracing set forth in your declaration for one of the entities?

A. Sure.

So for the purposes of this analysis, I think the second category is the most important because that is what currently holds -- currently holds real estate assets.

So if you look at Exhibit 10 to my report, that is the DJD Land Partners acquisition. And so you can just kind of follow the flow of funds here on this Exhibit 10 diagram, where monies come in from WALL007. They then go into Carnegie Development.

From Carnegie Development, they flow into WALL011. And then they are ultimately used for

the -- I believe it is the acquisition of the DJD Land Partners land in Venus.

Q. Mr. Thomas, do the tracing examples in your declaration show all of the investor funds or other benefits traceable to each entity?

A. No.

As I mentioned before, we just provided one example and in some instances of a couple of examples of WALL investor funds or commingling, or whatever it was in the example.

Q. Based on your review of the financial records, are there other examples?

A. Yes, there are.

Q. Subsequent to your declaration, have you identified additional examples that are not addressed in your declaration?

A. Sure. Yes.

Q. Could you describe for the Court a recent example that you have identified?

A. Sure.

So just yesterday, someone on my team brought me transactions they had located related to Goldmark Hospitality in the months leading up to the receivership.

There were checks made on the Goldmark

Hospitality loan that were made by Gillespie Villas by one of the 2999 Turtle Creek entities, by Broadview Holdings, just from a host of other sources that were ultimately tied to investor funds.

Q. Are you familiar with the entities that Mr. Barton's son, Max Barton claimed should be excluded from the receivership?

A. Yes, I'm aware of those entities.

Q. And you address those entities starting at paragraph 163 of your declaration, is that correct?

A. Yes, that's correct.

Q. Did those entities receive or otherwise benefit from assets traceable to the WALL entity offerings?

A. Yes, they did.

MR. EDNEY: I will assert the same objection, your Honor.

THE COURT: The same ruling.

You can answer. It will stand.

You can proceed.

BY MR. BERNSTEIN:

Q. Mr. Thomas, did you provide examples in your declaration of tracing to the Max Barton entities?

A. Yes, we did.

Q. Are you also familiar with a group of receivership entities that hold interest in certain

HUD apartment complexes?
A. Yes.
Q. And you address those entities starting at paragraph 77 of your declaration.
Did those entities connected to the HUD apartment complexes, based on your summaries of the financial records, receive or otherwise benefit from assets traceable to the WALL entity offerings at issue in this lawsuit?
A. Yes, they did.
Q. And can you give the Court an example of the type of benefit or benefits that the HUD apartment complex entities received?
A. Sure.
So they are detailed here in my declaration. The two that come to mind first are that the benefiting from a component of this, there were at least two, possibly more JMJ employees who were paid by HR Sterling. Those funds were ultimately -- some of those were ultimately tied to WALL investor funds.
Their time was used to manage, help develop the HUD apartments, and then possibly the biggest concern with these SPC -- what we call the SPC properties in mind, or HUD apartments, depending on

the filings you are looking at, is that these properties were developed -- the overwhelming majority of the money for each of these four properties came from a HUD loan; then a lesser amount came a loan from SPC, and then there was also SBA loans that were pulled out on all three properties.

In securing the HUD loan, which is by far the biggest contributor to the development of these properties, Mr. Barton had to file loan applications with HUD.

And in order to qualify, be approved for these HUD loans, he listed assets that he possessed. And the assets that were listed were WALL investors -- or properties that were purchased with WALL investor funds.

Q. So he used --

MR. EDNEY: Your Honor, I am going to object and move to strike the last answer on the previously stated grounds.

THE COURT: I will overrule that.

BY MR. BERNSTEIN:

Q. So Mr. Thomas, he essentially used properties obtained with WALL investor funds and other assets traceable to the investor funds to obtain the HUD

loan?

MR. EDNEY: Objection, leading.

THE COURT: I will allow that.

You can answer.

THE WITNESS: Yes, I think that is what I just testified to.

BY MR. BERNSTEIN:

Q. All right.

Mr. Thomas, I want to talk to you just for a moment about the report that has been submitted by Mr. Ginn, by the defense.

Have you had a chance to review that report?

A. I did review it.

Q. Okay.

Did you observe that Mr. Ginn claimed that your tracing analysis does not account for potentially non-investor funds being deposited in the WALL entity and JMJ Development accounts?

A. Yes.

Q. Do you have a response to that?

MR. EDNEY: Objection; same grounds.

THE COURT: I will allow him to answer.

THE WITNESS: So sure.

So as I think I have already testified, we did not do a complete forensic accounting of all

money coming in and all money going out. That would have taken much, much longer and been much, much more expensive than what we did.

We do know, and I didn't haven't seen the anything to the contrary in the 300 plus filings in this case this far; that at least $26 million came in from WALL investors during the course of 2017 to 2019.

That -- sorry. I got distracted by the noise.

26 million came in between 2017 and 2019. I believe, if I remember right, from the Mr. Ginn's report, he notes that there is 35 million coming in. And so he questions, you know, what was the source. If only 26 million is from WALL investors, then 35 million, where did that 9 million delta come from.

And so my response there, one, from the documents I've seen, I'm pretty sure that more than 26 million came in at the end of the day. I'm not ready to put that in writing yet because we are -- if a new receivership order gets put in place, if eventually there is a claims process, there is always a big fight with investors saying they are or they are not part of the receivership.

And so I believe there are more than $26 million that came in. I think that the bigger number, probably the bigger reason for that $9 million delta are what I would call churning or turning over, where that example I gave before from Exhibit 10, roughly one and a half million dollars came from a WALL entity.

That one and a half million, if you look back at the origination, it was originally WALL investor monies that then went to purchase a property in Fort Worth.

When that property was sold, those monies came back into the WALL entity. And then that money was then transferred on down the road to buy the DJD Land Partners' land.

So it is still WALL investor monies originating. It just gets kind of turned over. It comes in twice into the WALL. It leaves and then it comes back in. So it looks like it is a bigger number; it looks like it is 35 million, instead of 26 million, but it is still the same origination point.

Q. And in any event, Mr. Thomas, did the fact that there are potentially other sources of funds in those accounts impact your ability to trace funds?

A. No, it did not.
And we have looked at the origination of funds for all of the examples we provided.
Q. All right.
Mr. Thomas, what is the current status of your tracing efforts?
A. I mean, I would say it is ongoing. If the receivership -- if the new receivership gets put in place, we will have to do this forensic accounting, like I mentioned, focusing on the front end and the back end.
We were delayed with these proceedings coming up with these examples. But I'm sure more examples will pop up as it has all along.
Q. And has your tracing considered whether investor funds or an associated benefit has survived in an account, property, or claim held by a proposed receivership entity?
A. Yes, it has.
Q. And can you tell the Court a little bit more about that?
A. Sure.
So for that second bucket that we were talking about, where WALL investor funds flowed into property that is still there, those funds are still

in the property. They were put into the property and the property is held by the receivership.

There are other instances where funds may have gone into a property like the 2999 Turtle Creek property, where funds went in and then there was a judicial determination that the receivership entities no longer owned those properties.

And so what would be held as a claim -- that receivership entity would have a claim to try to go after fraudulent transferees or whatever claims there may be. And so we should go through the different entities. But generally speaking, it is properties, banks accounts, and legal claims that survive.

Q. If you were provided additional time, do you believe it is likely that you would be able to trace to additional Barton-controlled entities?

MR. EDNEY: Objection on the same grounds.

THE COURT: I will allow him to answer.

THE WITNESS: If I had more time, sure. I don't know if it is cost effective as it is inefficient. This has already been a very expensive process.

BY MR. BERNSTEIN:

Q. All right.

Mr. Thomas, I want to switch gears now and talk a little bit about the net sphere factors?

A. Okay.

Q. Do any of the properties in the proposed receivership require active management?

A. Yes.

Q. Can you tell us a little bit more about that?

A. Sure.

The easiest example is that Marigold Suites property that I talked about. With the HUD properties, there is a third-party property manager that is overseeing it, so day-to-day oversight is more limited.

With the Marigold Suites, there is a -- she was an employee of receivership entities before I was put in place and she actively manages the property.

There is all sorts of issues. This summer it was, you know, incredibly hot, and so we had to deal with requests to replace a bunch of AC units. This summer I was made aware that there was a fire at the complex.

There is just a host of things. And it is detailed in my report. It is detailed in my prior reports. And it is detailed in the various filings we have made in this case.

But that is just one example.
Q. Are there liens on any of the receivership properties?
A. I believe there are liens on all the receivership properties.
Q. Are any of the properties facing foreclosure?
A. Prior to my appointment, two or three of them had been scheduled for foreclosure. If you look on the docket, you will see even now people are filing requests to lift the stay. I believe all of them would be subject to foreclose because we haven't had enough cash to service the debt.
Or I shouldn't say all of them; the vast majority of them.
Q. Are any of the properties embroiled in other litigation?
A. Yes. There is a lot of other litigation.
Q. Were any of the receivership properties in disrepair or facing other challenges when you were appointed?
A. Yes. I think we have already talked the Marigold Suites a few times.
Q. And you have talked about the foreclosures, the litigation, issues with the properties themselves that you have encountered when you became the

receiver.
Are any of those challenges still present and present going forward?
A. Yes, I would say all the challenges are still present and present going forward. Primarily being cash strapped, it continues to hinder our efforts.
Q. Mr. Thomas, have you made any determination about whether properties in the receivership are increasing or decreasing in value?
A. Yes.
Q. And what have you determined?
A. Well, so for each of these properties, we have real estate professionals who have been helping us in some capacity.
In talking to them and just being in the business community in Dallas, generally speaking, the higher interest rates have had a negative effect on commercial real estate in the Dallas area and prices have gone down, today compared to where they were when I was first appointed a year ago.
Q. And based on your diligence in talking to members of the real estate community in your role as a receiver, what have you determined as to the trend in the property values held by the receivership?
A. So each property would have to be looked at

individually, but the general trend has been downward and we don't know when we will be out of that.

Q. If you could go now to paragraphs 194 and 195 of your declaration.

A. Okay. I'm there.

Q. Have you made a determination as to whether the assets of the receivership entities are sufficient to disgorge the amount of funds raised from investors in the WALL offerings?

A. Yes. We have done that, or I have done that analysis.

Q. And what did you determine?

A. So if you look at paragraph 194, the chart on page 82, it is kind of a back of the envelope calculation. Based on prior reports, if you go look at the prior reports, you will see that it is an amalgamation of a bunch of things.

What it shows is, one, it -- even if the SPC or the HUD properties are included in the receivership, the total amount recovered is still going to be less than 26 million.

And that is a big if, as you have seen from the filings; SPC strongly contests our position that the receivership entities still own those properties.

So if those were taken out, it would be substantially less than the 26 million.
Q. Can you go now to paragraph 199 of your declaration?
A. Yes. I'm there.
Q. Did your review of the financial records show how Mr. Barton used investor funds?
A. Yes.
Q. Did Mr. Barton use investor funds for personal expenses?
A. There were examples of that, yes.
Q. Can you provide a further description of some of the ways that Mr. Barton used investor funds?
A. Sure.
So shortly before I was appointed, funds that were ultimately attributed to WALL investor funds were used to pay attorneys, they were used to pay credit cards, I think somewhere between 5 and a half and $7 million in credit card payments were made, much of those tied back to WALL investor funds.
Q. And is that described in your declaration as well?
A. Yes, it is.
And then I provide a lot of additional examples in here.

Q. You mentioned this in your last answer, did monies -- just to clarify, did money flow into the receivership entities during the months leading up to your appointment as a receiver?
A. Yes.
Q. About how much money came in?
A. So let's say from December of '21 through October of '22, it was several million dollars.
Q. Was any of that money traceable to WALL investor funds?
A. Yes.
MR. EDNEY: Objection.
THE COURT: What is the objection?
MR. EDNEY: On the same grounds, your Honor.
THE COURT: Okay. The same ruling.
BY MR. BERNSTEIN:
Q. And Mr. Thomas, how much cash was actually left on hand when you were appointed?
A. Less than $75,000.
Q. Do you know where the rest of that money went?
A. I have some instances. Like I said, we have not completed the, you know, forensic accounting on the front end and the back end to know where every single dollar went. And I don't know that that it

will be cost effective at the end of the day.

We do have ideas -- I just testified as to some of the examples of where monies went in the last few months.

Q. And what was the latest point in time that Mr. Barton was using investor funds from the WALL offerings for his expenses based on your review of the financial expenses, financial records?

A. It was within a couple of weeks. I don't know the exact day. I would have to go look at the bank records to say.

Q. So within a few weeks of you being appointed, Mr. Barton was still using funds traceable to the WALL entity offerings for his own expenses?

MR. EDNEY: Objection on the expert grounds and objection on leading grounds.

THE COURT: Understood. Overruled.

You can answer.

THE WITNESS: So I was appointed on October 18th. And so I remember seeing examples after the SEC filed this lawsuit, which I think was late September. So yes, I just don't know the exact date, as I sit here.

BY MR. BERNSTEIN:

Q. All right.

Mr. Thomas, at previous points in this case, Mr. Barton has proposed a monitorship as an alternative to a receivership.

Would a monitorship be adequate to protect investors in this case?

A. No, it would not.

Q. Why not?

A. So a variety of reasons. One of the biggest reasons is that I don't know that I have ever heard of a monitorship with a litigation stay. And the litigation stay is very, very important here for all the reasons we have talked about with potential foreclosures.

Also, as your Honor is well aware with all the filings here, to start entering a receivership order in October, part of the reasons we have 300 different filings is because of Mr. Barton's disregard of the receivership order in some ways and lack of compliance with the order.

So I would be nervous how a monitorship would go.

Q. Would simply freezing all the assets that are currently in receivership be sufficient to protect investors?

A. No. It would not, for the cash reasons I gave

before.

It would be -- it has already been difficult enough managing the receivership with limited cash flow. If everything was just frozen, if the assets were frozen without a litigation stay, without a stay of foreclosure, then the properties would be foreclosed on.

If there was somehow an asset freeze with a stay of foreclosure, there is still property taxes aren't going to be paid, insurance isn't going to be paid. We have been able not service debt so far because of the receivership order, but at some point that is going to lifted. It can't be indefinite under the case law.

Q. Mr. Thomas, can you now go to paragraph 197 of your declaration?

A. I'm there.

Q. Has Mr. Barton provided you with the information required by the receivership order?

A. Generally, no.

And that is, yes, detailed there in paragraph 197.

Q. Has Mr. Barton provided you an accounting of his entities' assets and liabilities?

A. No, he has not.

Q. Has Mr. Barton interfered with your work as the receiver in any way?
A. So, yes. As I testified before, I would point to the various filings that have gone on and here -- well, I think it is elsewhere in my declaration, we bullet some of the different things that have happened over the course of the last year.
Q. All right.
Mr. Thomas, is there anything else that you want to tell the Court in connection with this motion at this time?
A. So no. I think we have covered -- I could sit here and talk for a long time, but I don't know that I want to waste the limited time that we have here with my thoughts.
MR. BERNSTEIN: Your Honor, at this time we move to admit Exhibit 35, which is the declaration and the interim report of the Receiver.
THE COURT: Objection?
MR. EDNEY: Your Honor, I object to the admission of the report on the grounds that it contains tracing conclusions that are -- that require the introduction of expert testimony for which he's not been qualified.
THE COURT: Understood. I will give to

the weight to which it is due.

I will grant its admission at this point, conditionally on the objections.

(The referred-to document was admitted in Evidence as Plaintiff's Exhibit 35.)

MR. BERNSTEIN: We pass the witness, your Honor.

THE COURT: Okay. Thank you.

You can proceed when you're ready, Mr. Edney.

MR. EDNEY: Thank you, your Honor.

CROSS-EXAMINATION

BY MR. EDNEY:

Q. Good afternoon, Mr. Thomas.

My name is Mike Edney. I represent the Defendants in this matter. Thank you for being here today.

A. Thank you, Mr. Edney.

Q. I'm going to begin with some of the things that you said in your testimony and then go on to some other topics that are raised your declaration, is that all right?

A. Sure.

Q. Let me just begin with one thing.

I heard earlier, and correct me if I'm wrong,

that you, in your declaration, provided tracing examples for each of the 82 entities that the Commission now seeks to put in receivership, is that right?
A. So I think I was careful. So we provide -- for certain buckets, yes, we provide tracing examples.
For other categories, so for instance parent entities that never had funds really flow back and forth but they owned, they were the ultimate parent of or somewhere in the ownership chain of a property that received WALL investor funds, I took the position in my declaration that those entities benefited from the WALL investors funds, and so there wouldn't be examples of those entities for those categories.
Q. I see.
So your tracing examples are laid out in Exhibits 3 through 27 of your declaration? Does that sound about right? I think you have it up there.
A. That sounds about right.
Q. So you have about -- and each one of these exhibits is for one of the companies, is that right?
A. Correct. Now, some of them end up applying to multiple entities, but yes.

Q. So you have about 24 tracing examples, right?
A. Twenty-four different entities that we traced funds into, yes.
Q. And that leaves roughly, if my math is correct, 56 entities for which you don't have tracing examples, is that correct?
A. Fifty-six other entities that benefited from but we did not do tracing.
Q. I see.
A. Because there were not funds flowing into them.
Well, that we didn't see at this time. I guess, I don't know one way or another whether they did.
Q. So to clarify your testimony for those 56 entities, at this time you haven't seen alleged investor funds traced into those entities, is that right?
A. I have seen them the benefiting from but yes, that's correct, no lender funds.
Q. Okay. All right.
We will come back to the benefiting issue in a few moments, but I want to talk about a couple of other things before I lose my train of thought.
You were asked questions about Mr. Ginn's report and the suggestion that we have been talking

about, $26.3 million in lender funds, but there is $35 million in receipts into the WALL entities, correct?
A. Yes, we talked about that.
Q. Is that monetary figure inconsistent with what you have determined through the accounting process?
A. It is not inconsistent. Like I said in my testimony, we haven't determined the exact amounts. And I'm hesitant about exact amounts right now, given the status of the proceedings.
Q. I understand.
But the $35 million top line number is not inconsistent with what you have seen, is that correct?
A. That's correct.
Q. And you have ascribed some of that $9 million difference, or delta to churn, I think you called it, is that right?
A. Correct. That was my term, but yes.
Q. And you cited an example, is that right?
A. Correct.
Q. But neither you or nor your accounting team has done an evaluation to address that $9 million difference, is that right?
A. We have not yet done that because we haven't

needed to.

Q. I see.

A. But we have looked at portions of the 9 million. I gave an example of one and a half million of the 9 million.

Q. You have an example, but you haven't done an analysis of the full 9 million, is that correct?

A. I have not done an analysis.

Q. And neither has your accounting team, is that correct?

A. I don't know if they have. I have not instructed them to do that.

Q. Okay.

I would like to turn your attention to paragraph 194 of your declaration.

Are you there? I apologize. I don't remember the page, but I will get there in a second.

THE COURT: Eighty-two.

MR. EDNEY: Eighty-two.

THE COURT: Or page 81, if it is before the chart.

MR. EDNEY: Your Honor is ahead of me. I appreciate it.

BY MR. EDNEY:

Q. So I want to talk about the chart.

This is a chart that you and Mr. Bernstein talked about that suggested that the assets in the receivership estate were going to short kick the alleged amount of the loan proceeds, is that correct?
A. That is correct.
Q. And I'm just looking down this chart here, there are several entries on the left-hand side, and that -- that refers to property owners.
So these are companies that have real property under its purview and possession, is that right?
A. Well, so there is a variety -- some of these don't have real property under their purview anymore. These are potential value coming into the receivership estate.
Q. Either have claims or possess title to properties, is that right?
A. Yes, that is fair.
Q. And I see some valuations ascribed to some of these companies, isn't that right?
A. I don't know that I would call it "valuations."
This is my back of envelope trying to determine, here are the valuations I have gotten for the value of the property. And then you take out the debt and just give -- this is the amount that

could be expected, if I sold it today, without accounting for administrative costs, broker's fees, all the different other costs of the receivership, correct.
Q. And over in the right-hand column, I see seven entries that say "unknown," is that right?
A. Correct.
Q. And when we are adding that all the way down to the bottom, those are zeros, correct?
A. That is correct. At this point.
Q. But you don't know what the value of the property is for those entities, isn't that correct?
A. I don't have enough of an idea to put an estimate in here because there would be -- each of these properties involves claimants, if I put a number in here, it would have consequences.
So at this time I don't -- I don't know if it will result in anything to the receivership or if there will be some amount.
Q. You just don't know?
A. That is correct, I do not know.
Q. Okay.
Isn't it true that several of the real estate properties held by the receivership entities at this point would significantly increase in value if

further advanced in the development process?
A. Yes, that is true.
Q. And isn't this particularly true for several properties in and around Venus, Texas?
A. Yes. That is true.
Q. And together these holdings constitute more than 1,000 acres of land in various stages of development, isn't that correct?
A. I don't believe it is over 1,000 acres. It is somewhere --
Q. I mean, if we had to go look, we would look --
A. At least --
Q. -- at page 44 of your declaration, sir.
THE COURT: We can't talk over each other.
MR. EDNEY: No. That is a good point.
BY MR. EDNEY:
Q. So why don't you finish your answer, and I apologize for stomping on it.
A. I'm not trying to fight with you. We will say at least 600 acres, and it could be over 1,000 acres.
Q. Can I turn you to page 44 of your -- page 43 through 44 of your declaration?
A. Pages or paragraphs?
Q. Pages.

A. Okay. I'm there.
Q. If we wanted to determine the total acreage, we would add up that right column there, these are the Venus properties, is that right?
A. That's right. And it looks like it is more like 600 than 1,000.
Q. Okay.
It is a substantial amount of land, isn't that right?
A. Yes.
Q. And one of these -- the advances in the development of these projects would be securing development agreements with the City of Venus, isn't that correct?
A. That is one potential opportunity, correct.
Q. And if that occurred, that would increase the value of these properties significantly, isn't that right?
A. It depends on the development agreement that gets signed. Could it? Sure. There would be extensive costs to it, most likely.
Q. And are you aware of the recent changes in Texas law that give properties outside the city's perimeter the ability to establish their own public improvement districts?

A. Am I aware of it? Yes.
Q. Did you happen to take a look at the declaration of Kirk Wilson attached to our paperwork?
A. I did look at that declaration.
Q. And in that declaration, he describes setting up those public improvement districts or getting city approval and that potentially doubling the value of the land.
Do you disagree with his assessment?
A. I disagree with parts of his assessment. But generally speaking, would it increase the value if a favorable development agreement was entered? Yes.
Q. Maybe not double it, but it would increase it significantly, is that right?
A. It is so uncertain what would happen, I just can't tell you.
I have spoken with Mr. Wilson multiple times over the last year and have not found a good solution for moving forward at this point.
Q. And do you have development professionals working on moving the Venus development forward?
A. I have development professionals that I'm consulting with.
Q. But are they actively working on moving the

Venus development forward?
A. They have not found a way to move the development forward at this time. So is it actively moving forward? No. And I don't know that it can actively move forward.
Q. Okay.
You mentioned that several of the properties require active management, is that right?
A. I don't know if it was several. I know some of the properties, specifically, the Marigold Suites requires active management.
Q. So essentially the work of a property manager, is that right?
A. And oversight of the property manager, yes, correct.
Q. And is that work that is typically done out of the Brown Fox law firm?
A. Being a property manager? No.
Q. You have had to hire that out, is that right?
A. Well, we have continued to employ the receivership entity employee who was doing it, correct.
Q. And have you had to guide her moves in any particular way? Or are you adding value to that, do you think?

A. Are we adding -- yes, we are overseeing to make sure funds are spent in a reasonable manner and we are trying to make sure that cash flow is managed in such a way as to be able to make that water payments.

When I was appointed, it is in my declaration, the water was about to be cut off at Marigold. And she was managing the property at the time. So Jeronca (ph) has been great and continues to go a good job. But yes, she needs oversight and assistance at different points.

Q. And money?

A. Depending on the month, yes. It is cash flow neutral as of this month, but property taxes and insurance will be a challenge.

Q. It has ups and downs?

A. Sure. It has ups and downs.

Q. And you mentioned there were a series of mortgages and liens on the properties when you entered the receivership, is that right?

A. Every single property had a mortgage or a lien on it, yes.

Q. And in your experience, it is rare for properties in real estate development to have mortgages or liens on them?

A. No, it's not. But it is rare to have a business with only $75,000 in its accounts to manage the properties.
Q. I see.
So it is -- the liens weren't exceptional, it was the -- it was the cash position of the companies that was, is that right?
A. The ability to satisfy the amount of liens on those properties. It was highly leveraged.
Q. Okay.
And so you mentioned that when you came into the receivership the -- the receivership entities were cash starved, is that right?
A. That is correct.
Q. And since you have been receiver, you have been able to bring some cash into the receivership, isn't that right?
A. Some amounts. We have done several things to try to bring cash into the receivership. Specifically, a couple of property sales that, as I'm sure you are aware, have not been able to go through.
We entered a couple of settlements with different entities that did not involve real estate.
The sales of real estate have not gone through

because our closing company was unwilling to close pending Mr. Barton's appeal of those sales.

Q. I mean, look, I apologize for exercising our rights to challenge the seizure of our properties. I understand that it has been meddlesome.

A. We can look back over the 300 filings and we have made are points both very clear, I would say.

But because we have been unable to sell properties, the only source of income that we have been able to bring, or of cash, I wouldn't even say income, the sorts of the cash have been the settlement over the 2999 Turtle Creek building and the sale of the DLP Participation Interest.

But for those, we would not have been able to pay property taxes and do the different things we have done.

Q. I see.

Have any of those funds been put into escrow for potential payments of the lenders that the SEC is trying to protect?

A. The funds are sitting in bank accounts.

So if the receivership ended today, could they be used to pay investors? Sure. It is a long process to get to that point. And it is an expensive process that, candidly, if we had to close

it today, with the amount of money we have brought in, there would not be money to pay the investors.
Q. But some of those funds have been used to pay the fees of your law firm, isn't that right?
A. Some of the funds, sure. We have not been paid for any time since March.
Q. Since March.
A. Yes.
Q. But up through your last quarterly report, the Brown Fox law firm has racked up about a $1 million in legal fees, is that right?
A. We would have to go back and look.
It has been an extensive and expensive process and much more expensive than I would have ever hoped.
Q. 977,000 some dollars, isn't that right?
A. I don't know. It doesn't surprise me, given that we are at Docket 308 and we are less than a year into this thing.
Q. I see.
And do you have an estimate for how much the Brown Fox law firm will bill for preparing the September 2023 interim report that we have been talking about here today?
A. No, I don't.

You are talking about for the last -- the last quarter of the receivership?
Q. Right.
A. So I file these fee applications every quarter. My next one is due November 15th. And so that is for the time from July through September. I don't know. I think the bill is sitting on my desk, actually, but I haven't looked at the time. I don't know the numbers.
Q. But Brown Fox has been paid for its first fee application, which was 342,000, is that right?
A. It has been paid for its first and its second.
Q. And that was for 345, right?
A. I don't remember off the top of my head.
Q. So roughly $700,000, the Brown Fox law firm has been paid?
A. We could go look at the documents. I'm not fighting with you. I don't know the number off the top of my head.
Q. I understand.
A. It is several hundred thousand dollars, yes.
Q. Is this one of the bigger matters at the Brown Fox law firm?
A. I have no idea. Our firm is a little different in how it is structured, so I don't know what the

biggest matters at our firm are.
Q. Do you, through your counsel, you asked the Hunton Andrews Kurth law firm how much they have been paid by Mr. Barton, is that right?
A. By Mr. Barton, yes, that is true.
Q. And you got the answer, $50,000, before the receivership was entered, is that right?
A. That is the answer we were given.
Q. And you are not aware that this law firm has been paid anything else since the receivership occurred, isn't that right?
A. I'm not.
I have big questions. Because, again, given the voluminous filings, in my experience in big law.
Q. Well, I can tell you that my partners are very mad at me, let's put it that way. But yes, we did not abandon our client after the receivership dropped, if that is what your question is.
Okay. Let's turn to a couple of final topics.
Some of the assets that the receivership entities has is an entitlement, a contractual entitlement to either development fees or profit sharing interests in properties that those entities have sold, isn't that right?
A. That is correct. Generally participation

interest is what I call them, but each one is different, yes.
Q. And some of them involve a 25 percent piece in the profit of a project after it is finished and sold, is that right?
A. I don't remember all the numbers off the top of my head. Most of the ones I remember were 10 percent. There may have been one that was 25 percent. I don't remember off the top of my head.
Q. I see.
And some of that is contingent on one of the receivership entities continuing to do the development work, is that right?
A. For one of those, yes. At least one of those.
Q. And has your team been in a position to continue that development work?
A. I have been told the development work hasn't started. From the documents I saw, that is true. We wouldn't have continued anything.
Now, has my team been in a place to actively develop any of those properties that have a participation interest? No.
Could I have retained a real estate industry professional to do it? Sure. But it was not worth

it. It is not.

If you want to talking about a specific property, then that would be helpful.

Q. But for example, in the DLP transaction, you sold those rights at a pretty substantial discount because we were incapable of continuing to do the development work, isn't that right?

A. That is not correct.

The disagreement is that particular property, there would have been a default letter already sent to JMJ Development saying that they were already in default of the development agreement. And from what I have -- from what I have seen, there hasn't been active development of the Marine Creek or Orchard Farms developments, the least at the level required by the contract. And so it was already in breach.

And DLP would not let us continue to execute and it didn't make financial sense. We didn't have the money to hire a developer to do it.

Q. The default letter came after the receivership was imposed, isn't that right?

A. I think the default letter was either the same day or the day after, something like that.

Q. Regarding transfers from the WALL entities to other companies, you talked with Mr. Bernstein a bit

about that, is that right?
A. The transfer from the WALL entities into other companies, yes. Yes, we talked about that.
Q. And you have access to the QuickBooks accounting files of the various receivership entities, isn't that right?
A. We do have access to QuickBooks. We still don't know exactly which iteration of QuickBooks it is that we have. And again, that all has been detailed voluminously in the various filings.
But yes, we now have access through no help from Mr. Barton.
Q. Yes. But a couple of weeks ago you had to produce that to defense counsel so we could take a look at it, isn't that right?
A. We did produce it. It was after --
Q. You are not saying that the Hunton Andrews Kurth law firm is sitting on the QuickBooks files, we had to get it from you, isn't that right?
A. You asked for it and we provided it, yes.
Q. So in those QuickBooks files, there are accounting records for the WALL entities, isn't that right?
A. It would be a better question for my accountants, but yes, I believe that the WALL

entities were in there.
Q. And its managing member, Carnegie Development, LLC, isn't that right?
A. That's correct.
Q. And for JMJ Development, isn't that right?
A. I believe so.
Q. And when funds were transferred out of the WALL entities to Carnegie Development LLC or to other companies, there are notations in those accounting records booking those transfers as inter-company loans, isn't that right?
A. I don't know about every instance, but yes, definitely that happens in the books and it happens frequently, yes.
Q. And -- and those inter-company loans are sitting as assets of the books of the WALL entities, isn't that right?
A. So I actually don't know that. That would be a better question for the accountants. There were several instances where those inter-companies were eventually wiped off or not shown as a liability anymore by some of the different entities.
And I still -- I question the validity of the books altogether because I think they were created towards the end, but that is no --

Q. I see.
You haven't done a full analysis of the documentation of the inter-company loans in the QuickBook records, is that right?
A. I have not done a full analysis. I don't know how much my accountants have looked at it.
I doubt they have done a full analysis because I instructed them -- again, this was an expensive process and we didn't need to do the full every dollar trace to every dollar out.
Q. And you don't dispute that the WALL entities couldn't force those inter-company loans against other companies in the suite of companies that you have seized, isn't that right?
A. I haven't seen any documentation of any inter-company loans. I've not seen any loan documents.
If you are talking about inter-company transfers, I don't know. I have seen no documentation of how those transfers worked other than in the QuickBooks, there are notations that it is an inter-company transaction.
Q. An inter-company loan, correct?
A. So you could ask my accountants. It would probably be better directed towards them. I don't

remember. I just remember seeing "inter-company."
Q. Okay. Let's talk about the tracing exercise a bit.
In many places in your declaration, you talk about commingled funds, right?
A. Correct.
Q. And in many of your tracing examples, you show transfers of funds from JMJ Development, LLC to an onward company, isn't that right?
A. I think that happened in some of the examples, yes.
Q. And JMJ Development, LLC is kind of the main operating entity for the development services that was going on in the Barton family companies, isn't that right?
A. That is fair.
Q. And is it fair to say that the operating assumption in your tracing exercise was that any money spent by JMJ Development, LLC was tainted with lender funds?
A. No. That is not a fair statement of the assumptions we made.
So what we did is we traced WALL investor monies, saw where they flowed in to ultimately end up in an asset. And very often that went through

JMJ. But the analysis was -- follow the tainted funds as they went through and then as they left JMJ.

We weren't so concerned with other sources coming into JMJ, unless the sources came in around the same time. And even then, as I sit here today, I still haven't seen significant independent sources of revenue or capital coming in other than property sales that were already tainted with WALL investor funds.

Q. So it is fair to say in your view any money that JMJ Development spent was tainted with lender funds due to commingling?

A. No.

MR. BERNSTEIN: Objection, your Honor. Asked and answered.

THE COURT: I will allow his answer to stand.

BY MR. EDNEY:

Q. Now, we talked with Mr. Bernstein, or I guess Mr. Bernstein talked about kind of a tracing group and a benefit group of companies.

There is a group of companies that were benefited by lender funds, right?

A. I think it was more me making the distinction

with my categories, yes.
Q. So in your view, in terms of looking where the lender funds went, it would be sufficient for a JMJ employee to assist the company in its work? That would make -- that would make the onward company benefited by lender funds?
A. Is your question is that an example?
Q. Would that be sufficient from your standpoint to, in your view, put a company into the new receivership?
A. So we don't have the situation where that was the only factor that went into whether an entity should be put in the receivership.
Does it go to the question of benefited from if a JMJ employee was paid with WALL investor funds and that employee's sole job, in the instance of the HUD departments, was the development of multifamily apartments? Yes, that is a benefit from.
Fortunately, that is not the only example we have of how the -- the HUD apartments received or benefited from WALL investor funds.
Q. I see.
And that is laid out on page 29 and paragraph 21 of your declaration, is that right?
A. Let me go look. I don't know.

Yes. Those were examples we provided in paragraph 81, lists the employee. And then the other example that we talked about before, about the HUD applications.

Q. Right.

So subparagraph A there talks about having received a benefit because there were employees that were paid by JMJ Management, which you believe is commingled and tainted that benefited the HUD entities, right?

A. So not exactly.

So we traced the payment from -- HR Sterling was the entity that employed Bella Khusol. And for several of the payments made to Bella Khusol, we traced WALL investor funds into HR Sterling and those funds were then used to pay her salary.

So it is not because JMJ itself was tainted; we tied direct investor funds into those payments to her.

Q. And then B, we had employees working at the JMJ offices, which you think was tainted and benefited their work, is that right?

A. So any business usually rents the space where they are in. And so there were costs that -- there wasn't rent, but there were other costs attributed

to officing at the Turtle Creek office. And so, yes, it is true that they -- that the four D4 entities held their offices there and that was a benefit. Because the WALL investor funds were used to pay various electricity bills and various other things at the Turtle Creek office.

Q. And because that helped the employees a bit and the employees helped the HUD properties a bit, the lender funds benefited them, that is your view?

A. No. I would say but for the lender funds paying for that space to be there, for the lights to be held on, these employees would not have been doing this work. They would not have been possible to happen. If you don't have an office, you don't have electricity, you don't have the Internet to do the work they were doing for these entities.

Then the HUD developments would not have occurred, would not have happened, at least through JMJ.

Q. I see.

Generally speaking, you believe that a JMJ employee, who is working in the office at 2999 Turtle Creek, when he or she helps another company, that company has been benefited by lender funds?

That is your general operating principle,

correct?
A. If lender funds were used to pay a mortgage or here, in this instance, to pay electricity, to pay the various costs of the space where they were officing, yes, that is a benefit. Those entities benefited from WALL investor funds.
Q. Which in your view is pretty much all of the time, right?
A. What do you mean "all the time"?
Q. I mean, that office didn't have a month where the electricity bill wasn't paid through lender funds, is that right?
A. So, again, we haven't done the full analysis. We found examples. And so -- again, it would be a very, very, expensive long process to trace every single dollar into every spot.
What I can't tell you -- I don't have any examples, as I sit here, where I saw some independent source that was not tainted with WALL investor funds being used to pay the electricity bill at 2999 Turtle Creek. But I haven't done that analysis.
And could it have happened? Maybe it did. But there were several examples where that is not what happened, it was WALL investor funds.

Q. Well, with my apologies, I return to my previous question.
It is your operating assumption that if a JMJ-related employee worked and assisted another company, that company is now tainted with lender funds?
That's an operating principle of your tracing analysis?
A. No, it is not, for all the reasons I have said a couple times now.
Q. All right.
Let's move to Goldmark Hospitality. And I'll direct you to page 41, paragraph 112 of your declaration.
You have an average appraised value of that property of 4.366 million, is that right?
A. That's correct.
Q. And in your tracing analysis, you conclude $450,000 through several companies in lender funds got into Goldmark Hospitality, is that right?
A. That was the example we provided, yes, as examples.
Q. It is your view, based on your current tracing analysis, that $450,000 of funds into a property worth four and a half million is sufficient to seize

that property, is that right?
A. Well, so we traced additional funds that I talked about, but we have not traced significantly more. But again, our analysis was to go find examples to try to do this in the most economic manner possible.
Q. You don't have other examples, do you?
A. Other than the ones I mentioned before off the top of my head, no.
Q. If I wanted to look at the current state of your examples, I would look at your declaration, is that right?
A. For the examples that we prepared for this declaration, yes. And then I guess my testimony before about the additional examples someone happened to show me yesterday, yes.
Q. That is all the examples that you are putting into evidence at this time, is that right?
A. That is correct, yes.
Q. Let's talk about --
A. Sorry.
I'm parsing words, to be a lawyer. I'm not putting anything in evidence; I'm just talking and answering questions, yes.
Q. Fair enough. Fair enough.

As far as you know, that is the evidence that is being put in through you, is that right?
A. That's correct.
Q. Okay.
I think we got the passive voice correct. Okay.
So let's go to the HUD properties, and I think we see that discussion beginning at page 33.
So there is four big properties there, right?
A. That's correct.
Q. And one of them is Bellwether Ridge, you see at page 33?
A. Correct.
Q. And you are valuing that at about $30 million gross, correct?
A. I don't know off the top of my head, but that is probably right. I can look at the --
Q. If that is the number in there, it is correct?
A. Yes, that's correct. Yes, roughly 30 million prior to accounting for the loans on the property.
Q. And Windmill Farms, at page 35, you are valuing that at about 50 million, correct?
A. Again, prior to accounting for the loans, yes.
Q. And Ingleside, page 36, you are valuing that at about 36 million, correct?

I think that is the number I have.
A. I think the values I have are between 28 and 31.1 million. Now, those were older numbers. And Ingleside is doing better today, so it would be a higher value today.
Q. Do you know how much higher?
A. I do not.
Q. Okay.
A. And I should clarify, I haven't had additional appraisals or valuations done. I just know that there were issues when the valuation was initially done and the property was not performing well. It is performing much better now.
Q. And Opelika, do we have a valuation for that yet?
A. So no, I don't believe so.
It was still in the cost certification process. So we do have the amount of the HUD loan, I think that is listed in here.
But I -- if I have a value, it would be outdated because development has finished in the last -- since I was appointed.
Q. Do you think -- do you think the value is in the range of these others?
A. Not Forney, but similar to Ingleside and

DeSoto, sure.
Q. Okay.
And isn't it true that these properties were constructed almost exclusively through third-party financing from loans guarantied by the Department of Housing and Urban Development and third-party mezzanine financing from Southern Capital Properties?
A. Yes. I think I already testified to that.
Q. And when we go to your tracing examples, we can find those at several exhibits at the back of your declaration, right?
A. Yes. That is correct.
Q. And I showed conclusions, which, of course, I think we disagree with, but conclusions of tracing lender funds into those entities of 25,000, 30,000, and 106,000, depending on which one we are talking about?
A. Sure.
As I already testified, there is no dispute that the vast majority of money came from the HUD loan. And then next to that were the SPC loans, and those numbers are in my declaration. And very little outside funds came into those properties.
Q. But it is your position that the receivership

should be able to seize those properties worth more than $110 million, because of roughly $160,000 of alleged lender funds having temporarily benefited them?

A. So the primary reason these developments exist is because of the HUD loans. And the only reason those HUD loans exist is because in the loan application, it was the properties purchased with WALL investor monies were used to support that.

So as I sit here, yes, I don't believe it is correct -- it would be right for Mr. Barton to get the benefit of these properties. I don't think it would be right for SPC to get the benefit of those properties.

We will find out with this receivership fight from now and then also, if any receivership order is put in place and the SPC or HUD properties are there in the fight with SPC, whether they are ultimately assets of the receivership estate, I hope they are for the sake of the investors. If they are not, that chart we looked at will be vastly different because that is, by far, the most significant value to the receivership estate, are those four properties.

Q. I appreciate your answer, Mr. Thomas.

But my numbers were roughly correct, that these properties are worth in excess of $110 million, and based on the examples here, you have traced about $160,000 worth of lender funds into them, is that right?

A. That's correct.

I couldn't help myself. I'm sorry.

MR. EDNEY: Okay.

I have no further questions for this witness, your Honor. Thank you very much.

THE COURT: Okay. Thank you.

Mr. Bernstein, whether or not we have a round 2, out of the 82 entities that are at issue in Exhibit 34, I understand both sides' argument after round 1 on 78 of them.

There are four of them that I don't yet understand. That is Middlebury Trust, which is No. 46; the Timothy L. Barton Irrevocable Life Insurance, which is entity No. 61; TLB 2012 IRR Trust, entity No. 63. And then the last one is entity No. 66; that is TLB 2020 Trust.

Part of my confusion -- if y'all want to flip with me to page 72 of Mr. Thomas' affidavit.

These four entities are all addressed in paragraph 183. But there is a sentence that I'm

still struggling with.

It says, "I have found evidence of additional trusts controlled by Defendant Barton but to date, I have been able to locate the trust agreements or what assets would be subject to the trust. Accordingly, these would fall within category K."

That is the one I'm wrestling with in terms of lack of clarity. So if there is a round 2, I would love if anyone can give my clarity on that to understand where these entities, 46, 61, 63, and 66 fit with within the group of 82.

MR. BERNSTEIN: Let me try to address that, your Honor, with the witness.

Let me just confirm to your Honor those entities are all on our proposed list of --

THE COURT: That's right. They are all on the second page of two page list. They are 46, 61, 63, and 66.

MR. BERNSTEIN: Got it. Okay.

REDIRECT EXAMINATION

BY MR. BERNSTEIN:

Q. All right.

Mr. Thomas, can you go to paragraph 183 of your declaration?

A. I'm there.
Q. And can you talk a little bit more about why you determined in your declaration that those particular entities would fall within the scope of entities that received a benefit traceable to the WALL offering funds?
A. So sure. I will try to answer this.
I think the ultimate question is, I have it going in category K, which would be the freeze.
Since the time of my declaration, because we have had to prepare the tax returns for the 165 different entities, I would now classify the TLB 2020 Trust and the TLB 2012 IRR Trust back with one of the prior categories about ownership, having ownership of those entities.
If it was up to me, I still don't know what Middlebury Trust or The Timothy L. Barton Irrevocable Life Insurance Trust are.
So to determine how those would be part of the receivership and not part of a freeze order, as I proposed in my declaration, that would be a question for the SEC, maybe Ms. Hahn, or I don't know who prepared your list.
Q. Okay.
A. As I sit here, those two, Middlebury Trust and

the Irrevocable Life Insurance Trust are two entities I have not seen anything on, other than they were controlled by Mr. Barton. So they were on our initial receivership list.

The hard part with all of this, with 165 different entities, I don't know which of the entities hold assets or don't hold assets, and which ones did or didn't receive WALL investor funds until there is a complete forensic accounting. You know, tracing every dollar in to every dollar out.

And like I said, I don't know that it will ever be cost effective to do that. But we have different things that pop up every day. We learn new things about these various entities and what they were used for.

I still haven't, you know, other than one short conversation, I haven't spoken to Mr. Barton and the employees generally don't talk to me. So I don't know -- I'm flying blind with a lot of these entities, which is why here, I said put them category K, put them subject to a freeze order, because who knows what assets they hold.

MR. BERNSTEIN: Okay.

Well, then, subject to me, your Honor, why don't address that with Ms. Hahn, to the extent it

can be addressed. Otherwise, we may propose moving those entities into freeze bucket as opposed to the proposed receivership bucket.

THE COURT: Understood.

BY MR. BERNSTEIN:

Q. And in terms of redirect, I have just one topic I want to address with Mr. Thomas, briefly.

On direct and then on cross, you talked about evaluating the Venus properties for development. You talked about having to manage the Marigold Suites property through the property manager.

And I think sometimes it gets lost in all of the litigation that is going on in this case, all the things that you are having to do on a day-to-day basis to preserve and protect the properties.

So I thought maybe you could give the Court a little more detail on what you are having to do every day to make sure these properties are protected and preserved for the benefit of investors?

A. Sure.

So at the most basic level, we get calls or emails weekly, if not daily, from the lienholders on the properties, asking for updates and threatening to ask the Court to lift the stay. And we have seen

a couple of those filings, even in the last month.

We can kind of go property-by-property. So let's start with the Gillespie Villas, for instance. There is no huge active management. We have keep the lawn mowed. We have received different citations at different points, whether it is because the lawn is not mowed or the deck needed to be fixed. Every property has different little pieces or issues.

In the grand scheme, do the Gillespie Villas take up a ton of time? No. But we still have to -- we had talks about the insurance there at different points.

The TC Hall property is just land that is sitting there. And so all that really entails is mowing it from a day-to-day basis.

But then there is the ultimate, okay, what are we going to do with this property? Is it going to be developed or does it need to be sold?

We have talked about the loans on all of these properties. The math is every month, while we are not paying the interest on these loans, every month if it was just the standard interest rate, there is $165,000 in interest per month that is accruing across all the properties.

If you include the penalty interest that all the lenders are claiming they are owed, or most of the lenders claim they are owed, that number is over $250,000 a month in equity that is deteriorating because of the continuing balances of these loans that are still there.

I'm sorry. I get sidetracked easily when thinking of -- yes, the equity is diminishing.

So for every piece of property we are analyzing, what do we do this? Do we develop it? Do we find -- do we need to sell it now? Is it more beneficial to sit on it?

The job of the receivership isn't to speculate on raw land. And much of the raw land, as far as I can tell, there weren't active plans to develop it or the plans that there were to develop it were not feasible, given the financial situation of what I inherited.

Q. And if it wasn't you making those day-to-day decisions about each of the properties, it would be Mr. Barton, if a receivership was not put in place?

A. If a receivership is not in place, meaning me or some other receiver, that is correct. It would go back to how it was before my appointment, which there was 75 grand in the bank, the properties were

on the verge of foreclosure.

MR. BERNSTEIN: Thank you, Mr. Thomas. I have no further questions.

THE COURT: Any round 2?

MR. EDNEY: Yes, your Honor.

THE COURT: You can proceed.

RECROSS EXAMINATION

BY MR. EDNEY:

Q. Again, thank you for coming, Mr. Thomas. I just have one question.

You said that you were -- you have been contacted almost on a daily basis by the first-secured lienholders on many of these properties, is that right?

A. I said at least weekly. I don't think daily is fair. It is somewhere between daily and weekly, we get contacted by first lienholders, correct.

Q. Have you ever been contacted by any of the Chinese National lenders that the Commission is trying to protect in this case?

A. The investors, yes.

Q. How many?

A. So in receiverships, one of the first things you do, you send out a request for information from investors.

And I don't know exactly how -- as I sit here how many reached out, but it was over 80 have provided information.

Again, I don't want to get into specific numbers. I don't know how many investors total there were and I don't know the total amount that came in.

Six of them, who speak English, I have spoken with probably three or four times, just to give them an update on what is going on. And then I still get emails almost daily asking for updates, not almost daily. I should not have said that.

At least monthly, more than weekly, I get a random email from a Chinese investor asking for an update on the property.

And then there are other equity investors who put money into different properties. Palisades is an example. They put equity into the Turtle Creek property and they also put equity into the Frisco property, so those are going to be creditors.

If the receivership continues, those will be eventual creditors in the receivership, and they are very interested in how the receivership is going.

So I -- I field lots and lots calls and emails from creditors, whether it is investors, secured

lenders, or other lenders.

MR. EDNEY: No further questions.

Thank you.

THE COURT: Thank you Mr. Edney.

Any Round 3, Mr. Bernstein?

MR. BERNSTEIN: No, your Honor.

THE COURT: Okay. Mr. Thomas, you are excused but because you are the receiver, you can still resume your place in the courtroom.

Mr. Bernstein, who's next on the SEC's list?

MR. BERNSTEIN: Next the SEC calls Anthony Cecil.

THE COURT: Okay. You may do so.

Mr. Cecil, you can come on up and approach the witness box. And if you would, raise your right hand; Mr. Frye will swear you in.

(ANTHONY CECIL was duly sworn by the Courtroom Deputy.)

THE COURT: All right. You know my request for some space between questions and answers.

And with that, you can proceed, Mr. Bernstein.

DIRECT EXAMINATION

BY MR. BERNSTEIN:

Q. Mr. Cecil, can you state your full name for the record?

A. It's Anthony Lee Cecil.

Q. Mr. Cecil, has the receiver retained you as one of its accountants in this case?

A. Yes. He retained the company I'm working for at Ahuja & Clark.

Q. And are you a CPA?

A. I am.

Q. Can you provide a very brief overview of your experience to the Court?

A. Yes. I have over 30 years of accounting and forensic accounting experience.

I have worked with Pricewaterhouse and KPMG.

I was the director of special investigations for Allied Mobile and Allied Corporation. They're now Verizon.

And for the last 16 years, I have taught graduate classes at Utica College in financial investigations.

Q. Mr. Cecil, if you go to Exhibit 35 in the notebook in front of you, you will see the declaration and interim report the Receiver

submitted in this case.

Have you reviewed this declaration?

A. I have.

Q. Did you also review bank records and other financial records for the receivership entities?

A. I have.

Q. Did you have a role in preparing the exhibit -- I'm sorry.

Did you have a role in preparing the declaration that appears at Exhibit 35?

A. My role was the exhibit at the end of the declaration as far as the schedule and the visualizations of the exhibits.

Q. Have you determined whether the tracing information and summaries set forth in the declaration are accurate and supported by the financial records?

MR. EDNEY: I'm going to object to this, your Honor, on a couple of grounds.

First of all, if he is an expert, he's a completely undisclosed one. This gentleman was not in the SEC's filings. He did not put a declaration in this case. He's not even identified in the Receiver's filing.

He says, well, I have accountants running

around doing this stuff, but he said -- he said -- nobody said who this guy was. I have -- I have no work papers from him. I have no documents from him.

I asked Mr. Bernstein for the work papers and documents and reliances the accountants he said he was relying on in this case. He didn't say a word about this.

And here, he shows up at the hearing --

THE COURT: So you're practicing your cross-examination. But in a PI posture, what I have to do is listen to him and then say, I will give his testimony the weight to which it is due. So you're going to lay out on cross that it's due no weight.

MR. EDNEY: Correct.

THE COURT: I've got to listen to him.

What's your second objection?

MR. EDNEY: Well, that is essentially it.

You know, he said, you know, this is expert testimony, he's about to provide. He's not been qualified as an expert.

On top of that, your Honor, he's an undisclosed expert. And if I have to cross-examine him today, I will, but I do not --

THE COURT: That is how we do it in the PI setting.

MR. EDNEY: I do want to reserve the right to get a production of the documents on which he's relying and come back and cross-examine him again. They had every opportunity to disclose this man and they didn't do it.

THE COURT: Right.

Just like you had every opportunity to object to their written documents on the record and did not. So I will hear what he has to say today and you do what you need to do.

Okay. You can proceed, Mr. Bernstein.

MR. BERNSTEIN: Thank you, your Honor.

BY MR. BERNSTEIN:

Q. Mr. Cecil, have you determined whether the tracing information and summaries set forth in the declaration that appears at Exhibit 35 are accurate and supported by the financial records?

A. I have.

Q. And what was your conclusion?

A. That they were accurate as presented in the declaration from the Receiver.

Q. Mr. Cecil, have you also had the opportunity to review the reports submitted by Mr. Barton's retained accountant, Gregg Ginn?

A. I have.

Q. In that report, Mr. Ginn makes some statements about whether there was commingling in this case.
Do you recall that?
A. Yes, I do.
Q. Did you observe commingling in the financial records?
A. I did.
Q. Based on your experience, how would you characterize the scale of commingling?
A. Yeah. Over my 30 years in doing investigative work, it was pretty extensive. The movement of the funds going from different entities on the same day and the same amount.
Q. Mr. Ginn's report also includes some statements about whether the tracing methodology used in this case complies with accepted accounting standards.
Do you recall that?
A. I do.
Q. Do you know whether professional accounting standards, such as GAAP or GAAS apply to the tracing summaries provided by the Receiver and Ms. Hahn in this case?
A. I'm not aware of any standards which specifically direct the tracing.
Q. All right.

Mr. Ginn also raises the lowest intermediate balance method in his report, correct?
A. Correct.
Q. Does that method apply here?
A. I do not believe so.
Q. Why not?
A. Because that is more -- the method that he -- that accountant is referring to is more for -- that it has been approved in the Court for final distribution of creditor\funds and investor funds.
In this particular case, we had a very limited role of finding examples and tracing that money through the bank statements.
And the way that we did it was great because we didn't have to worry about assumptions or estimates. We took the exact amount of the balance on any particular day and followed it through on the ending day.
So we used the beginning balance and ending balance just to guide us.
Q. And so to be clear, was it necessary to use the lowest intermediate balance method or any other similar method to show tracing of inventor fund or benefits to the Barton-controlled entities?
A. No.

Q. Again, explain why not.
A. Again, that method, the methodology that was spoken in the declaration from Mr. Ginn was based on the final payout to investors and creditors.
This is for -- the examples that we came up with were we used the actual third-party bank records and flowed the money through different accounts.
Q. Were any estimates used in the tracing examples set forth in the Receiver's declaration?
A. No.
Q. So you did not need to use an estimating methodology?
A. That is correct.
Q. Mr. Ginn also talks about the source of funds.
Do you recall that?
A. I do.
Q. In addition to investor funds, were some potentially non-investor funds also deposited in WALL entity and JMJ Development accounts?
A. Based on the Ginn report, I did see that he redacted the investors and leaving the non-investors, and I looked at that and saw there was Carnegie Development, some other lenders.
And so I did see what they considered non-WALL

investors.

Q. Did the fact that there were potentially other sources of funds deposited into the WALL entity and JMJ Development accounts prevent the Receiver or you from performing the tracing that is set forth in the declaration?

A. No, it did not.

Q. Why not?

A. Because we could actually trace the funds coming into WALL entities into the non-WALL entities. We didn't need to know, where the deposits came from.

And then one point about the -- the non- -- the deposits that didn't come from the Chinese investors, it's difficult to tell because we have not done a full accounting, if that money was a circular, meaning that it went out, came back in or if the collateral used for the lender was from -- initially from the WALL entities or WALL investors.

So that analysis hasn't been done yet on that.

MR. BERNSTEIN: Thank you, Mr. Cecil.

No further questions.

THE COURT: All right.

Mr. Edney, you can proceed with the witness.

MR. EDNEY: Thank you, your Honor.

CROSS-EXAMINATION

BY MR. EDNEY:

Q. Mr. Cecil, I'm Michael Edney. I represent the Defendant in this matter.

Mr. Cecil, do you have Mr. Thomas' declaration up there in that notebook?

A. I should. You'd just have to tell me what exhibit.

Q. Perhaps -- I don't know where it is in the notebook.

MR. GIBBONI: I believe it is 35.

BY MR. EDNEY:

Q. Yes, I believe it is tab number 35.

A. Thirty-five. Okay. Yes.

That is the Receiver's declaration?

Q. Yes.

A. Okay. Sure.

Q. Is there a declaration from you, Mr. Cecil, anywhere in his declaration or attached to it?

A. No, it is not.

Q. Have you ever put together a declaration for purposes of this case?

A. I have not.

Q. Were you -- are you aware that Mr. Ginn's

declaration was filed last Monday?
A. I'm aware that it was filed because I read it.
Q. Fair enough.
And are you aware that the Securities & Exchange Commission had an opportunity to file a reply brief in this case on Monday of this week?
A. I'm not.
Q. And were you asked to put together a declaration rebutting Mr. Ginn's conclusions in connection with that reply brief?
A. I was not.
Q. Are you the person that put together these examples that are attached to Mr. Thomas' declaration?
A. I am. It was a team of us, but I was helping in the project.
Q. I read this thing pretty carefully, Mr. Cecil.
I didn't see your name in this declaration anywhere. Is it?
A. I don't believe so. I was...
Q. Would I have any idea who you are other than your name being disclosed as a potential witness on Friday night?
A. I can't speak to that.
Q. Okay.

In putting together these -- just to be clear, your work primarily focused on putting together the tracing examples between Exhibits 3 and -- what is it -- 27?

Yes. Three and 27.

That is your work product, is that right?

A. Yes. I had some other people that were helping me as well. Yes, that is correct.

Q. Who were those people?

A. They were accountants for Ahuja & Clark, that worked for Ahuja & Clark.

Q. Okay. And in putting together these examples, did you have -- did you put together any accounting work papers?

A. Yes.

Q. All right.

So this is kind of the final product encapsulating your conclusions, right?

A. That's correct.

Q. But there are work papers underlying that, correct?

A. Yes.

Q. And have you produced those work papers to the Defendant?

A. I have not.

Q. Have you produced them to the Commission?
A. I have not.
Q. But you have them, is that right?
A. Yes.
Q. Does Mr. Thomas have them?
A. You know, he has the -- the various schedules that we provided back and forth.
Q. And you have a -- in reaching the conclusions you have in here, you presumably relied on a series of primary source documents, is that right?
A. Yes. Bank records.
Q. And you have those documents assembled someplace, is that correct?
A. That's correct.
Q. And have you produced those documents to the Defendant?
A. I have not.
Q. Have you produced those documents to the Commission?
A. I have not.
Q. Have you produced those documents to Mr. Thomas?
A. I believe we have.
Q. Okay.
THE COURT: Hold on.

MR. THOMAS: To save some time, the documents we produced to you all are the documents that we gave to him, so they've all been produced.

The documents he has are the same documents we gave you, the bank records, the QuickBooks files.

MR. EDNEY: I see.

BY MR. EDNEY:

Q. So he gave you a set of documents, correct?

A. Oh, right, from the beginning.

Q. And then you have a set of documents that you selected that you relied upon for your opinion, right?

A. There is a set of documents, bank records that I have relied upon, yes.

Q. And you have maintained that set of documents that you relied upon for your opinion?

A. That's correct.

MR. BERNSTEIN: Objection to the characterization, your Honor.

He's not been offered an expert witness or provided expert opinions in this case. He's just testifying about the declaration and as a fact witness.

THE COURT: I understand your view, but I

will let him answer the question.

THE WITNESS: I'm sorry. What was question again, please?

BY MR. EDNEY:

Q. I believe the question was, you maintained a set of -- a subset of the documents that you were provided by Mr. Thomas that you have relied on to reach the -- well, I don't know, maybe the wrong word is "opinions," but to help you put together these exhibits, correct?

A. Correct. Correct.

Q. Okay.

You talked about your observations of extensive commingling of assets between the WALL entities and, for example, JMJ Development?

A. Right.

Q. From a tracing perspective, do you think there is any need to determine whether JMJ Development was spending lender funds or funds unrelated to lender funds?

A. Well, we could see the tracing coming in from the non- -- the WALL entities into the JMJ and Carnegie Development. It would come into Carnegie and then go into JMJ and then go out from JMJ.

Q. But in light of the commingling that you talked

about as a matter of tracing, you don't think there is really any need to separate potential funds that aren't commingled -- those aren't -- I'm sorry -- that aren't derivative lender funds and funds that are, is that right?

A. Well, we -- what we looked at was looking at the funds coming from the WALL bank accounts.

Q. Okay.

Let's look at Mr. Thomas' Exhibit 7 -- I'm sorry -- 6. I think you can find this at page 125.

A. It's in Exhibit 6?

Q. You know what, it is not Exhibit 6.

I apologize.

I was right the first time. It is Exhibit 4.

This is a -- this is an exhibit claiming the tracing of funds into FHC Acquisitions, LLC, is that right?

A. Correct.

Q. And that asserts that $168,000 in funds related to the loan proceeds in question were transferred into FHC Acquisition, LLC, correct?

A. Correct.

Q. Do you know what the purchase FHC Acquisition, LLC is?

A. I don't have that understanding, no.

Q. Okay.
You've got an asterisk at the right end next to the date 3/29/22.
Do you see that?
A. Unfortunately, mine is cut off. I don't have an asterisk.
Q. Oh, yes. I noticed that. I noticed that the Commission's copy got a little -- I tell you what, you can have mine.
MR. EDNEY: Is that all right, your Honor?
THE COURT: You may.
MR. EDNEY: Do you have it, your Honor?
THE COURT: No. I think mine may have the same flaw that yours has.
MR. BERNSTEIN: Your Honor, I apologize. But I think when it was printed on ECF, some of these were getting cut off, but we do have other copies of the declaration.
MR. EDNEY: May I approach, your Honor?
THE COURT: You may.
BY MR. EDNEY:
Q. I have given away all of my paper. Let's see if I can get a copy.
Anyways, by memory, that asterisk suggests that in the days preceding 3/29/2018, was it? Is that

right?
A. This was 3/14/2022. It is between 3/14 and 3/24/22.
Q. The last date on there is what?
A. March 29th.
Q. On the right side, the destination date.
A. Right. The last date of 3/29/2022.
MR. EDNEY: Do we have a copy of this, folks?
MR. GIBBONI: I'm sorry?
MR. EDNEY: Do we have copy for me?
MR. GIBBONI: I don't think we have any more copies, unfortunately. I have given away all of our copies.
THE COURT: I have got a copy up here. Thank you.
BY MR. EDNEY:
Q. Yes. 3/29/22. Correct. That last date on the right?
A. Correct.
Q. And this asterisk down there says that there were several other deposits into the Broadview Holdings accounts between 3/24/22 and 3/29/22; one of them was for $2 and a half million.
Do you see that?

A. Yes.
Q. Was any effort made to account for the origins of those deposits and whether they were obtained by lender funds?
A. I cannot -- off the top of my head on this one, but I recall that there were some other -- other -- it may have been represented in another exhibit where that -- where that 2.5 million was.
Q. If there was a conclusion that those other deposits that are not reflected in the nifty diagram above were tainted by lender funds, it is not present here on this exhibit, is that right?
A. Let me take a couple of minutes to look at it.
Q. Sure.
A. All right.
So what was the question again?
Q. If a conclusion was reached about the other deposits reflected in that asterisk footnote, that they were derivative of subject lender funds, that conclusion is not present on this exhibit, is that right?
A. That's correct.
MR. EDNEY: Your Honor, I don't have any more questions for Mr. Cecil at this time. But for the record, I do reserve the right to ask the

Commission to produce his work papers and documents in reliance and to reopen of this cross-examination at the appropriate time.

THE COURT: I understand your argument. Thank you.

MR. EDNEY: Thank you, your Honor.

THE COURT: Any round 2 for the witness, Mr. Bernstein?

MR. BERNSTEIN: Nothing further, your Honor.

THE COURT: That means you are excused from the stand. Thank you for your testimony.

Okay. Next witness.

MR. BERNSTEIN: Your Honor, the SEC calls Carol Hahn.

THE COURT: All right. You may do so.

(The witness entered the courtroom.)

THE COURT: Ms. Hahn, if you could raise your right hand.

(CAROL HAHN was duly sworn by the Courtroom Deputy.)

THE COURT: Okay. You know my request for space between questions and answers, so with that, you can proceed, Mr. Bernstein.

DIRECT EXAMINATION

BY MR. BERNSTEIN:

Q. Ms. Hahn, can you please state your full name for the record?

A. Carol Hahn.

Q. And Ms. Hahn, are you currently employed as a staff accountant at the SEC?

A. Yes.

Q. How long have you worked at the SEC?

A. Since 2005.

Q. And Ms. Hahn, where did you go to school?

A. I went to Texas A & M University, and I received a bachelor's degree in economics.

Q. Briefly, what did you do after school before joining the SEC?

A. I worked for several large banks as an analyst. And then I worked for the Department of Navy as an analyst. And then I went to work for the FDIC, the Federal Deposit Insurance Corporation, as a bank examiner. And then I came to the SEC.

Q. Are you a certified fraud examiner?

A. Yes.

Q. What are your responsibilities as a staff accountant for the SEC?

A. I participate in investigations of public and

non-public companies. I review and summarize financial records. I trace financial transactions to determine sources and uses of investor funds as shown in bank records.

Q. Did you analyze and summarize financial property and other business records in connection with this case?

A. Yes.

Q. Did you prepare a declaration and supplemental declaration that have been filed with this Court?

A. Yes.

Q. Did those declarations, with attachments, appear at Exhibits 1 through 3 and 32 through 34 of the notebook in front of you?

A. Just one second.

Yes.

Q. Does your declaration, as supplemented, accurately set forth a summary of the financial and other records you reviewed in connection with this matter?

A. Yes.

Q. Could you please go to your original declaration, which is Exhibit 1 in the notebook.

At paragraph 14 of Exhibit 1, did you summarize the amount of funds that the Defendants raised from

investors in the WALL entity offerings?
A. Yes.
Q. How did you do that?
A. I took investor loan agreements and other investment-related documentation, including email correspondence, and then tied that back to amounts in the bank records.
Q. Does paragraph 14 of your original declaration show the results of your summary?
A. Yes.
Q. What was the total amount of investor funds raised in the WALL offerings?
A. Approximately 26.3 million.
Q. Can you now go to paragraph 16 of your original declaration?
A. Okay.
Q. Did you also summarize how investor funds raised in the WALL entity offerings were used?
A. Yes.
Q. How did you go about doing that?
A. So I took the bank records and identified investor deposits and then I scheduled out expenses and classified those, based on information in the bank records and other company or title company record information.

And then I traced the flow of funds to see how they were used.
Q. Did you determine whether the WALL entities used investor funds to purchase the properties described in the respective loan agreements with investors?
A. They did not. There were two instances that I talk about in my original declaration, where two of the WALL entities purchased their respective properties, but they did not do so using the majority of their own investor funds.
Q. And in all other instances, the properties weren't purchased by WALL entities at all, is that correct?
A. That's correct.
Q. Can you go to paragraphs 26 through 29 of your original declaration?
A. Okay.
Q. Ms. Hahn, did you also summarize how Mr. Barton used investor funds?
A. Yes.
Q. Did those expenditures fall into different categories?
A. They did.
Q. What were those categories?

A. Investor funds were used for other non-WALL entity Barton-controlled entities, properties, investments, personal expenses for Mr. Barton and his family, commission payments, political contributions, Ponzi payments.
Q. And does your declaration address these uses of funds in more detail?
A. Yes.
Q. Can you go now to Exhibit A to your original declaration, which is Exhibit 2 in the notebook?
A. Okay.
Q. What does Exhibit A show?
A. This was an example showing the commingling of -- and transfer of investor funds.
So we have WALL investor funds going to a WALL entity, transferred to Carnegie Development and then transferred to JMJ Development, where they were, in one instance, wired to a different Barton-controlled entity. And then, also, wired to a title company to purchase a property in the name of a non-WALL entity.
The second part of this exhibit shows that the WALL entity inventor funds were transferred from a WALL entity account, again through Carnegie Development. This time to a different WALL entity

bank account where, in part, they were used to make Ponzi payments.
Q. Is this an example of the types of transactions you saw in the financial records?
A. Yes.
Q. Did you encounter commingling in your review of the financial records?
A. Yes.
Q. Based on your experience as a SEC staff accountant, how did that commingling compare in scale to other matters you have worked on?
A. The commingling was extensive and so were the transfers between other Barton-controlled entities.
Q. Going back to your original declaration at Exhibit 1, did you also analyze and summarize business records relating to the property purchase prices set forth in the loan agreements with investors?
A. Yes.
Q. Did you then analyze records for actual contracts for sale for certain of the subject properties that were entered into before the investor loan agreements?
A. Yes.
Q. Did those records show purchase prices in the

loan agreements with investors that were higher than the actual contracted purchase prices?
A. Yes.
Q. And did you create a chart addressing that issue at paragraph 32 of your original declaration?
A. I did.
Q. All right. Ms. Hahn, I want to talk to you now about the potential receivership entities.
Did you also analyze and summarize financial property and other business records to determine whether Mr. Barton's controlled entities received or benefited from investor funds?
A. Yes, I did.
Q. Were those records voluminous?
A. Yes.
Q. Have those records been made available to Mr. Barton?
A. Yes.
Q. Can you go now to Exhibit A of your supplemental declaration, which is Exhibit 33 in the notebook.
A. Okay.
Q. Ms. Hahn, what is this exhibit?
A. This is a summary showing Barton-controlled entities that received or benefited from investor

funds.
Q. Was Exhibit A derived from the records you reviewed and made available to Mr. Barton?
A. Yes.
Q. What steps did you take to review and summarize the information on Exhibit A?
A. So mainly, I referenced the analysis I did last year, before we filed, which was to take the bank records, identify investor deposits and then trace those investor funds through the bank accounts to see how they were used.
And due to extensive transfers in, commingling, I typically looked at transactions where either there were only investor funds involved, where the beginning account balance was insufficient to make a transfer without using investor funds, which would include the beginning account balance comprised of investor funds as well, or where there was a matching transfer to an amount of investor funds that were transferred in.
Q. And Ms. Hahn, did you make any estimates in preparing your summaries at Exhibit A?
A. No.
Q. Did you apply any specialized methodologies to prepare your summaries?

A. No.
Q. Can you walk the Court through an example on Exhibit A where you determined that a Barton-controlled entity received or benefited from investor funds?
MR. EDNEY: Your Honor, I'm going to object to this line of questioning.
Our position is that these tracing conclusions require expert testimony. She's not being offered as an expert and is incompetent to make them.
THE COURT: I understand. I will give it the weight to which it is due. Thank you.
You can proceed.
THE WITNESS: Okay. We could look at No. 2 on my Exhibit A.
This is just a summary showing that on November 27th, 2018, there was 1,440,000 that was transferred from WALL017's bank account, which was WALL017 investor funds, to Carnegie Development.
Also on the same date, 60,000 of WALL016's investor funds were transferred to WALL016's bank account to Carnegie Development.
And then on the same date, there was 500,000 transferred from JMJAV.

And then on that same date, November 27th, 2018, 2 million was wired to a title company for the purchase of 118.34 acres of the Bear Creek Ranch property by BM318.

BY MR. BERNSTEIN:

Q. And do the other entries on your exhibit follow a similar format?

A. Yes.

Q. Does Exhibit A show every instance where the entities listed on Exhibit A received or benefited from investor funds?

A. No.

Q. Why not?

A. The transactions in some cases were voluminous and I just thought that it would not be helpful to show all of them.

Q. Did your summaries include -- so we have been talking a lot about investor funds.

Did your summaries include any benefits in addition to the investor funds themselves?

A. Yes.

I also included loan proceeds from loans secured either by a WALL entity property or by a property purchased with WALL investor funds.

Q. Ms. Hahn, have you reviewed the report from

Mr. Ginn that the Defendant submitted in this case?
A. Yes.
Q. Why did you not use the lowest intermediate balance method or some other similar methodology for your summaries?
MR. EDNEY: Objection on the same grounds, your Honor.
THE COURT: All right. I will let her answer. I will give it the weight to which it is due.
THE WITNESS: I wasn't trying to estimate amount of commingling funds that attributed to investor funds or some other source. I was trying to show situations where investor funds were sent to a Barton-controlled entity.
BY MR. BERNSTEIN:
Q. Did some of the WALL entity accounts and JMJ Development accounts receive funds other than investor funds?
A. Yes.
Q. Did you review the bank records to determine the source of those funds?
A. Yes.
Q. Can you give some examples of what the other sources of funds were?

A. There could have been title company proceeds. There was -- I know there was at least a couple of transfers into WALL entity accounts from another Barton-controlled account that investor funds had been transferred out to that entity the day prior and then transferred back in a subsequent day.
Q. Ms. Hahn, did the fact that funds from other sources were potentially deposited in the WALL entity and JMJ Development accounts prevent you from performing your tracing analysis?
MR. EDNEY: Objection on the same grounds, your Honor.
THE COURT: I will give it the weight to which it is due.
You can answer.
THE WITNESS: No, for the reasons I stated previously for the things that I considered when tracing investor funds through the bank accounts.
BY MR. BERNSTEIN:
Q. All right.
Ms. Hahn, can we go now to Exhibit 35, which is the Receiver's declaration?
A. Okay.
Q. Have you reviewed the Receiver's declaration?
A. Yes.

Q. Did you determine whether the Receiver's analysis of the properties that appear on your Exhibit A is consistent with your analysis?

MR. EDNEY: Objection on the same grounds, your Honor.

THE COURT: I will give it the weight to which it is due.

You can answer.

THE WITNESS: I believe it is comparable, yes. But his is more comprehensive and contains more recent transactions than mine.

BY MR. BERNSTEIN:

Q. Does the Receiver identify entities that received or benefited from investor funds that do not appear on your Exhibit A?

A. Yes.

Q. Do you know why that is the case?

A. I believe because they had additional or more updated records than I did.

Q. Have you now received those records from the Receiver?

A. Yes. We recently received those records.

Q. And you received them at the same time Mr. Barton's counsel did?

A. I believe so.

Q. And have you had an opportunity to analyze those additional records yet?
A. That is currently in process.
Q. So what is the current status of your tracing efforts?
A. It is ongoing.
Q. If you were provided additional time, do you believe it is likely that you would be able to identify additional Barton-controlled entities that received assets or benefits traceable to the WALL entity offerings?
A. Yes, I believe so.
MR. BERNSTEIN: We pass the witness, your Honor.
THE COURT: Thank you, Mr. Bernstein.
All right. Mr. Edney, you can proceed when you are ready.
MR. EDNEY: Thank you, your Honor.

CROSS-EXAMINATION

BY MR. EDNEY:
Q. Good afternoon, Ms. Hahn.
My name is Michael Edney. I represent the Defendant in this matter. Thank you very much for being here.
A. Good afternoon.

Q. I want to begin with some general questions about your tracing analysis.
Did you come up with any conclusions about whether companies that are proposed to be put in the receivership estate have the proceeds of the loans in question?
A. No.
Q. You didn't make any conclusions about that?
A. I merely showed what the bank records showed, that they received investor funds or a benefit from investor funds.
Q. You believe you demonstrated that through your exhibit, is that right?
A. That's correct.
Q. But you reached no conclusion about whether that's actually happened, is that right?
A. No. I didn't offer up any sort of conclusion other than to show what I believe happened based on the bank records and also title company documentation and some company records, email correspondence.
Q. I mean, to use your verb, did your work in showing that loan proceeds ended up in various companies required specialized knowledge in asset tracing?

A. No.
Q. Do you have specialized knowledge in asset tracing?
A. I do not.
Q. How about in structured transactions?
A. No.
Q. Does it require a specialized knowledge in cash flow analysis?
A. No.
Q. You are a certified public accountant, aren't you?
A. I am not.
Q. Are you an accountant?
A. My title is staff accountant.
Q. Do you have training in accountancy?
A. I have schooling in taking accounting classes, but when it comes to tracing financial transactions through the bank records, there is no specialized knowledge required for that.
Q. That is your opinion, right?
A. That's correct.
Q. Okay.
I want to take you to your supplemental declaration, which is from earlier in September, which I believe you have in front of you.

Could you turn to it, please.

Perhaps if we can turn to page 3, paragraph 4, which reads as follows:

"In my first declaration I provided a list of Barton-controlled entities in addition to the WALL entities, JMJ Development, JMJ Hospitality, and JMJAV that received investor funds, real property interest purchased, at least in part with investor funds, or owned property interest, they were improved with or otherwise have benefited from the use of investor funds."

Have I read that correctly?

A. Yes.

Q. So in your first declaration, you provided a list of entities to which you traced to investor funds that were in addition to the nine WALL entities in those three other companies you identified there, correct?

A. Yes. I believe so. I would have to look back at it.

Q. And then in -- in the next paragraph, paragraph 5, you say, as follows:

"Exhibit A attached hereto provides further detail about the assets and benefits these entities received and also includes additional entities not

identified in my first declaration."

Do you see that?

A. Yes.

Q. And if we go to your Exhibit A, we have 25 tracing entities, is that right?

A. Yes.

Q. And I believe some of the entries make assertions about more than one company, so at least 25 tracing entities, cover approximately 28 companies, does that sound about right?

A. It looks to be 29 to me.

Q. Twenty-nine, okay.

So with the -- with those 29 entities in Exhibit A, the nine WALL entities and then those three other companies you mentioned in the third paragraph of your -- the fourth paragraph, rather, of your declaration, that is JMJ Development, JMJ Hospitality, and JMJAV, that is the universe of entities into which you've traced lender assets, is that right?

A. Yes.

Q. But there aren't any others, correct?

A. Not that I have presented here.

And there may be -- and there is other transactions for these entities, and there are some

subsequent entities I have identified in my more recent review of documents the Receiver has provided to us. But I don't have that information in front of me to discuss those entities.

So, yes, at the time that I submitted this exhibit, yes, that would be all the entities.

Q. All right.

Those are the entities on which you are presenting evidence today on behalf of the Commission, is that right?

A. Yes.

Q. And then, in paragraph 6, you have a discussion of the entities beyond those entities that we've just identified.

At the end you say, as a result of the issues that you identified in this paragraph, "The Commission cannot yet confirm whether additional Barton-controlled entities received or otherwise benefited from Barton's alleged fraudulent activities that are the subject of this litigation," right?

A. Yes.

Q. So that is the Commission's conclusion as to entities that are not listed, that are not the WALL entities, not the three entities listed in paragraph

4, and not the entities listed on Exhibit A, is that right?
A. Right.
Q. The Commission is seeking a receivership to be imposed over 82 entities, isn't that correct?
A. I don't have a number in front of me.
Q. Well, could you turn to Exhibit B of your supplemental declaration?
A. Yes.
Q. That lists the proposed receivership entities, right?
A. Yes. Eighty-two.
Q. So they are seeking receivership over 82, is that correct?
A. Yes.
Q. All right.
MR. EDNEY: I'm going to hand to you and the Court, if I may approach.
THE COURT: You may.
MR. EDNEY: Defense Exhibit A to this proceeding.
THE COURT: Are you moving for its admission or are you waiting for --
MR. EDNEY: Not quite yet. I'm laying a foundation, your Honor.

THE COURT: I understand.

BY MR. EDNEY:

Q. Okay.

I have handed you a list of -- I have handed you a list of approximately 42 entities over which the Commission is seeking a receivership in this matter but are not listed in paragraph 3 of your declaration or on Exhibit A.

These are the entities for which the Commission, to quote your words, "cannot yet confirm whether additional Barton-controlled entities received or otherwise benefited from Barton's alleged fraudulent activities that are the subject of this litigation," isn't that right?

A. Essentially, no, that is not correct.

If you look at -- on the exhibit you just handed me, item or entity No. 16, JMJ Development, LLC, in my supplemental declaration, paragraph 4, I do discuss that JMJ Development actually received WALL investor funds direct into the JMJ Development account, as well as item number 17, JMJ Hospitality, as well as No. 19, JMJAV, which is listed in paragraph No. 4 and also shown on my Exhibit A as item No. 14.

Q. Do you see any others?

A. I don't know. Give me just one moment.
Q. Sure.
A. I don't believe so.
Q. Okay.
So if we made those three edits, the exhibit would be accurate?
A. Yes, I believe so.
MR. EDNEY: Your Honor, I move the admission of that exhibit as informed by Mr. Hahn's editorial testimony.
MR. BERNSTEIN: No objection, your Honor.
THE COURT: Okay. It's admitted for this proceeding.
You can proceed.
MR. EDNEY: Thank you, your Honor.
(The referred-to document was admitted into Evidence as Defendant's Exhibit A.)
BY MR. EDNEY:
Q. Now, for the entities on Defense Exhibit A, minus the three that you identified, would it be fair to say the following: Because the Commission believes that Barton has engaged in extensive commingling of funds, Barton's control of these entities is an effective proxy for placing an entity into receivership, even if the Commission has not

yet traced lender funds into that entity?
A. I'm sorry. Could you repeat that?
Q. Sure.
For the entities on that exhibit, minus the three that you identified, is it fair to describe the Commission's position as the following: Because the Commission believes Barton has engaged in extensive commingling of funds, Barton's control is an effective proxy for placing an entity into receivership, even if the Commission has not yet traced lender funds into that entity?
MR. BERNSTEIN: Objection, your Honor.
We object to him having this fact witnesses characterize what the Commission's position is on these issues. She's testifying as to her factual summary of the bank records.
THE COURT: Understood.
If you are not pulling her up as a corporate representative, then I can't hold her to binding the Commission.
You can rephrase it, if you want to.
MR. EDNEY: All right.
BY MR. EDNEY:
Q. Would it be your position, Ms. Hahn, that because you believe Mr. Barton engaged in extensive

commingling, that the companies on that list are appropriate for receivership even though the Commission has not yet traced lender funds into those entities?

MR. BERNSTEIN: Objection, your Honor.

THE COURT: Basis?

MR. BERNSTEIN: Her opinion or position is not relevant to these proceedings. She's testifying as a fact witnesses about her factual summary of the bank records.

THE COURT: I will let her answer, if she's got personal knowledge.

If you do, you can answer.

THE WITNESS: I don't know.

I think, first, some of these entities, we definitely relied on work that the Receiver did to show investor funds and benefit received by entities.

I would have to go through these and look of them.

BY MR. EDNEY:

Q. But one of the reasons that you haven't completed tracing in these other entities is because your view of extensive commingling has made it difficult, is that right?

A. No. I think it is more a lack of additional records and updated records.
Q. That is one of the reasons you state in paragraph 6 of your supplemental declaration of why the Commission has not completed tracing analysis into these entities, is that right?
A. Yes, I do state that.
Q. Okay.
Let me turn your attention to page 10 of your original declaration, which I believe Mr. Bernstein put in front of you.
Can you turn to it, please?
A. What exhibit was that again?
What exhibit was that?
Q. Hang on a second. Let me look...
So Mr. Bernstein talked to you a bit about this.
A. I have it.
Q. Your conclusions that commingled investor funds not spent to acquire WALL entities were used by Mr. Barton for various purposes here, including paying, you know, various credit cards and personal expenses and making political contributions, and things of that nature.
Do you see that?

A. Yes.
Q. Those expenses were generally paid by JMJ Development, LLC, is that right?
A. I would have to go back to confirm, but I believe that it would have been paid by WALL investor funds that would have been transferred into JMJ Development, whether through Carnegie first or directly into JMJ Development.
Q. I see.
And your view is that JMJ Development, LLC just turned into a commingled pot of lender funds and JMJ Development funds, is that right?
A. That is not correct.
Q. What is your view?
A. I believe there were WALL investor funds and loan proceeds that were secured by a WALL entity property or a property purchased with WALL investor funds that came into the JMJ Development account. And then those funds were then used in these various ways I list here.
Q. They were commingled with other funds and used in these various ways, is that right?
A. A lot of times, yes.
Q. I see.
In your view, was any money spent by JMJ

Development, LLC an expenditure of lender funds?
A. Can you repeat that?
Q. In your view, was any money spent by JMJ Development, LLC an expenditure of lender funds?
A. Are you talking about investor funds?
Q. Well, I call them lender funds, you call them investor funds.
A. So you are asking if any expense out of the JMJ Development account was from WALL investor funds?
Q. Let me ask this question a different way.
In order to reach the conclusion on paragraph 27, did you engage in a tracing exercise or did you just determine that JMJ Development, LLC spent this money?
A. I traced investor funds through all the bank accounts that they would have transferred to, to see how they were used.
Q. Straight down to these uses, is that right?
A. Yes.
So as I said, in No. 27, it would have been commingled investor funds because a lot of times there were other funds that might have been present, whether a beginning balance on a particular date or transferred in on the same day. But the majority of the funds would have been WALL investor funds or the

loan proceeds.
Q. And this tracing exercise you refer to, is this documented in any way other than in your conclusions in this declaration?
A. No, it's not documented anywhere.
Q. Okay.
There is no document you should look to, to show your work on this?
A. Are you asking me if I have work papers?
Q. Yes.
A. Yes, I have work papers.
Q. And to the best of your knowledge, have those been produced to the Defendant?
A. I don't believe so.
Q. Okay.
You believe that your tracing analysis would benefit from more time, is that right?
A. Yes.
Q. Prior to the initiation of this case, did the Commission obtain bank records for many of the subject companies that are at issue here?
A. Yes.
Q. And that was more than a year ago, isn't that right?
A. I don't remember the date they were obtained.

Q. Has this case been pending for more than a year?
A. Yes.
Q. And you obtained those bank records before this case started, isn't that right?
A. I don't know that to be true.
Q. I see.
Do you know that this original declaration that you -- that you put into evidence in this case was -- was issued three days after this case was initiated in September of 2022?
As a matter of fact, it is dated September 26th, 2022.
Do you see that?
A. I do not.
Q. The original declaration.
A. It is dated September 23rd, 2022.
Q. And it was filed with the Court on September 26th.
Do you see that?
A. No.
Where is that?
Q. Okay. It is on my copy, which I would be happy to share with you.
So it was executed in September 2022, isn't

that right, Ms. Hahn?
A. My declaration was executed in September 2022.
Q. Okay. Let me get to the main point.
That was more than a year ago, right?
A. That's correct.
Q. And you had the bank records that form the basis of your tracing analysis more than a year ago, isn't that right?
A. We had some of the bank records, yes. The Receiver was able to obtain updated and additional bank records.
Q. And when were those shared with you?
A. I believe it was about three weeks ago.
Q. And when did you ask for them?
A. I don't know. I didn't ask for them.
Q. I see.
And did -- and did Mr. Barton sit for an interview with Commission staff prior to the initiation of this case?
A. Can I ask what you mean "prior to the initiation of this case"?
Q. Prior to September of 2022.
A. Yes, he did.
Q. And you participated in those interviews, is that right?

A. Not all of them, no.
Q. But in at least one of them, correct?
A. I believe at least one, yes.
Q. And you asked Mr. Barton questions, didn't you?
A. Yes.
MR. EDNEY: I have no further questions of this witness.
Thank you, your Honor.
THE COURT: Okay. I am going to ask if we can take a break.
Do you have a round 2 with this witness?
MR. BERNSTEIN: If any, it will be very brief, your Honor.
THE COURT: Okay. I'll just ask you to not talk to anyone about the case during the 10-minute break, and then well come back and resume round 2 of your testimony.
THE COURT SECURITY OFFICER: All rise.
(Recess.)
THE COURT SECURITY OFFICER: All rise.
THE COURT: Thank you.
You can be seated.
Okay. I'm trying to think about where we stand as far as time calculations go.
Okay. I can give my rough numbers for

now. Mr. Frye is putting pen to paper.

But I had 61 minutes of 90 that the SEC has used and 29 left. And then I don't have it -- I have your total as 50, before we finished the last witness and so I need to do the math on that. So it's 50 plus the last witness, the cross on Hahn.

MR. EDNEY: Imperfectly, we have 32 minutes left, I think, over here on ours.

THE COURT: That sounds about right.

We will keep doing the math and we will let you know by email, how about that?

MR. EDNEY: We are trying to keep track and keep on it, Judge.

THE COURT: Understood.

Okay. It is Round 2.

Go for it, Mr. Bernstein.

REDIRECT EXAMINATION

BY MR. BERNSTEIN:

Q. Ms. Hahn, briefly, if you go to your supplemental declaration, which appears at Exhibit 32. And in particular, paragraph 6 of your declaration, at the end, Mr. Edney asked you a few questions about that statement at the end of your paragraph in the declaration where you write, "As a result, the Commission cannot yet confirm whether

additional Barton-controlled entities received or otherwise benefited from Barton's alleged fraudulent activities that are the subject of this litigation."

Do you see that?

A. Yes.

Q. All right.

And so your supplemental declaration provides the tracing examples that you were able to prepare based on the information that you had available at the time of your declaration, is that fair?

A. Yes.

Q. All right.

And there are entities that are included on your list of proposed receivership entities at Exhibit 34 -- if you go to Exhibit 34 -- that you did not -- that you did not trace, too, is that fair?

A. Yes.

Q. And that is because those additional entities, in addition to the entities you did trace to, were addressed in the Receiver's declaration, is that correct?

A. Yes.

Q. And so by your statement here at the end of your supplemental declaration that the Commission

had not confirmed at that point in time that that -- whether additional Barton-controlled entities received or otherwise benefited from the WALL investor funds, were you making that statement to somehow suggest that you were discounting what the Receiver had done in his own declaration?

A. No. And I think that list in Exhibit B was meant to include entities based on what the Receiver had outlined in his declaration.

Q. All right.

And your point -- and I don't want to mischaracterize what you said in your declaration, so I will let you explain -- but in Exhibit 32 at paragraph 6, you are talking about the fact that there had been extensive commingling and that there's still more work to do and that you're getting more records and that, if allowed more time, you could potentially perform additional tracing and find additional funds or benefits going to Barton-controlled entities?

A. Yes.

MR. BERNSTEIN: At this time, your Honor, we would like to move to admit Exhibits 1 through 3 and 32 through 34, which are Ms. Hahn's declaration and supplemental declaration.

THE COURT: Any objection?

MR. EDNEY: Your Honor, on the grounds of her not being an expert, I object to the tracing conclusions therein. That is our objection.

THE COURT: I understand.

I will give it the weight to which it is due and admit into evidence for this proceeding, contingent on my further examination of his objections.

(Thereupon, the referred-to documents were marked by the court reporter for Identification as Plaintiff's Exhibits 1, 2, 3, 32, 33, and 34.)

MR. BERNSTEIN: Your Honor, at this time, we would pass the witness.

THE COURT: Okay. Round 2, Mr. Edney.

MR. EDNEY: We are mindful of the clock. We have no further questions of this witness.

THE COURT: Okay. Thank you, Mr. Edney.

You are excused. Thank you for your testimony, Ms. Hahn.

Any further Commission witnesses?

MR. BERNSTEIN: Your Honor, this was our last witness, so at this time I would like to move to admit the other exhibits on our -- the other

exhibits on our list, which are the materials that are attached to our motion.

THE COURT: Understood.

Any objections to the materials attached to the motion coming in as exhibits to this hearing?

MR. EDNEY: Well, your Honor, I guess I'm not prepared to -- I haven't reviewed every single one of them, but I would object to any tracing conclusions therein because they haven't been offered, but otherwise I did not object.

THE COURT: Okay, understood. That is fair.

So what I will do is I contingently let them in until the further examination of the tracing argument that Mr. Edney is making today.

(The remaining documents were admitted in Evidence.)

MR. BERNSTEIN: Thank you, your Honor.

MR. EDNEY: Thank you, your Honor.

MR. BERNSTEIN: Subject to any rebuttal, your Honor, that will be our last witness.

THE COURT: Understood.

Okay. So who do you want to put on the stand, Mr. Edney?

MR. EDNEY: Your Honor, the defense calls

Mr. Gregg Ginn.

THE COURT: Okay. You may do so.

(The witness entered the courtroom.)

THE COURT: All right. If you could raise your right hand.

(GREGG GINN was duly sworn by the Courtroom Deputy.)

THE COURT: Okay. You know my request on some space between questions and answers. That is all I will give you as far as a request and then you can proceed, Mr. Edney.

MR. EDNEY: Thank you, your Honor.

DIRECT EXAMINATION

BY MR. EDNEY:

Q. Sir, could you please state your name for the record?

A. Gregory Wayne Ginn.

Q. And what do you do for a living, Mr. Ginn?

A. I'm a certified public accountant.

Q. You went to college, I take it.

A. Yes. I went to the University of Texas in Austin. I graduated in 1983. I became a CPA in 1986, and have been practicing ever since in public accounting.

Q. And what degrees did you receive in this

educational experience?
A. A BBA in business administration.
Q. And are you a Certified Public Accountant?
A. Yes.
Q. And when did you receive your certification as a public accountant?
A. 1986.
Q. And that leaves you with several decades practicing as a CPA, is that right?
A. Thirty-seven years.
Q. Can you tell us about any training that would help us address the issues in this case today?
A. We are required to take 40 hours a year of continuing education. I have focused my practice and training in the last couple of years in some big data, some litigation support, that help in this kind of matter.
Q. And do you have a familiarity with the accounting professional standards and principles for the tracing of assets and the flow of funds?
A. Yes.
Q. And have you done work in forensic accounting?
A. Yes.
Q. Can you describe that?
A. I have served as a receiver in all the

contiguous counties. I have been appointed in the Dallas District Court as an accountant in family law matters tracing community and separate property. I routinely do business damage calculation-type engagements.

Q. And Mr. Ginn, were you retained by the Defendant to evaluate certain matters in this case?

A. Yes.

Q. And has the Defendant agreed to pay you when funds become available?

A. He didn't say when they would became available. He agreed to pay 375 an hour for my time.

Q. And has he paid you yet?

A. No.

Q. Now, what materials did you review to perform the evaluation for which you were retained?

A. I reviewed the staff accountant's declaration. I reviewed the Receiver's declaration and supporting schedules. I reviewed a number of bank statements, accounting records from QuickBooks, both in native and Excel file formats, and a number of closing documents from some title companies. And some of the other pleadings in the matter.

Q. The bank statements and the accounting records, where did those come from?

A. They were linked, provided to me by your law firm. I understood they came from the Receiver or the SEC.
Q. And about when did you receive those materials?
A. Late September of this year.
Q. So a couple -- few weeks ago --
A. Yes.
Q. -- is that right?
A. Yes.
Q. And were you able to review all those materials in the time allotted?
A. I wouldn't say all. I reviewed the ones that were responsive that were set forth in the declarations that we just talked about.
Q. And -- and what topic were you retained to evaluate, Mr. Ginn?
A. To review and see if the tracing supported the claim that the original lender funds could be identified in substitute assets.
Q. Now, when an accountant makes conclusions about the specific types of funds have been traced into specific a company, does that involve the application of a specialized skill requiring training and experience in accounting and forensic accounting?

A. Yes.
Q. Does it require specialized knowledge in asset tracing standards?
A. Yes.
Q. Does it require specialized knowledge in structured transactions?
A. Yes.
Q. Does it require specialized knowledge in cash flow analysis?
A. It may. I don't think of that as specialized.
Q. Do you believe that you retained the specialized knowledge necessary to -- to engage in this analysis?
A. Yes, I do.
Q. And are there professional accounting standards for deploying each of these areas of specialized knowledge?
A. Yes.
Q. I want to take you to the Hahn declaration that came in, in September of 2022.
Perhaps we can provide you a copy of it. I believe it is in those papers there.
A. Exhibit 1 appears to be her declaration dated September 23rd, 2022.
MR. EDNEY: May I approach, your Honor?

THE COURT: You may.
MR. EDNEY: This is a copy of her supplemental declaration.
BY MR. EDNEY:
Q. Do you see that?
A. Yes.
Q. And did you have a chance to review this declaration?
A. Yes.
Q. And specifically Exhibit A, where she gave -- engages in a tracing analysis?
A. Yes.
Q. And as a result of your review, did you reach a conclusion as to whether the analysis reflected in Exhibit A of the Hahn declaration and her other supporting materials were consistent with professional standards in the accounting profession for tracing assets?
A. Yes.
Q. And what was that conclusion?
A. That they did not.
Q. And can you explain the basis for that conclusion?
A. So you're supposed to gather sufficient relevant data, maybe they have here based on what

I've looked at. You are supposed to apply it with a generally-accepted method. And tracing identifies four or five different methods to choose from.

That selected method is supposed to be consistently applied throughout the tracing. It requires a beginning point. It requires the application of that method and it requires an ending identification for it to serve as a tracing for the purpose we are talking about.

Q. And with regard to this tracing method, were you able to identify from Exhibit A, or any of Ms. Hahn's other papers, what method she used to do tracing analysis?
A. No.
Q. And are there a number of methods to choose from?
A. Yes.
Q. And some accountants choose one over another, is that right?
A. Yes.
Q. Do they usually explain why?
A. Yes.
Q. And did you see either an identification of the tracing method or an explanation of what tracing method was selected in these papers?

A. No.
Q. Did review the declaration of Cort Thomas, the Receiver in this matter?
A. Yes.
Q. Did you reach a conclusion whether the tracing conclusions reached in that declaration were consistent with professional standards in the accounting profession for tracing assets?
A. Yes.
Q. And what was that conclusion?
A. They did not.
Q. And what is the basis for that conclusion?
A. There wasn't a method identified or applied to the transactions. It didn't identify the beginning, the method or trace all the way to the ending asset.
Q. And were you able to evaluate the work of any accountant in the Receiver's declaration?
A. No.
Q. Was there an accountant identified?
A. No. Not by name. They identified by staff or the consultant, the accountants he's employed.
Q. But did you see a declaration from an accountant explaining the processes that went through to go into those exhibits --
A. No.

Q. -- and otherwise? Okay.

Now, I'd -- when confronting the task of tracing alleged lender funds from the WALL entities into other companies, did you develop an opinion as to what aspects of the project would be more challenging than others?

A. Yes.

Q. And did you put together a demonstrative exhibit to kind of explain your thoughts on this issue?

A. Yes.

MR. EDNEY: Your Honor, may I approach?

THE COURT: You may.

BY MR. EDNEY

Q. I'm handing you what we've tentatively marked as Defendant's Exhibit B in this matter.

Is this is a diagram that you put together to help explain things in this case?

A. Yes.

Q. Can you tell us what it is?

A. So it is a diagram that shows the catalyst of where a controversy starts of the WALL lender proceeds. Individuals made loans into WALL entities. There is nine of them. Different lenders made different loans into each of them.

Monies from the individuals into the WALL entities directly traceable. We can see their name; we can see who it came from.

Monies that move out of the WALL entities go into replacement properties, or they go into operating entities, like Carnegie, like JMJ.

As they move into different entities, it gets serially more complicated because the funds are fungible. There is not a specific thing that is moving. It's fungible money.

And so the accounting principles say, identify what is lender funds, what are other source funds. And that gets serially more complicated as monies move from the operating entities into the single purpose entities that own land, the HUD projects, and so forth.

Q. And so where -- how are those indicated on your chart here?

A. They are more distant from the original funds themselves. And there is more work to be done to trace them to the outer limits.

Q. Now, Mr. Ginn, you have sat through the testimony of Ms. Hahn today, the testimony of the Receiver's accountant, you reviewed the Hahn declaration, you reviewed the Receiver's

declaration.
Did you see references to extensive commingling throughout that testimony and in the papers that you reviewed?
A. Yes.
Q. And what did you understand that reference to mean as an accountant?
A. That monies have moved from one entity to another. That is the context they are describing here, including return of money back from one entity to another.
Q. And in review of Ms. Hahn's declaration, what, if anything, did Ms. Hahn appear to conclude about the effect of lender funds being commingled in the certain key operating entities, like JMJ Development, LLC?
A. I thought her conclusion was it made the tracing impossible.
Q. And based on your experience and training in the accounting profession, is it correct that it is impossible to distinguish affected and unaffected funds in a commingled account of a corporate entity?
A. No.
Q. Why not?
A. We have methods to deal with that. The one I

selected here was the lowest interim balance.

And when money is deposited, we make assumptions about what money leaves first, is it the lender money or is it some other money.

And you trace and keep up on a pro rata basis what is the balance in the investor -- in the lender funds or the non-lender funds. And that gives you a basis to trace the lender funds from one entity to -- into and out of some other spot.

Q. Are there other potential methods for doing this?

A. Yes. There is a specific identification method, if a transaction matched dollar for dollar; LIFO is one, last in, first out; FIFO is one.

Q. I'm sorry.

What's FIFO?

A. First in, first out.

Q. You can't --

A. I'm sorry.

There's a number of methods that -- those are some of the more common ones.

Q. But there are methods for disaggregating the two in a commingled account?

A. Yes.

Q. And as an accountant with knowledge of the

professional standards that apply to this field, what would you expect from another accountant that was trying to sort this issue out?
A. Identify the assumptions that you're making, show me how you have applied that assumption consistently across your work papers that are supported by the underlying data.
Q. And did you form an opinion as to whether that happened in the SEC's staff accountant's analysis?
A. Yes.
Q. What was that conclusion?
A. It didn't.
Q. And did you form an opinion as to whether that occurred in the Receiver's attempted tracing analysis in Mr. Thomas' declaration?
A. Yes.
Q. And what was conclusion?
A. That it didn't.
Q. Now, we have talked about JMJ Development, LLC a bit.
What is your understanding of what that company is?
A. It is the primary development engine for these projects, primarily development of real estate.
Q. And in the course of your review, did you

review the accounting records and other documents to track receipts into -- from the WALL entities and its managing member, Carnegie Development, LLC, on the one hand, and to other sources on the other?
A. Yes.
Q. And did you, in your filed declaration in this matter, attach certain schedules to document this work?
A. Yes.
MR. EDNEY: I want to -- I want to -- if I may approach, your Honor. I want to hand you what will be marked as Defense Exhibit C.
THE COURT: You may.
MR. EDNEY: Why don't I just do that.
BY MR. EDNEY
Q. Your Honor and Mr. Ginn, I have just handed you what has been preliminarily marked as Defense Exhibit C. It is entitled SEC versus T. Barton, Schedule 11.
Can you describe what this document is?
A. This is a document that I compiled from the general ledger for the bank accounts, excluding deposits that had come in from WALL entities or Carnegie, the Carnegie entity, to identify other deposits other than those two.

And at the back, it totaled $16,439,000 of deposits other than monies directly from WALL or directly from Carnegie.

Q. And Mr. Ginn, in reviewing the Hahn report and the Receiver's report, did you see an effort to account for these potentially unaffected funds?

A. No.

Q. And, again, does the accounting profession provide standards for distinguishing between these pools of funds in commingling account?

A. Yes.

Q. Mr. Ginn, based on the foregoing, did you reach an opinion about whether Ms. Hahn or the Receiver's tracing exercise in addressing payments from operating companies like JMJ Development, LLC was consistent with professional accounting standards?

Was that too fast?

A. Yes.

THE COURT: It was a lot.

THE WITNESS: I thought they were -- I thought they were consistent accounting summaries. They don't represent tracings because they don't account for the fungibility of the money.

BY MR. EDNEY:

Q. Now, now the --

A. Of the proceeds -- excuse me sorry, not the money, the proceeds.
Q. Now, returning to the commingling topic, did you have a chance to review the accounting records' treatment of transfers between the WALL entities and Carnegie Development, LLC, which is the managing member of the WALL entities, on the one hand, and the operating companies like JMJ Development on the other?
A. Yes.
Q. And what did that -- what did you look at to do that review?
A. I reviewed the general ledgers, and I noted that they have either assets or liability accounts for inter-company due to or due from the particular entity.
Q. And what did that review show?
A. That the transactions between the companies were recorded on the books as either an asset or a liability.
Q. And were they -- was there any documentation of them as inter-company loans?
A. Other than the general ledger, that is what I have seen.
Q. Okay.

And I would like to -- well -- well, have you formed an opinion under professional accounting standards whether that documentation is consistent with the charge of indiscriminate commingling of funds?
A. I don't know how to answer that.
It didn't meet the definition to me of indiscriminate commingling of funds. They are categorized and characterized on the balance sheet of the company what is the nature of the transaction.
Q. And then, did you see in the Hahn declaration or the Receiver's declaration any effort to address the accounting treatment of these inter-company transfers in the company's own accounting records?
A. No.
Q. And as an accounting professional trying to do this tracing analysis, would you expect to see that?
A. Yes.
Q. In reviewing the Hahn and Receiver declarations, did you form an opinion as to whether the declarations traced assets to their final destination?
A. Yes.
Q. And what was that opinion?

A. That it did not.
Q. And why is that important, Mr. Ginn?
A. Because if a person is claiming an interest in the original proceeds, and that has somehow been substituted, we need to know what assets they now are claiming their interest in.
And if it was perfect, we would know which investor money went to which entity or which property or which project and that gap is present in the current declarations.
Q. Now turning to the Receiver's report, did you review his explanation for what in his opinion would qualify as tracing into an entity?
A. Yes.
Q. And specifically, his conclusions about what would benefit an entity from a tracing analysis?
A. Yes.
Q. And what did you determine his standards to be?
A. He didn't identify a standard on that. He identified some examples.
Q. And what were those examples?
A. One of them was that WALL proceeds were used to pay employees. And those employees did work for the benefit of somebody else, so the jump in the analysis was, then that something else benefited

from these proceeds.

There is not a pecuniary benefit identified there. There is not a quantifiable -- how -- what is the reimbursement for this labor or this utility as to something. There is a gap in the analytics there.

Q. And -- and did you form an opinion as to whether examples like that were consistent with professional accounting standards for asset tracing?

A. I didn't think of it like that in that context.

Q. Have you seen it before in similar tracing analyses?

A. The -- the -- not the benefit testing like they are trying to apply here.

Q. Mr. Ginn, did you review receipts into the WALL entities?

A. Yes.

Q. And what did that review entail?

A. I have looked at the general ledger for each of the nine WALL entities. I identified what I thought were lender proceeds, and it didn't add up to $26 million.

MR. EDNEY: Your Honor, can you just give me a moment, please?

THE COURT: Sure.

MR. EDNEY: May I approach, your Honor?
THE COURT: You may.
BY MR. EDNEY:
Q. Mr. Ginn, I'm handing you what has been marked as Defense Exhibit D in this matter, Schedule 4.
Do you see that?
A. Yes.
MR. BERNSTEIN: Mr. Edney, is that graphic B?
MR. EDNEY: Yes, I think so.
BY MR. EDNEY:
Q. So what is this document, Mr. Ginn?
A. I compiled a table of all of the deposits from the relevant time periods into each of the nine WALL entities.
I identified and redacted the ones that I thought represented WALL lenders and I revealed the deposits as reflected in the books from other sources.
On page 9, it totals that there were 35,669,000 total deposits into the WALL entities in the relevant period.
Q. And in fact that was more than the 26.3 million in lender funds that folks have been referring to, is that right?

A. Yes.
Q. Mr. Ginn, did you see any effort in the Receiver or Hahn declarations to account for this difference?
A. No.
Q. And did you hear anything in the testimony today that thoroughly accounts for those differences?
A. They provided some examples of what it might be, but we haven't seen that documented.
Q. And from an accounting standpoint, would you -- would you expect an analysis of this difference, if you were trying to trace funds out of the WALL entities?
A. Yes, I would.
Q. I want to turn your attention, finally, to some testimony that we heard today and there is an assertion in the Receiver's report, too, that Mr. Barton allegedly diverted $5.3 million of lender funds for personal use.
Did you hear that testimony and see that reference?
MR. BERNSTEIN: Objection, leading.
THE COURT: I will allow it.
THE WITNESS: Yes.

BY MR. EDNEY:
Q. And what do you understand the basis for that assertion to be?
A. We don't know with certainty. Presumably somebody has added up payments to credit cards. The report says it is for personal use or business or a number of other categories.
I did some work in that area and identified, if an entity receives charges on a credit card that are for personal, the company recorded them as distributions to the owner for personal expenses and they weren't allocated as costs of the entity.
The amounts I identified in the general ledgers were substantially less than the 6-point -- or whatever the multiple million dollar number was.
Q. 5.3 million, does that sound about right?
A. Yes, sir.
THE COURT: Mr. Edney, we are up on time.
I can give you one more minute.
BY MR. EDNEY:
Q. Mr. Ginn, did you prepare a declaration in this case?
A. Yes.
Q. And is a true and accurate copy of the declaration attached to our briefs?

A. Yes.

MR. EDNEY: Your Honor, I move the admission of the exhibits that I have shown Mr. Ginn today as well as the declaration.

THE COURT: Understood.

Any objection today as those?

MR. BERNSTEIN: No objection for admission for purposes of this hearing, your Honor.

THE COURT: Okay. I will admit them for this hearing.

Thank you, Mr. Edney.

MR. EDNEY: Thank you, your Honor.

(The referred-to documents were admitted into Evidence as Defendant's Exhibits.)

THE COURT: Okay. You can proceed, Mr. Bernstein on cross.

MR. BERNSTEIN: Mr. Edney, did you mark the report as a number or letter?

MR. EDNEY: No. I would ask the Court to recognize it as an exhibit filed with the case but we are happy to put in a separate document if the Court decides.

THE COURT: Which document are we speaking of?

MR. EDNEY: The declaration of Mr. Ginn

attached to our opposition brief filed in this matter.

THE COURT: Understood.

Could we give it E, Exhibit E?

MR. EDNEY: E sounds great.

MR. BERNSTEIN: And I'm only asking him because I wanted to use it and I have a copies of it here, so...

THE COURT: Fair enough.

You can proceed, Mr. Bernstein.

MR. BERNSTEIN: May I approach, your Honor?

THE COURT: You may.

MR. BERNSTEIN: This is for the Court.

CROSS-EXAMINATION

BY MR. BERNSTEIN:

Q. What you have marked as Exhibit A, in front of you, is that a copy of your report?

A. Exhibit E as in echo, yes, sir.

Q. Yes, I'm sorry. Exhibit E.

Okay. Let's start off with your compensation.

I believe you testified that you have not been paid in this case?

A. Yes.

Q. Mr. Edney mentioned that you -- that your

payment may come if funds become available.
A. He did. That wasn't my understanding.
Q. Well, presumably, if the receivership entity assets were released and made available to pay you, is that your understanding of what he was saying?
A. No. I expect to send a bill and get paid at the end of the month.
Q. So is your payment in this matter subject to the outcome of this case?
A. No, it is not.
Q. And that would be against your professional standards, would it not, to make your payment subject to the outcome of this case?
A. Yes.
Q. So were you aware before you testified today that the payment that you were going to receive in this case may in fact be subject to the outcome?
A. I don't know about -- I don't know that.
Q. You don't know one way or the other?
A. That's right.
I'm not limiting it to the outcome of this case for my expectation of payment.
Q. You were asked, in your report it states that you were asked to analyze tracing examples for five projects: The HUD apartments, the Frisco real

property, 2999 Turtle Creek, Villita Towers, and the Marigold Suites, is that correct?
A. I think it is seven properties and five types.
I think the first -- the HUD properties have three subsets beneath them.
Q. Right.
And I identified it as five projects and that is how you described it at page 2 of your report, correct?
A. On page 1, I said on seven occasions. And then if you have added up that list and it is five, I will accept that.
Q. Yes.
If you look at page 2 of your report, under Analysis, it says, "I have been asked to analyze the tracing examples for" and then you list the five projects, correct?
A. The HUD apartments have three different apartments.
Q. And I'm not quibbling with you there.
A. Sure.
Q. Those are the only tracing examples addressed in your report?
A. Yes.
Q. All right.

You identify the lowest intermediate balance method with pro rata distribution as a method that can be used when multiple claimants are tracing their property back to the same commingled account, correct?

A. Yes.

Q. "When proceeds have completely lost their identity, this is a method that is potentially appropriate as a device for fictional tracing when real tracing is impossible."

Your words, correct?

A. Yes.

Q. "This is an accepted methodology that an expert can use to estimate tracing in cases where it is not possible to do real tracing and to actually follow the funds because of commingling."

A. Is that a question?

Q. It is.

A. I think you have read that correctly.

Q. "The lowest intermediate balance method is only one of several methodologies that an expert may use to address commingling." Fair?

A. Yes.

Q. And in fact, you say that at page 4 of your report, "multiple tracing methods could be argued to

apply for use based on the circumstances of the matter upon a reasoned explanation that one or the other is the most appropriate method." Correct?
A. Yes.
Q. But Mr. Ginn, you do not need methodologies like the lowest intermediate balance method when you can do real tracing, right? When you can directly trace money to an entity on the face of the bank records?
A. I don't agree with that assertion.
Q. So in a circumstance where you can directly trace money on the face of the bank records, it is your opinion that you have to use a tracing methodology in all of those instances?
A. In the instance where the money is directly deposited into an account, there is no tracing method. It is specifically identified. It is once the funds are commingled with non-source funds that this method is required to be able to identify whose portion of the funds are what.
Q. Right.
To the extent -- but only to the extent you're trying to quantify the portion of the funds that are attributable?
A. Yes. No. Are they, in fact, traceable or not.

Q. And so for example, if $1,000 of investor funds come into a bank account that only had $50 on deposit at the beginning of that day, and then that same day, $1,000 was transferred out of that bank account, you don't need an expert methodology to know that at least some portion of the funds that were transferred out of the bank account were investor funds?
A. That's right.
Q. But you could, if you chose, use the lowest intermediate balance method or another methodology to try to estimate and account for the exact portion of investor funds that you want to attribute to the transfer?
A. Yes.
Q. You next state in your report that Ms. Hahn's and the Receiver's declarations do not identify a specific tracing method in the tracing examples that you reviewed, correct?
A. Yes.
Q. So you are essentially raising a reliability complaint based on a failure to identify a methodology? Is that fair?
A. Yes.
Q. In fact, you say that in your report, "without

a clear application of an accepted methodology, the tracing examples reliability to the surviving asset is incomplete."
A. Yes.
Q. But to be clear, you have not concluded or opined that the entities that the Receiver and Ms. Hahn identified as receiving investor funds did not actually receive investor funds?
A. I don't know that that is true.
Q. Where in your report do you opine that any specific entities did not actually receive investor funds?
A. I think on one of the appendix, I show you that the general ledger is below zero. And I raised the assertion there is no proof that investor funds left this account after that balance was zero.
Q. Okay.
And that example is in the appendix?
A. Yes.
Q. And what entity does that refer to?
A. One moment.
It is appendix 060, at the bottom. And it is selective tracing No. 4 for the D4DS, LLC regarding Bellwether Ridge.
Q. So it's your position here today that that is

an example of a case where you have concluded that -- that there were no investor funds received by that particular entity?
A. I don't think that is the character of what I'm saying. I'm saying this tracing doesn't support evidence that --
Q. Okay.
A. -- of investor funds.
Q. Okay. Let's go back to my original question then, Mr. Ginn.
I'm not asking you about your critique of the methodology that was used by the Receiver or Ms. Hahn.
I'm asking you, as an expert, are you opining or concluding that any particular entities that are being proposed to be put into the receivership, did not receive investor funds?
A. No.
Q. And you have not done that analysis for any of the entities?
A. I have not -- yes.
Q. Okay.
Setting aside the receipt of investor funds, your report also does not address whether any of the Barton-controlled entities otherwise benefited from

assets traceable to Barton's alleged fraud, is that correct?
A. Yes.
Q. All right.
You critiqued the five tracing examples you reviewed from an accounting perspective purportedly under accounting standards, correct?
A. Yes.
Q. And you -- you mentioned that several times during your testimony, accounting standards.
Show me where in your report -- so you are familiar with GAAP, GAAS, FASME standards?
A. Yes.
Q. Okay.
Show me where in your report where you identify a specific accounting standard that is applicable to the tracing at issue in this case.
A. I don't know that I have identified it in the report.
Q. And you didn't identify it during your testimony either?
A. I can. Would you like to know what it is?
Q. Yeah. Okay. Sure.
A. Statement of standards on consulting services say you have sufficient relevant data, you apply

generally accepted methods, and reach a conclusion without analytical gaps in between.
Q. So that's an audit standard, right? So that would -- again, that goes back to your critique of the methodology, right?
A. It is the generally accepted accounting standard. The GAAP you mentioned covers presenting financial statements. The GAAS that you mentioned covers auditing those financial statements.
This is the standard that consulting services for damage-type calculations.
Q. Okay.
So that would be used for a damage-type calculation, right? To arrive at a damage figure based on an estimation, particularly, for example, like in a case of a trust where you're trying to determine an ultimate payout of trust funds.
A. It could be, yes.
Q. Okay.
Are you a certified fraud examiner -- well, first of all, so just to be clear, there are no other accounting standards set forth in the report that you submitted to this Court?
A. That's correct.
Q. All right.

So are you a certified fraud examiner?
A. No.
Q. And have you worked as an investigator?
A. No.
Q. Do GAAP, GAAS, or FASME standards apply to CFEs or investigators?
A. I don't think they do.
Q. You have not opined or concluded on how CFEs, examiners, or investigators summarize the flow of funds for financial transactions?
A. Say that one more time. I'm sorry.
Q. You have not opined on how examiners, CFEs, or other investigators summarize the flow of funds for financial transactions?
A. That's correct.
Q. That is not part of your expertise?
A. That's not part of what I have identified and worked on here.
Q. Okay.
You point out in your report that funds other than investor funds were deposited in WALL entity and JMJ Development accounts, at page 5.
Do you recall that?
A. Yes.
Q. Did you determine the source of those other

funds?
A. Only to the extent that they are identified in the bank records by whatever the label that supply it to.
Q. Yes. And did you schedule that out?
A. The -- one of my exhibits has that.
Q. Before I move on, so -- well, let me actually ask you this first, Mr. Ginn.
Did you observe that Ms. Hahn and the Receiver found that one of the proceeds obtained from loans secured with property purchased with investment funds were deposited in the WALL entity and JMJ Development accounts?
A. I don't remember -- I think so.
Q. You don't -- you don't contest that finding in your report?
In other words, you don't take issue with that fact?
A. I don't know what you are describing here.
Q. Mr. Edney mentioned during his examination of Mr. Cecil and, as well, Ms. Hahn, accounting work papers.
Do you remember that?
A. Yes.
Q. Did you prepare accounting work papers in

connection with your work on this case?
A. Yes.
Q. Were those produced to your -- well, did you produce those to Mr. Edney?
A. I have attached them as either a schedule or an appendix.
Q. And so all of your work papers are what are attached to your report?
A. Yes.
Q. You also claim that Ms. Hahn failed to consider permitted uses of funds in her analysis on page 5 of your report?
A. Yes.
Q. You state that no analysis was provided as to whether certain payments of lender funds to JMJ, for example, had a legitimate basis; e.g., for reimbursement of expenses incurred in acquiring and advancing the subject projects or disbursements for authorized replacement projects.
Do you see that?
A. Yes.
Q. Okay.
Do you contend that the loan agreements authorize Mr. Barton to use investor funds for purposes other than to purchase the properties

specified in the agreements?
A. They say whatever they say.
Q. All right.
And you have not reached a conclusion or opinion disputing Ms. Hahn's and the Receiver's review of the financial records that show that no investor funds were actually used to purchase the properties described in the WALL agreements with the investors?
A. My recollection was, they have two occasions where they identified the specific purchases that -- and then there were replacement properties.
Q. And are those -- are you referring to the two examples that Ms. Hahn referred to where other investor funds were used to -- or other funds were used to purchase WALL entity properties for two specific --
A. That is what she said, yes.
Q. That is what you are referring.
But you have not rendered a specific opinion or a conclusion on that issue?
A. No.
Q. You also talk about commingling in your report.
I believe this is the last topic I'm going to cover with you, Mr. Ginn.

At the bottom of page 2, you state that "the SEC's assertion of reckless commingling is incorrect."
Do you see that?
A. Yes.
Q. Your basis for that statement is that "when proceeds exited the WALL entities, they were carefully noted in the books by Carnegie Development, LLC and the WALL -- in the WALL entities as loans and are carried as enforceable assets in the general ledger accounts in the WALL entities."
Did I read that correctly?
A. Yes.
Q. Okay.
So that conclusion goes to how transactions were recorded in the books of the Barton companies, correct?
A. Or the WALL entities.
Q. Did Mr. Barton have control over Carnegie Development and the WALL entity's books?
A. I don't know that.
Q. Did you determine whether Mr. Barton instructed company personnel to miscode accounting entries in the QuickBooks?

A. I don't have any information to suggest that.
Q. Did you talk to anybody, any witnesses or Mr. Barton about those issues?
A. No.
Q. Do you agree that determining how Mr. Barton recorded or his companies recorded transactions on the books do not establish whether funds were actually commingled by or among the bank accounts Barton controlled for the various entities?
A. I agree with that.
Q. Now, you did not schedule Mr. Barton's controlled bank accounts to determine the extent of any commingling?
A. The ones I scheduled are attached as an exhibit.
Q. The examples, that is the extent of what you did?
A. Yes. I'm sorry. I'm just trying to be clear.
Q. Finally Mr. Ginn, did you have any discussions with Mr. Barton in connection with preparing your report in this case?
A. No. I had an initial discussion with him about being engaged and I didn't talk to him after that.
MR. BERNSTEIN: We pass the witness, your Honor.

THE COURT: Okay. Thank you.

We are out of time, so I will thank you for your testimony and you can take your place back in the courtroom.

MR. EDNEY: I don't think, I am, your Honor. I have five minutes, according to my folks.

THE COURT: Well, y'all, don't keep the time, I do. And I gave you an extra four before I said you were out of time and then gave you two more. So I appreciate your keeping of the clock, but I keep the clock here in conjunction with my courtroom deputy. So by our time, then, you're out.

So based on that, what I need to do is -- Mr. Thomas?

MR. THOMAS: Your Honor, I had a quick housekeeping issue. I don't know exactly how you want to handle it. I'm just trying to save time and money. We have been talking about Mr. Cecil's documents he relied upon.

But in connection with this, I had prepared and didn't have to get into it while I was on the stand, a binder of my exhibits plus the statements that were relied upon.

I think that will be helpful for you. You were the one that told me to submit a declaration.

I think it will be helpful to you. If you want it, I can file it under seal.

THE COURT: Can you pull that microphone back you, Mr. Thomas?

MR. THOMAS: Yes. Sorry, Kelli.

I was saying, I can file it under seal or we can somehow submit it as a Receiver exhibit.

I think it will be helpful for you in your analysis. For instance, when we were talking about Exhibit 4 with Mr. Cecil, and that $2.5 million, it is clearly reflected in the bank statements that that went right back out.

So I don't know how -- how to give this to you. Or if you don't want it, we don't have to file it under seal. We don't have to submit it as an exhibit. I just thought --

THE COURT: The reason to file under seal would be if it's got financial information, though, like bank account numbers.

MR. THOMAS: It would just take a lot of time and money to redact it. So yes, your Honor.

THE COURT: I understand.

Okay. Let me hear the SEC's position on the Receiver's proposal to file those materials under seal. And then I will hear Mr. Edney's

opinion.

MR. BERNSTEIN: We have no objection, your Honor. We would be happy to have the Receiver provide that if it would aid to the Court.

THE COURT: Mr. Edney?

MR. EDNEY: Thank you, your Honor.

There's two evidence-generating parties in this case, the Commission and the Defendant. The Receiver is not a party. They had an opportunity to provide, you know, some thoughts on the issue. They are not an appropriate producer of evidence.

THE COURT: Understood.

So here is what I'm going to do.

I'm going to at least stick to your general notion that there are two evidence-producing parties.

If Mr. Bernstein, you think that it should come in, based on the discussion we had here today, then you can file a motion to supplement the record and include that as your exhibit.

If you want a chance to take shots at that, then you can respond to that.

I will probably put expedited briefing, if there is a motion to supplement. Because, again, we are a train that needs to be completed down the end

of the line by November 29th.

Toward that end -- oh, what I want to do is tell y'all one thing right quick on the whole issue of expert testimony. And then ask for your help in this kind of briefing or oral argument notion that you brought up in your filing, Mr. Edney.

On the expert testimony issue, the Fifth Circuit has spoken to the issue of whether or not tracing requires expert testimony.

They were talking about it with regard to a particular federal witness, who was the only tracing witness in that case, and, ironically, her name was Tracy. Tracy Clark Ross was doing a tracing analysis on behalf of the VA.

And the district judge in that case was crazy. His name was Starr, and he made her be qualified as an expert. And the Fifth Circuit said, man, Starr, you were too harsh. She didn't need to be qualified as an expert. She could add and subtract along with any other human being.

It was a voluminous, copious, tedious adding and subtracting, but it was adding and subtracting. No expert designation was needed under Rule 701.

That case is United States versus Davis, 53 F.4th 833. And the pinpoint is 848 to 849.

I'm not going to say at this point that that case governs this one. I know that case is a general statement, but y'all would have to tell me if that case binds this case or not.

I don't like lightly thumbing my nose at the Fifth Circuit, but I need to make sure that case governs this one, if I'm going to apply it.

Query.

How do y'all tell me your thoughts after we've heard the evidence we heard today?

Normally, I do not ask for proposed findings of fact and conclusions of law because I like writing my own receivership orders or preliminary injunction motions. But those can take four or five months, after an evidentiary hearing.

We don't have that kind of luxury of time, right? We've got until November 29th.

So what I'm going to ask y'all to do, for both the SEC and for Barton, is to, by November 10th, give me your proposed findings of fact and conclusions of law. That gives you time to order a transcript, 14 days or less, I don't care, whatever you're comfortable with, as long as you

have a transcript in hand, that can let your findings of fact, proposals, link back to some record evidence, whether it be the transcript or an exhibit that came in at this hearing.

That will give me some brief window of time between November 10th and November 29th to work on what I think should be my findings of fact and conclusions of law in both a receivership order and a ruling on the request for an injunction in this case.

That is my proposal for the path forward.

Any questions, comments, issues on that path forward from the Commission?

MR. BERNSTEIN: None from the SEC, your Honor.

MR. EDNEY: Your Honor, I mean, I think --

THE COURT: Can you sit down so I can hear you?

MR. EDNEY: Fair enough.

THE COURT: Or go to the podium, if you really want to stand up. That's fine.

MR. EDNEY: Sure. Why not.

Your Honor, I think that sounds great.

I think we would like to have some time before you to answer your questions, perhaps, almost

immediately after the submission of those papers or at the Court's convenience, but certainly before the Court has to rule.

So my request for some amount of oral argument, however brief it may be, stands.

Your Honor, the other matter is that I really did -- I really did think we had 32 minutes left back there. I understand. We were trying to keep track of it.

We had one other witness. He has an extensive declaration that is in the record in this case, but it was the part of our motion to intervene that your Honor denied.

I would like to put him on the stand, authenticate that declaration and enter it in evidence and we can be on our way. So I would ask the Court's indulgence to do that.

THE COURT: I let you do it as a proffer.

MR. EDNEY: Okay.

Your Honor, if Mr. Erik Johnson were to testify, he would say that he was a -- he's an official at Southern Capital Properties. This is the mezzanine lender that had a significant role in the HUD development projects.

He developed an extensive declaration that

addresses the tracing examples into those HUD project entities. This is Ingleside and Forney and Windmill Farms and others. That declaration is in the record. We have copies of it and I would like to have it admitted as Defense Exhibit F.

THE COURT: And can you remind me which declaration we are speaking of? Can you tie it off to a docket number?

MR. EDNEY: Yes, your Honor.

So it is Document No. 330 in this case. It begins at page 4 of that submission. It is the declaration of Erik Johnson.

And we have copies for the Court, if it would be convenient.

THE COURT: I will take a copy from you, if you would.

MR. EDNEY: Thank you, your Honor.

THE COURT: Okay.

So Commission, I'm not requiring you take a position on this, because I'm having him put in as an attorney proffer.

If my examination is that I think it should come in, then I will notify you and then let you object.

MR. BERNSTEIN: Thank you, your Honor.

THE COURT: Understood.

Okay. You can hand it to Mr. Frye.

MR. EDNEY: May I approach, your Honor?

THE COURT: You may.

One thing I will tell you is the Fifth Circuit has changed protocol now. Y'all are the keepers of the exhibits, not me or Ms. Willis. And so I'm keeping my copy of everything you have handed me because I need it for working through your proposed findings of fact and conclusions of law, but don't discard your copies. I know some of them were handwritten and marked up today. Keep them so you can give them to the Fifth Circuit at the appropriate time.

MR. EDNEY: Thank you, your Honor.

THE COURT: Any other questions, thoughts, comments, concerns?

MR. EDNEY: No, your Honor, from the Defense.

THE COURT: Okay. Thank you for the good lawyering today.

I will wait to see your submissions on November 10th.

If there is a motion to supplement the record with Receiver materials from the Commission,

then I will order expedited briefing because that is something we would need to tie off sooner rather than later.

MR. EDNEY: Thank you, your Honor.

THE COURT: Thank you.

Court is in recess.

THE COURT SECURITY OFFICER: All rise.

(Proceedings concluded at 4:51 p.m.)

C E R T I F I C A T E

I, Kelli Ann Willis, RPR, CRR, CSR certify that the foregoing is a transcript from the record of the proceedings in the foregoing entitled matter.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

This 12th day of October 2023.

s/ Kelli Ann Willis
Official Court Reporter
The Northern District of Texas
Dallas Division

# TAB T

**Defendant Barton's response to the United States of America's motion to intervene and stay [ecf no. 44]**

Dkt. 54 (November 2022)

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **No. 3:22-CV-2118-X** |
| | § | |
| **TIMOTHY LYNCH BARTON** | § | |
| **CARNEGIE DEVELOPMENT, LLC** | § | **Jury Trial Demanded** |
| **WALL007, LLC** | § | |
| **WALL009, LLC** | § | |
| **WALL010, LLC** | § | |
| **WALL011, LLC** | § | |
| **WALL012, LLC** | § | |
| **WALL016, LLC** | § | |
| **WALL017, LLC** | § | |
| **WALL018, LLC** | § | |
| **WALL019, LLC** | § | |
| **HAOQIANG FU (a/k/a MICHAEL FU)** | § | |
| **STEPHEN T. WALL** | § | |
| | § | |
| *Defendants,* | § | |
| | § | |
| **DJD LAND PARTNERS, LLC** | § | |
| **LDG001, LLC** | § | |
| | § | |
| *Relief Defendants.* | § | |

**DEFENDANT BARTON'S RESPONSE TO THE UNITED STATES OF AMERICA'S <u>MOTION TO INTERVENE AND STAY [ECF NO. 44]</u>**

Defendant Timothy L. Barton appreciates the Court's understanding and submits this response to clarify his position on the United States of America's Motion to Intervene and Stay Proceedings. Defendant Barton does not oppose a limited stay of this matter, provided that the scope of the stay is properly defined to allow the Defendant to fully address the existence and actions of the Receiver, including through seeking reconsideration or appeal of this Court's order

imposing a receiver. The Defendant does oppose entry of the Government's proposed order under its current terms.

Under the Government's proposed order, the only carve out from the stay of these proceedings was for the Receiver to "perform[] the duties and exercis[e] the powers set forth" in the Receivership Order notwithstanding the stay. ECF No. 44-1. The Court should clarify the order to permit any party or intervenor to challenge to actions or existence of the Receiver. Submitted herewith is a proposed order that would impose a limited stay of these proceedings, with an exception for the work of the receiver and for any party to raise any issues relating to the receiver. These adjusted terms of the stay are necessary to preserve fundamental fairness and to avoid a situation where the Government is able to get only what it wants out of this civil proceeding prior to its parallel criminal prosecution and then freeze the victory against any challenge.

Outside of any issues affecting the need or justification for the receiver or challenges to his actions, the Defendant supports staying other deadlines or discovery in this matter. The Defendant would note that there was miscommunication between the parties as the United States' motion [ECF No. 44], in that his counsel Richard Roper, who indicated to the government counsel that the Defendant was not going to oppose to the motion, mistakenly thought that the government counsel was going to send a draft motion to him before filing. Counsel Roper, in turn, was planning to provide that a copy to his co-counsel to review. The government filed the motion, did not send a copy to counsel before filing, and he was not able to provide a copy to his co-counsel for his review. Thus, the Defendant asked for additional time to respond. The Defendant was not suggesting in his response that the government counsel was at fault.

For the foregoing reasons, Defendant Timothy L. Barton respectfully requests that the Court grant the United States of America's Motion [ECF No. 44], but expressly permit any dispute germane to the receivership's operation or existence to proceed unabated, as reflected in the proposed order submitted with this response.

Dated: November 14, 2022

Respectfully submitted,

By: *<u>/s/ Michael J. Edney</u>*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 *(Admitted to NDTX)*
medney@huntonak.com
Sean B. O'Connell
State Bar No. 24103142 *(application for admission forthcoming)*
soconnell@huntonak.com
Michael Dingman
Virginia Bar No. 95762
DC Bar No. 90001474 *(admitted pro hac vice)*
mdingman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

Ted A. Huffman
State Bar No. 24089015
thuffman@huntonak.com
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Phone: (214) 979-3000
Facsimile: (214) 740-7110

– and –

Richard Roper
State Bar No. 17233700
richard.roper@hklaw.com
Javan Porter
State Bar No. 24116912
javan.porter@hklaw.com
**HOLLAND & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Phone: (214) 969-1345
Facsimile: (214) 999-9252

**COUNSEL FOR TIMOTHY LYNCH BARTON**

**CERTIFICATE OF SERVICE**

On November 14, 2022 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**TIMOTHY LYNCH BARTON**<br>**CARNEGIE DEVELOPMENT, LLC**<br>**WALL007, LLC**<br>**WALL009, LLC**<br>**WALL010, LLC**<br>**WALL011, LLC**<br>**WALL012, LLC**<br>**WALL016, LLC**<br>**WALL017, LLC**<br>**WALL018, LLC**<br>**WALL019, LLC**<br>**HAOQIANG FU (a/k/a MICHAEL FU)**<br>**STEPHEN T. WALL**<br><br>*Defendants,*<br><br>**DJD LAND PARTNERS, LLC**<br>**LDG001, LLC**<br><br>*Relief Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **No. 3:22-CV-2118-X**<br><br>**Jury Trial Demanded** |

## ORDER GRANTING GOVERNMENT'S UNOPPOSED MOTION TO INTERVENE AND TO STAY PROCEEDINGS

Pending before the Court is the Government's Unopposed Motion to Stay to Intervene and to Stay Proceedings (the "Motion"). After review of the Motion and the entirety of the record, the Court has determined that the unopposed Motion should be, and hereby is, **GRANTED**.

Therefore, it is:

ORDERED that all case deadlines and discovery in these proceedings are stayed until otherwise ordered by the Court;

IT IS FURTHER ORDERED that nothing in this Order shall preclude the Court-appointed Receiver, Cort Thomas, from performing the duties and obligations, and from exercising the powers and rights, set forth in the Court's October 18, 2022, Order Appointing Receiver (Dkt. 29).

IT IS FURTHER ORDERED that nothing in this Order shall preclude the parties from moving for relief from or contesting any issue related to the Court-appointed Receiver, including whether the Receiver should have been appointed in the first instance or there is a continuing need for the Receiver or whether there are sufficient allegations or evidence for the SEC to invoke its ancillary authorities to have sought or to maintain the Receiver's activities in this case. For avoidance of doubt, the matters mentioned in this paragraph are explicitly excepted from any stay of these proceedings.

SO ORDERED this ________ day of November, 2022.

JUDGE BRANTLEY STARR
UNITED STATES DISTRICT COURT JUDGE

# TAB U

**Barton motion for leave to proceed pro se and file electronically**

Dkt. 717 (March 2026)

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

FILED-USDC-NDTX-DA
'26 MAR 16 10:33
KM

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff,* | § | |
| v. | § | **No. 3:22-cv-2118-X** |
| **TIMOTHY BARTON, et al.** *Defendants,* | § | |

**DEFENDANT TIMOTHY L. BARTON'S MOTION FOR LEAVE TO PROCEED PRO SE AND AUTHORIZATION TO FILE ELECTRONICALLY (CM/ECF)**

Defendant Timothy L. Barton respectfully moves the Court for leave to proceed pro se in this action and for authorization to file and receive service electronically through the Court's CM/ECF system as a non-attorney filer. This case is administratively closed, but urgent, time-sensitive matters still arise and/or may arise on the district-court docket requiring prompt response. At present, the defendant has no active attorney representation for purposes of responding to such matters. Defendant has been left without sufficient financial resources to retain or maintain legal counsel in this matter. As a direct result of the pendency of this litigation and the consequent depletion of Defendant's assets, proceeding pro se is not a matter of preference but of financial and practical necessity; it is the sole means by which Defendant is presently able to protect his legal rights and discharge his obligations to the Court. Without pro se status and CM/ECF access, the defendant risks missing notice, deadlines, or required responses solely due to lack of access to the Court's electronic filing and service system. Federal law permits a party to plead and conduct his own case personally. 28 U.S.C. § 1654.

Granting this motion will not prejudice any party or alter any substantive rights; it will simply ensure that the defendant receives Notices of Electronic Filing and can submit any necessary, limited filings in a timely manner if urgent issues arise during administrative closure. This request is made only for defendant in his individual capacity. Defendant understands that any entity defendant must appear through licensed counsel as required by law.

Accordingly, the defendant requests that the Court enter an order (1) permitting him to proceed pro se and (2) authorizing him, upon completion of the Court's non-attorney registration requirements, to file and receive service electronically through CM/ECF in this case, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: March 12, 2026

/s/ Timothy L. Barton
Timothy L. Barton
1846 East Rosemeade Parkway, #232
Carrollton, TX 75007
(214) 914-3811
timothy.barton@proton.me

(Defendant, pro se upon grant)

**CERTIFICATE OF CONFERENCE**

I certify that, as required by N.D. Tex. Local Civil Rule 7.1(a), counsel for the moving party conferred, or attempted to confer, with counsel for each party affected by the requested relief to determine whether the motion is opposed. Specifically, on March 09, 2026, undersigned contacted counsel of record for the Securities and Exchange Commission and the Receiver by email and requested their position. As of the time of filing, no response has been received.

*/s/ Timothy L. Barton*
Timothy L. Barton

**CERTIFICATE OF SERVICE**

I certify that on the date of filing, a true and correct copy of the foregoing was served on all counsel and any pro se parties of record via CM/ECF, or by other means as required for any party not receiving CM/ECF notice.

*/s/ Timothy L. Barton*
Timothy L. Barton

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** *Plaintiff,* | § § § | |
| | § § | |
| v. | § | **No. 3:22-cv-2118-X** |
| | § | |
| **TIMOTHY BARTON, et al.** *Defendants,* | § § | |

**[PROPOSED ORDER]**

Before the Court is Defendant Timothy L. Barton's Motion for Leave to Proceed Pro Se and for Authorization to File Electronically (CM/ECF). Having considered the motion, the Court finds that it should be **GRANTED.**

**IT IS ORDERED** that counsel of record for Defendant Timothy L. Barton is granted leave to withdraw under N.D. Tex. Local Civil Rule 83.12.

**IT IS FURTHER ORDERED** that Defendant Timothy L. Barton may proceed pro se on the district-court docket in this case.

**IT IS FURTHER ORDERED** that the Clerk is directed to update the docket to reflect Mr. Barton's pro se status and, upon completion of the Court's non-attorney e-filing registration process, to enable Mr. Barton's CM/ECF filing privileges in this case.

SO ORDERED on ____________, 2026.

______________________________
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

# TAB V

**Electronic order denying [717] motion to withdraw as attorney**

Dkt. 720 (April 2026)

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

**Full docket text for document 720:**
ELECTRONIC ORDER denying [717] Motion to Withdraw as Attorney. Before the Court is Defendant Barton's motion to proceed pro se. (Doc. [717]) Because Mr. Barton is still represented by Ms. Slim, the Court DENIES the motion. (Ordered by Judge Brantley Starr on 3/25/2026) (chmb)

---

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 04/14/2026 10:31:45 | | | |
| **PACER Login:** | Timothybarton | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 3:22-cv-02118-X |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

# TAB W

## Motion to withdraw as counsel for defendant pursuant to local rule 83.12

Dkt. 724 (April 2026)

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

Jules P. Slim
State Bar No. 00793026
PO BOX 140307
Irving, Texas 75014
Telephone: (214) 350-5183
Email: jslim@slimlawfirm.com
**Attorney for Defendant**
**Timothy Barton**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL 009, LLC, WALL 010, LLC, WALL 011, LLC, WALL 012, LLC, WALL 016, LLC, WALL 017, LLC, WALL 018, LLC, WALL 019, LLC, HAOQIANT FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § | **No. 3:22-cv-2118-X** |
| **Defendants,** | § | |
| **v.** | § | |
| | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| **Relief Defendants.** | § | |

**MOTION TO WITHDRAW AS COUNSEL**
**FOR DEFENDANT PURSUANT TO LOCAL RULE 83.12**

**NOW COMES** Jules P. Slim, attorney of record for Defendant Timothy L. Barton ("Barton"), and respectfully moves this Court for leave to withdraw as counsel of record for Defendant in the above-captioned action pursuant to Local Rule 83.12, and in support thereof shows the Court as follows:

## BACKGROUND

1. Jules Slim represents Barton as counsel of record in this case. (Dkt. No. 683)

2. On February 26, 2026, defendant filed a Notice of Change in Role of Counsel (Dkt. No. 713), advising the Court and all parties that his role had transitioned from active counsel of record to an advisory and supervisory capacity only, and that Barton would proceed pro se on the district-court docket.

3. On March 7, 2026, Barton emailed counsel for the SEC and the Receiver to confer on a proposed motion to proceed pro se.

4. On March 9, 2026, counsel for the SEC forwarded Barton's email to Slim and inquired whether Slim intended to move to withdraw.

5. On March 16, 2026, Barton filed a Motion for Leave to Proceed Pro Se. (Dkt. No. 717)

6. On March 24, 2026, the SEC filed a Response opposing Barton's pro se motion (Dkt. No. 719), asserting that the proper procedure is for Slim to file a motion to withdraw pursuant to Local Rule 83.12.

7. Slim files this motion to conform to the procedural requirements identified by the SEC and the Court's Local Rules.

## MOTION

8. Slim and defendant have conferred regarding this withdrawal. Defendant consents to Slim's withdrawal as counsel of record in this matter.

9. Good cause exists for withdrawal. Defendant has expressed a clear preference to represent himself in the district court. Continued representation as counsel of record is no longer consistent with the client's stated wishes. The attorney-client relationship has not

deteriorated, but the scope of engagement has changed such that maintaining counsel-of-record status is no longer appropriate.

10. This withdrawal will not cause undue delay, prejudice, or disruption to any pending deadline. No trial date is currently set.

11. Barton has been advised of the current status of this matter, all pending deadlines and obligations, and the consequences of proceeding without counsel. Barton understands that he will be responsible for monitoring the docket and responding to all matters pro se.

12. Pursuant to Local Rule 83.12, the undersigned provides the following information for Defendant Barton:

| | |
|---|---|
| Name: | Timothy L. Barton |
| Address: | 1846 East Rosemeade Parkway, #232 |
| | Carrollton, TX 75007 |
| Telephone: | (214) 914-3811 |
| Email: | timothy.barton@proton.me |

13. If this motion and the Defendant motion to proceed as pro se are granted, the undersigned requests that the Clerk update the docket to reflect Barton's pro se status and direct all future notices to Barton at the address provided above.

**WHEREFORE,** the undersigned respectfully requests that the Court grant this Motion to Withdraw as Counsel of Record, permit Defendant Timothy L. Barton to proceed pro se, direct the Clerk to update the docket accordingly, and grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Jules P. Slim*
Jules P. Slim, Attorney
State Bar No. 00793026
PO BOX 140307
Irving, Texas 75014
Telephone: (214) 350-5183
Email: jslim@slimlawfirm.com
**Attorney for Defendant**
**Timothy Barton**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1, the undersigned certifies that the parties have conferred regarding this motion. Defendant Timothy L. Barton consents to the relief requested. The SEC's position is reflected in its Response (Dkt. No. 719), which affirmatively urged compliance with Local Rule 83.12 as the proper procedural mechanism.

*/s/ Jules P. Slim*
Jules P. Slim

## CERTIFICATE OF SERVICE

I affirm that on 14th day of April, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Dallas Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Jules P. Slim*
Jules P. Slim

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | |
| **TIMOTHY BARTON, CARNEGIE DEVELOPMENT, LLC, WALL007, LLC, WALL 009, LLC, WALL 010, LLC, WALL 011, LLC, WALL 012, LLC, WALL 016, LLC, WALL 017, LLC, WALL 018, LLC, WALL 019, LLC, HAOQIANT FU (A/K/A MICHAEL FU), STEPHEN T. WALL,** | § | **No. 3:22-cv-2118-X** |
| **Defendants,** | § | |
| **v.** | § | |
| | § | |
| **DJD LAND PARTNERS, LLC, and LDG001, LLC,** | § | |
| **Relief Defendants.** | § | |

**ORDER GRANTING WITHDRAWAL OF COUNSEL FOR DEFENDANT**

**CAME BEFORE** this Court the Motion to Withdraw as Counsel of Record filed by Jules P. Slim on behalf of Defendant Timothy L. Barton. Having considered the Motion and for good cause shown:

It is **ORDERED** that Jules P. Slim's Motion to Withdraw as Counsel of Record is **GRANTED**. Jules P. Slim is hereby relieved of all obligations as counsel of record for Defendant Timothy L. Barton in this action.

It is further **ORDERED** that Defendant Timothy L. Barton shall proceed *pro se* effective upon entry of this Order. The Clerk shall update the docket to reflect Barton's *pro se* status and direct all future notices to the defendant at the address provided in the Motion.

It is further **ORDERED** that Defendant Timothy L. Barton is reminded of his obligation to comply with all applicable Federal Rules of Civil Procedure, Local Rules of this Court, and all Orders previously entered in this action.

SIGNED this _____ day of ___________, 2026.

______________________________
JUDGE PRESIDING

# TAB X

**Plaintiff Securities and Exchange Commission's notice of non-opposition to Jules p. Slim's motion to withdraw as counsel**

Dkt. 729 (May 2026)

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY BARTON, et al.<br><br>Defendants,<br><br>DJD LAND PARTNERS, LLC, and LDG001, LLC,<br><br>Relief Defendants. | C.A. No.: 3:22-cv-2118-X<br><br>Jury Trial Demanded |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S NOTICE OF NON-OPPOSITION TO JULES P. SLIM'S MOTION TO WITHDRAW AS COUNSEL**

The Securities and Exchange Commission submits this Notice that it is Unopposed to Jules P. Slim's Motion to Withdraw as Counsel of Record to Defendant Timothy Barton in this matter (Dkt. No. 724).

Dated: May 4, 2026

Respectfully submitted,

*/s/ Keefe M. Bernstein*
Keefe M. Bernstein
Texas Bar No. 24006839
Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, Texas 76102
Phone: (817) 900-2607
Email: bernsteink@sec.gov

Counsel for Plaintiff
Securities and Exchange Commission

**CERTIFICATE OF SERVICE**

I affirm that on May 4, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Dallas Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Keefe M. Bernstein*
Keefe M. Bernstein

# TAB Y

## DISTRICT COURT DOCKET SHEET

No. 3:22-CV-2118-X (N.D. Tex.)

*SEC v. Barton, No. 3:22-CV-2118-X (N.D. Tex.)*

APPEAL,CLOSED,JURY

# U.S. District Court
# Northern District of Texas (Dallas)
# CIVIL DOCKET FOR CASE #: 3:22-cv-02118-X

Securities and Exchange Commission v. Barton et al
Assigned to: Judge Brantley Starr
Case in other court: USCA5, 22-11132
USCA5, 22-11242
USCA5, 23-10046
USCA5, 23-10515
USCA5, 23-10516
USCA5, 23-11237
USCA5, 24-10004
USCA5, 24-10788
USCA5, 25-10871
USCA5, 25-11043
USCA5, 25-11044
Cause: 15:78m(a) Securities Exchange Act

Date Filed: 09/23/2022
Date Terminated: 08/07/2025
Jury Demand: Plaintiff
Nature of Suit: 850 Other Statutes: Securities/Commodities/Exchange
Jurisdiction: Federal Question

**Plaintiff**

**Securities and Exchange Commission** represented by

**Keefe M Bernstein**
Securities and Exchange Commission
801 Cherry Street
Suite 1900
Fort Worth, TX 76102
817-900-2607
Fax: 817-978-4927
Email: bernsteink@sec.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David B Reece**
US Securities & Exchange Commission
Burnett Plaza Suite 1900
801 Cherry St Unit # 18
Fort Worth, TX 76102-6882
817-978-6476
Fax: 817-978-4927
Email: reeced@sec.gov
*TERMINATED: 07/20/2023*

**James E Etri**
Securities and Exchange Commission
801 Cherry Street
Fort Worth, TX 76102
817-978-1406
Email: etrij@sec.gov
*TERMINATED: 04/02/2025*

V.

**Defendant**

**Timothy Barton** represented by **Jules P Slim**
Attorney and Counselor
PO Box 140307
Irving, TX 75014-0307
214-350-5183
Email: jslim@slimlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edwin Andrew Huffman**
Katten Muchin Rosenman LLP
2121 North Pearl Street
Ste 1100
Dallas, TX 75201
469-627-7044
Fax: 214-765-3602
Email: ted.huffman@katten.com
*TERMINATED: 07/19/2023*

**Javan Porter**
DOJ-USAO
1100 Commerce Street
Suite 4th Floor
Dallas, TX 75242
214-258-0462
Email: javan.porter@usdoj.gov
*TERMINATED: 02/03/2023*

**Michael Christopher Dingman**
Office of the Attorney General
202 N 9th St.
Richmond, VA 23219
804-921-7025
Email: mdingman@ftc.gov
*TERMINATED: 01/04/2024*
*PRO HAC VICE*

**Michael J Edney**
Morgan Lewis
1111 Pennsylvania Avenue NW
Washington, DC 20004
202-739-3000
Email: michael.edney@morganlewis.com
*TERMINATED: 01/08/2026*

**Richard B Roper , III**
Vartabedian, Katz, Hester & Haynes LLP
301 Commerce St., Ste. 2200
Fort Worth, TX 76102
817-309-9092

Email: richard.roper@vkhh.com
*TERMINATED: 02/03/2023*

**Sean O'Connell**
Hunton Andrews Kurth LLP
2200 Pennsylvania Avenue NW
Suite 905
Washington, DC 20037
202-955-1500
Fax: 202-778-2201

**Solomon George Norred**
Norred Law PLLC
515 E Border St
Arlington, TX 76010
817-704-3984
Email: sgn@norredlaw.com
*TERMINATED: 08/28/2025*

**Warren V Norred**
Norred Law PLLC
515 E Border Street
Arlington, TX 76010
817-704-3984
Fax: 817-524-6686
Email: warren@norredlaw.com
*TERMINATED: 08/28/2025*

**Defendant**

**Carnegie Development LLC**

**Defendant**

**Wall007 LLC**

**Defendant**

**Wall009 LLC**

**Defendant**

**Wall010 LLC**

**Defendant**

**Wall011 LLC**

**Defendant**

**Wall012 LLC**

**Defendant**

**Wall016 LLC**

**Defendant**

**Wall017 LLC**

**Defendant**

**Wall018 LLC**

**Defendant**

**Wall019 LLC**

**Defendant**

**Haoqiang Fu**
*also known as*
Michael Fu

**Defendant**

**Stephen T Wall** represented by **Michael P Heiskell**
Johnson Vaughn & Heiskell
500 W 7th Street
Suite 700
Fort Worth, TX 76102
817-457-2999
Email: mheiskell@johnson-vaughn-heiskell.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DJD Land Partners LLC**
*Relief Defendant*

**Defendant**

**LDG001 LLC**
*Relief Defendant*

V.

**Movant**

**Southern Properties Capital Ltd**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*
*TERMINATED: 10/05/2023*

represented by **C Gregory Shamoun**
Shamoun & Norman, LLP
1800 Valley View Lane
Suite 200
Farmers Branch, TX 75234
214-987-1745
Email: g@snlegal.com
*TERMINATED: 03/06/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Keith Norman**
Shamoun & Norman LLP
1800 Valley View Lane, Suite 200
Farmers Branch, TX 75234
214-987-1745
Fax: 214-521-9033
Email: bkn@snlegal.com
*TERMINATED: 03/06/2023*
*ATTORNEY TO BE NOTICED*

**Jeffrey Blair Norris**
Shamoun & Norman LLP
1800 Valley View Lane
Suite 200
Farmers Branch, TX 75234
214-987-1745
Fax: 214-521-9033
Email: blairnorris@holdenlitigation.com
*TERMINATED: 06/02/2023*
*ATTORNEY TO BE NOTICED*

**Movant**

**Hunton Andrews Kurth LLP**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*
*TERMINATED: 04/12/2023*

represented by **Greg Waller**
Hunton Andrews Kurth LLP
600 Travis Street
Suite 4200
Houston, TX 77002
713-220-4790
Fax: 713-238-7434
Email: gregwaller@huntonak.com
*TERMINATED: 04/11/2023*
*ATTORNEY TO BE NOTICED*

**Movant**

**First Development Company of Ohio LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)*
*TERMINATED: 09/03/2024*

represented by **Jonathan Alexander Gitlin**
Offit Kurman
700 North Pearl Street
Suite 1610
Dallas, TX 75201
214-593-4983
Email: jonathan.gitlin@offitkurman.com
*TERMINATED: 09/03/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Texas Republic Bank NA**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*
*TERMINATED: 11/30/2023*

represented by **Patrick Joseph Schurr**
Scheef & Stone LLP
2600 Network Boulevard
Suite 400
Frisco, TX 75034
214-472-2100
Fax: 214-472-2150
Email: patrick.schurr@solidcounsel.com
*TERMINATED: 11/21/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shirley Berlinda Rose**
Scheef & Stone LLP
2600 Network Boulevard
Suite 400
Frisco, TX 75034

214-472-2100
Fax: 214-472-2150
*TERMINATED: 11/21/2023*

**Movant**

**Daniel Crow**
*Motion termed per [421] Order*
*TERMINATED: 11/30/2023*

represented by **Daniel Crow**
3526 Arrowhead Dr
Dallas, TX 75204
214-263-8704
PRO SE

**Movant**

**Marine Creek Ventures LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)*

represented by **Michael D Napoli**
Akerman LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
214-720-4300
Fax: 214-981-9339
Email: michael.napoli@akerman.com
*TERMINATED: 09/22/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**DLP Real Estate Capital Inc**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)*

represented by **Michael D Napoli**
(See above for address)
*TERMINATED: 09/22/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**DLP Winter Haven Ventures LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)*

represented by **Michael D Napoli**
(See above for address)
*TERMINATED: 09/22/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Orchard Farms Ventures LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)*

represented by **Michael D Napoli**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Mountain Peak Special Utility District**
*Party and attorneys are active (attorneys have been terminated to restrict access to sealed filings.)*

represented by **Jordan Allen Miller**
Baker Moran Doggett Ma & Dobbs LLP
1400 Preston Road
Suite 295
Plano, TX 75093-3601
469-351-3496
Fax: 469-351-3490
Email: jmiller@bakermoran.com
*TERMINATED: 04/27/2026*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Christopher Cox**
Baker Moran Doggett Ma & Dobbs LLP
1400 Preston Road
Suite 295
Plano, TX 75093
469-351-3500
Fax: 469-351-3490
Email: acox@bakermoran.com
*TERMINATED: 04/27/2026*
*ATTORNEY TO BE NOTICED*

**Davinder Jassal**
Henry Oddo Austin & Fletcher PC
1717 Main Street, Suite 4600
Dallas, TX 75201
214-658-1917
Fax: 214-658-1919
Email: djassal@hoaf.com
*TERMINATED: 04/27/2026*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**HNGH Turtle Creek**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **George W Hicks**
Kirkland & Ellis LLP
1301 Pennsylvania Avenue NW
Washington, DC 20004
202-389-5000
Fax: 202-389-5200
Email: george.hicks@kirkland.com
*TERMINATED: 07/30/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Erin Angela Nealy Cox**
Kirkland & Ellis LLP
4550 Travis Street
Dallas, TX 75205
214-972-1847
Email: erin.nealycox@kirkland.com
*TERMINATED: 11/14/2022*

**John Joseph Kane**
Kane Russell Coleman & Logan PC
901 Main Street
Suite 5200
Dallas, TX 75202
214/777-4200
Fax: 214/777-4299
Email: jkane@krcl.com
*TERMINATED: 11/14/2022*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Maximilien Barton**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Nathan Benjamin Baum**
Norton Rose Fulbright US LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
214-855-7487
Fax: 214-855-8200
Email: nathan.baum@nortonrosefulbright.com
*TERMINATED: 11/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ryan Cooke**
Norton Rose Fulbright US LLP
111 W Houston Street
Suite 1800
San Antonio, TX 78205
210-270-7175
*TERMINATED: 11/14/2022*

**Interested Party**

**Gillespie Villas LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Nathan Benjamin Baum**
(See above for address)
*TERMINATED: 11/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ryan Cooke**
(See above for address)
*TERMINATED: 11/14/2022*

**Interested Party**

**Venus59 LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Nathan Benjamin Baum**
(See above for address)
*TERMINATED: 11/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ryan Cooke**
(See above for address)
*TERMINATED: 11/14/2022*

**Interested Party**

**TRTX Properties LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Nathan Benjamin Baum**
(See above for address)
*TERMINATED: 11/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ryan Cooke**

(See above for address)
*TERMINATED: 11/14/2022*

**Interested Party**

**MXBA LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Nathan Benjamin Baum**
(See above for address)
*TERMINATED: 11/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ryan Cooke**
(See above for address)
*TERMINATED: 11/14/2022*

**Interested Party**

**Titan Investments LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Nathan Benjamin Baum**
(See above for address)
*TERMINATED: 11/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher Ryan Cooke**
(See above for address)
*TERMINATED: 11/14/2022*

**Interested Party**

**Palisades-TC LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Jeffrey M Tillotson**
Tillotson Johnson & Patton
1201 Main Street, Suite 1300
Dallas, TX 75202
214-382-3040
Email: jtillotson@tillotsonlaw.com
*TERMINATED: 11/27/2023*
*ATTORNEY TO BE NOTICED*

**Jonathan Patton**
Tillotson Johnson & Patton
1201 Main Street
Suite 1300
Dallas, TX 75202
214-382-3041
Fax: 214-292-6564
Email: jpatton@tillotsonlaw.com
*TERMINATED: 12/07/2022*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**David Dhiraj Ramolia**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Eliot Dana Shavin**
Chandler & Shavin PLLC
12377 Merit Drive, Suite 880
Dallas, TX 75251
214-522-2010
Email: shavin@chandlershavin.com

*TERMINATED: 12/20/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Corinna Pia Chandler**
Chandler & Shavin, PLLC
12377 Merit Drive, Suite 880
Dallas, TX 75251
972-863-9063
Email: chandler@chandlershavin.com
*TERMINATED: 12/22/2022*
*ATTORNEY TO BE NOTICED*

**Daniel Rasoul Alexander**
Chandler & Shavin PLLC
12377 Merit Drive
Suite 880
Dallas, TX 75251
469-236-4503
Email: alexander@chandlershavin.com
*TERMINATED: 12/23/2022*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Southern Star Capital LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*
*doing business as*
Reliance Morgage Company

represented by **Robert W Buchholz**
Law Office of Robert W Buchholz PC
5220 Spring Valley Road, Suite 618
Dallas, TX 75254
214-754-5500
Fax: 214-754-9100
Email: bob@attorneybob.com
*TERMINATED: 01/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Circle H Contractors LP**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Aaron Thomas Capps**
Capps and Associates PLLC
1700 Pacific Ave.
Suie 1045
Dallas, TX 75201
469-236-7719
Email: acapps@cappspllc.com
*TERMINATED: 01/11/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**MFO Venus Development LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Ian Edward Fullington**
Moss & Associates, LLC
6950 TPC Drive
Suite 300
McKinney, TX 75070
469-625-9063

Email: ifullington@mosscm.com
*TERMINATED: 02/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Tamamoi LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Howard Marc Spector**
Spector & Cox PLLC
12770 Coit Rd
Suite 850
Dallas, TX 75251
214-365-5377
Email: hms7@cornell.edu
*TERMINATED: 03/16/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Melissa Cox**
Spector & Cox PLLC
12770 Coit Rd
Suite 850
Dallas, TX 75251
214-310-1321
Email: sarah@spectorcox.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**3820 Illinois LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Howard Marc Spector**
(See above for address)
*TERMINATED: 03/16/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah Melissa Cox**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Vertical Street Ventures LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Matthias Kleinsasser**
Winstead PC
300 Throckmorton Street
Suite 1700
Fort Worth, TX 76102
817-420-8200
Fax: 817-420-8201
Email: mkleinsasser@winstead.com
*TERMINATED: 03/17/2023*
*LEAD ATTORNEY*

**Joseph J Wielebinski**
Winstead PC
2728 N. Harwood Street, Ste. 500
Dallas, TX 75201
214-745-5210

Fax: 214-745-5390
Email: jwielebinski@winstead.com
*TERMINATED: 03/17/2023*

**Interested Party**

**McCormick 101 LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Clay Marshall Taylor**
Spencer Fane LLP
5700 Granite Parkway
Suite 650
Plano, TX 75024
972-324-0383
Email: ctaylor@spencerfane.com
*TERMINATED: 02/25/2025*
*ATTORNEY TO BE NOTICED*

**Gwen I Walraven**
Bell Nunnally & Martin
2323 Ross Avenue
Suite 1900
Dallas, TX 75201
214-740-1484
Fax: 214-740-5705
Email: gwalraven@bellnunnally.com
*TERMINATED: 02/26/2024*
*ATTORNEY TO BE NOTICED*

**Jill L Nicholson**
Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6361
312-876-8130
Email: jill.nicholson@dentons.com
*TERMINATED: 02/25/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kasheem Shane Thomas**
Bell Nunnally & Martin LLP
2323 Ross Avenue
Suite 1900
Dallas, TX 75201
214-740-1400
Fax: 214-740-1499
Email: sthomas@bellnunnally.com
*TERMINATED: 02/14/2024*
*ATTORNEY TO BE NOTICED*

**Lewis Floyd Collins , III**
Bell Nunnally & Martin LLP
2323 Ross Avenue
Suite 1900
Dallas, TX 75201
214-740-1400

Fax: 214-740-1499
Email: lcollins@bellnunnally.com
*TERMINATED: 02/26/2024*
*ATTORNEY TO BE NOTICED*

**Phillip Kyle Cheves**
Polsinelli PC
2950 N Harwood Street
Suite 2100
Dallas, TX 75201
214-661-5514
Fax: 214-481-1872
Email: kcheves@polsinelli.com
*TERMINATED: 02/25/2025*

**Russell W Mills**
Bell Nunnally & Martin
2323 Ross Ave.
Suite 1900
Dallas, TX 75201
214-740-1431
Fax: 214-740-1499
Email: rmills@bellnunnally.com
*TERMINATED: 02/26/2024*
*ATTORNEY TO BE NOTICED*

**Spencer Dennis Hamilton**
Dentons US LLP
100 Crescent Court, Suite 900
Dallas, TX 75201
214-259-0900
Email: spencer.hamilton@dentons.com
*TERMINATED: 02/25/2025*
*ATTORNEY TO BE NOTICED*

__Interested Party__

**Serena Badgley**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Ryan Eric Chapple**
Cain & Skarnulis PLLC
303 Colorado Street
Suite 2850
Austin, TX 78701
512-477-5000
Fax: 512-477-5011
Email: rchapple@cstrial.com
*TERMINATED: 09/28/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

__Interested Party__

**Pioneer Finance Inc**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **John B Scott**
Scott & Scott, PLLC
316 W. 12th St.
Suite 200
Austin, TX 78701

817/691-5817
Email: john.scott@scottpllc.net
*TERMINATED: 06/27/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lindsay Lombard Buchanan**
Baker Botts LLP
910 Louisiana
Houston, TX 77002
713-229-1234
Email: lindsay.buchanan@bakerbotts.com
*TERMINATED: 06/28/2024*

**Tina Quy Phi Nguyen**
Baker Botts
One Shell Plaza
910 Louisiana
Houston, TX 77002
713/229-1304
Fax: 713/229-7904
Email: tina.nguyen@bakerbotts.com
*TERMINATED: 06/28/2024*

<u>**Interested Party**</u>

**The Dixon Water Foundation**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Deborah M Perry**
Munsch Hardt Kopf & Harr, PC
500 N. Akard Street
Suite 4000
Dallas, TX 75201
214-855-7565
Email: dperry@munsch.com
*TERMINATED: 01/12/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Interested Party**</u>

**Truist Bank**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Gordon Welborne Green**
Troutman Pepper Locke LLP
2200 Ross Ave.
Suite 2800
Dallas, TX 75201
214-740-8027
Email: gordon.green@troutman.com
*TERMINATED: 03/12/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Interested Party**</u>

**Louisiana National Bank**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Martin Allen Sosland**
Vartabedian Katz Hester & Haynes LLP
2200 Ross Avenue
Suite 4200w
Dallas, TX 75201

817-214-4990
Email: martin.sosland@vkhh.com
*TERMINATED: 07/09/2024*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**City of Frisco, Texas**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

represented by **Douglas Steve Bird**
Linebarger Goggan Blair & Sampson
PO Box 17428
Austin, TX 78760
512-447-6675
Fax: 512-693-0728
Email: lydia.verosky@lgbs.com
*TERMINATED: 02/17/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ethan J Ranis**
Linebarger Goggan Blair & Sampson LLP
PO Box 17428
Austin, TX 78760
512-447-6675
Email: lydia.verosky@lgbs.com
*TERMINATED: 02/17/2025*
*ATTORNEY TO BE NOTICED*

V.

**Receiver**

**Receiver**

represented by **Cort Thomas**
Brown Fox PLLC
2699 Howell St
Suite 500
Dallas, TX 75204
214-367-6094
Email: cort@brownfoxlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C Alan Carrillo**
Brown Fox PLLC
8111 Preston Road, Suite 300
Dallas, TX 75225
214-327-5000
Fax: 214-327-5001
Email: Alan@brownfoxlaw.com
*ATTORNEY TO BE NOTICED*

**Charlene Cantrell Koonce**
Brown Fox PLLC
2699 Howell Street
Suite 500

Dallas, TX 75204
214-327-5000
Fax: 214-327-5001
Email: charlene@brownfoxlaw.com
*ATTORNEY TO BE NOTICED*

**James Frederick Hopper , Jr**
Brown Fox PLLC
2699 Howell Street
Suite 500
Dallas, TX 75204
214-327-5000
Fax: 214-327-5001
Email: jimmy@brownfoxlaw.com
*ATTORNEY TO BE NOTICED*

**Tim Wells**
Brown Fox PLLC
8111 Preston Rd
Suite 300
Dallas, TX 75225
214-327-5000
Fax: 214-327-5001
Email: tim@brownfoxlaw.com
*TERMINATED: 08/04/2025*

V.

**Mediator**

**ADR Provider** represented by **Harlin D Hale**
US Bankruptcy Court
1100 Commerce St
12th Floor
Dallas, TX 75242
214-753-2000
Email: hdh_districtdocs@txnb.uscourts.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor**

**United States of America** represented by **Renee M Hunter-DOJ**
United States Attorney's Office
Northern District of Texas
1100 Commerce Street
Suite 300
Dallas, TX 75242
214-659-8798
Email: renee.hunter@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/23/2022 | 1 | COMPLAINT WITH JURY DEMAND against Timothy Barton, Carnegie Development, LLC, DJD Land Partners, LLC, Haoqiang Fu (A/K/A Michael Fu), LDG001, LLC, Stephen T Wall, Wall007, LLC, Wall009, LLC, Wall010, LLC, Wall011, LLC, Wall012, LLC, Wall016, LLC, Wall017, LLC, Wall018, LLC, Wall019, LLC filed by Securities and Exchange Commission. (Filer fee note- Filed by the USA) Plaintiff will submit summons(es) for issuance. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Cover Sheet) (Bernstein, Keefe) (Entered: 09/23/2022) |
| 09/23/2022 | 2 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Securities and Exchange Commission. (Clerk QC note: No affiliate entered in ECF). (Bernstein, Keefe) (Entered: 09/23/2022) |
| 09/23/2022 | 3 | Request for Clerk to issue Summons filed by Securities and Exchange Commission. (Bernstein, Keefe) (Entered: 09/23/2022) |
| 09/23/2022 | 4 | New Case Notes: A filing fee is not due for this case. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Toliver). Clerk to provide copy to plaintiff if not received electronically. (mlb) (Entered: 09/23/2022) |
| 09/23/2022 | 5 | Summons Issued as to Timothy Barton, Carnegie Development LLC, DJD Land Partners LLC, Haoqiang Fu, LDG001 LLC, Stephen T Wall, Wall007 LLC, Wall009 LLC, Wall010 LLC, Wall011 LLC, Wall012 LLC, Wall016 LLC, Wall017 LLC, Wall018 LLC, Wall019 LLC. (mlb) (Entered: 09/23/2022) |
| 09/26/2022 | 6 | Expedited MOTION for Appointment of Receiver filed by Securities and Exchange Commission with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Bernstein, Keefe) Modified text on 9/27/2022 (ygl). (Entered: 09/26/2022) |
| 09/26/2022 | 7 | Appendix in Support filed by Securities and Exchange Commission re 6 MOTION Plaintiff's Expedited Motion for Appointment of Receiver and Brief In Support (Attachments: # 1 Additional Page(s) Part 1 of 5) (Bernstein, Keefe) (Entered: 09/26/2022) |
| 09/26/2022 | 8 | ADDITIONAL ATTACHMENTS to 7 Appendix in Support by Plaintiff Securities and Exchange Commission. (Bernstein, Keefe) (Entered: 09/26/2022) |
| 09/26/2022 | 9 | ADDITIONAL ATTACHMENTS to 7 Appendix in Support by Plaintiff Securities and Exchange Commission. (Attachments: # 1 Additional Page(s) Appendix Part 4 of 5, # 2 Additional Page(s) Appendix Part 5 of 5) (Bernstein, Keefe) (Entered: 09/26/2022) |
| 09/28/2022 | 10 | SUMMONS Returned Executed as to Timothy Barton ; served on 9/26/2022; Carnegie Development LLC ; served on 9/26/2022; DJD Land Partners LLC ; served on 9/26/2022; LDG001 LLC ; served on 9/26/2022; Stephen T Wall ; served on 9/26/2022; Wall007 LLC ; served on 9/26/2022; Wall009 LLC ; served on 9/26/2022; Wall010 LLC ; served on 9/26/2022; Wall011 LLC ; served on 9/26/2022; Wall012 LLC ; served on 9/26/2022; Wall016 LLC ; served on 9/26/2022; Wall017 LLC ; served on 9/26/2022; Wall018 LLC ; |

| | | |
|---|---|---|
| | | served on 9/26/2022; Wall019 LLC ; served on 9/26/2022. (Bernstein, Keefe) (Entered: 09/28/2022) |
| 09/28/2022 | 11 | WAIVER OF SERVICE Returned Executed as to Haoqiang Fu. Waiver sent on 9/26/2022. (Bernstein, Keefe) (Entered: 09/28/2022) |
| 09/28/2022 | 12 | NOTICE of *Service of Plaintiff Securities and Exchange Commission's Expedited Motion for Appointment of Receiver* re: 11 Waiver of Service Executed, 10 Summons Returned,, filed by Securities and Exchange Commission (Bernstein, Keefe) (Entered: 09/28/2022) |
| 10/05/2022 | 13 | NOTICE of Attorney Appearance by Richard B Roper, III on behalf of Timothy Barton. (Filer confirms contact info in ECF is current.) (Roper, Richard) (Entered: 10/05/2022) |
| 10/05/2022 | 14 | NOTICE of Attorney Appearance by Richard B Roper, III on behalf of Timothy Barton. (Filer confirms contact info in ECF is current.) (Roper, Richard) (Entered: 10/05/2022) |
| 10/05/2022 | 15 | NOTICE of Attorney Appearance by Richard B Roper, III for Javan Porter on behalf of Timothy Barton. (Roper, Richard) (Entered: 10/05/2022) |
| 10/05/2022 | 16 | NOTICE of Attorney Appearance by Michael P Heiskell on behalf of Stephen T Wall. (Filer confirms contact info in ECF is current.) (Heiskell, Michael) (Entered: 10/05/2022) |
| 10/12/2022 | 17 | NOTICE of Attorney Appearance by Edwin Andrew Huffman for Edwin "Ted" A. Huffman, Michael J. Edney, Sean B. O'Connell, and Michael Dingman on behalf of Timothy Barton. (Huffman, Edwin) (Entered: 10/12/2022) |
| 10/14/2022 | 18 | Agreed Motion for Extension of Time to File Answer filed by Timothy Barton (Attachments: # 1 Agreed Proposed Order) (Huffman, Edwin) (Entered: 10/14/2022) |
| 10/14/2022 | 19 | MOTION for Extension of Time to File Response/Reply to 6 MOTION Plaintiff's Expedited Motion for Appointment of Receiver and Brief In Support filed by Timothy Barton (Attachments: # 1 Proposed Order) (Huffman, Edwin) (Entered: 10/14/2022) |
| 10/15/2022 | 20 | ELECTRONIC ORDER: The Court DENIES 19 Motion to Extend Time to File Response. The Response is due October 17, 2022. (Ordered by Judge Brantley Starr on 10/15/2022) (chmb) (Entered: 10/15/2022) |
| 10/17/2022 | 21 | ELECTRONIC ORDER granting 18 Motion for Extension of Time to File Answer. The answer is due 11/16/2022. (Ordered by Judge Brantley Starr on 10/17/2022) (chmb) (Entered: 10/17/2022) |
| 10/17/2022 | 22 | Agreed Motion for Extension of Time to File Answer filed by Stephen T Wall (Attachments: # 1 Proposed Order) (Heiskell, Michael) (Entered: 10/17/2022) |
| 10/17/2022 | 23 | Agreed Motion for Extension of Time to File Answer *for the Relief Defendants* filed by Timothy Barton (Attachments: # 1 Agreed Proposed Order) (Huffman, Edwin) (Entered: 10/17/2022) |
| 10/17/2022 | 24 | RESPONSE filed by Timothy Barton re: 6 MOTION Plaintiff's Expedited Motion for Appointment of Receiver and Brief In Support (Huffman, Edwin) (Entered: 10/18/2022) |
| 10/18/2022 | 25 | Appendix in Support filed by Timothy Barton re 24 Response/Objection (Huffman, Edwin) (Entered: 10/18/2022) |
| 10/18/2022 | 26 | ELECTRONIC ORDER granting 22 Motion for Extension of Time to File Answer. The answer is due 11/16/2022. (Ordered by Judge Brantley Starr on 10/18/2022) (chmb) (Entered: 10/18/2022) |

| | | |
|---|---|---|
| 10/18/2022 | 27 | ELECTRONIC ORDER granting 23 Motion for Extension of Time to File Answer. The answer is due 11/16/2022. (Ordered by Judge Brantley Starr on 10/18/2022) (chmb) (Entered: 10/18/2022) |
| 10/18/2022 | 28 | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Michael Dingman (Filing fee $100; Receipt number ATXNDC-13232815) filed by Timothy Barton (Attachments: # 1 Certificate of Good Standing) (Huffman, Edwin) (Entered: 10/18/2022) |
| 10/18/2022 | 29 | Order GRANTING 6 Motion for Appointment of Receiver. (Ordered by Judge Brantley Starr on 10/18/2022) (chmb) (Entered: 10/18/2022) |
| 10/18/2022 | 30 | NOTICE of Attorney Appearance by Charlene Cantrell Koonce on behalf of Receiver. (Filer confirms contact info in ECF is current.) (Koonce, Charlene) (Entered: 10/18/2022) |
| 10/19/2022 | 31 | ELECTRONIC ORDER granting 28 Application for Admission Pro Hac Vice of Michael Dingman. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 10/19/2022) (chmb) (Entered: 10/19/2022) |
| 10/20/2022 | 32 | Emergency MOTION to Amend/Correct 29 Order on Motion for Miscellaneous Relief filed by Timothy Barton (Attachments: # 1 Proposed Order) (Edney, Michael) (Entered: 10/20/2022) |
| 10/20/2022 | 33 | ELECTRONIC ORDER: The Court DENIES Defendant Barton's 32 Motion to Amend the Court's Order Appointing the Receiver. (Ordered by Judge Brantley Starr on 10/20/2022) (chmb) (Entered: 10/20/2022) |
| 10/25/2022 | 34 | SUMMONS Returned Executed as to DJD Land Partners LLC ; served on 10/6/2022; LDG001 LLC ; served on 10/6/2022; Wall007 LLC ; served on 10/6/2022; Wall009 LLC ; served on 10/6/2022; Wall010 LLC ; served on 10/6/2022; Wall011 LLC ; served on 10/6/2022; Wall012 LLC ; served on 10/6/2022; Wall016 LLC ; served on 10/6/2022; Wall017 LLC ; served on 10/6/2022; Wall018 LLC ; served on 10/6/2022; Wall019 LLC ; served on 10/6/2022. (Bernstein, Keefe) (Entered: 10/25/2022) |
| 10/25/2022 | 35 | SUMMONS Returned Executed as to Carnegie Development LLC ; served on 10/20/2022. (Bernstein, Keefe) (Entered: 10/25/2022) |
| 10/25/2022 | 36 | SUMMONS Returned Executed as to Haoqiang Fu. Served on 10/17/2022. (Bernstein, Keefe) Modified docket on 10/26/2022 (oyh). (Entered: 10/25/2022) |
| 10/26/2022 | 37 | MOTION Receiver's Unopposed Motion for Approval of Engagement Agreements filed by Receiver (Attachments: # 1 Appendix, # 2 Proposed Order) (Thomas, Cort) (Entered: 10/26/2022) |
| 10/27/2022 | 38 | ORDER: The Court GRANTS the Receiver's 37 Motion for Approval of Engagement Agreements. The Receiver's engagements of Brown Fox, PLLC, Ahuja & Clark, PLLC, and Veracity Forensics LLC, and the terms of each, are APPROVED. Fees and expenses incurred by the engaged professionals shall be paid in accordance with the terms of the Order Appointing Receiver. (Ordered by Judge Brantley Starr on 10/27/2022) (chmb) (Entered: 10/27/2022) |
| 10/27/2022 | 39 | NOTICE FILED: Peckar & Abramson (frw) (Entered: 10/27/2022) |
| 10/28/2022 | 40 | ELECTRONIC ORDER: The Court has received, by mail, a request from interested non-party Peckar & Abramson for a hearing on the Securities and Exchange Commission's 6 Motion for Appointment of Receiver. This letter, which the Court filed at Doc. 39 , is dated October 24, 2022. But on October 18, 2022, the Court entered an Order at Doc. 29 |

| | | |
|---|---|---|
| | | granting the SEC's Motion. Construing Peckar & Abramson's letter as a motion for a hearing, the Court thus DENIES AS MOOT the motion, and invites Peckar & Abramson to visit the following website to sign up for the federal courts' Case Management/Electronic Case Files (CM/ECF) system for future reference and filing purposes in federal court: https://www.uscourts.gov/court-records/electronic-filing-cmecf (Ordered by Judge Brantley Starr on 10/28/2022) (chmb) (Entered: 10/28/2022) |
| 11/01/2022 | 41 | MOTION to Supplement Order Appointing Receiver filed by Receiver re 29 Order . (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 11/01/2022) |
| 11/01/2022 | 42 | Appendix in Support filed by Receiver re 41 MOTION to Supplement Order Appointing Receiver. (Koonce, Charlene) (Entered: 11/01/2022) |
| 11/01/2022 | 43 | ELECTRONIC ORDER: The Court ORDERS an expedited response to 41 the Receiver's Motion to Supplement Order Appointing Receiver. Anyone wishing to respond must respond within ten (10) days. (Ordered by Judge Brantley Starr on 11/1/2022) (chmb) (Entered: 11/01/2022) |
| 11/02/2022 | 44 | Unopposed MOTION to Intervene, MOTION to Stay *Proceedings* filed by United States of America (Attachments: # 1 Proposed Order). Party United States of America added.Attorney Renee M Hunter-DOJ added to party United States of America(pty:intv) (Hunter-DOJ, Renee) (Entered: 11/02/2022) |
| 11/03/2022 | 45 | ***VACATED PER 48 ORDER***ORDER: The Court GRANTS 44 the United States of America's Motion to Intervene and Stay Proceedings. This proceeding is STAYED until otherwise ordered by the Court. Nothing in this Order shall prevent the Court-appointed Receiver from performing the duties and exercising the powers set forth in Doc. No. 29 the Court's Order Appointing Receiver. (Ordered by Judge Brantley Starr on 11/3/2022) (chmb) Modified on 11/4/2022 (ykp). (Entered: 11/03/2022) |
| 11/03/2022 | 46 | NOTICE of *INTENT TO FILE RESPONSE TO THE GOVERNMENT'S MOTION TO STAY PROCEEDINGS* re: 44 Unopposed MOTION to Intervene MOTION to Stay *Proceedings* filed by Timothy Barton (Edney, Michael) (Entered: 11/03/2022) |
| 11/04/2022 | 47 | MOTION for Order Governing Administration of Receivership Estate, Notice of Disposition of Certain Personal Property, and Brief in Support filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 11/04/2022) |
| 11/04/2022 | 48 | ELECTRONIC ORDER: The Court VACATES its Order at Doc. No. 45 granting the Government's Motion to Intervene and Stay Proceedings. Defendant Barton, who opposes the motion, has ten (10) days from the date of this Order to file a response. The Government will then have five (5) days to reply. Each party's filing should address what communication it had with the other party regarding whether Defendant Barton opposed the Government's 44 Motion to Intervene and Stay Proceedings. (Ordered by Judge Brantley Starr on 11/4/2022) (chmb) (Entered: 11/04/2022) |
| 11/04/2022 | 49 | ELECTRONIC ORDER: The Court ORDERS an expedited response to 47 the Receiver's Motion for Order Governing Administration of Receivership Estate. Any response must be filed within ten (10) days of this Order. (Ordered by Judge Brantley Starr on 11/4/2022) (chmb) (Entered: 11/04/2022) |
| 11/07/2022 | 50 | AFFIDAVIT re 29 Order on Motion for Miscellaneous Relief by Bank of America, N.A.. (Moeller, Evan) (Entered: 11/07/2022) |
| 11/11/2022 | 51 | RESPONSE AND OBJECTION filed by HNGH Turtle Creek re: 47 MOTION for Order Governing Administration of Receivership Estate, Notice of Disposition of Certain |

| | | |
|---|---|---|
| | | Personal Property, and Brief in Support, 41 MOTION to Supplement Order Appointing Receiver (Attachments: # 1 Appendix) (Nealy Cox, Erin) (Entered: 11/11/2022) |
| 11/11/2022 | 52 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by HNGH Turtle Creek. (Clerk QC note: Affiliate entry indicated). (Nealy Cox, Erin) (Entered: 11/11/2022) |
| 11/14/2022 | 53 | RESPONSE filed by Maximilien Barton, Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, Titan Investments LLC re: 41 MOTION to Supplement Order Appointing Receiver (Attachments: # 1 Exhibit(s) Appendix, # 2 Proposed Order) (Baum, Nathan) (Entered: 11/14/2022) |
| 11/14/2022 | 54 | RESPONSE filed by Timothy Barton re: 44 Unopposed MOTION to Intervene MOTION to Stay *Proceedings* (Attachments: # 1 Proposed Order) (Edney, Michael) (Entered: 11/14/2022) |
| 11/14/2022 | 55 | RESPONSE filed by Timothy Barton re: 41 MOTION to Supplement Order Appointing Receiver (Edney, Michael) (Entered: 11/14/2022) |
| 11/14/2022 | 56 | RESPONSE filed by Timothy Barton re: 47 MOTION for Order Governing Administration of Receivership Estate, Notice of Disposition of Certain Personal Property, and Brief in Support (Edney, Michael) (Entered: 11/14/2022) |
| 11/14/2022 | 57 | Appendix in Support filed by Timothy Barton re 56 Response/Objection (Edney, Michael) (Entered: 11/15/2022) |
| 11/15/2022 | 58 | Appendix in Support filed by Timothy Barton re 55 Response/Objection (Edney, Michael) (Entered: 11/15/2022) |
| 11/15/2022 | 59 | Agreed Motion for Second Extension of Time to File Answer filed by Timothy Barton (Attachments: # 1 Proposed Order) (Edney, Michael) Modified text on 11/16/2022 (ygl). (Entered: 11/15/2022) |
| 11/16/2022 | 60 | ELECTRONIC ORDER granting 59 Motion for Extension of Time to File Answer. (Ordered by Judge Brantley Starr on 11/16/2022) (chmb) (Entered: 11/16/2022) |
| 11/16/2022 | 61 | Agreed Motion for Extension of Time to File Answer *Second Extension to File Answer Complaint* filed by Stephen T Wall (Attachments: # 1 Proposed Order) (Heiskell, Michael) (Entered: 11/16/2022) |
| 11/16/2022 | 62 | ORDER: The Court GRANTS the Receivers 41 Motion to Supplement Order Appointing Receiver as detailed herein. As to non-party HNGHs 51 Response and Objection, the Court withholds judgment regarding the ownership of real property located at 2999 Turtle Creek Boulevard, Dallas, Texas 75219, because that question is not yet properly before the Court. (Ordered by Judge Brantley Starr on 11/16/2022) (chmb) (Entered: 11/16/2022) |
| 11/16/2022 | 63 | ORDER: The Court GRANTS the Receivers 47 Motion for Order Governing Administration of Receivership Estate, Etc. As to non-party HNGHs 51 Response and Objection, the Court withholds judgment regarding the ownership of real property located at 2999 Turtle Creek Boulevard, Dallas, Texas 75219, because that question is not yet properly before the Court. (Ordered by Judge Brantley Starr on 11/16/2022) (chmb) (Entered: 11/16/2022) |
| 11/16/2022 | 64 | ORDER: The Court GRANTS 44 the United States of America's Motion to Intervene and Stay Proceedings. This proceeding is STAYED until otherwise ordered by the Court. Nothing in this Order shall prevent the Court-appointed Receiver from performing the duties and exercising the powers set forth in 29 the Court's Order Appointing Receiver, as supplemented by 62 the Court's Order Supplementing the Order Appointing Receiver. |

| | | |
|---|---|---|
| | | (Ordered by Judge Brantley Starr on 11/16/2022) (chmb) (Main Document 64 replaced on 11/16/2022) (rekc). (Entered: 11/16/2022) |
| 11/16/2022 | 65 | ELECTRONIC ORDER: The Court VACATES AS MOOT 61 Stephen T. Wall's Motion for Extension of Time to File Answer in light of 64 the Court's Order staying proceedings. (Ordered by Judge Brantley Starr on 11/16/2022) (chmb) (Entered: 11/16/2022) |
| 11/17/2022 | 66 | NOTICE OF INTERLOCUTORY APPEAL as to 63 Order on Motion for Miscellaneous Relief, 33 Order on Motion to Amend/Correct, 62 Order on Motion for Miscellaneous Relief, 29 Order on Motion for Miscellaneous Relief to the Fifth Circuit by Timothy Barton. Filing fee $505, receipt number ATXNDC-13311453. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 11/17/2022) |
| 11/17/2022 | 67 | STATUS REPORT *Receiver's Initial Status Report* filed by Receiver. (Thomas, Cort) (Entered: 11/17/2022) |
| 11/21/2022 | 68 | AMENDED DOCUMENT by Bank of America, N.A.. Amendment to 50 Affidavit. . (Moeller, Evan) (Entered: 11/21/2022) |
| 11/21/2022 | | USCA Case Number 22-11132 in USCA5 for 66 Notice of Appeal filed by Timothy Barton. (svc) (Entered: 11/21/2022) |
| 11/25/2022 | 69 | MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* filed by HNGH Turtle Creek (Attachments: # 1 Proposed Order) (Nealy Cox, Erin) (Entered: 11/25/2022) |
| 11/25/2022 | 70 | Appendix in Support filed by HNGH Turtle Creek re 69 MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* (Nealy Cox, Erin) (Entered: 11/25/2022) |
| 11/28/2022 | 71 | MOTION to Stay *Pending Appeal* filed by Timothy Barton (Edney, Michael) (Entered: 11/28/2022) |
| 11/28/2022 | 72 | Appendix in Support filed by Timothy Barton re 71 MOTION to Stay *Pending Appeal* (Edney, Michael) (Entered: 11/28/2022) |
| 11/30/2022 | 73 | Brief/Memorandum in Support filed by Receiver re 41 MOTION to Supplement Order Appointing Receiver *and Further Motion to Supplement* (Attachments: # 1 Declaration(s) Part 1, # 2 Declaration(s) Part 2) (Koonce, Charlene) (Entered: 11/30/2022) |
| 11/30/2022 | 74 | Appendix in Support filed by Receiver re 73 Brief/Memorandum in Support of Motion (Attachments: # 1 Exhibit(s) Part 1, # 2 Exhibit(s) Part 2) (Koonce, Charlene) (Entered: 11/30/2022) |
| 12/01/2022 | | Record on Appeal for USCA5 22-11132 (related to 66 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the |

| | | |
|---|---|---|
| | | district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (mcrd) (Entered: 12/01/2022) |
| 12/01/2022 | 75 | ELECTRONIC ORDER: The Court ORDERS an expedited response to 71 Timothy Barton's Motion to Stay Pending Appeal. A response is due by December 9th, with a reply due by December 12th. The Receiver may respond to this motion within this timeframe as well. (Ordered by Judge Brantley Starr on 12/1/2022) (chmb) (Entered: 12/01/2022) |
| 12/02/2022 | 76 | MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property filed by Receiver (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 12/02/2022) |
| 12/02/2022 | 77 | Appendix in Support filed by Receiver re 76 MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property (Koonce, Charlene) (Entered: 12/02/2022) |
| 12/05/2022 | 78 | ELECTRONIC ORDER: The Court ORDERS expedited briefing on the Receiver's 76 Motion for Appointment of Appraisers, Approval of Appraisals, and Setting a Hearing. A response is due by December 12, 2022, with a reply due by December 15, 2022. It is further ordered that on December 19, 2022, at 10:00 AM, the Court will hold a hearing to consider arguments and objections regarding confirmation of the sale described in the Motion. (Ordered by Judge Brantley Starr on 12/5/2022) (chmb) (Entered: 12/05/2022) |
| 12/05/2022 | 79 | NOTICE OF HEARING to consider arguments and objections regarding confirmation of the sale described in the Receiver's 76 Motion. Hearing set for 12/19/2022 10:00 AM in US Courthouse, Courtroom 1525, 1100 Commerce St., Dallas, TX 75242-1310 before Judge Brantley Starr. (chmb) (Entered: 12/05/2022) |
| 12/07/2022 | 80 | NOTICE of Attorney Appearance by Jonathan Patton on behalf of Palisades-TC, LLC. (Filer confirms contact info in ECF is current.) (Patton, Jonathan) (Entered: 12/07/2022) |
| 12/07/2022 | 81 | RESPONSE filed by Timothy Barton re: 73 Brief/Memorandum in Support of Motion (Edney, Michael) (Entered: 12/07/2022) |
| 12/07/2022 | 82 | RESPONSE filed by Maximilien Barton, Gillespie Villas LLC, MXBA LLC, TRTX Properties LLC, Titan Investments LLC, Venus59 LLC re: 73 Brief/Memorandum in Support of Motion (Attachments: # 1 Appendix to Response to Supplemental Motion) (Baum, Nathan) (Entered: 12/07/2022) |
| 12/09/2022 | 83 | RESPONSE filed by Securities and Exchange Commission re: 71 MOTION to Stay *Pending Appeal* (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 12/09/2022) |
| 12/09/2022 | 84 | RESPONSE filed by Receiver re: 71 MOTION to Stay *Pending Appeal* (Koonce, Charlene) (Entered: 12/09/2022) |
| 12/09/2022 | 85 | Appendix in Support filed by Receiver re 84 Response/Objection (Koonce, Charlene) (Entered: 12/09/2022) |

| | | |
|---|---|---|
| 12/12/2022 | 86 | MOTION for Extension of Time to File Response/Reply to 76 MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property, 71 MOTION to Stay *Pending Appeal* filed by Timothy Barton (Attachments: # 1 Proposed Order) (Huffman, Edwin) (Entered: 12/12/2022) |
| 12/12/2022 | 87 | ELECTRONIC ORDER granting 86 Motion to Extend Time to File Response/Reply. Defendant Timothy Barton's response to 76 the Receiver's Motion for Appointment of Appraisers, etc., and his reply the SEC's response to his 71 Motion to Stay are both due tomorrow, December 13, 2022. (Ordered by Judge Brantley Starr on 12/12/2022) (chmb) (Entered: 12/12/2022) |
| 12/13/2022 | 88 | ORDER: The Court GRANTS the Receiver's 73 Motion to Supplement Order Appointing Receiver. (Ordered by Judge Brantley Starr on 12/13/2022) (chmb) (Entered: 12/13/2022) |
| 12/13/2022 | 89 | NOTICE of *Intended Sale of Personal Property* filed by Receiver (Koonce, Charlene) (Entered: 12/13/2022) |
| 12/13/2022 | 90 | REPLY filed by Timothy Barton re: 71 MOTION to Stay *Pending Appeal* (Edney, Michael) (Entered: 12/13/2022) |
| 12/13/2022 | 91 | RESPONSE AND OBJECTION filed by Timothy Barton re: 76 MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property (Edney, Michael) (Entered: 12/13/2022) |
| 12/13/2022 | 92 | Appendix in Support filed by Timothy Barton re 91 Response/Objection, *to Motion for Sale of Rock Creek Property [ECF No. 76], and Cross-Motion for Order Prohibiting Sale of Personal Property Located at Rock Creek Home* (Edney, Michael) (Entered: 12/13/2022) |
| 12/15/2022 | 93 | REPLY filed by Receiver re: 76 MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property (Koonce, Charlene) (Entered: 12/15/2022) |
| 12/15/2022 | 94 | RESPONSE filed by Receiver re: 69 MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* (Koonce, Charlene) (Entered: 12/15/2022) |
| 12/15/2022 | 95 | MOTION to Ratify Agreement with DLP Capital and Other DLP Entities filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Exhibit(s) A - Agreement, # 2 Proposed Order) (Thomas, Cort) (Entered: 12/15/2022) |
| 12/16/2022 | 96 | MOTION Verified and Emergency Motion to Declare Lis Pendens Void filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Exhibit(s) A, # 2 Proposed Order) (Koonce, Charlene) (Entered: 12/16/2022) |
| 12/16/2022 | 97 | RESPONSE filed by Timothy Barton re: 69 MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* (Edney, Michael) (Entered: 12/16/2022) |
| 12/16/2022 | 98 | ELECTRONIC ORDER: The Court ORDERS expedited briefing on 95 the Receiver's Motion to Ratify Agreement with DLP Capital and Other DLP Entities. Any response is due by the close of business on Tuesday, December 20, 2022. (Ordered by Judge Brantley Starr on 12/16/2022) (chmb) (Entered: 12/16/2022) |
| 12/16/2022 | 99 | ORDER: The Court GRANTS IN PART 76 the Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing |

| | | |
|---|---|---|
| | | Regarding Approval of Sale of Rock Creek Property. (Ordered by Judge Brantley Starr on 12/16/2022) (chmb) (Entered: 12/16/2022) |
| 12/16/2022 | | Hearing/Deadline Modification: Hearing set per 99 Order. Hearing set for 12/19/2022 10:00 AM before Judge Brantley Starr. (axm) (Entered: 12/19/2022) |
| 12/18/2022 | 100 | NOTICE of *Publication Regarding Sale of Rock Creek Property* re: 76 MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Rock Creek Property, and Setting Hearing Regarding Approval of Sale of Rock Creek Property filed by Receiver (Thomas, Cort) (Entered: 12/18/2022) |
| 12/19/2022 | 101 | Appendix in Support filed by Receiver re 100 Notice (Other), *of Publication Regarding Sale of Rock Creek Property* (Thomas, Cort) (Entered: 12/19/2022) |
| 12/19/2022 | 102 | RESPONSE AND OBJECTION filed by Timothy Barton re: 96 MOTION Verified and Emergency Motion to Declare Lis Pendens Void (Edney, Michael) (Entered: 12/19/2022) |
| 12/19/2022 | 103 | Minute Entry for proceedings held before Judge Brantley Starr: Hearing on approval of sale held on 12/19/2022. Statements heard from Ms. Koonce, Mr. Edney and Mr. Bernstein. Court to issue order with ruling. Court is adjourn.. Attorney Appearances: Plaintiff - Keefe Bernstein; Defense - Michael Edney, Ted Huffman, Receiver - Charlene Koonce, Cort Thomas (No exhibits)(Court Reporter Kelli Ann Willis.) (Frye, Kevin) (Entered: 12/19/2022) |
| 12/20/2022 | 104 | ORDER GRANTING MOTION TO APPROVE SALE: The Court GRANTS the Receiver's motion for sale of the Property [Doc. No. 76 ] and DENIES Barton's motion to prohibit the sale [Doc. No. 91 ]. The Court GRANTS the Receiver's motion to declare the lis pendens void and ORDERS Barton to pay, within three days of this Order, $1,200 to the Receiver for fees incurred in opposing the lis pendens. [Doc. No. 96 ]. During the hearing, defense counsel made an oral motion to stay the sale of the Property should the Court find that selling it is in the Receiverships best interest. For the reasons stated at the hearing, the Court DENIES that oral motion. (Ordered by Judge Brantley Starr on 12/20/2022) (ndt) (Entered: 12/20/2022) |
| 12/20/2022 | 105 | NOTICE of Attorney Appearance by Eliot Dana Shavin for Corinna Chandler and Daniel Alexander on behalf of David Dhiraj Ramolia. (Shavin, Eliot) (Entered: 12/20/2022) |
| 12/20/2022 | 106 | RESPONSE AND OBJECTION filed by Timothy Barton re: 95 MOTION to Ratify Agreement with DLP Capital and Other DLP Entities (Edney, Michael) (Entered: 12/20/2022) |
| 12/20/2022 | 107 | Appendix in Support filed by Timothy Barton re 106 Response/Objection *to the Receivers Verified Motion To Ratify Agreement With DLP Capital and Other DLP Entities* (Edney, Michael) (Entered: 12/20/2022) |
| 12/21/2022 | 108 | NOTICE OF INTERLOCUTORY APPEAL as to 104 Order on Motion for Miscellaneous Relief,, to the Fifth Circuit by Timothy Barton. Filing fee $505, receipt number ATXNDC-13393416. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 12/21/2022) |

| | | |
|---|---|---|
| 12/21/2022 | 109 | ORDER granting Receiver's 95 Motion to Ratify Agreement With DLP Capital and Other DLP Entities (Ordered by Judge Brantley Starr on 12/21/2022) (rekc) Modified date filed on 12/22/2022 (rekc). (Entered: 12/22/2022) |
| 12/22/2022 | 110 | MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property and Setting Hearing Regarding Approval of Sale of Frisco Gate Property filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 12/22/2022) |
| 12/22/2022 | 111 | Appendix in Support filed by Receiver re 110 MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property and Setting Hearing Regarding Approval of Sale of Frisco Gate Property (Thomas, Cort) (Entered: 12/22/2022) |
| 12/23/2022 | 112 | NOTICE OF INTERLOCUTORY APPEAL as to 109 Order on Motion for Miscellaneous Relief to the Fifth Circuit by Timothy Barton. Filing fee $505, receipt number ATXNDC-13396690. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 12/23/2022) |
| 12/23/2022 | 113 | NOTICE of Attorney Appearance by Daniel Rasoul Alexander on behalf of David Dhiraj Ramolia. (Filer confirms contact info in ECF is current.) (Alexander, Daniel) (Entered: 12/23/2022) |
| 12/27/2022 | 114 | MOTION to Stay re 109 Order on Motion for Miscellaneous Relief filed by Timothy Barton with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Edney, Michael) (Entered: 12/27/2022) |
| 12/29/2022 | 115 | ELECTRONIC ORDER: The Court ORDERS expedited briefing on 110 the Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property, and Setting Hearing Regarding Approval of Sale, and 114 Barton's Motion to Stay. As to 110 , the response is due January 9, 2023, with a reply due January 12, 2023. As to 114 , the response is due January 4, 2023, with a reply due January 9, 2023. (Ordered by Judge Brantley Starr on 12/29/2022) (chmb) (Entered: 12/29/2022) |
| 12/29/2022 | 116 | REPLY filed by HNGH Turtle Creek re: 94 Response/Objection (Nealy Cox, Erin) (Entered: 12/29/2022) |
| 12/29/2022 | 117 | REPLY filed by HNGH Turtle Creek re: 69 MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* (Nealy Cox, Erin) (Entered: 12/29/2022) |
| 01/04/2023 | 118 | Transcript Order Form: re 108 Notice of Appeal,,,, transcript requested by Timothy Barton for Hearing on approval of sale held 12/19/22 (Court Reporter: Kelli Ann Willis.) Payment method: Private funds - Requester has obtained the estimate from the reporter and has paid or will pay the cost as directed. Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court. (Edney, Michael) (Entered: 01/04/2023) |

| | | |
|---|---|---|
| 01/04/2023 | 119 | RESPONSE filed by Receiver re: 114 MOTION to Stay re 109 Order on Motion for Miscellaneous Relief (Koonce, Charlene) (Entered: 01/04/2023) |
| 01/04/2023 | 120 | Appendix in Support filed by Receiver re 119 Response/Objection (Koonce, Charlene) (Entered: 01/04/2023) |
| 01/06/2023 | 121 | Notice of Filing of Official Electronic Transcript of Sale Approval Proceedings held on 12-19-2022 before Judge Brantley Starr. Court Reporter/Transcriber Kelli Ann Willis, Telephone number 214-753-2654. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (72 pages) Redaction Request due 1/27/2023. Redacted Transcript Deadline set for 2/6/2023. Release of Transcript Restriction set for 4/6/2023. (kaw) (Main Document 121 replaced on 1/10/2023) (chmb). Modified on 1/10/2023 (chmb). (Entered: 01/06/2023) |
| 01/06/2023 | | USCA Case Number 22-11242 for 112 Notice of Appeal filed by Timothy Barton. (svc) (Entered: 01/06/2023) |
| 01/06/2023 | 122 | ORDER of USCA IT IS ORDERED that Appellant's opposed motion to stay the district court's order appointing a Receiver, pending appeal, is DENIED. IT IS FURTHER ORDERED that Appellant's opposed alternative motion to stay several components of that order and others that have become part of it, pending appeal, is DENIED as to 108 Notice of Appeal filed by Timothy Barton, 66 Notice of Appeal filed by Timothy Barton, 112 Notice of Appeal filed by Timothy Barton. (svc) (Entered: 01/09/2023) |
| 01/09/2023 | 123 | NOTICE of *Non-Opposition* re: 110 MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property and Setting Hearing Regarding Approval of Sale of Frisco Gate Property filed by Timothy Barton (Edney, Michael) (Entered: 01/09/2023) |
| 01/09/2023 | 124 | REPLY filed by Timothy Barton re: 114 MOTION to Stay re 109 Order on Motion for Miscellaneous Relief (Edney, Michael) (Entered: 01/09/2023) |
| 01/10/2023 | 125 | Corrected REPLY filed by Timothy Barton re: 114 MOTION to Stay re 109 Order on Motion for Miscellaneous Relief (Edney, Michael) Modified text on 1/10/2023 per Attorney Michael Edney(sxf). (Entered: 01/10/2023) |
| 01/10/2023 | 126 | NOTICE of *REQUEST FOR NOTICE OF FILINGS* filed by Southern Star Capital, LLC (Buchholz, Robert) (Entered: 01/10/2023) |
| 01/11/2023 | 127 | NOTICE of Attorney Appearance by Aaron Thomas Capps on behalf of Circle H Contractors, LP. (Filer confirms contact info in ECF is current.) (Capps, Aaron) (Entered: 01/11/2023) |
| 01/12/2023 | 128 | ORDER: The Court GRANTS IN PART the Receiver's 110 Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property, and Setting Hearing Regarding Approval of Sale. (Ordered by Judge Brantley Starr on 1/12/2023) (chmb) (Entered: 01/12/2023) |
| 01/12/2023 | 129 | ELECTRONIC Notice of Hearing on Motion 110 set for 1/30/2023 02:00 PM in US Courthouse, Courtroom 1525, 1100 Commerce St., Dallas, TX 75242-1310 before Judge Brantley Starr. (chmb) (Entered: 01/12/2023) |

| | | |
|---|---|---|
| 01/12/2023 | 130 | NOTICE OF INTERLOCUTORY APPEAL as to 88 Order to the Fifth Circuit by Maximilien Barton, Gillespie Villas LLC, TRTX Properties LLC, Titan Investments LLC, Venus59 LLC. Filing fee $505, receipt number ATXNDC-13437910. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Baum, Nathan) (Entered: 01/12/2023) |
| 01/17/2023 | 131 | AMENDED NOTICE OF HEARING: The Court RESCHEDULES the Hearing on Motion 110 set by the Court's order 128 . The Hearing is set for 1/31/2023 at 02:00 PM in US Courthouse, Courtroom 1525, 1100 Commerce St., Dallas, TX 75242-1310 before Judge Brantley Starr. (chmb) (Entered: 01/17/2023) |
| 01/17/2023 | | Record on Appeal for USCA5 22-11226 (related to 108 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 1 Volume(s) electronic transcript,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (mcrd) (Entered: 01/17/2023) |
| 01/17/2023 | 132 | ORDER denying 71 Motion to Stay. (Ordered by Judge Brantley Starr on 1/17/2023) (chmb) (Entered: 01/17/2023) |
| 01/19/2023 | 133 | MOTION to Compel *Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing, and Brief in Support* filed by Receiver with Brief/Memorandum in Support. (Koonce, Charlene) (Entered: 01/19/2023) |
| 01/19/2023 | 134 | Appendix in Support filed by Receiver re 133 MOTION to Compel *Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing, and Brief in Support* (Koonce, Charlene) (Entered: 01/19/2023) |
| 01/26/2023 | 135 | Transcript Order Form: re 130 Notice of Appeal,,,, transcript not requested Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court.. (Baum, Nathan) (Entered: 01/26/2023) |
| 01/30/2023 | | Record on Appeal for USCA5 23-10046 (related to 130 appeal): Record consisting of: 10 ECF electronic record on appeal (eROA) is certified, 1 Volume(s) electronic transcript,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the |

| | | |
|---|---|---|
| | | record by contacting the appeals deputy in advance to arrange delivery. (svc) (Entered: 01/30/2023) |
| 01/30/2023 | 136 | AMENDED NOTICE OF HEARING: Due to the risk of inclement weather tomorrow, the Motion Hearing set for 1/31/2023 at 02:00 PM will take place over telephone instead of in person. The Court will send call-in information to the parties before the hearing. (chmb) (Entered: 01/30/2023) |
| 01/30/2023 | 137 | NOTICE of *Publication Regarding Sale of Frisco Property and Notice of Addendum to Purchase and Sale Contract* re: 110 MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property and Setting Hearing Regarding Approval of Sale of Frisco Gate Property, 131 Notice of Hearing, filed by Receiver (Thomas, Cort) (Entered: 01/30/2023) |
| 01/30/2023 | 138 | Appendix in Support filed by Receiver re 137 Notice (Other), *of Publication Regarding Sale of Frisco Gate Property and Notice of Addendum to Purchase and Sale Contract* (Thomas, Cort) (Entered: 01/30/2023) |
| 01/30/2023 | 139 | STATUS REPORT *Second Status Report of Receiver (4Q22)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 01/30/2023) |
| 01/31/2023 | 140 | ELECTRONIC Minute Entry for proceedings held before Judge Brantley Starr: Telephone Hearing held on 1/31/2023, re: Approval of Sale of Frisco Gate Property. Court to enter order approving sale. Court to enter order approval sale. Attorney Appearances: Plaintiff - Keefe Bernstein; Defense - Richard Roper, Jonathan Patton, Daniel Alexander, Robert Buchholz; Receivers - Charlene Koonce, Cort Thomas (Court Reporter: Kelli Ann Willis) (No exhibits) Time in Court - :10. (chmb) (Entered: 01/31/2023) |
| 01/31/2023 | 141 | AFFIDAVIT re 62 Order on Motion for Miscellaneous Relief, 29 Order on Motion for Miscellaneous Relief, 88 Order *Second Amended Certified Statement* by Bank of America, N.A.. (Moeller, Evan) (Entered: 01/31/2023) |
| 01/31/2023 | 142 | ORDER: For the reasons stated at today's hearing, the Court GRANTS 110 the Receiver's motion to approve the sale of property. (Ordered by Judge Brantley Starr on 1/31/2023) (chmb) (Entered: 01/31/2023) |
| 02/01/2023 | 143 | MOTION to Ratify Agreement with Lumar Land & Cattle and Brief in Support filed by Receiver with Brief/Memorandum in Support. (Koonce, Charlene) (Entered: 02/01/2023) |
| 02/01/2023 | 144 | Appendix in Support filed by Receiver re 143 MOTION to Ratify Agreement with Lumar Land & Cattle and Brief in Support (Koonce, Charlene) (Entered: 02/01/2023) |
| 02/02/2023 | 145 | Notice of Filing of Official Electronic Transcript of Sale Approval Proceedings held on 01-31-23 before Judge Brantley Starr. Court Reporter/Transcriber Kelli Ann Willis, Telephone number 214-753-2654. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (17 pages) Redaction Request due 2/23/2023. Redacted Transcript Deadline set for 3/6/2023. Release of Transcript Restriction set for 5/3/2023. (kaw) (Entered: 02/02/2023) |
| 02/02/2023 | 146 | ELECTRONIC ORDER: The Court ORDERS expedited briefing on the Receiver's 143 Motion to Ratify Agreement, with a response due February 10, 2023, and a reply due |

| | | |
|---|---|---|
| | | February 15, 2023. (Ordered by Judge Brantley Starr on 2/2/2023) (chmb) (Entered: 02/02/2023) |
| 02/02/2023 | 147 | Unopposed MOTION to Withdraw 13 Notice of Attorney Appearance filed by Timothy Barton with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Roper, Richard) (Entered: 02/02/2023) |
| 02/03/2023 | 148 | ELECTRONIC ORDER granting 147 Motion to Withdraw as Counsel for attorneys Richard B. Roper and Javan Porter. (Ordered by Judge Brantley Starr on 2/3/2023) (chmb) (Entered: 02/03/2023) |
| 02/06/2023 | 149 | MOTION for Extension of Time to File Response/Reply to 133 MOTION to Compel *Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing, and Brief in Support* filed by Timothy Barton (Attachments: # 1 Proposed Order) (Huffman, Edwin) (Entered: 02/06/2023) |
| 02/07/2023 | 150 | ELECTRONIC ORDER granting 149 Motion to Extend Time to File Response. The new deadline for Defendant's response is February 16, 2023. (Ordered by Judge Brantley Starr on 2/7/2023) (chmb) (Entered: 02/07/2023) |
| 02/09/2023 | 151 | Supplemental Document by HNGH Turtle Creek as to 69 MOTION to Intervene *and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard* . (Nealy Cox, Erin) (Entered: 02/09/2023) |
| 02/09/2023 | 152 | Supplemental Document by HNGH Turtle Creek as to 70 Appendix in Support *of Motion to Intervene and to Confirm Ownership of Property Located at 2999 Turtle Creek Boulevard.* (Nealy Cox, Erin) (Entered: 02/09/2023) |
| 02/10/2023 | 153 | NOTICE of Attorney Appearance by Ian Edward Fullington on behalf of MFO Venus Development, LLC. (Filer confirms contact info in ECF is current.) (Fullington, Ian) (Entered: 02/10/2023) |
| 02/10/2023 | 154 | ELECTRONIC ORDER granting in part and denying in part 69 Motion to Intervene and to Confirm Ownership of Property. The Court GRANTS permission to intervene and DENIES the request to confirm ownership of the property at issue. The Court ORDERS the parties to mediate their dispute, and APPOINTS Judge Harlin Hale as mediator. (Ordered by Judge Brantley Starr on 2/10/2023) (chmb) (Entered: 02/10/2023) |
| 02/10/2023 | 155 | Response in Opposition filed by Timothy Barton re 143 MOTION to Ratify Agreement with Lumar Land & Cattle and Brief in Support *(Response Brief)* (Attachments: # 1 Exhibit(s) A) (Edney, Michael) Modified docket text on 2/13/2023 (ykp). (Entered: 02/10/2023) |
| 02/14/2023 | 156 | MOTION First Quarterly Fee Application (4Q22) filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 02/14/2023) |
| 02/14/2023 | 157 | Appendix in Support filed by Receiver re 156 MOTION First Quarterly Fee Application (4Q22) (Thomas, Cort) (Entered: 02/14/2023) |
| 02/15/2023 | 158 | NOTICE of *INTENT TO FILE OPPOSITION TO THE RECEIVERS FIRST QUARTERLY FEE APPLICATION* re: 156 MOTION First Quarterly Fee Application (4Q22) filed by Timothy Barton (Edney, Michael) (Entered: 02/15/2023) |
| 02/15/2023 | 159 | REPLY filed by Receiver re: 143 MOTION to Ratify Agreement with Lumar Land & Cattle and Brief in Support (Koonce, Charlene) (Entered: 02/15/2023) |
| 02/16/2023 | 160 | RESPONSE filed by Timothy Barton re: 133 MOTION to Compel *Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing,* |

| | | |
|---|---|---|
| | | *and Brief in Support* (Attachments: # 1 Declaration(s)) (Edney, Michael) (Entered: 02/16/2023) |
| 02/22/2023 | 161 | MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Parc at Windmill Farms filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 02/22/2023) |
| 02/22/2023 | 162 | Appendix in Support filed by Receiver re 161 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Parc at Windmill Farms (Attachments: # 1 Exhibit(s)) (Koonce, Charlene) (Entered: 02/22/2023) |
| 02/22/2023 | 163 | ORDER granting 143 Motion to Ratify. (Ordered by Judge Brantley Starr on 2/22/2023) (chmb) (Entered: 02/22/2023) |
| 02/22/2023 | 164 | MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Bellwether Ridge filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 02/22/2023) |
| 02/22/2023 | 165 | Appendix in Support filed by Receiver re 164 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Bellwether Ridge (Attachments: # 1 Exhibit(s)) (Koonce, Charlene) (Entered: 02/22/2023) |
| 03/01/2023 | 166 | REPLY filed by Receiver re: 133 MOTION to Compel *Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing, and Brief in Support* (Attachments: # 1 Exhibit(s) A) (Koonce, Charlene) (Entered: 03/01/2023) |
| 03/02/2023 | 167 | MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing and Approval of Sale of Amerigold Suites filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 03/02/2023) |
| 03/02/2023 | 168 | Appendix in Support filed by Receiver re 167 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing and Approval of Sale of Amerigold Suites (Koonce, Charlene) (Entered: 03/02/2023) |
| 03/02/2023 | 169 | ELECTRONIC ORDER: The Court ORDERS expedited briefing on the Receiver's motions for appointment of appraisers, approval of appraisals, approval hearing, and approval of sale of 161 Parc at Windmill Farms, 164 Bellwether Ridge, and 167 Amerigold Suites. All responses to these three motions are due by March 10, 2023, with reply briefing due by March 17, 2023. It is further ORDERED that on March 20, 2023, from 2:00 PM to 3:30 PM, the Court will hold a hearing to consider arguments and objections regarding confirmation of the sales described in each motion, dedicating 30 minutes to each of the three sales. (Ordered by Judge Brantley Starr on 3/2/2023) (chmb) (Entered: 03/02/2023) |
| 03/02/2023 | 170 | ELECTRONIC Notice of Hearing Motion Hearing set for 3/20/2023 02:00 PM to 3:30 PM in US Courthouse, Courtroom 1525, 1100 Commerce St., Dallas, TX 75242-1310 before Judge Brantley Starr. The hearing will allocate 30 minutes for each of the Receiver's motions for appointment of appraisers, approval of appraisals, approval hearing, and approval of sale of 161 Parc at Windmill Farms, 164 Bellwether Ridge, and 167 Amerigold Suites, taking the motions in the order they were filed. (chmb) (Entered: 03/02/2023) |
| 03/02/2023 | 171 | ELECTRONIC ORDER: The Court ORDERS the Receiver to serve Southern Properties with a copy of 169 & 170 the Court's orders setting motion hearings. (Ordered by Judge Brantley Starr on 3/2/2023) (chmb) (Entered: 03/02/2023) |
| 03/02/2023 | | Record on Appeal for USCA5 22-11242 (related to 112 appeal): Record consisting of: 13 ECF electronic record on appeal (eROA) is certified, 2 Volume(s) electronic transcript,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an |

| | | |
|---|---|---|
| | | appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (svc) (Entered: 03/02/2023) |
| 03/02/2023 | | USCA Case Number 23-10046 in USCA5 for 130 Notice of Appeal filed by Gillespie Villas LLC, Titan Investments LLC, TRTX Properties LLC, Venus59 LLC, Maximilien Barton. (svc) (Entered: 03/02/2023) |
| 03/02/2023 | 172 | NOTICE of *INTENT TO MOVE FOR LEAVE TO FILE SUR-REPLY TO THE RECEIVERS MOTION FOR CONTEMPT AS TO NEW EVIDENCE, ARGUMENTS, AND EXPANDED RELIEF SOUGHT IN THE RECEIVERS REPLY BRIEF* re: 166 Reply, 133 MOTION to Compel *Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing, and Brief in Support* filed by Timothy Barton (Edney, Michael) (Entered: 03/02/2023) |
| 03/06/2023 | 173 | NOTICE of Attorney Appearance by Brian Keith Norman for C. Gregory Shamoun on behalf of Southern Properties Capital, Ltd.. (Norman, Brian) (Entered: 03/06/2023) |
| 03/06/2023 | 174 | First MOTION to Continue *Filing and Hearing Dates* filed by Southern Properties Capital, Ltd. with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Norman, Brian) (Entered: 03/06/2023) |
| 03/07/2023 | 175 | ELECTRONIC ORDER denying 174 Motion to Continue. (Ordered by Judge Brantley Starr on 3/7/2023) (chmb) (Entered: 03/07/2023) |
| 03/07/2023 | 176 | RESPONSE filed by Timothy Barton re: 156 MOTION First Quarterly Fee Application (4Q22) (Huffman, Edwin) (Entered: 03/07/2023) |
| 03/10/2023 | 177 | MOTION to Intervene filed by Southern Properties Capital, Ltd. (Attachments: # 1 Proposed Order) (Norman, Brian) (Entered: 03/10/2023) |
| 03/10/2023 | 178 | RESPONSE filed by Southern Properties Capital, Ltd. re: 161 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Parc at Windmill Farms, 164 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Bellwether Ridge (Norman, Brian) (Entered: 03/10/2023) |
| 03/10/2023 | 179 | Appendix in Support filed by Southern Properties Capital, Ltd. re 178 Response/Objection, *Volume 1* (Norman, Brian) (Entered: 03/10/2023) |
| 03/10/2023 | 180 | Appendix in Support filed by Southern Properties Capital, Ltd. re 178 Response/Objection, *Volume 2* (Norman, Brian) (Entered: 03/10/2023) |
| 03/10/2023 | 181 | Appendix in Support filed by Southern Properties Capital, Ltd. re 178 Response/Objection, *Volume 3* (Norman, Brian) (Entered: 03/10/2023) |
| 03/10/2023 | 182 | Appendix in Support filed by Southern Properties Capital, Ltd. re 178 Response/Objection, *Volume 4* (Norman, Brian) (Entered: 03/10/2023) |
| 03/10/2023 | 183 | Appendix in Support filed by Southern Properties Capital, Ltd. re 178 Response/Objection, *Volume 5* (Norman, Brian) (Entered: 03/10/2023) |

| | | |
|---|---|---|
| 03/10/2023 | 184 | INTERVENOR COMPLAINT against Receiver filed by Southern Properties Capital, Ltd.. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Norman, Brian) (Entered: 03/10/2023) |
| 03/10/2023 | 185 | RESPONSE filed by Timothy Barton re: 167 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing and Approval of Sale of Amerigold Suites, 161 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Parc at Windmill Farms, 164 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Bellwether Ridge (Edney, Michael) (Entered: 03/10/2023) |
| 03/11/2023 | 186 | Appendix in Support filed by Timothy Barton re 185 Response/Objection, *Appendix ISO Response to Receiver Property Sale Motions* (Edney, Michael) (Entered: 03/11/2023) |
| 03/11/2023 | 187 | ADDITIONAL ATTACHMENTS to 186 Appendix in Support by Defendant Timothy Barton. (Edney, Michael) (Entered: 03/11/2023) |
| 03/15/2023 | 188 | MOTION to Continue *Hearing Regarding Approval of Sales of Parc at Windmill Farms and Bellwether Ridge, and Motion to Stay Southern Properties' Motion to Intervene* filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 03/15/2023) |
| 03/15/2023 | 189 | RESPONSE filed by Southern Properties Capital, Ltd. re: 188 MOTION to Continue *Hearing Regarding Approval of Sales of Parc at Windmill Farms and Bellwether Ridge, and Motion to Stay Southern Properties' Motion to Intervene* (Norman, Brian) (Entered: 03/15/2023) |
| 03/16/2023 | 190 | ELECTRONIC ORDER granting 188 Motion to Continue. The Court CANCELS the hearings scheduled at Doc. No. 169 on the Receiver's motions for appointment of appraisers, approval of appraisals, approval hearing, and approval of sale of 161 Parc at Windmill Farms and 164 Bellwether Ridge. This Order does not affect the hearing scheduled at Doc. No. 169 on the Receiver's motion regarding 167 Amerigold Suites. The Court ORDERS the Receiver to move for summary judgment regarding the Receivership Entities' interests in and Southern Properties' competing claim to these properties (Parc at Windmill Farms and Bellwether Ridge) by April 13, 2023. Any response from Southern Properties (which may incorporate by reference Southern Properties' pending Response and Objection at Doc. No. 178 ) is due by May 4, 2023. Any reply by the Receiver is due by May 18, 2023. (Ordered by Judge Brantley Starr on 3/16/2023) (chmb) (Entered: 03/16/2023) |
| 03/16/2023 | 191 | NOTICE of Attorney Appearance by Howard Marc Spector on behalf of Tamamoi, LLC, 3820 Illinois, LLC. (Filer confirms contact info in ECF is current.) (Spector, Howard) (Entered: 03/16/2023) |
| 03/17/2023 | 192 | NOTICE of Attorney Appearance by Matthias Kleinsasser on behalf of Vertical Street Ventures, LLC. (Filer confirms contact info in ECF is current.). Party Vertical Street Ventures, LLC added. (Kleinsasser, Matthias) (Entered: 03/17/2023) |
| 03/17/2023 | 193 | REPLY filed by Receiver re: 167 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing and Approval of Sale of Amerigold Suites, 161 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Parc at Windmill Farms, 164 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Bellwether Ridge (Koonce, Charlene) (Entered: 03/17/2023) |

| | | |
|---|---|---|
| 03/17/2023 | 194 | Appendix in Support filed by Receiver re 193 Reply, (Koonce, Charlene) (Entered: 03/17/2023) |
| 03/19/2023 | 195 | ORDER granting 156 Receiver's Motion For First Quarterly Fee Application (Ordered by Judge Brantley Starr on 3/19/2023) (chmb) (Entered: 03/19/2023) |
| 03/20/2023 | 196 | NOTICE of Attorney Appearance by Joseph J Wielebinski on behalf of Vertical Street Ventures, LLC. (Filer confirms contact info in ECF is current.) (Wielebinski, Joseph) (Entered: 03/20/2023) |
| 03/20/2023 | 197 | ORDER granting in part 167 Motion (Ordered by Judge Brantley Starr on 3/20/2023) (chmb) (Entered: 03/20/2023) |
| 03/20/2023 | 198 | ELECTRONIC Minute Entry for proceedings held before Judge Brantley Starr: Motion Hearing held on 3/20/2023. re: 167 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing and Approval of Sale of Amerigold Suites. Statements heard from Ms. Koonce, Mr. Edney and Mr. Bernstein. Court to issue order with ruling. Court is adjourn. Attorney Appearances: Plaintiff - Keefe Bernstein; Defense - Michael Edney, Ted Huffman, Corinna Chandler, Receiver Charlene Koonce, Cort Thomas (Court Reporter: Kelli Ann Willis) (No exhibits) Time in Court - :30. (chmb) (Entered: 03/20/2023) |
| 03/21/2023 | 199 | MOTION to Compel *Documents and Information from Attorneys, Request for Sanctions, and Brief in Support* filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 03/21/2023) |
| 03/21/2023 | 200 | Appendix in Support filed by Receiver re 199 MOTION to Compel *Documents and Information from Attorneys, Request for Sanctions, and Brief in Support* (Koonce, Charlene) (Entered: 03/21/2023) |
| 03/23/2023 | 201 | MOTION for Leave to File Surreply*to Receiver's Motion to Compel* filed by Timothy Barton with Brief/Memorandum in Support. (Attachments: # 1 Exhibit(s) Exhibit A - Proposed Surreply, # 2 Proposed Order Proposed Order - Granting Leave to File Surreply, # 3 Proposed Order Proposed Order - Privilege Protocol Order, # 4 Proposed Order Proposed Order - Order on Privilege Protocol Conference) (Edney, Michael) (Entered: 03/23/2023) |
| 03/29/2023 | 202 | ORDER: The Court GRANTS 167 motion to sell property. (Ordered by Judge Brantley Starr on 3/29/2023) (chmb) (Entered: 03/29/2023) |
| 03/31/2023 | 203 | MOTION to Stay re 184 Intervenor Complaint,, 177 MOTION to Intervene *Receiver's Response to Southern Properties Capital, Ltd.'s Motion for Intervention, Complaint in Intervention and Renewed Motion to Stay* filed by Receiver (Attachments: # 1 Proposed Order) (Wells, Tim) (Entered: 03/31/2023) |
| 04/11/2023 | 204 | MOTION for Extension of Time to File Response/Reply to 199 MOTION to Compel *Documents and Information from Attorneys, Request for Sanctions, and Brief in Support* filed by Hunton Andrews Kurth LLP (Attachments: # 1 Proposed Order). Party NON-PARTY HUNTON ANDREWS KURTH LLP added.Attorney Greg Waller added to party Hunton Andrews Kurth LLP(pty:mov) (Waller, Greg) (Entered: 04/11/2023) |
| 04/12/2023 | 205 | ELECTRONIC ORDER granting 204 Motion to Extend Time to File Response. (Ordered by Judge Brantley Starr on 4/12/2023) (chmb) (Entered: 04/12/2023) |
| 04/13/2023 | 206 | MOTION for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Entities and Properties* filed by Receiver (Koonce, Charlene) (Entered: 04/13/2023) |

| | | |
|---|---|---|
| 04/13/2023 | 207 | Brief/Memorandum in Support filed by Receiver re: 206 Motion for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Properties*. (Koonce, Charlene) Modified event text on 5/31/2023 (axm). (Entered: 04/13/2023) |
| 04/13/2023 | 208 | Appendix in Support filed by Receiver re 207 MOTION for Summary Judgment *Brief in Support of Motion for Summary Judgment Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Properties* (Attachments: # 1 Additional Page(s) Exhibits A-29 - A-44 (APP355-APP628), # 2 Additional Page(s) Exhibits A-45 - A-62 (APP629-APP908), # 3 Additional Page(s) Exhibits A-63 - A-67 (APP909-APP959), # 4 Additional Page(s) Exhibits A-68 - A-71 (APP960-APP1030), # 5 Additional Page(s) Exhibits A-72 - A-77 (APP1031-APP1130)) (Koonce, Charlene) (Entered: 04/13/2023) |
| 04/17/2023 | 209 | NOTICE of *Third Party Offers to Purchase 2999 Turtle Creek Property* filed by Timothy Barton (Attachments: # 1 Exhibit(s) A) (Edney, Michael) (Entered: 04/17/2023) |
| 04/17/2023 | 210 | MOTION to Approve Settlement Agreement with HNGH Turtle Creek, LLC filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Exhibit(s) A - Settlement Agreement, # 2 Exhibit(s) B - Order Enforcing Agreed Orders, # 3 Proposed Order) (Thomas, Cort) (Entered: 04/17/2023) |
| 04/18/2023 | 211 | MOTION Expedited Motion to Confirm Litigation Stay filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Wells, Tim) (Entered: 04/18/2023) |
| 04/18/2023 | 212 | Appendix in Support filed by Receiver re 211 MOTION Expedited Motion to Confirm Litigation Stay (Wells, Tim) (Entered: 04/18/2023) |
| 04/21/2023 | 213 | NOTICE of *Intended Auction of Contents of 2999 Turtle Creek Blvd.* filed by Receiver (Koonce, Charlene) (Entered: 04/21/2023) |
| 04/21/2023 | 214 | Appendix in Support filed by Receiver re 213 Notice (Other) (Koonce, Charlene) (Entered: 04/21/2023) |
| 04/24/2023 | 215 | First MOTION to Strike 206 MOTION for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Entities and Properties*, 207 MOTION for Summary Judgment *Brief in Support of Motion for Summary Judgment Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Properties with Respect to Ingleside and Opelika* filed by Southern Properties Capital Ltd with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Norman, Brian) (Entered: 04/24/2023) |
| 04/25/2023 | 216 | ELECTRONIC ORDER: In his Reply in support of his Motion to Compel (Doc. 133 ), the Receiver proposed a privilege protocol and asked the Court to enter it. Doc. 166 at pp. 9-10. The Court ORDERS Barton to respond to the Receiver's proposed privilege protocol by May 3, 2023. Any reply from the Receiver is due May 9, 2023. (Ordered by Judge Brantley Starr on 4/25/2023) (chmb) (Entered: 04/25/2023) |
| 04/25/2023 | 217 | ELECTRONIC ORDER granting 203 Motion to Stay. The Court STAYS 184 Southern Properties' Intervenor Complaint and all associated deadlines. The Court will enter a new schedule for Southern Properties' Intervenor Complaint, if needed, after the completion of the pending summary proceeding. (Ordered by Judge Brantley Starr on 4/25/2023) (chmb) (Entered: 04/25/2023) |
| 04/25/2023 | 218 | ORDER granting 211 Unopposed Motion to Confirm Litigation Stay. (Ordered by Judge Brantley Starr on 4/25/2023) (axm) (Entered: 04/25/2023) |

| | | |
|---|---|---|
| 04/25/2023 | 219 | ORDER denying 114 Motion to Stay Pending Appeal. (Ordered by Judge Brantley Starr on 4/25/2023) (axm) (Entered: 04/25/2023) |
| 04/26/2023 | 220 | MOTION for Extension of Time to File Response/Reply to 207 MOTION for Summary Judgment *Brief in Support of Motion for Summary Judgment Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Properties*, 206 MOTION for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Entities and Properties* filed by Receiver (Koonce, Charlene) (Entered: 04/26/2023) |
| 04/27/2023 | 221 | ELECTRONIC ORDER granting 220 Motion to Extend Time to File Response/Reply. Southern Properties' Response is due May 16, 2023, and the Receiver's Reply is due June 5, 2023. (Ordered by Judge Brantley Starr on 4/27/2023) (chmb) (Entered: 04/27/2023) |
| 04/27/2023 | 222 | NOTICE of *Receiver's Withdrawal of Motion to Compel Documents and Information from Attorneys* re: 199 MOTION to Compel *Documents and Information from Attorneys, Request for Sanctions, and Brief in Support* filed by Receiver (Koonce, Charlene) (Entered: 04/27/2023) |
| 04/27/2023 | 223 | OBJECTION filed by Timothy Barton re: 213 Notice (Other) (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Edney, Michael) (Entered: 04/27/2023) |
| 04/28/2023 | 224 | ELECTRONIC ORDER: Having reviewed the Receiver's 222 Notice, the Court DENIES AS MOOT the Receiver's 199 Motion to Compel. This order is WITHOUT PREJUDICE. (Ordered by Judge Brantley Starr on 4/28/2023) (chmb) (Entered: 04/28/2023) |
| 04/30/2023 | 225 | STATUS REPORT *Third Quarterly Report of Receiver (1Q23)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 04/30/2023) |
| 05/03/2023 | 226 | RESPONSE filed by Receiver re: 215 First MOTION to Strike 206 MOTION for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Entities and Properties*, 207 MOTION for Summary Judgment *Brief in Support (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 05/03/2023)* |
| 05/03/2023 | 227 | RESPONSE filed by Receiver re: 223 Response/Objection (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 05/03/2023) |
| 05/03/2023 | 228 | Appendix in Support filed by Receiver re 227 Response/Objection (Koonce, Charlene) (Entered: 05/03/2023) |
| 05/03/2023 | 229 | RESPONSE filed by Timothy Barton re: 166 Reply, 133 MOTION to Compel *Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing, and Brief in Support* (Attachments: # 1 Exhibit A - Proposed Privilege Protocol Order) (Edney, Michael) (Entered: 05/03/2023) |
| 05/08/2023 | 230 | RESPONSE AND OBJECTION filed by Timothy Barton re: 210 MOTION to Approve Settlement Agreement with HNGH Turtle Creek, LLC (Edney, Michael) (Entered: 05/08/2023) |
| 05/08/2023 | 231 | Appendix in Support filed by Timothy Barton re 230 Response/Objection *to the Receiver's Motion to Approve Settlement Agreement with HNGH Turtle Creek, LLC* (Edney, Michael) (Entered: 05/08/2023) |
| 05/09/2023 | 232 | REPLY filed by Receiver re: 229 Response/Objection, 133 MOTION to Compel *Documents and Information, Request for Sanctions, or Alternatively, Motion for Show Cause Hearing, and Brief in Support* (Koonce, Charlene) (Entered: 05/09/2023) |

| | | |
|---|---|---|
| 05/11/2023 | 233 | REPLY filed by Southern Properties Capital Ltd re: 215 First MOTION to Strike 206 MOTION for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Entities and Properties*, 207 MOTION for Summary Judgment *Brief in Support (Norman, Brian) (Entered: 05/11/2023)* |
| 05/15/2023 | 234 | ELECTRONIC ORDER: Having carefully considered Southern Properties motion to strike the Receivers motion for summary judgment regarding Southern Properties claimed ownership in Parc at Ingleside and Parc at Opelika (Doc. 215 ), the Court DENIES the motion. The Court GRANTS the Receivers request for leave to include these properties nunc pro tunc in the Receivers summary-judgment motion. And the Court GRANTS Southern Properties request for an extension of time to respond to the Receivers motion for summary judgment (Doc. 206 ). The new deadlines are as follows. Southern Properties response is due May 30, 2023. The Receivers reply is due June 20, 2023. (Ordered by Judge Brantley Starr on 5/15/2023) (chmb) (Entered: 05/15/2023) |
| 05/15/2023 | 235 | ORDER granting 133 Motion to Compel; denying 201 Motion for Leave to File A Sur-Reply. The Court ORDERS Barton to provide the following information, materials, and documents to the Receiver by the close of business (5pm central time) on the third calendar day from the date of this Order. If Barton fails to fully comply by providing all listed information, documents, and materials by the close of business (5pm central time) on the third calendar day from the date of this Order, the Receiver shall file a Notice describing all information and materials that have not been provided. Upon the filing of such Notice, sanctions in the amount of $500 per day will begin to accrue until such time as the Receiver files a Notice of Compliance indicating Barton's full compliance with this Order. (Ordered by Judge Brantley Starr on 5/15/2023) (ykp) (Entered: 05/15/2023) |
| 05/15/2023 | 236 | ORDER granting 210 Receiver's Motion to Approve Settlement Agreement with HNGH Turtle Creek, LLC.: The Court GRANTS the motion and APPROVES the Settlement Agreement, finding that it is fair and equitable and in the best interests of the Receivership Estate. Furthermore, the Court LIFTS THE STAY of In re 2999TC Acquisitions, LLC, Case No. 21-31954 in the U.S. Bankruptcy Court for the Northern District of Texas. the Court OVERRULES Barton's objection to the intended auction subject to the directions below, GRANTS the Receiver's motion, DENIES Barton's request for a hearing, and STRIKES Barton's request for a preliminary injunction. Within one (1) calendar day of the date of this Order, the Court ORDERS Barton to provide sworn statements attesting to his ownership of the specific items he claims are his personal property. (Ordered by Judge Brantley Starr on 5/15/2023) (ykp) (Entered: 05/15/2023) |
| 05/15/2023 | 237 | MOTION Second Quarterly Fee Application (1Q23) filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 05/15/2023) |
| 05/15/2023 | 238 | Appendix in Support filed by Receiver re 237 MOTION Second Quarterly Fee Application (1Q23) (Thomas, Cort) (Entered: 05/15/2023) |
| 05/16/2023 | 239 | NOTICE OF INTERLOCUTORY APPEAL as to 202 Order to the Fifth Circuit by Timothy Barton. Filing fee $505, receipt number ATXNDC-13745208. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 05/16/2023) |

| | | |
|---|---|---|
| 05/16/2023 | 240 | NOTICE OF INTERLOCUTORY APPEAL as to 236 Order Lifting Stay,,,, Terminate Motions,,, to the Fifth Circuit by Timothy Barton. Filing fee $505, receipt number ATXNDC-13745223. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 05/16/2023) |
| 05/22/2023 | | USCA Case Number 23-10515 in USCA5 for 239 Notice of Appeal filed by Timothy Barton. (svc) (Entered: 05/22/2023) |
| 05/23/2023 | 241 | Transcript Order Form: re 239 Notice of Appeal,,,, transcript requested by Timothy Barton for Hearing held 3/20/23 (Court Reporter: Kelli Ann Willis.) Payment method: Private funds - Requester has obtained the estimate from the reporter and has paid or will pay the cost as directed. Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court. (Edney, Michael) (Entered: 05/23/2023) |
| 05/23/2023 | 242 | Transcript Order Form: re 240 Notice of Appeal,,,, transcript not requested Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court. (Edney, Michael) (Entered: 05/23/2023) |
| 05/23/2023 | | USCA Case Number 23-10516 in USCA5 for 240 Notice of Appeal filed by Timothy Barton. (svc) (Entered: 05/23/2023) |
| 05/24/2023 | 243 | NOTICE of *Non-Compliance with Order* re: 235 Order filed by Receiver. (Wells, Tim) Modified text on 5/24/2023 (sxf). (Entered: 05/24/2023) |
| 05/24/2023 | 244 | Appendix in Support filed by Receiver re 243 Notice (Other) *of Non-Compliance with Order 235* (Wells, Tim) (Entered: 05/24/2023) |
| 05/25/2023 | 245 | MOTION to Intervene and MOTION to Lift Stay filed by First Development Company of Ohio, LLC with Brief/Memorandum in Support. (Attachments: # 1 Appendix, # 2 Proposed Order). Party First Development Company of Ohio, LLC added.Attorney Jonathan Alexander Gitlin added to party First Development Company of Ohio, LLC(pty:intv) (Gitlin, Jonathan). Added MOTION to Lift Stay on 5/25/2023 (twd). (Entered: 05/25/2023) |
| 05/25/2023 | 246 | ORDER of USCA as to 239 Notice of Appeal filed by Timothy Barton. Denying Motion to intervene without prejudice to Movant's right to properly file an amicus brief if he so chooses filed by Cortney Christopher Thomas in 23-10515; denying Motion to dismiss appeal for lack of jurisdiction; denied as moot motion for expedited ruling on motion. (svc) (Entered: 05/25/2023) |
| 05/30/2023 | 247 | Brief/Memorandum in Support filed by Southern Properties Capital Ltd re 254 Response to Motion for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Entities and Properties* (Norman, Brian) Modified text and linkage on 5/31/2023 (axm). (Entered: 05/30/2023) |
| 05/30/2023 | 248 | Appendix in Support filed by Southern Properties Capital Ltd re 247 Brief/Memorandum in Support of Motion, *Volume 1* (Norman, Brian) (Entered: 05/30/2023) |

| | | |
|---|---|---|
| 05/30/2023 | 249 | Appendix in Support filed by Southern Properties Capital Ltd re 247 Brief/Memorandum in Support of Motion, *Volume 2* (Norman, Brian) (Entered: 05/30/2023) |
| 05/30/2023 | 250 | Appendix in Support filed by Southern Properties Capital Ltd re 247 Brief/Memorandum in Support of Motion, *Volume 3* (Norman, Brian) (Entered: 05/30/2023) |
| 05/30/2023 | 251 | Appendix in Support filed by Southern Properties Capital Ltd re 247 Brief/Memorandum in Support of Motion, *Volume 4* (Norman, Brian) (Entered: 05/30/2023) |
| 05/30/2023 | 252 | Appendix in Support filed by Southern Properties Capital Ltd re 247 Brief/Memorandum in Support of Motion, *Volume 5* (Norman, Brian) (Entered: 05/30/2023) |
| 05/30/2023 | 253 | Appendix in Support filed by Southern Properties Capital Ltd re 247 Brief/Memorandum in Support of Motion, *Volume 6* (Norman, Brian) (Entered: 05/30/2023) |
| 05/30/2023 | 254 | RESPONSE filed by Southern Properties Capital Ltd re: 206 Motion for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Properties*. (Norman, Brian) Modified text and linkage on 5/31/2023 (axm). (Entered: 05/30/2023) |
| 06/02/2023 | 255 | NOTICE of *Certification Regarding Use of Artificial Intelligence* filed by Southern Properties Capital Ltd (Norman, Brian) (Entered: 06/02/2023) |
| 06/05/2023 | 256 | RESPONSE AND OBJECTION filed by Timothy Barton re: 237 MOTION Second Quarterly Fee Application (1Q23) (Edney, Michael) (Entered: 06/05/2023) |
| 06/06/2023 | | Record on Appeal for USCA5 23-10516 (related to 239 , 240 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 2 Volume(s) electronic transcript,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (mcrd) (Entered: 06/06/2023) |
| 06/08/2023 | 257 | Notice of Filing of Official Electronic Transcript of Appointment of Appraiser, et al. Proceedings held on 03-20-23 before Judge Brantley Starr. Court Reporter/Transcriber Kelli Ann Willis, Telephone number 214-753-2654. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (40 pages) Redaction Request due 6/29/2023. Redacted Transcript Deadline set for 7/10/2023. Release of Transcript Restriction set for 9/6/2023. (kaw) Modified on 6/8/2023 (chmb). (Main Document 257 replaced on 6/8/2023) (cfk). (Entered: 06/08/2023) |
| 06/08/2023 | 258 | Electronic Standing Order - If they have not already done so, all attorneys appearing in this case must file a Certificate Regarding Judge-Specific Requirements on the docket attesting that they have read, and will comply with, the judge-specific requirements for |

| | | |
|---|---|---|
| | | this Court, including the Court's order concerning generative artificial intelligence. The judge-specific requirements and a template Certificate may be found at: Certificate Regarding Judge-Specific Requirements. To file the Certificate, please use the event entitled Certificate Regarding Judge-Specific Requirements. This event is located in the Other Documents selection, which is under the Other Filings category of the Civil page in ECF. Please contact the ECF help desk at 214-753-2633 for filing assistance. (Ordered by Judge Brantley Starr on 6/8/2023) (twd) (Entered: 06/08/2023) |
| 06/08/2023 | 259 | Certificate Regarding Judge-Specific Requirements. (Buchholz, Robert) (Entered: 06/08/2023) |
| 06/08/2023 | 260 | Certificate Regarding Judge-Specific Requirements. (Bernstein, Keefe) (Entered: 06/08/2023) |
| 06/08/2023 | 261 | Certificate Regarding Judge-Specific Requirements. (Reece, David) (Entered: 06/08/2023) |
| 06/08/2023 | 262 | Certificate Regarding Judge-Specific Requirements. (Shavin, Eliot) (Entered: 06/08/2023) |
| 06/08/2023 | 263 | Certificate Regarding Judge-Specific Requirements. (Fullington, Ian) (Entered: 06/08/2023) |
| 06/08/2023 | 265 | ORDER of USCA: COURT ORDER denying without prejudice Motion for stay pending appeal filed by Appellant Mr. Timothy Barton. (svc) (Entered: 06/09/2023) |
| 06/08/2023 | 266 | Received letter from USCA5: NO COURT REPORTER ACKNOWLEDGMENT RECEIVED for Ms. Kelli Ann Willis. (svc) (Entered: 06/09/2023) |
| 06/09/2023 | 264 | Certificate Regarding Judge-Specific Requirements. (Heiskell, Michael) (Entered: 06/09/2023) |
| 06/09/2023 | 267 | MOTION for Extension of Time to File Response/Reply to 207 Brief in Support of Motion for Summary Judgment, 206 MOTION for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Entities and Properties* filed by Receiver (Attachments: # 1 Proposed Order Proposed Order) (Koonce, Charlene) (Entered: 06/09/2023) |
| 06/09/2023 | 268 | Certificate Regarding Judge-Specific Requirements. (Thomas, Cort) (Entered: 06/09/2023) |
| 06/09/2023 | 269 | Certificate Regarding Judge-Specific Requirements. (Alexander, Daniel) (Entered: 06/09/2023) |
| 06/09/2023 | 270 | RESPONSE filed by Southern Properties Capital Ltd re: 267 MOTION for Extension of Time to File Response/Reply to 207 Brief in Support of Motion for Summary Judgment, 206 MOTION for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receiversh (Norman, Brian) (Entered: 06/09/2023)* |
| 06/09/2023 | 271 | Certificate Regarding Judge-Specific Requirements. (Nealy Cox, Erin) (Entered: 06/09/2023) |
| 06/09/2023 | 272 | Certificate Regarding Judge-Specific Requirements. (Hicks, George) (Entered: 06/09/2023) |
| 06/09/2023 | 275 | ORDER of USCA as to 66 Notice of Appeal filed by Timothy Barton. Barton requests a stay of an event that already occurred by the time he filed his renewed motion, so his request for emergency relief is DENIED as moot. The remainder of his motion will be carried with the case. (svc) (Entered: 06/12/2023) |

| | | |
|---|---|---|
| 06/10/2023 | 273 | ELECTRONIC ORDER granting 267 Motion to Extend Time to File Reply. The deadline for the Receiver's Reply is June 30, 2023. (Ordered by Judge Brantley Starr on 6/10/2023) (chmb) (Entered: 06/10/2023) |
| 06/11/2023 | 274 | Certificate Regarding Judge-Specific Requirements. (Gitlin, Jonathan) (Entered: 06/11/2023) |
| 06/12/2023 | 276 | Certificate Regarding Judge-Specific Requirements. (Patton, Jonathan) (Entered: 06/12/2023) |
| 06/12/2023 | 277 | Certificate Regarding Judge-Specific Requirements. (Patton, Jonathan) (Entered: 06/12/2023) |
| 06/12/2023 | 278 | Certificate Regarding Judge-Specific Requirements. (Chandler, Corinna) (Entered: 06/12/2023) |
| 06/12/2023 | 279 | Certificate Regarding Judge-Specific Requirements. (Etri, James) (Entered: 06/12/2023) |
| 06/12/2023 | 280 | Certificate Regarding Judge-Specific Requirements. (DeYoung, Kyle) (Entered: 06/12/2023) |
| 06/13/2023 | 281 | Certificate Regarding Judge-Specific Requirements. (Edney, Michael) (Entered: 06/13/2023) |
| 06/14/2023 | 282 | Certificate Regarding Judge-Specific Requirements. (Cooke, Christopher) (Entered: 06/14/2023) |
| 06/15/2023 | 283 | *****DISREGARD FILED IN ERROR per attorney*****RESPONSE filed by Receiver re: 245 MOTION to InterveneMOTION to Lift Stay (Koonce, Charlene) Modified on 6/15/2023 (svc). (Entered: 06/15/2023) |
| 06/15/2023 | 284 | RESPONSE filed by Receiver re: 245 MOTION to InterveneMOTION to Lift Stay (Koonce, Charlene) (Entered: 06/15/2023) |
| 06/15/2023 | 285 | Appendix in Support filed by Receiver re 284 Response/Objection (Koonce, Charlene) (Entered: 06/15/2023) |
| 06/15/2023 | 286 | RESPONSE filed by Securities and Exchange Commission re: 245 MOTION to InterveneMOTION to Lift Stay (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 06/15/2023) |
| 06/19/2023 | 287 | ORDER granting 237 Motion for Second Quarterly Fee Application. (Ordered by Judge Brantley Starr on 6/19/2023) (chmb) (Entered: 06/19/2023) |
| 06/21/2023 | | Record on Appeal for USCA5 23-10515 (related to 239 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 3 Volume(s) electronic transcript. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (axm) (Entered: 06/21/2023) |
| 06/29/2023 | 288 | MOTION to Stay re 208 Appendix in Support,, 207 Brief in Support of Motion for Summary Judgment, 206 MOTION for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Entities* |

| | | |
|---|---|---|
| | | *and Properties* filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 06/29/2023) |
| 06/29/2023 | 289 | RESPONSE filed by Southern Properties Capital Ltd re: 288 MOTION to Stay re 208 Appendix in Support,, 207 Brief in Support of Motion for Summary Judgment, 206 MOTION for Summary Judgment *Regarding Southern Properties Capital, Ltd.'s Claimed Ownership Interest in Certain Receivership Enti (Norman, Brian) (Entered: 06/29/2023)* |
| 06/29/2023 | 290 | ELECTRONIC ORDER granting 288 Motion to Stay Deadline. Due to the Fifth Circuit's opinion vacating the receivership order effective in 90 days, the Court STAYS the deadline for the Receiver's reply in support of his motion for summary judgment (Doc. 206 ). The Court will set a new deadline for this briefing in due course. (Ordered by Judge Brantley Starr on 6/29/2023) (chmb) (Entered: 06/29/2023) |
| 07/05/2023 | 291 | ELECTRONIC ORDER: The Fifth Circuit remanded to the Court for further proceedings in accordance with its most recent opinion in this case. In the interest of expediency, the Court ORDERS the parties to meet and confer and, by July 12, 2023, inform the Court whether they agree to proceed before a mandate issues from the Fifth Circuit. (Ordered by Judge Brantley Starr on 7/5/2023) (chmb) (Entered: 07/05/2023) |
| 07/12/2023 | 292 | Joint STATUS REPORT *of Defendant Barton and Plaintiff SEC in Response to this Court's July 5, 2023 Order* filed by Timothy Barton. (Edney, Michael) (Entered: 07/12/2023) |
| 07/16/2023 | 293 | ELECTRONIC ORDER: The Court has reviewed the parties Joint Status Report (Doc. 292 ), and because the parties have not consented to proceed before the mandate issues, the Court lacks jurisdiction to order the parties to proceed. Once the mandate issues, the Court intends to order the SEC to move for appointment of a receiver. Consistent with the Fifth Circuits opinion, the Court will require the SECs motion to (1) request appointment of a receiver under the factors set out in Netsphere, Inc. v. Baron, 703 F.3d 296, 305 (5th Cir. 2012); (2) request injunctive relief; and (3) provide a basis for the inclusion of entities in the receivership that complies with the Fifth Circuits standard, i.e., that limits the receivership to entities that received or benefitted from assets traceable to Bartons alleged fraudulent activities that are the subject of this litigation. That motion will be due within one week of the Fifth Circuits mandate issuing. The Court will set a briefing schedule for the motion once the mandate issues. (Ordered by Judge Brantley Starr on 7/16/2023) (chmb) (Entered: 07/16/2023) |
| 07/17/2023 | 294 | ORDER of USCA as to 240 Notice of Appeal filed by Timothy Barton. IT IS ORDERED that the appellee's opposed motion to dismiss the appeal is GRANTED. (svc) (Entered: 07/18/2023) |
| 07/18/2023 | 295 | Unopposed MOTION to Withdraw as Attorney filed by Timothy Barton (Huffman, Edwin) (Entered: 07/18/2023) |
| 07/19/2023 | 296 | ELECTRONIC ORDER granting 295 Motion to Withdraw as Attorney. (Ordered by Judge Brantley Starr on 7/19/2023) (chmb) (Entered: 07/19/2023) |
| 07/19/2023 | 297 | Unopposed MOTION to Withdraw as Attorney *as to David B. Reece* filed by Securities and Exchange Commission (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 07/19/2023) |
| 07/20/2023 | 298 | ELECTRONIC ORDER granting 297 Motion to Withdraw as Attorney. (Ordered by Judge Brantley Starr on 7/20/2023) (chmb) (Entered: 07/20/2023) |
| 07/31/2023 | 299 | STATUS REPORT *Fourth Quarterly Report of Receiver (2Q23)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 07/31/2023) |

| | | |
|---|---|---|
| 08/14/2023 | 300 | MOTION Third Quarterly Fee Application (2Q23) filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 08/14/2023) |
| 08/14/2023 | 301 | Appendix in Support filed by Receiver re 300 MOTION Third Quarterly Fee Application (2Q23) (Thomas, Cort) (Entered: 08/14/2023) |
| 08/22/2023 | 302 | NOTICE of Attorney Appearance by Patrick Joseph Schurr on behalf of Texas Republic Bank, N.A.. (Filer confirms contact info in ECF is current.) (Schurr, Patrick) (Entered: 08/22/2023) |
| 08/22/2023 | 303 | Certificate Regarding Judge-Specific Requirements. (Schurr, Patrick) (Entered: 08/22/2023) |
| 08/31/2023 | 304 | ORDER of USCA as to 66 Notice of Appeal filed by Timothy Barton. The Court VACATE the district court's order appointing a receiver effective 90 days from the issuance of this court's mandate and REMAND for further proceedings consistent with this opinion. We also GRANT in part Barton's motion for a partial stay pending appeal. (svc) (Entered: 08/31/2023) |
| 08/31/2023 | 305 | ELECTRONIC ORDER: The Court ORDERS the SEC to move for entry of a new receivership order by September 7, 2023, with a response due by September 28, 2023, and any reply due by October 5, 2023. Additionally, the Court ORDERS the Receiver to file by September 14, 2023 a declaration providing all information obtained since his appointment that he believes is relevant to the Courts consideration of a proposed new receivership order, or anything else he believes will assist the Court or help inform the Courts deliberation on this matter. (Ordered by Judge Brantley Starr on 8/31/2023) (chmb) (Entered: 08/31/2023) |
| 08/31/2023 | 306 | ELECTRONIC ORDER: The Court DENIES WITHOUT PREJUDICE all pending motions in this case. Parties may refile all such motions after the Court resolves the SEC's motion for entry of a new receivership order. (Ordered by Judge Brantley Starr on 8/31/2023) (chmb) (Entered: 08/31/2023) |
| 09/05/2023 | 307 | NOTICE of Attorney Appearance by Russell W Mills on behalf of McCormick 101, LLC. (Filer confirms contact info in ECF is current.). Party McCormick 101, LLC added. (Mills, Russell) (Entered: 09/05/2023) |
| 09/05/2023 | 308 | DECLARATION AND INTERIM REPORT filed by Receiver. (Thomas, Cort) Modified title on 9/10/2023 (axm). (Entered: 09/05/2023) |
| 09/07/2023 | 309 | MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose filed by Securities and Exchange Commission with Brief/Memorandum in Support re 305 Order. (Attachments: # 1 Proposed Order For Appointment of A Receiver, # 2 Proposed Order Preliminary Injunction) (Bernstein, Keefe) (Entered: 09/07/2023) |
| 09/07/2023 | 310 | Appendix in Support filed by Securities and Exchange Commission re 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose. (Attachments: # 1 Declaration(s) Supp. App001-004, # 2 Exhibit(s) A Supp. App005-010, # 3 Exhibit(s) B Supp. App011-012) (Bernstein, Keefe) (Entered: 09/07/2023) |
| 09/12/2023 | 311 | MOTION Lifting of Stay; Exception from Order Appointing Receiver; or Adequate Protection re 29 Order on Motion for Miscellaneous Relief filed by McCormick 101, LLC (Attachments: # 1 Proposed Order Order Granting Motion for Lifting Stay) (Mills, Russell) (Entered: 09/12/2023) |

| | | |
|---|---|---|
| 09/12/2023 | 312 | Appendix in Support filed by McCormick 101, LLC re 311 MOTION Lifting of Stay; Exception from Order Appointing Receiver; or Adequate Protection re 29 Order on Motion for Miscellaneous Relief (Mills, Russell) (Entered: 09/12/2023) |
| 09/12/2023 | 313 | Certificate Regarding Judge-Specific Requirements. (Mills, Russell) (Entered: 09/12/2023) |
| 09/26/2023 | 314 | MOTION for Extension of Time to File Response/Reply to 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose filed by Timothy Barton (Attachments: # 1 Proposed Order) (Edney, Michael) (Entered: 09/26/2023) |
| 09/27/2023 | 315 | ELECTRONIC ORDER granting in part and denying in part 314 Motion to Extend Time to File Response/Reply. The Court ORDERS expedited briefing. The Court ORDERS that Defendant's Response is due by October 2, 2023. Any Reply is due by October 9, 2023. The Court will hold a hearing on the 309 Motion for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose on October 11, 2023 at 2:00 PM. Further details will be provided. (Ordered by Judge Brantley Starr on 9/27/2023) (chmb) (Entered: 09/27/2023) |
| 09/27/2023 | | Hearing/Deadline Modification: Deadlines/hearings terminated and reset per 315 Order on Motion to Extend Time to File Response/Reply. Responses due by 10/2/2023. Replies due by 10/9/2023. Motion Hearing set for 10/11/2023 02:00 PM before Judge Brantley Starr. (oyh) (Entered: 09/28/2023) |
| 09/28/2023 | 316 | RESPONSE AND OBJECTION filed by Receiver re: 311 MOTION Lifting of Stay; Exception from Order Appointing Receiver; or Adequate Protection re 29 Order on Motion for Miscellaneous Relief (Koonce, Charlene) (Entered: 09/28/2023) |
| 09/28/2023 | 317 | Appendix in Support filed by Receiver re 316 Response/Objection (Koonce, Charlene) (Entered: 09/28/2023) |
| 09/28/2023 | 318 | NOTICE of Attorney Appearance by Ryan Eric Chapple on behalf of Serena Badgley. (Filer confirms contact info in ECF is current.). Party Serena Badgley added. (Chapple, Ryan) (Entered: 09/28/2023) |
| 09/28/2023 | 319 | Certificate Regarding Judge-Specific Requirements. (Chapple, Ryan) (Entered: 09/28/2023) |
| 09/28/2023 | 320 | OBJECTION filed by Serena Badgley re: 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose (Attachments: # 1 Exhibit(s) Exhibit A, # 2 Exhibit(s) Exhibit B, # 3 Exhibit(s) Exhibit C, # 4 Exhibit(s) Exhibit D, # 5 Exhibit(s) Exhibit E) (Chapple, Ryan) (Entered: 09/28/2023) |
| 09/28/2023 | 321 | MOTION for Clarification of the Scope of Order Appointing Receiver or, in the Alternative, Motion for Order Lifting Stay filed by McCormick 101, LLC with Brief/Memorandum in Support re 29 Order. (Walraven, Gwen) Modified text on 10/3/2023 (axm). (Entered: 09/28/2023) |
| 09/28/2023 | 322 | Appendix in Support filed by McCormick 101, LLC re 321 MOTION for Clarification of the Scope of Order Appointing Receiver or, in the Alternative, Motion for Order Lifting Stay. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Proposed Order) (Walraven, Gwen) (Entered: 09/28/2023) |
| 09/29/2023 | 323 | ELECTRONIC ORDER: The hearing for the 309 Motion for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose will begin at 1:30 p.m. on October 11, 2023. The Court will allot 1.5 hours to the SEC and 1.5 hours to Barton for examining witnesses. Witness lists are due October 6, 2023. |

| | | |
|---|---|---|
| | | The Court will rely on the parties' papers for legal arguments. (Ordered by Judge Brantley Starr on 9/29/2023) (chmb) (Entered: 09/29/2023) |
| 09/29/2023 | 324 | RESPONSE filed by Securities and Exchange Commission re: 311 MOTION Lifting of Stay; Exception from Order Appointing Receiver; or Adequate Protection re 29 Order on Motion for Miscellaneous Relief (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 09/29/2023) |
| 09/29/2023 | 325 | RESPONSE filed by Securities and Exchange Commission re: 321 MOTION to Stay re 29 Order on Motion for Miscellaneous Relief *Motion of McCormick 101, LLC for (1) Clarification of the Scope of Order Appointing Receiver [Doc 29] Or (2) in the Alternative, Motion for Order Uplifting Stay* . (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 09/29/2023) |
| 10/02/2023 | 326 | RESPONSE filed by Maximilien Barton, Gillespie Villas LLC, MXBA LLC, TRTX Properties LLC, Titan Investments LLC, Venus59 LLC re: 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose (Cooke, Christopher) (Entered: 10/02/2023) |
| 10/02/2023 | 327 | MOTION to Intervene *and Request to Present Witness at Hearing on SEC's Motion, or, in the Alternative, Request to File Amicus Brief* filed by Southern Properties Capital Ltd with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Norman, Brian) Modified on 10/9/2023 (axm). (Entered: 10/02/2023) |
| 10/02/2023 | 328 | Unopposed MOTION for Extension of Page Limit filed by Timothy Barton (Attachments: # 1 Proposed Order) (Edney, Michael) (Entered: 10/02/2023) |
| 10/02/2023 | 329 | RESPONSE filed by Southern Properties Capital Ltd re: 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose (Norman, Brian) (Entered: 10/02/2023) |
| 10/02/2023 | 330 | Appendix in Support filed by Southern Properties Capital Ltd re 329 Response/Objection *Volume 1* (Norman, Brian) (Entered: 10/02/2023) |
| 10/02/2023 | 331 | Appendix in Support filed by Southern Properties Capital Ltd re 329 Response/Objection *Volume 2* (Norman, Brian) (Entered: 10/02/2023) |
| 10/02/2023 | 332 | Appendix in Support filed by Southern Properties Capital Ltd re 329 Response/Objection *Volume 3* (Norman, Brian) (Entered: 10/02/2023) |
| 10/02/2023 | 333 | Appendix in Support filed by Southern Properties Capital Ltd re 329 Response/Objection *Volume 4* (Norman, Brian) (Entered: 10/02/2023) |
| 10/02/2023 | 334 | RESPONSE AND OBJECTION filed by Timothy Barton re: 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose (Edney, Michael) (Entered: 10/02/2023) |
| 10/02/2023 | 335 | Appendix in Support filed by Timothy Barton re 334 Response/Objection *Response to MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose* (Edney, Michael) (Entered: 10/02/2023) |
| 10/03/2023 | 336 | Appendix in Support filed by Southern Properties Capital Ltd re 329 Response/Objection *Volume 5* (Norman, Brian) (Entered: 10/03/2023) |
| 10/04/2023 | 337 | ELECTRONIC ORDER: The Court GRANTS 328 Defendant Barton's Unopposed Motion for Extension of Page Limit. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Brantley Starr on 10/4/2023) (chmb) (Entered: 10/04/2023) |

| | | |
|---|---|---|
| 10/04/2023 | 338 | Appendix in Support filed by Serena Badgley re 320 Response/Objection, (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s), # 5 Exhibit(s)) (Chapple, Ryan) (Entered: 10/04/2023) |
| 10/04/2023 | 339 | (SUPPLEMENTAL) RESPONSE AND OBJECTION filed by Timothy Barton re: 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose *(with Tables and Appendix citations)*. (Edney, Michael) Modified text and linkage on 10/4/2023 (axm). (Entered: 10/04/2023) |
| 10/04/2023 | 340 | Appendix in Support filed by Timothy Barton re 339 (Supplemental) RESPONSE AND OBJECTION to Motion for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose. (Edney, Michael) Modified text and linkage on 10/4/2023 (axm). (Entered: 10/04/2023) |
| 10/05/2023 | 341 | MOTION to Exceed Page Limits in its Reply in Support of its Motion for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose filed by Securities and Exchange Commission (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 10/05/2023) |
| 10/05/2023 | 342 | ELECTRONIC ORDER: The Court GRANTS 341 Plaintiff SEC's Unopposed Motion for Extension of Page Limit. (Ordered by Judge Brantley Starr on 10/5/2023) (chmb) (Entered: 10/05/2023) |
| 10/05/2023 | 343 | ELECTRONIC ORDER: The Court DENIES WITHOUT PREJUDICE 327 Southern Properties Capital, Ltd.'s Motion for Intervention, Request to Present a Witness at Hearing on SEC's Motion, and, in, the Alternative, Request to File Amicus Brief, and Brief in Support. As the Court previously held at 306 , SPC may refile its motion after the Court resolves the SEC's motion for entry of a new receivership order. Only the SEC and Barton will have time to present witnesses at the hearing. (Ordered by Judge Brantley Starr on 10/5/2023) (chmb) (Entered: 10/05/2023) |
| 10/05/2023 | 344 | ELECTRONIC ORDER: The hearing for the 309 Motion for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose will now begin at 1:00 PM on October 11, 2023. The SEC and Barton will still have the allotted 1.5 hours each for examining witnesses. (Ordered by Judge Brantley Starr on 10/5/2023) (chmb) (Entered: 10/05/2023) |
| 10/06/2023 | 345 | RESPONSE filed by Receiver re: 321 MOTION for Clarification of the Scope of Order Appointing Receiver or, in the Alternative, Motion for Order Lifting Sta (Koonce, Charlene) (Entered: 10/06/2023) |
| 10/06/2023 | 346 | Witness List by Securities and Exchange Commission. (Bernstein, Keefe) (Entered: 10/06/2023) |
| 10/06/2023 | 347 | NOTICE of Attorney Appearance by Tina Quy Phi Nguyen on behalf of Pioneer Finance, Inc.. (Filer confirms contact info in ECF is current.) (Nguyen, Tina) (Entered: 10/06/2023) |
| 10/06/2023 | 348 | MOTION to Intervene filed by Pioneer Finance, Inc. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Exhibit(s) D, # 5 Exhibit(s) E, # 6 Exhibit(s) F, # 7 Exhibit(s) G, # 8 Proposed Order) (Nguyen, Tina) (Entered: 10/06/2023) |
| 10/06/2023 | 349 | MOTION to Lift Stay and for Exception from the Court's Order Appointing Receiver (Dkt. 29) re 29 Order on Motion for Miscellaneous Relief filed by Pioneer Finance, Inc. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Exhibit(s) D, # 5 Exhibit(s) E, # 6 Exhibit(s) F, # 7 Exhibit(s) G, # 8 Proposed Order) (Nguyen, Tina) (Entered: 10/06/2023) |

| | | |
|---|---|---|
| 10/06/2023 | 350 | Witness List by Timothy Barton. (Edney, Michael) (Entered: 10/06/2023) |
| 10/09/2023 | 351 | MOTION to Quash *OR, IN THE ALTERNATIVE*, MOTION in Limine () filed by Timothy Barton with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Edney, Michael) (Entered: 10/09/2023) |
| 10/09/2023 | 352 | REPLY filed by Securities and Exchange Commission re: 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose (Bernstein, Keefe) (Entered: 10/09/2023) |
| 10/10/2023 | 353 | MOTION FOR ORAL ARGUMENT filed by Timothy Barton (Edney, Michael) (Entered: 10/10/2023) |
| 10/10/2023 | 354 | ELECTRONIC ORDER granting Barton's Motion to Quash 351 . (Ordered by Judge Brantley Starr on 10/10/2023) (chmb) (Entered: 10/10/2023) |
| 10/11/2023 | 355 | NOTICE of *Status to the Court* re: 338 Appendix in Support, 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose, 320 Response/Objection, filed by Serena Badgley (Chapple, Ryan) (Entered: 10/11/2023) |
| 10/11/2023 | 356 | ELECTRONIC Minute Entry for proceedings held before Judge Brantley Starr: Motion Hearing held on 10/11/2023. Re: 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose. Attorney Appearances: Plaintiff - Keefe Bernstein; Defense - Michael Edney, Roger Gibson; Receivers - Cort Thomas, Charlene Koonce; Tim Wells (Court Reporter: Kelli Ann Willis) (Exhibits admitted - returned to party) Time in Court - 3:50. (chmb) (Entered: 10/11/2023) |
| 10/12/2023 | 357 | NOTICE of Attorney Appearance by Lindsay Lombard Buchanan on behalf of Pioneer Finance, Inc.. (Filer confirms contact info in ECF is current.) (Buchanan, Lindsay) (Entered: 10/12/2023) |
| 10/12/2023 | 358 | MOTION for Hearing *Regarding Venus59 LLC* filed by Daniel Crow. (axm) (Entered: 10/12/2023) |
| 10/12/2023 | 360 | JUDGMENT/MANDATE of USCA as to 239 Notice of Appeal filed by Timothy Barton. The appellee's opposed motion to dismiss the appeal is GRANTED for the reason that the appeal is moot in light of the decision in No. 22-11132. Issued as Mandate: 10/12/2023. (axm) (Entered: 10/15/2023) |
| 10/13/2023 | 359 | Notice of Filing of Official Electronic Transcript of Motion for Appointment of Receiver Proceedings held on 10-11-23 before Judge Brantley Starr. Court Reporter/Transcriber Kelli Ann Willis, Telephone number 214-753-2654. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (215 pages) Redaction Request due 11/3/2023. Redacted Transcript Deadline set for 11/13/2023. Release of Transcript Restriction set for 1/11/2024. (kaw) (Entered: 10/13/2023) |
| 10/19/2023 | 361 | MOTION to Supplement the Record in Support of Its Motion for Appointment of A Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose re 309 MOTION for Appointment of a Receiver, for a Preliminary Injunction and |

| | | |
|---|---|---|
| | | Ancillary Relief, and to Lift Stay for Limited Purpose filed by Securities and Exchange Commission with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order, # 2 Exhibit(s) A Part 1 of 4) (Bernstein, Keefe) (Entered: 10/19/2023) |
| 10/19/2023 | 362 | ADDITIONAL ATTACHMENTS to 361 Motion for Miscellaneous Relief, by Plaintiff Securities and Exchange Commission. (Bernstein, Keefe) (Entered: 10/19/2023) |
| 10/19/2023 | 363 | ADDITIONAL ATTACHMENTS to 361 Motion for Miscellaneous Relief, by Plaintiff Securities and Exchange Commission. (Bernstein, Keefe) (Entered: 10/19/2023) |
| 10/19/2023 | 364 | ADDITIONAL ATTACHMENTS to 361 Motion for Miscellaneous Relief, by Plaintiff Securities and Exchange Commission. (Bernstein, Keefe) (Entered: 10/19/2023) |
| 10/19/2023 | 365 | RESPONSE *to Limited Objections to Motion for Appointment of Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose* filed by Receiver re: 320 Response/Objection, (Koonce, Charlene) Modified text on 10/22/2023 (axm). (Entered: 10/19/2023) |
| 10/20/2023 | 366 | MANDATE of USCA as to 239 Notice of Appeal, filed by Timothy Barton. The appellee's opposed motion to dismiss the appeal is GRANTED for the reason that the appeal is moot in light of the decision in No. 22-11132. Issued as Mandate: 10/20/2023. (axm) Modified linkage on 10/9/2024 (axm). (Entered: 10/22/2023) |
| 10/24/2023 | 367 | Opinion of USCA in accordance with USCA judgment re 108 Notice of Appeal filed by Timothy Barton. We DISMISS this appeal as MOOT. (axm) (Entered: 10/25/2023) |
| 10/24/2023 | 368 | JUDGMENT/MANDATE of USCA as to 108 Notice of Appeal filed by Timothy Barton. The appeal is DISMISSED as moot. Issued as Mandate: 10/24/2023. (axm) (Entered: 10/25/2023) |
| 10/27/2023 | 369 | RESPONSE AND OBJECTION filed by Securities and Exchange Commission re: 349 MOTION to Lift Stay and for Exception from the Court's Order Appointing Receiver (Dkt. 29) re 29 Order on Motion for Miscellaneous Relief, 348 MOTION to Intervene (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 10/27/2023) |
| 10/27/2023 | 370 | RESPONSE filed by Receiver re: 349 MOTION to Lift Stay and for Exception from the Court's Order Appointing Receiver (Dkt. 29) re 29 Order on Motion for Miscellaneous Relief, 348 MOTION to Intervene (Koonce, Charlene) (Entered: 10/27/2023) |
| 10/27/2023 | 371 | Appendix in Support filed by Receiver re 370 Response/Objection (Koonce, Charlene) (Entered: 10/27/2023) |
| 10/27/2023 | 372 | Expedited MOTION to Approve, Ratify and Adopt *and Otherwise "Bless" Previous Actions of Receiver and Orders Issued Prior to Effective Date of Vacatur of Initial Receivership Order* filed by Receiver. (Koonce, Charlene) Modified title on 11/9/2023 (axm). (Entered: 10/27/2023) |
| 10/30/2023 | 373 | STATUS REPORT *Fifth Quarterly Status Report of Receiver (3Q23)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 10/30/2023) |
| 11/01/2023 | 374 | Expedited MOTION to Ratify Orders Appointing Appraisers, *Approving Appraisals and Approving Sale of Real Estate* filed by Receiver. (Attachments: # 1 Proposed Order) (Koonce, Charlene) Modified on 11/9/2023 (axm). (Entered: 11/01/2023) |
| 11/01/2023 | 375 | Appendix in Support filed by Receiver re 374 Expedited MOTION to Ratify Orders Appointing Appraisers, *Approving Appraisals and Approving Sale of Real Estate.* (Koonce, Charlene) (Entered: 11/01/2023) |
| 11/01/2023 | 376 | MOTION Ratify Frisco Gate Property Orders, Authorize Sale, and Stay Accrual of Interest filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Proposed Order) (Koonce, Charlene) (Entered: 11/01/2023) |
| 11/01/2023 | 377 | Appendix in Support filed by Receiver re 376 MOTION Ratify Frisco Gate Property Orders, Authorize Sale, and Stay Accrual of Interest (Koonce, Charlene) (Entered: 11/01/2023) |
| 11/01/2023 | 378 | MOTION Ratify the Amerigold Suites Orders, Authorize Sale, and Stay Accrual of Interest filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 11/01/2023) |
| 11/01/2023 | 379 | Appendix in Support filed by Receiver re 378 MOTION Ratify the Amerigold Suites Orders, Authorize Sale, and Stay Accrual of Interest (Koonce, Charlene) (Entered: 11/01/2023) |
| 11/02/2023 | 380 | RESPONSE AND OBJECTION filed by Receiver re: 358 MOTION for Hearing (Koonce, Charlene) (Entered: 11/02/2023) |
| 11/03/2023 | 381 | ELECTRONIC ORDER: The Court ORDERS an expedited response to the SEC's Motion to Supplement the Record [Doc. 361]. Any response must be filed by November 6, 2023. (Ordered by Judge Brantley Starr on 11/3/2023) (chmb) (Entered: 11/03/2023) |
| 11/03/2023 | 382 | ELECTRONIC ORDER: The Court ORDERS an expedited response to the Receiver's ratifying motions [Docs. 372 , 374 , 376 , and 378 . Any response must be filed by 11/10/2023. (Ordered by Judge Brantley Starr on 11/3/2023) (chmb) Docket text modified on 11/3/2023 (twd). (Entered: 11/03/2023) |
| 11/03/2023 | 383 | REPLY filed by Pioneer Finance, Inc. re: 349 MOTION to Lift Stay and for Exception from the Court's Order Appointing Receiver (Dkt. 29) re 29 Order on Motion for Miscellaneous Relief, 348 MOTION to Intervene (Attachments: # 1 Exhibit(s) A) (Nguyen, Tina) (Entered: 11/03/2023) |
| 11/03/2023 | 384 | MOTION for Extension of Time to File Fourth Quarterly Fee Application filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 11/03/2023) |
| 11/03/2023 | 385 | ELECTRONIC ORDER: Regarding the Southern Properties Capital, Ltd. testimony, the Court ADMITS the Erik Johnson Declaration [Doc. 330 at 4-25] into evidence as Defense Exhibit F. Any response must be filed by November 10, 2023. (Ordered by Judge Brantley Starr on 11/3/2023) (chmb) (Entered: 11/03/2023) |
| 11/06/2023 | 386 | RESPONSE AND OBJECTION filed by Timothy Barton re: 361 MOTION to Supplement the Record in Support of Its Motion for Appointment of A Receiver, for a Preliminary Injunction and Ancillary Relief, and to Lift Stay for Limited Purpose re 309 MOTION for Appointment of a Receiver, for a Preliminary Injunctio (Edney, Michael) (Entered: 11/06/2023) |
| 11/08/2023 | 387 | MOTION for Extension of Time to File Response/Reply to 372 MOTION Ratify previous Actions of Receiver filed by Timothy Barton (Attachments: # 1 Proposed Order) (Edney, Michael) (Entered: 11/08/2023) |
| 11/09/2023 | 388 | ELECTRONIC ORDER: The Court DENIES Barton's extension motion to respond to the Receiver's ratifying motions. [Doc. 387] The Court has set an expedited briefing schedule for a reason. The Court is under a tight timeline to resolve the SEC's appointment of a receivership, and this schedule is warranted so the Court has time to decide the issues before it. And Barton objected to the Court ordering briefing before the mandate issued, so this timeline is a product of Barton. Accordingly, the Court will be sticking to its expedited briefing schedule. (Ordered by Judge Brantley Starr on 11/9/2023) (chmb) (Entered: 11/09/2023) |

| | | |
|---|---|---|
| 11/09/2023 | 389 | ELECTRONIC ORDER: The Court must expeditiously resolve the questions of whether there is a receivership, the scope if there is one, and ratification of past actions. Any payment of receivership fees is a separate matter not falling under the Fifth Circuit's deadline. Accordingly, the Court GRANTS the Receiver's request for an extension to file the fourth quarterly report. [Doc. 384] (Ordered by Judge Brantley Starr on 11/9/2023) (chmb) (Entered: 11/09/2023) |
| 11/10/2023 | 390 | Proposed Findings of Fact *in Support of its Motion for Appointment of Receiver, for a Preliminary Injunction and Ancillary Relief and to Lift Stay for Limited Purpose* by Securities and Exchange Commission. (Bernstein, Keefe) Modified text on 12/3/2023 (axm). (Entered: 11/10/2023) |
| 11/10/2023 | 391 | Certificate Regarding Judge-Specific Requirements. (Walraven, Gwen) (Entered: 11/10/2023) |
| 11/10/2023 | 392 | Joint STIPULATION *and Agreed Order Regarding Receiver's Verified and Expedited Motion to (I) Ratify Order Appointing Appraisers, Approving Appraisals and Approving Sale of Real Estate as Required by 28 U.S.C. 2001 With Respect to the Rock Creek Property, (II) Authorize the Sale Free and Clear of All Liens, and (III) Stay Accrual of Post-Receivership Default Rate Interest* by Receiver. (Koonce, Charlene) (Entered: 11/10/2023) |
| 11/10/2023 | 393 | RESPONSE AND OBJECTION filed by Texas Republic Bank, N.A. re: 376 MOTION Ratify Frisco Gate Property Orders, Authorize Sale, and Stay Accrual of Interest (Schurr, Patrick) (Entered: 11/10/2023) |
| 11/10/2023 | 394 | Certificate Regarding Judge-Specific Requirements. (Walraven, Gwen) (Entered: 11/10/2023) |
| 11/10/2023 | 395 | OBJECTION filed by McCormick 101, LLC re: 378 MOTION Ratify the Amerigold Suites Orders, Authorize Sale, and Stay Accrual of Interest (Walraven, Gwen) (Entered: 11/10/2023) |
| 11/10/2023 | 396 | Expedited MOTION to Amend Order Supplementing Receivership Order and notice of Supplemental Information Regarding Myra Park 635 LLC filed by Receiver re: 29 Order, 62 Order. (Attachments: # 1 Proposed Order) (Koonce, Charlene) Modified text on 12/3/2023 (axm). (Entered: 11/10/2023) |
| 11/10/2023 | 397 | RESPONSE filed by Timothy Barton re: 372 Expedited MOTION to Approve, Ratify and Adopt *and Otherwise "Bless" Previous Actions of Receiver and Orders Issued Prior to Effective Date of Vacatur of Initial Receivership Order* (Edney, Michael) (Entered: 11/10/2023) |
| 11/10/2023 | 398 | Brief in Support of Proposed Findings of Fact and Conclusion of Law by Timothy Barton. (Edney, Michael) Modified event text on 12/3/2023 (axm). (Entered: 11/10/2023) |
| 11/11/2023 | 399 | Proposed Findings of Fact *and Conclusions of Law and Proposed Order* by Timothy Barton. (Edney, Michael) (Entered: 11/11/2023) |
| 11/11/2023 | 400 | Brief/Memorandum in Support filed by Timothy Barton re: 399 Proposed Findings of Fact. (Edney, Michael) Modified event text on 12/3/2023 (axm). (Entered: 11/11/2023) |
| 11/11/2023 | 401 | Brief/Memorandum in Support filed by Timothy Barton re 400 Proposed Findings of Fact (Edney, Michael) Modified event text on 12/3/2023 (axm). (Entered: 11/11/2023) |
| 11/11/2023 | 402 | MOTION for Leave to File Corrected Memorandum filed by Timothy Barton (Edney, Michael) (Entered: 11/11/2023) |

| | | |
|---|---|---|
| 11/13/2023 | 403 | ELECTRONIC ORDER: Barton filed his proposed findings of fact and accompanying legal arguments late. The Court will GRANT Barton's motion for leave (Doc. 402) and will consider (Doc. 400) as Barton's proposed findings of fact and conclusions of law, though it seems to the Court that (Doc. 401) is identical to (Doc. 400). (Ordered by Judge Brantley Starr on 11/13/2023) (chmb) (Entered: 11/13/2023) |
| 11/14/2023 | 404 | AMENDED CERTIFICATE of Conference re 372 Expedited MOTION to Approve, Ratify and Adopt *and Otherwise "Bless" Previous Actions of Receiver and Orders Issued Prior to Effective Date of Vacatur of Initial Receivership Order* by Receiver. (Koonce, Charlene) Modified event text on 12/3/2023 (axm). (Entered: 11/14/2023) |
| 11/14/2023 | 405 | RESPONSE AND OBJECTION filed by Timothy Barton re: 396 Expedited MOTION to Amend Order Supplementing Receivership Order and notice of Supplemental Information Regarding Myra Park 635 LLC. (Edney, Michael) Modified text on 12/3/2023 (axm). (Entered: 11/14/2023) |
| 11/15/2023 | 406 | ORDER GRANTING SECS 361 MOTION TO SUPPLEMENT THE RECORD. (Ordered by Judge Brantley Starr on 11/15/2023) (oyh) (Entered: 11/15/2023) |
| 11/15/2023 | 407 | Corrected RESPONSE AND OBJECTIONS filed by Timothy Barton re: 396 Expedited MOTION to Amend Order Supplementing Receivership Order and notice of Supplemental Information Regarding Myra Park 635 LLC. (Edney, Michael) Modified event text and linkage on 12/3/2023 (axm). (Entered: 11/15/2023) |
| 11/16/2023 | 408 | REPLY filed by Receiver re: 372 Expedited MOTION to Approve, Ratify and Adopt *and Otherwise "Bless" Previous Actions of Receiver and Orders Issued Prior to Effective Date of Vacatur of Initial Receivership Order* (Koonce, Charlene) (Entered: 11/16/2023) |
| 11/16/2023 | 409 | Joint STIPULATION by McCormick 101, LLC, Receiver. (Koonce, Charlene) (Entered: 11/16/2023) |
| 11/17/2023 | 410 | REPLY filed by Receiver re: 376 MOTION Ratify Frisco Gate Property Orders, Authorize Sale, and Stay Accrual of Interest (Carrillo, C) (Entered: 11/17/2023) |
| 11/20/2023 | 411 | Sur-reply filed by Texas Republic Bank, N.A. re: 376 MOTION Ratify Frisco Gate Property Orders, Authorize Sale, and Stay Accrual of Interest (Attachments: # 1 Exhibit(s), # 2 Exhibit(s)) (Schurr, Patrick) (Entered: 11/20/2023) |
| 11/21/2023 | 412 | Unopposed MOTION for Leave to File Sur-Reply Nunc Pro Tunc filed by Texas Republic Bank, N.A. (Attachments: # 1 Proposed Order) (Schurr, Patrick) (Entered: 11/21/2023) |
| 11/22/2023 | 413 | Unopposed MOTION to Intervene *with regard to the sale of the Frisco Gate Property Only* filed by Texas Republic Bank, N.A. (Attachments: # 1 Exhibit(s) A, # 2 Proposed Order) (Schurr, Patrick) (Entered: 11/22/2023) |
| 11/27/2023 | 414 | Unopposed MOTION to Intervene *On a Limited Basis Regarding the Sale of the Frisco Gate Property Only* filed by Palisades-TC, LLC with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Patton, Jonathan) (Entered: 11/27/2023) |
| 11/29/2023 | 415 | ORDER: The Court finds that Myra Park 635, LLC is exempted from any prior order based on the Receivers motion regarding Myra Park 635, LLC. (Doc. 396 ). (Ordered by Judge Brantley Starr on 11/29/2023) (chmb) Modified text on 11/29/2023 (ndt). (Entered: 11/29/2023) |
| 11/29/2023 | 416 | ORDER: The Court GRANTS IN PART the SEC's motion. (Doc. 309 ). (Ordered by Judge Brantley Starr on 11/29/2023) (chmb) (Entered: 11/29/2023) |

| | | |
|---|---|---|
| 11/29/2023 | 417 | ORDER: The Court enters the attached Order Appointing Receiver. (Ordered by Judge Brantley Starr on 11/29/2023) (chmb) (Entered: 11/29/2023) |
| 11/29/2023 | 418 | ORDER: The Court GRANTS IN PART the SEC's motion for a preliminary injunction and ancillary relief and to lift the stay. (Doc. 309 ). (Ordered by Judge Brantley Starr on 11/29/2023) (chmb) (Entered: 11/29/2023) |
| 11/29/2023 | 419 | ORDER: The Court GRANTS IN PART the Receiver's blessing motion. (Doc. 372 ). (Ordered by Judge Brantley Starr on 11/29/2023) (chmb) (Entered: 11/29/2023) |
| 11/29/2023 | 420 | ORDER: The Court CONSTRUES the Receiver's ratifying motions (Docs. 374 , 376 , and 378 ) as motions to appoint appraisers, approve appraisals, and set hearings for the Rock Creek Property, the Frisco Gate Property, and the Amerigold Suites. The Court sets hearings on these three motions on December 11, 2023 at 1:30 p.m. The Court also ORDERS expedited briefing. Any response is due by December 6, 2023. (Ordered by Judge Brantley Starr on 11/29/2023) (chmb) (Entered: 11/29/2023) |
| 11/29/2023 | 421 | ELECTRONIC ORDER: The Court DENIES WITHOUT PREJUDICE all pending motions in this case. Parties may refile all such motions now that the Court has resolved the SEC's motion for entry of a new receivership order. (Ordered by Judge Brantley Starr on 11/29/2023) (chmb) (Entered: 11/29/2023) |
| 11/29/2023 | | Hearing Modification: Hearing set per 420 Order. Motion Hearing set for 12/11/2023 01:30 PM before Judge Brantley Starr. (oyh) (Entered: 11/30/2023) |
| 12/01/2023 | 422 | Unopposed MOTION to Continue *Hearing* filed by Timothy Barton (Edney, Michael) (Entered: 12/01/2023) |
| 12/04/2023 | 423 | ELECTRONIC ORDER: The Court GRANTS Barton's unopposed Motion to Continue Hearing. (Doc. 422 ). The hearings on the Receiver's motions to appoint appraisers, approve appraisals, and set hearings for the sales of the Rock Creek Property, the Frisco Gate Property, and the Amerigold Suites will be held on December 14, 2023 at 1:30 p.m. (Ordered by Judge Brantley Starr on 12/4/2023) (chmb) (Entered: 12/04/2023) |
| 12/04/2023 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:415,416,417,418,419,420. Mon Dec 4 18:08:04 CST 2023 (crt) (Entered: 12/04/2023) |
| 12/04/2023 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:415,416,417,418,419,420. Mon Dec 4 18:08:14 CST 2023 (crt) (Entered: 12/04/2023) |
| 12/04/2023 | | Hearing/Deadline Modification: Motion Hearing reset for 12/14/2023 at 01:30 PM before Judge Brantley Starr. (Per 423 Electronic Order.) (twd) (Entered: 12/05/2023) |
| 12/05/2023 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:421,423. Tue Dec 5 09:13:00 CST 2023 (crt) (Entered: 12/05/2023) |
| 12/05/2023 | 424 | Unopposed MOTION to Amend the Preliminary Injunction and Receivership Orders filed by Timothy Barton re: 417 Order, 418 Order. (Attachments: # 1 Proposed Order) (Edney, Michael) Modified on 12/26/2023 (axm). (Entered: 12/05/2023) |
| 12/06/2023 | 425 | RESPONSE AND OBJECTION *to Receiver's 110 Motion for Appointment of APpraisers, Approval of Appraisals and a Hearing Regarding Approval of Sale of Frisco Gate Property* filed by Texas Republic Bank NA re: 420 Order. (Schurr, Patrick) Modified text on 12/21/2023 (axm). (Entered: 12/06/2023) |
| 12/06/2023 | 426 | ***Duplicate Entry of # 425*** RESPONSE AND OBJECTION filed by Texas Republic Bank NA re: 110 MOTION Receiver's Motion for Appointment of Appraisers, Approval of Appraisals of Frisco Gate Property and Setting Hearing Regarding Approval of Sale of Frisco Gate Property, 376 MOTION Ratify Frisco Gate Property Orders, |

| | | |
|---|---|---|
| | | Authorize Sale, and Stay Accrual of Interest (Schurr, Patrick) Modified on 12/21/2023 (axm). (Entered: 12/06/2023) |
| 12/06/2023 | 427 | ELECTRONIC ORDER: The Court GRANTS Barton's motion to amend deadlines (Doc. 424 ) in the Receivership Order and Preliminary Injunction Order. Accordingly, in the Receivership Order, the deadlines for the Receivership Entities to provide the Receiver a sworn statement (Doc. 417 at 12-13) and for Barton to serve on the Receiver a declaration (Doc. 417 at 15) are amended to forty-five days after the entry of the Receivership Order. In the Preliminary Injunction Order, the deadline for Barton to give a sworn accounting (Doc. 418 at 11) is amended to forty-five days after the entry of the Preliminary Injunction Order. (Ordered by Judge Brantley Starr on 12/6/2023) (chmb) (Entered: 12/06/2023) |
| 12/06/2023 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:427. Wed Dec 6 15:10:19 CST 2023 (crt) (Entered: 12/06/2023) |
| 12/06/2023 | 428 | OBJECTION filed by Timothy Barton re: 374 Expedited MOTION to Ratify Orders Appointing Appraisers, *Approving Appraisals and Approving Sale of Real Estate*, 376 MOTION Ratify Frisco Gate Property Orders, Authorize Sale, and Stay Accrual of Interest, 378 MOTION Ratify the Amerigold Suites Orders, Authorize Sale, and Stay Accrual of Interest (Edney, Michael) (Entered: 12/06/2023) |
| 12/07/2023 | 429 | NOTICE OF INTERLOCUTORY APPEAL as to 419 Order, 417 Order, 416 Order, 420 Order, 418 Order, 427 Order on Motion to Amend/Correct,, to the Fifth Circuit by Timothy Barton. Filing fee $605, receipt number ATXNDC-14227507. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 12/07/2023) |
| 12/12/2023 | 430 | Unopposed MOTION to Intervene *On a Limited Basis With Respect to the Frisco Gate Property* filed by Palisades-TC, LLC with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Patton, Jonathan) (Entered: 12/12/2023) |
| 12/12/2023 | 431 | MOTION for Leave to File to Exceed Page Limitation in Receiver's Reply to Consolidated Response filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Exhibit(s) A, # 2 Proposed Order) (Koonce, Charlene) (Entered: 12/12/2023) |
| 12/14/2023 | 432 | ELECTRONIC ORDER: Regarding the hearing on the Frisco Gate Property, the scope of the hearing is to determine if a sale of the Property is in the best interest of the Receivership, not to determine potential distribution of sale proceeds. The Court has received papers on Palisades's interest and Texas Republic Bank's default interest argument and will resolve those issues on the papers. (Ordered by Judge Brantley Starr on 12/14/2023) (chmb) (Entered: 12/14/2023) |
| 12/14/2023 | 433 | NOTICE of *Publication* re: 374 Expedited MOTION to Ratify Orders Appointing Appraisers, *Approving Appraisals and Approving Sale of Real Estate*, 376 MOTION Ratify Frisco Gate Property Orders, Authorize Sale, and Stay Accrual of Interest, 378 MOTION Ratify the Amerigold Suites Orders, Authorize Sale, and Stay Accrual of Interest filed by Receiver (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B) (Thomas, Cort) (Entered: 12/14/2023) |

| | | |
|---|---|---|
| 12/14/2023 | 434 | ELECTRONIC ORDER granting 431 Motion for Leave to File. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Brantley Starr on 12/14/2023) (chmb) (Entered: 12/14/2023) |
| 12/14/2023 | 435 | REPLY to Defendant Timothy Barton's Consolidated Opposition to Receiver's Verified Motions for Authorization to Sell Three Receivership Properties filed by Receiver re: 374 Expedited MOTION to Ratify Orders Appointing Appraisers, *376 MOTION Ratify Frisco Gate Property Orders, Authorize Sale, and Stay Accrual of Interest, 378 MOTION Ratify the Amerigold Suites Orders, Authorize Sale, and Stay Accrual of Interest. (agc) (Entered: 12/14/2023)* |
| 12/14/2023 | 439 | ELECTRONIC Minute Entry for proceedings held before Judge Brantley Starr: Motion Hearing held on 12/14/2023. Hearing on the Receiver's motions to appoint appraisers and approve appraisals sale of of the Rock Creek Property, the Frisco Gate Property, and the Amerigold Suites. Attorney Appearances: Plaintiff - Keefe Bernstein; Defense - Michael Edney; Receiver - Cort Thomas, Charlene Koonce, Tim Wells; (Court Reporter: Kelli Ann Willis) (No exhibits) Time in Court - 1:15. (chmb) Modified filed date on 1/15/2024 (axm). (Entered: 12/18/2023) |
| 12/15/2023 | 436 | ORDER APPROVING SALE re: Amerigold Suites. (Ordered by Judge Brantley Starr on 12/15/2023) (axm) (Entered: 12/16/2023) |
| 12/15/2023 | 437 | ORDER APPROVING SALE re: Rock Creek Property. (Ordered by Judge Brantley Starr on 12/15/2023) (axm) (Entered: 12/16/2023) |
| 12/15/2023 | 438 | ORDER APPROVING SALE: The Court APPROVES the sale of the Frisco Gate Property. Before closing, the Court will address by subsequent ruling the interests of Texas Republic Bank, N.A. and Palisades-TC, LLC. (Ordered by Judge Brantley Starr on 12/15/2023) (axm) (Entered: 12/16/2023) |
| 12/17/2023 | | USCA Case Number 23-11237 in USCA5 for 429 Notice of Appeal filed by Timothy Barton. (axm) (Entered: 12/17/2023) |
| 12/29/2023 | 440 | NOTICE OF INTERLOCUTORY APPEAL as to 438 Order on Motion to Intervene, 436 Order, 437 Order to the Fifth Circuit by Timothy Barton. Filing fee $605, receipt number ATXNDC-14277425. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 12/29/2023) |
| 01/02/2024 | 441 | MOTION Permission to Abandon Certain Personal Property re 419 Order filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C) (Koonce, Charlene) (Entered: 01/02/2024) |
| 01/02/2024 | 442 | Electronic Copy of Admitted Hearing or Trial Exhibit(s) re 429 Notice of Appeal filed by Securities and Exchange Commission. Exhibits are available for public inspection at the clerk's office. (Attachments: # 1 Exhibit(s) Part 1 of 5, # 2 Exhibit(s) Part 2 of 5) (Bernstein, Keefe) (Entered: 01/02/2024) |

| | | |
|---|---|---|
| 01/02/2024 | 443 | Electronic Copy of Admitted Hearing or Trial Exhibit(s) re 429 Notice of Appeal filed by Securities and Exchange Commission. Exhibits are available for public inspection at the clerk's office. (Bernstein, Keefe) (Entered: 01/02/2024) |
| 01/02/2024 | 444 | Electronic Copy of Admitted Hearing or Trial Exhibit(s) re 429 Notice of Appeal filed by Securities and Exchange Commission. Exhibits are available for public inspection at the clerk's office. (Attachments: # 1 Exhibit(s) Part 5 of 5) (Bernstein, Keefe) (Entered: 01/02/2024) |
| 01/03/2024 | 445 | ELECTRONIC ORDER: The Court ORDERS expedited briefing on the Receiver's Motion for Permission to Abandon Certain Personal Property [Doc. 441]. Defendant's Response is due by January 4, 2024 at 12:00 p.m. (Ordered by Judge Brantley Starr on 1/3/2024) (chmb) (Entered: 01/03/2024) |
| 01/03/2024 | 446 | Unopposed MOTION to Withdraw as Attorney *Michael Dingman* filed by Timothy Barton (Attachments: # 1 Proposed Order) (Dingman, Michael) (Entered: 01/03/2024) |
| 01/03/2024 | 447 | NOTICE of *Withdrawal* re: 441 MOTION Permission to Abandon Certain Personal Property re 419 Order filed by Receiver (Koonce, Charlene) (Entered: 01/03/2024) |
| 01/04/2024 | 448 | ELECTRONIC ORDER: The Court MOOTS the Receiver's Motion for Permission to Abandon Certain Personal Property [Doc. 441] in light of the Receiver's Notice of Withdrawal [Doc. 447]. (Ordered by Judge Brantley Starr on 1/4/2024) (chmb) (Entered: 01/04/2024) |
| 01/04/2024 | 449 | ELECTRONIC ORDER granting Motion to Withdraw as Attorney [Doc. 446]. Attorney Michael Dingman terminated. (Ordered by Judge Brantley Starr on 1/4/2024) (chmb) (Entered: 01/04/2024) |
| 01/05/2024 | 450 | MOTION to Lift Litigation Stay of BM318 Bankruptcy Case re 417 Order filed by Receiver. (Carrillo, C) (Entered: 01/05/2024) |
| 01/05/2024 | | USCA Case Number 24-10004 in USCA5 for 440 Notice of Appeal filed by Timothy Barton. (axm) (Entered: 01/05/2024) |
| 01/08/2024 | 451 | ORDER REGARDING THE FRISCO GATE PROPERTY. (Ordered by Judge Brantley Starr on 1/8/2024) (kaf) (Entered: 01/08/2024) |
| 01/08/2024 | 452 | Transcript Order Form: re 440 Notice of Appeal, transcript requested by Timothy Barton for Hearing 12/14/2023 (Court Reporter: Kelli Ann Willis.) Payment method: Private funds - Requester has obtained the estimate from the reporter and has paid or will pay the cost as directed. Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court. (Edney, Michael) (Entered: 01/08/2024) |
| 01/12/2024 | 453 | NOTICE of Attorney Appearance by Deborah M Perry for Dennis L. Roossien, Jr. on behalf of The Dixon Water Foundation.. Party The Dixon Water Foundation added. (Perry, Deborah) (Entered: 01/12/2024) |
| 01/12/2024 | 454 | Certificate Regarding Judge-Specific Requirements. (Perry, Deborah) (Entered: 01/12/2024) |
| 01/25/2024 | | Record on Appeal for USCA5 23-11237 (related to 429 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 4 Volume(s) electronic transcript. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the |

| | | |
|---|---|---|
| | | district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (axm) (Entered: 01/25/2024) |
| 01/26/2024 | 455 | RESPONSE AND OBJECTION filed by Timothy Barton re: 450 MOTION to Lift Litigation Stay of BM318 Bankruptcy Case (Edney, Michael) (Entered: 01/26/2024) |
| 01/30/2024 | 456 | STATUS REPORT *Sixth Quarterly Report of Receiver* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 01/30/2024) |
| 02/03/2024 | 457 | MOTION for Reconsideration re 451 Order filed by Texas Republic Bank NA with Brief/Memorandum in Support. (Attachments: # 1 Exhibit(s), # 2 Proposed Order) (Schurr, Patrick) (Entered: 02/03/2024) |
| 02/09/2024 | 458 | REPLY filed by Receiver re: 450 MOTION to Lift Litigation Stay of BM318 Bankruptcy Case (Carrillo, C) (Entered: 02/09/2024) |
| 02/12/2024 | 459 | NOTICE of *Intended Auction of Art and Antiques* filed by Receiver (Attachments: # 1 Exhibit(s) A) (Koonce, Charlene) (Entered: 02/12/2024) |
| 02/14/2024 | 460 | MOTION for Extension of Time to File Third, Fourth, and Fifth Quarterly Fee Applications filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 02/14/2024) |
| 02/14/2024 | 461 | MOTION to Withdraw as Attorney *and Substitute Counsel of Record* filed by McCormick 101, LLC (Attachments: # 1 Proposed Order) (Mills, Russell) (Entered: 02/14/2024) |
| 02/16/2024 | 462 | OBJECTION filed by Timothy Barton re: 459 Notice (Other) (Edney, Michael) (Entered: 02/16/2024) |
| 02/16/2024 | 463 | MOTION Modify Stay Provision Set Forth in Receiver Order filed by McCormick 101, LLC (Attachments: # 1 Proposed Order) (Mills, Russell) (Entered: 02/16/2024) |
| 02/20/2024 | 466 | USCA Letter Invoking Transcript Discount. Court Reporter: Kelli Ann Willis. Discount of 10 percent invoked. (axm) (Entered: 02/23/2024) |
| 02/21/2024 | 464 | ELECTRONIC ORDER granting 460 the Receiver's unopposed motion for extension of time to file the Third, Fourth, and Fifth Quarterly Fee Applications. The deadline to file those fee applications is extended to May 14, 2024. (Ordered by Judge Brantley Starr on 2/21/2024) (chmb) (Entered: 02/21/2024) |
| 02/21/2024 | 465 | Notice of Filing of Official Electronic Transcript of Motion to Approve Sale Proceedings held on 12-14-23 before Judge Brantley Starr. Court Reporter/Transcriber Kelli Ann Willis, Telephone number 214-753-2654. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (83 pages) Redaction Request due 3/13/2024. Redacted Transcript Deadline set for 3/25/2024. Release of Transcript Restriction set for 5/21/2024. (kaw) (Entered: 02/21/2024) |
| 02/23/2024 | 467 | RESPONSE filed by Receiver re: 457 MOTION for Reconsideration re 451 Order (Carrillo, C) (Entered: 02/23/2024) |

| | | |
|---|---|---|
| 02/23/2024 | 468 | RESPONSE filed by Palisades-TC, LLC re: 457 MOTION for Reconsideration re 451 Order (Patton, Jonathan) (Entered: 02/23/2024) |
| 02/26/2024 | 469 | ELECTRONIC ORDER granting 461 Motion to Withdraw and Substitute Attorney. Attorneys Russell W. Mills, Gwen I. Walraven, and Lewis F. Collins, III terminated. (Ordered by Judge Brantley Starr on 2/26/2024) (chmb) (Entered: 02/26/2024) |
| 02/26/2024 | 474 | Opinion of USCA in accordance with USCA judgment re 130 Notice of Appeal filed by Gillespie Villas LLC, Titan Investments LLC, TRTX Properties LLC, Venus59 LLC, Maximilien Barton. The appeal is DISMISSED AS MOOT. (axm) (Entered: 03/03/2024) |
| 02/26/2024 | 475 | JUDGMENT/MANDATE of USCA as to 130 Notice of Appeal filed by Gillespie Villas LLC, Titan Investments LLC, TRTX Properties LLC, Venus59 LLC, Maximilien Barton. The appeal is DISMISSED as moot. Issued as Mandate: 2/26/2024. (axm) (Entered: 03/03/2024) |
| 02/27/2024 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:469. Tue Feb 27 11:41:11 CST 2024 (crt) (Entered: 02/27/2024) |
| 02/27/2024 | 470 | RESPONSE filed by Receiver re: 462 Response/Objection (Attachments: # 1 Exhibit(s) 1) (Koonce, Charlene) (Entered: 02/27/2024) |
| 03/01/2024 | 471 | *** **Please Disregard per Attorney***** MOTION Lift Litigation Stay for Limited Purpose filed by Receiver with Brief/Memorandum in Support. (Koonce, Charlene) Modified on 3/1/2024 (kcr). (Entered: 03/01/2024) |
| 03/01/2024 | 472 | MOTION for Leave to File Complaints Against Third Parties filed by Receiver with Brief/Memorandum in Support. (Koonce, Charlene) (Entered: 03/01/2024) |
| 03/01/2024 | 473 | ***Duplicate Entry of # 472 *** MOTION for Leave to File Complaint against Third Parties filed by Receiver with Brief/Memorandum in Support. (Koonce, Charlene) Modified text and inkage on 3/3/2024 (axm). (Entered: 03/01/2024) |
| 03/04/2024 | 476 | MOTION Lift Litigation Stay for Limited Purpose filed by Receiver with Brief/Memorandum in Support. (Koonce, Charlene) (Entered: 03/04/2024) |
| 03/07/2024 | 477 | ORDER: The Court DENIES McCormick's 463 motion to modify the stay provision in the Receivership Order and further DENIES McCormick's request to proceed with a foreclosure sale of the Amerigold Suites. (Ordered by Judge Brantley Starr on 3/7/2024) (ykp) (Entered: 03/07/2024) |
| 03/08/2024 | | Record on Appeal for USCA5 24-10004 (related to 440 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 5 Volume(s) electronic transcript,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (mcrd) (Entered: 03/08/2024) |
| 03/08/2024 | 478 | NOTICE of *Noncompliance and Continuing Interference* re: 417 Order, 427 Order on Motion to Amend/Correct,, filed by Receiver (Koonce, Charlene) (Entered: 03/08/2024) |

| | | |
|---|---|---|
| 03/12/2024 | 479 | NOTICE of *No Objection* re: 472 MOTION for Leave to File Complaints Against Third Parties filed by Receiver (Wells, Tim) (Entered: 03/12/2024) |
| 03/12/2024 | 480 | NOTICE of *No Objection* re: 476 MOTION Lift Litigation Stay for Limited Purpose filed by Receiver (Wells, Tim) (Entered: 03/12/2024) |
| 03/12/2024 | 481 | NOTICE of Attorney Appearance by Gordon Welborne Green on behalf of Truist Bank. (Filer confirms contact info in ECF is current.). Party Truist Bank added. (Green, Gordon) (Entered: 03/12/2024) |
| 03/15/2024 | 482 | MOTION for Hearing and Exemption from Receiver filed by Daniel Crow. (axm) (Entered: 03/18/2024) |
| 03/28/2024 | 483 | NOTICE of *Intended Auction of Art* filed by Receiver (Koonce, Charlene) (Entered: 03/28/2024) |
| 04/04/2024 | 485 | MOTION for Judgment filed by Maximilien Barton. (ndt) (Entered: 04/05/2024) |
| 04/05/2024 | 484 | RESPONSE AND OBJECTION filed by Receiver re: 482 MOTION for Hearing (Koonce, Charlene) (Entered: 04/05/2024) |
| 04/15/2024 | 486 | ORDER: Before the Court is the Receiver's 450 motion to lift the litigation stay of the BM318 bankruptcy case. The Court GRANTS the motion and LIFTS THE STAY of In re BM318, LLC, Case No. 20-042789-mxm in the U.S. Bankruptcy Court for the Northern District of Texas, Fort Worth Division and BM318, LLC, Plaintiff v. The Dixon Water Foundation, Defendant, Lumar Land & Cattle, LLC, Plaintiff-in-intervention, Adv. No. 21-04051-mxm in the U.S. Bankruptcy Court for the Northern District of Texas, Fort Worth Division, so that the Bankruptcy Court may consider the settlement agreements from litigation that progressed before the litigation stay. (Ordered by Judge Brantley Starr on 4/15/2024) (ykp) (Entered: 04/15/2024) |
| 04/17/2024 | 487 | MOTION to Ratify Settlement Agreement with Somerset-Lost Creek Golf, Ltd and The Beryl Artz Bypass Trust and Brief in Support filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 04/17/2024) |
| 04/19/2024 | 488 | ORDER granting 472 MOTION for Leave to File Complaints Against Third Parties. (The requesting party must file the document with the clerk.) (Ordered by Judge Brantley Starr on 4/19/2024) (ykp) (Entered: 04/19/2024) |
| 04/19/2024 | 489 | ORDER granting 476 MOTION Lift Litigation Stay for Limited Purpose: The Court GRANTS the motion and LIFTS THE STAY to allow for a mediation between Badgley and Goldmark's insurance carrier, consistent with Badgley's agreement on the Receiver's conditions that: "(1) a representative for the Receiver is permitted to attend only to the extent necessary and only by telephone; (2) payment of any deductible amount is either waived or submitted as a claim for payment in any claims process; and (3) the Receiver retains discretion to oppose any settlement that exceeds policy limits." (Ordered by Judge Brantley Starr on 4/19/2024) (ykp) (Entered: 04/19/2024) |
| 04/26/2024 | 490 | RESPONSE filed by Receiver re: 485 MOTION for Judgment (Wells, Tim) (Entered: 04/26/2024) |
| 04/30/2024 | 491 | STATUS REPORT *Seventh Quarterly Report of Receiver (1Q24)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 04/30/2024) |
| 05/06/2024 | 492 | Opinion of USCA in accordance with USCA judgment re 112 Notice of Appeal filed by Timothy Barton. (axm) (Entered: 05/08/2024) |
| 05/06/2024 | 493 | JUDGMENT/MANDATE of USCA as to 112 Notice of Appeal filed by Timothy Barton. The appeal is DISMISSED as moot. Issued as Mandate: 5/6/2024. (axm) (Entered: |

| | | |
|---|---|---|
| | | 05/08/2024) |
| 05/15/2024 | 494 | MOTION to Ratify Settlement Agreement with Tamamoi, LLC and 3820 Illinois, LLC and Brief in Support filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Exhibit(s) A, # 2 Proposed Order) (Thomas, Cort) (Entered: 05/15/2024) |
| 05/15/2024 | 495 | NOTICE of *INTENTION TO OPPOSE RECEIVERS VERIFIED MOTION TO RATIFY SETTLEMENT AGREEMENT* re: 494 MOTION to Ratify Settlement Agreement with Tamamoi, LLC and 3820 Illinois, LLC and Brief in Support filed by Timothy Barton (Edney, Michael) (Entered: 05/15/2024) |
| 05/15/2024 | 496 | MOTION to Extend Time to File Third, Fourth, Fifth, and Sixth Quarterly Fee Applications filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 05/15/2024) |
| 05/24/2024 | 497 | ORDER granting 487 MOTION to Ratify Settlement Agreement with Somerset-Lost Creek Golf, Ltd and The Beryl Artz Bypass Trust. The Court hereby RATIFIES the Settlement Agreement finding it is fair and equitable and in the best interests of the Receivership Estate. Furthermore, the Court LIFTS THE STAY of Somerset-Lost Creek Golf, Ltd. v. Tim Barton, LC Aledo TX, LLC, JMJ Acquisitions, LLC, and Wall010, LLC, Cause No. 096-319595-20 pending in the 96th Judicial District of Tarrant County, Texas for the limited purpose of allowing the Receiver to dismiss the case. (Ordered by Judge Brantley Starr on 5/24/2024) (ykp) (Entered: 05/24/2024) |
| 05/24/2024 | 498 | MOTION to Modify Stay Provision Set Forth in Receiver Order filed by Southern Star Capital LLC with Brief/Memorandum in Support re 417 Order. (Attachments: # 1 Proposed Order) (Buchholz, Robert) Modified text on 7/8/2024 (axm). (Entered: 05/24/2024) |
| 05/24/2024 | 499 | Appendix in Support filed by Southern Star Capital LLC re 498 MOTION Lifting of Stay; Exception from Order Appointing Receiver re 417 Order (Buchholz, Robert) (Entered: 05/24/2024) |
| 06/05/2024 | 500 | MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Amerigold Suites filed by Receiver with. (Attachments: # 1 Proposed Order) (Wells, Tim) (Entered: 06/05/2024) |
| 06/05/2024 | 501 | Appendix in Support filed by Receiver re 500 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Amerigold Suites (Wells, Tim) (Entered: 06/05/2024) |
| 06/05/2024 | 502 | MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Hall Street Property filed by Receiver. (Attachments: # 1 Proposed Order) (Wells, Tim) (Entered: 06/05/2024) |
| 06/05/2024 | 503 | Appendix in Support filed by Receiver re 502 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Hall Street Property (Wells, Tim) (Entered: 06/05/2024) |
| 06/05/2024 | 504 | RESPONSE AND OBJECTION filed by Timothy Barton re: 494 MOTION to Ratify Settlement Agreement with Tamamoi, LLC and 3820 Illinois, LLC and Brief in Support (Edney, Michael) (Entered: 06/05/2024) |
| 06/07/2024 | 505 | Re-Urging MOTION to Intervene and Lift Litigation Stay filed by First Development Company of Ohio LLC re: 245 Motion. (Attachments: # 1 Proposed Order) (Gitlin, Jonathan) Modified text and linkage on 6/17/2024 (axm). (Entered: 06/07/2024) |

| | | |
|---|---|---|
| 06/07/2024 | 506 | AMENDED CERTIFICATE of Conference re 500 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Amerigold Suites by Receiver. (Wells, Tim) Modified event text on 6/17/2024 (axm). (Entered: 06/07/2024) |
| 06/07/2024 | 507 | AMENDED CERTIFICATE of Conference re 502 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Hall Street Property by Receiver. (Wells, Tim) Modified event text on 6/17/2024 (axm). (Entered: 06/07/2024) |
| 06/14/2024 | 508 | RESPONSE filed by Receiver re: 498 MOTION Lifting of Stay; Exception from Order Appointing Receiver re 417 Order (Koonce, Charlene) (Entered: 06/14/2024) |
| 06/14/2024 | 509 | RESPONSE filed by Securities and Exchange Commission re: 498 MOTION Lifting of Stay; Exception from Order Appointing Receiver re 417 Order (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 06/14/2024) |
| 06/18/2024 | 510 | MEMORANDUM OPINION AND ORDER denying 457 Motion for Reconsideration. (Ordered by Judge Brantley Starr on 6/18/2024) (kcr) (Entered: 06/18/2024) |
| 06/18/2024 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:510. Tue Jun 18 10:14:11 CDT 2024 (crt) (Entered: 06/18/2024) |
| 06/18/2024 | 511 | RESPONSE filed by 3820 Illinois LLC, Tamamoi LLC re: 494 MOTION to Ratify Settlement Agreement with Tamamoi, LLC and 3820 Illinois, LLC and Brief in Support (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s), # 5 Exhibit(s)) (Cox, Sarah) (Entered: 06/18/2024) |
| 06/18/2024 | 512 | Declaration *of Jim Richardson* filed by 3820 Illinois LLC, Tamamoi LLC re 511 Response/Objection. (Cox, Sarah) Modified text on 6/21/2024 (axm). (Entered: 06/18/2024) |
| 06/18/2024 | 513 | REPLY filed by Receiver re: 494 MOTION to Ratify Settlement Agreement with Tamamoi, LLC and 3820 Illinois, LLC and Brief in Support (Koonce, Charlene) (Entered: 06/18/2024) |
| 06/18/2024 | 514 | MOTION to Extend Page Limitation for Receiver's Reply in Support of Verified Motion to Ratify Settlement Agreement *with Tamamoi, LLC and 3820 Illinois, LLC* filed by Receiver (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 06/18/2024) |
| 06/25/2024 | 515 | ELECTRONIC ORDER: The hearings on the Receiver's motions to appoint appraisers, approve appraisals, and set hearings for the sales of the Amerigold Suites and the Hall Street Property (Docs. 500 , 502 ) will be held on July 23, 2024 at 10:00 a.m. (Ordered by Judge Brantley Starr on 6/25/2024) (chmb) (Entered: 06/25/2024) |
| 06/26/2024 | 516 | RESPONSE AND OBJECTION filed by Timothy Barton re: 500 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Amerigold Suites (Edney, Michael) (Entered: 06/26/2024) |
| 06/26/2024 | 517 | RESPONSE AND OBJECTION filed by Timothy Barton re: 502 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Hall Street Property (Edney, Michael) (Entered: 06/26/2024) |
| 06/27/2024 | 518 | MOTION to Withdraw as Attorney *Tina Q. Nguyen and Lindsay Buchanan*, MOTION to Substitute Attorney, *John B. Scott*. Motion filed by Pioneer Finance, Inc. (Attachments: # 1 Proposed Order) (Nguyen, Tina) Modified text on 7/8/2024 (axm). (Entered: 06/27/2024) |

| | | |
|---|---|---|
| 06/28/2024 | 519 | RESPONSE filed by Receiver re: 505 Re-Urging MOTION to Intervene and Lift Litigation Stay. (Koonce, Charlene) Modified text on 7/8/2024 (axm). (Entered: 06/28/2024) |
| 06/28/2024 | 520 | ELECTRONIC ORDER granting 518 unopposed motion to withdraw as attorney and motion to substitute attorney. Attorney Lindsay Lombard Buchanan and Tina Quy Phi Nguyen terminated; Lindsay Lombard Buchanan and Tina Quy Phi Nguyen no longer associated with this case. Attorney John B. Scott is substituted as counsel of record for Pioneer Finance, Inc. (Ordered by Judge Brantley Starr on 6/28/2024) (chmb) (Entered: 06/28/2024) |
| 06/28/2024 | 521 | RESPONSE filed by Securities and Exchange Commission re: 505 Re-Urging MOTION to Intervene and Lift Litigation Stay. (Attachments: # 1 Proposed Order) (Bernstein, Keefe) Modified text on 7/8/2024 (axm). (Entered: 06/28/2024) |
| 06/28/2024 | 522 | REPLY filed by Southern Star Capital LLC re: 498 MOTION to Modify Stay Provision Set Forth in Receiver Order. (Buchholz, Robert) Modified text on 7/8/2024 (axm). (Entered: 06/28/2024) |
| 07/02/2024 | 523 | ELECTRONIC ORDER granting (Doc. 496 ) the Receiver's partially unopposed motion for extension of time to file the Third, Fourth, Fifth, and Sixth Quarterly Fee Applications. The deadline to file those fee applications is extended to August 14, 2024. (Ordered by Judge Brantley Starr on 7/2/2024) (chmb) (Entered: 07/02/2024) |
| 07/08/2024 | 524 | MOTION to Ratify BM318, LLC's Settlement Agreements with The Dixon Water Foundation and Lumar Land & Cattle, LLC filed by Receiver with Brief/Memorandum in Support. (Carrillo, C) Modified on 7/11/2024 (ykp). (Entered: 07/08/2024) |
| 07/08/2024 | 525 | Appendix in Support filed by Receiver re 524 MOTION to Ratify BM318, LLC's Settlement Agreements with The Dixon Water Foundation and Lumar Land & Cattle, LLC and Brief in Support (Carrillo, C) (Entered: 07/08/2024) |
| 07/09/2024 | 526 | NOTICE of Attorney Appearance by Martin Allen Sosland on behalf of Louisiana National Bank. (Filer confirms contact info in ECF is current.). Party Louisiana National Bank added. (Sosland, Martin) (Entered: 07/09/2024) |
| 07/09/2024 | 527 | Certificate Regarding Judge-Specific Requirements. (Sosland, Martin) (Entered: 07/09/2024) |
| 07/10/2024 | 528 | REPLY filed by Receiver re: 502 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Hall Street Property, 500 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Amerigold Suites (Koonce, Charlene) (Entered: 07/10/2024) |
| 07/11/2024 | 529 | ELECTRONIC ORDER granting 514 Motion for Leave to File. (The requesting party must file the document with the clerk.) (Ordered by Judge Brantley Starr on 7/11/2024) (chmb) Modified text to add filing instruction on 7/11/2024 (ykp). (Entered: 07/11/2024) |
| 07/17/2024 | 530 | NOTICE of *Continued Interference with Receiver's Management of Receivership Property* filed by Receiver (Koonce, Charlene) (Entered: 07/17/2024) |
| 07/17/2024 | 531 | ORDER granting 500 Motion for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Amerigold Suites. The Court APPOINTS the appraisers for the purpose of providing their appraisals of the Property and ACCEPTS the appraisals they provided in satisfaction of 28 U.S.C. section 2001(b). (Ordered by Judge Brantley Starr on 7/17/2024) (kcr) (Entered: 07/17/2024) |
| 07/17/2024 | 532 | ORDER granting 502 Motion for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Hall Street Property. The Court APPOINTS |

| | | |
|---|---|---|
| | | the appraisers for the purpose of providing their appraisals of the Property and ACCEPTS the appraisals they provided in satisfaction of 28 U.S.C. section 2001(b). (Ordered by Judge Brantley Starr on 7/17/2024) (kcr) (Entered: 07/17/2024) |
| 07/19/2024 | 533 | MOTION to Adjourn Hearing on Receiver's Motions re 502 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Hall Street Property, 500 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Amerigold Suites filed by Timothy Barton (Attachments: # 1 Exhibit(s) A) (Edney, Michael) (Entered: 07/19/2024) |
| 07/22/2024 | 534 | ELECTRONIC ORDER denying 533 motion to adjourn hearing. The hearings on the Receiver's motions to approve the sales of the Amerigold Suites and the Hall Street Property (Docs. 500 , 502 ) will still be held on July 23, 2024 at 10:00 a.m. (Ordered by Judge Brantley Starr on 7/22/2024) (chmb) (Entered: 07/22/2024) |
| 07/23/2024 | 535 | NOTICE of *Publication Regarding Sale of Amerigold Suites and Hall Street Property* re: 502 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Hall Street Property, 500 MOTION for Appointment of Appraisers, Approval of Appraisals, Approval Hearing, and Approval of Sale of Amerigold Suites filed by Receiver (Thomas, Cort) (Entered: 07/23/2024) |
| 07/23/2024 | 536 | ELECTRONIC Minute Entry for proceedings held before Judge Brantley Starr: Motion Hearing held on 7/23/2024 re 500 and 502 Motion for Appointment of Appraisal and Approval of Appraisals. Attorney Appearances: Plaintiff - Keefe Bernstein; Defense - Michael Edney, Receivers - Tim Wells, Kort Thomas. (Court Reporter: Rachel Erickson) (No exhibits) Time in Court - :40. (chmb) (Entered: 07/23/2024) |
| 07/25/2024 | 537 | ORDER: The Court APPROVES the sale of the Property. The Court additionally AUTHORIZES the Receiver to sell and to convey title to the Amerigold Suites free and clear of mortgages, liens, claims and encumbrances, after paying all secured lienholders in accordance with contractual terms. (Ordered by Judge Brantley Starr on 7/25/2024) (kcr) (Entered: 07/25/2024) |
| 07/25/2024 | 538 | ORDER: The Court APPROVES the sale of the Hall Street Property. The Court additionally AUTHORIZES the Receiver to sell and to convey title to the Hall Street Property free and clear of mortgages, liens, claims and encumbrances, after paying all secured lienholders in accordance with contractual terms. (Ordered by Judge Brantley Starr on 7/25/2024) (kcr) (Entered: 07/25/2024) |
| 07/26/2024 | 539 | MOTION Receiver's Renewed, Partially Unopposed Third Quarterly Fee Application filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 07/26/2024) |
| 07/26/2024 | 540 | Appendix in Support filed by Receiver re 539 MOTION Receiver's Renewed, Partially Unopposed Third Quarterly Fee Application (Thomas, Cort) (Entered: 07/26/2024) |
| 07/29/2024 | 541 | RESPONSE AND OBJECTION filed by Timothy Barton re: 524 MOTION to Ratify BM318, LLC's Settlement Agreements with The Dixon Water Foundation and Lumar Land & Cattle, LLC (Edney, Michael) (Entered: 07/29/2024) |
| 07/29/2024 | 542 | Appendix in Support filed by Timothy Barton re 541 Response/Objection *to Ratify BM318, LLC's Settlement Agreements with The Dixon Water Foundation and Lumar Land & Cattle LLC* (Edney, Michael) (Entered: 07/29/2024) |
| 07/30/2024 | 543 | STATUS REPORT *Eighth Quarterly Report of Receiver (2Q24)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 07/30/2024) |

| | | |
|---|---|---|
| 08/01/2024 | 544 | MOTION for Leave to File Documents Under Seal filed by Timothy Barton (Attachments: # 1 Proposed Order) (Edney, Michael) (Entered: 08/01/2024) |
| 08/08/2024 | 545 | ELECTRONIC ORDER denying 544 Motion for Leave to File. Before the Court is Timothy Barton's motion for leave to file documents under seal. The Court may well end up sealing documents at Barton's request. But there are two hurdles Barton has yet to clear. First, under Local Rule 79.3(c), Barton "must attach the proposed sealed document as an exhibit." That document can be provisionally sealed. There's a good reason the Court must have the document at issue, which is the second hurdle Barton must clear. In the Fifth Circuit, a party seeking to file a specific document under seal must move for leave to do so and: (1) identify precisely what information (pages, lines, etc.) the party wants sealed; (2) conduct a line-by-line, page-by-page analysis explaining and briefing why the risks of disclosure outweigh the publics right to know; and (3) explain why no other viable alternative to sealing exists. Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kaufman, No. 17-50534, Doc. 00514098372, at 2 (5th Cir. Aug. 1, 2017). Further, all facts recited in any such motion must be verified by the oath or declaration of a person or persons with personal knowledge, which will assist the Court in making fact findings that can withstand appellate scrutiny. If the facts supporting sealing are known by the respondent, then the response to the sealing motion must contain the declaration supporting sealing with the line-by-line analysis. Accordingly, the Court must deny without prejudice Barton's motion. (Ordered by Judge Brantley Starr on 8/8/2024) (Entered: 08/08/2024) |
| 08/12/2024 | 546 | REPLY filed by Receiver re: 524 MOTION to Ratify BM318, LLC's Settlement Agreements with The Dixon Water Foundation and Lumar Land & Cattle, LLC (Carrillo, C) (Entered: 08/12/2024) |
| 08/13/2024 | 547 | Unopposed MOTION to Extend Time to File Fourth, Fifth, Sixth, and Seventh Quarterly Fee Applications filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 08/13/2024) |
| 08/14/2024 | 548 | ORDER denying without prejudice 482 Motion for Hearing and Exemption from Receivership; denying without prejudice 485 Motion for Judgment (Ordered by Judge Brantley Starr on 8/14/2024) (cfk) Modified text on 8/19/2024 (cfk). (Entered: 08/14/2024) |
| 08/14/2024 | 549 | ORDER granting 494 Motion to Ratify Settlement Agreement with Tamamoi, LLC and 3820 Illinois, LLC. (Ordered by Judge Brantley Starr on 8/14/2024) (cfk) (Entered: 08/14/2024) |
| 08/14/2024 | 550 | ORDER granting 524 Motion to Ratify BM318, LLC's Settlement Agreements with The Dixon Water Foundation and Lumar Land & Cattle, LLC. (Ordered by Judge Brantley Starr on 8/14/2024) (cfk) (Entered: 08/14/2024) |
| 08/14/2024 | 551 | ORDER denying 498 Motion to Modify Stay Provision Set Forth in Receiver Order. (Ordered by Judge Brantley Starr on 8/14/2024) (cfk) (Entered: 08/14/2024) |
| 08/20/2024 | 552 | ELECTRONIC ORDER granting 547 Motion to Extend Time. Before the Court is the Receivers Unopposed Motion for Extension of Time to File Fourth, Fifth Quarterly Fee Applications. Having considered the Motion, the Court is of the opinion that it should be and hereby is GRANTED. Accordingly, the Receivers deadline to file his Fourth, Fifth, Sixth, and Seventh Quarterly Fee Applications is hereby EXTENDED until November 14, 2024. (Ordered by Judge Brantley Starr on 8/20/2024) (Entered: 08/20/2024) |
| 08/20/2024 | 553 | ORDER granting 539 Motion It is hereby ORDERED that the Receiver is authorized to pay from the receivership assets recovered by the Receiver the following fees and expenses:1. The sum of $81,283.19 shall be paid to Cort Thomas for his services as |

| | | |
|---|---|---|
| | | Receiver and expenses incurred from April 1, 2023 through June 30, 2023.2. The sum of $208,628.50 shall be paid to Brown Fox, PLLC for its services as counsel to the Receiver from April 1, 2023 through June 30, 2023.3. The sum of $137,937.98 shall be paid to Ahuja & Clark, PLLC for its services as accountant to the Receiver and expenses incurred from April 1, 2023 through June 30, 2023.4. The sum of $9,891.36 shall be paid to Veracity Forensics LLC for its services as digital asset and discovery advisor to the Receiver from April 1, 2023 through June 30, 2023. (Ordered by Judge Brantley Starr on 8/20/2024) (Entered: 08/20/2024) |
| 08/21/2024 | 554 | NOTICE OF INTERLOCUTORY APPEAL as to 538 Order, 550 Order on Motion for Miscellaneous Relief, 537 Order, 549 Order on Motion for Miscellaneous Relief to the Fifth Circuit by Timothy Barton. Filing fee $605, receipt number ATXNDC-14856970. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Edney, Michael) (Entered: 08/21/2024) |
| 08/22/2024 | 555 | (Document Restricted) Sealed Motion for Leave to File Documents Under Seal (Sealed pursuant to motion to seal) filed by Timothy Barton (Attachments: # 1 SEALED-Proposed Motion for Protective Order, # 2 Proposed Order) (Edney, Michael) (Entered: 08/22/2024) |
| 08/23/2024 | 556 | Special Order No. 3-354: Effective August 23, 2024, the cases listed on Exhibit A to this order are transferred to Magistrate Judge Brian McKay and shall henceforth carry the suffix letters BW. This case has been reassigned pursuant to Special Order No. 3-354. (The clerk has mailed a copy to all non-ECF users.) (Ordered by Chief Judge David C. Godbey on 8/23/2024) (cea) (Entered: 08/23/2024) |
| 08/23/2024 | 557 | NOTICE of *Authority (Starbucks v. McKinney)* filed by Securities and Exchange Commission (Bernstein, Keefe) (Entered: 08/23/2024) |
| 08/23/2024 | 558 | MOTION for Order to Show Cause *Hearing, Sanctions, Injunctive Relief* filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 08/23/2024) |
| 08/23/2024 | 559 | Appendix in Support filed by Receiver re 558 MOTION for Order to Show Cause *Hearing, Sanctions, Injunctive Relief, and Brief in Support* (Koonce, Charlene) (Entered: 08/23/2024) |
| 08/27/2024 | 560 | RESPONSE filed by Receiver re: 555 (Document Restricted) Sealed Motion for Leave to File Documents Under Seal (Sealed pursuant to motion to seal) (Attachments: # 1 Exhibit(s) A) (Koonce, Charlene) (Entered: 08/27/2024) |
| 08/29/2024 | 561 | Notice of Filing of Official Electronic Transcript of Motion Proceedings held on 7/23/2024 before Judge Brantley Starr. Court Reporter/Transcriber Rachel Erickson, Telephone number 214-753-2170. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript |

| | | |
|---|---|---|
| | | will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (27 pages) Redaction Request due 9/19/2024. Redacted Transcript Deadline set for 9/30/2024.. Release of Transcript Restriction set for 11/27/2024. (rce) (Entered: 08/29/2024) |
| 09/03/2024 | 562 | ORDER denying 505 Motion The Court DENIES the motion from First Development Company of Ohio, LLC to intervene and lift the stay. (Ordered by Judge Brantley Starr on 9/3/2024) (Entered: 09/03/2024) |
| 09/03/2024 | | USCA Case Number 24-10788 in USCA5 for 554 Notice of Appeal filed by Timothy Barton. (axm) (Entered: 09/03/2024) |
| 09/04/2024 | 563 | MOTION To Modify Stay Provision Set Forth in Receiver Order filed by McCormick 101 LLC (Attachments: # 1 Exhibit(s) A - Termination Letter, # 2 Proposed Order Proposed Order) (Cheves, Phillip) (Entered: 09/04/2024) |
| 09/05/2024 | 564 | Transcript Order Form: re 554 Notice of Appeal, transcript not requested. Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court. (Edney, Michael) (Entered: 09/05/2024) |
| 09/13/2024 | 565 | Unopposed Third MOTION for Extension of Time to File Response/Reply to 558 MOTION for Order to Show Cause *Hearing, Sanctions, Injunctive Relief* filed by Timothy Barton (Edney, Michael) Modified on text 9/30/2024 (axm). (Entered: 09/13/2024) |
| 09/13/2024 | 566 | ELECTRONIC ORDER granting Defendant Barton's 565 Motion to Extend Time to File Response/Reply. Barton's response to 558 Motion is due September 17, 2024. (Ordered by Judge Brantley Starr on 9/13/2024) (chmb) (Entered: 09/13/2024) |
| 09/13/2024 | | Deadline set: Responses due by 9/17/2024. (kaf) (Entered: 09/16/2024) |
| 09/17/2024 | 567 | Unopposed Second MOTION for Extension of Time to File Response/Reply to 558 MOTION for Order to Show Cause filed by Timothy Barton (Edney, Michael) Modified text and linkage on 9/30/2024 (axm). (Entered: 09/17/2024) |
| 09/20/2024 | 568 | Unopposed Third MOTION for Extension of Time to File Response/Reply to 558 MOTION for Order to Show Cause *Hearing, Sanctions, Injunctive Relief* filed by Timothy Barton (Edney, Michael) (Entered: 09/20/2024) |
| 09/25/2024 | 569 | RESPONSE AND OBJECTION filed by Securities and Exchange Commission re: 563 MOTION To Modify Stay Provision Set Forth in Receiver Order (Bernstein, Keefe) (Entered: 09/25/2024) |
| 09/25/2024 | 570 | RESPONSE filed by Receiver re: 563 MOTION To Modify Stay Provision Set Forth in Receiver Order (Carrillo, C) (Entered: 09/25/2024) |
| 09/25/2024 | 571 | Unopposed Fourth MOTION for Extension of Time to File Response/Reply to 558 MOTION for Order to Show Cause *Hearing, Sanctions, Injunctive Relief* filed by Timothy Barton (Edney, Michael) Modified text on 9/30/2024 (axm). (Entered: 09/25/2024) |
| 09/26/2024 | 572 | ELECTRONIC ORDER granting Defendant Barton's unopposed 571 Motion to Extend Time to File Response to Receivers 558 Motion. Barton's response is now due Friday, September 27, 2024. (Ordered by Judge Brantley Starr on 9/26/2024) (chmb) (Entered: 09/26/2024) |
| 09/26/2024 | 573 | ELECTRONIC ORDER finding moot Defendant Barton's 567 and 568 Motions for Extension of Time to Respond to Receiver's 558 Motion for Order to Show Cause in light |

| | | |
|---|---|---|
| | | of 572 Order. (Ordered by Judge Brantley Starr on 9/26/2024) (chmb) (Entered: 09/26/2024) |
| 09/27/2024 | 574 | Unopposed Fifth MOTION to Extend Time *to File a Response to Motion for Show Cause Hearing, Sanctions & Injunctive Relief* filed by Timothy Barton (Edney, Michael) (Entered: 09/27/2024) |
| 09/30/2024 | | Record on Appeal for USCA5 24-10788 (related to 554 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 6 Volume(s) electronic transcript, Sealed or ex parte electronic document number(s): 555 (circuit approval is required for access).<br>**PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (axm) (Entered: 09/30/2024) |
| 09/30/2024 | 575 | ELECTRONIC ORDER granting Timothy Barton's 574 Motion to Extend Time. Barton's response is due 7 days from this order: October 7, 2024. The Court will extend this deadline no further and will deny any additional requests. (Ordered by Judge Brantley Starr on 9/30/2024) (chmb) (Entered: 09/30/2024) |
| 10/07/2024 | 576 | REPLY filed by McCormick 101 LLC re: 563 MOTION To Modify Stay Provision Set Forth in Receiver Order (Cheves, Phillip) (Entered: 10/07/2024) |
| 10/07/2024 | 577 | NOTICE of *Resolution and Submission of Proposed Order* re: 558 MOTION for Order to Show Cause *Hearing, Sanctions, Injunctive Relief* filed by Timothy Barton, Receiver (Attachments: # 1 Proposed Order) (Koonce, Charlene) (Entered: 10/07/2024) |
| 10/07/2024 | 578 | Opinion of USCA in accordance with USCA judgment re 240 Notice of Appeal filed by Timothy Barton. (axm) (Entered: 10/09/2024) |
| 10/07/2024 | 579 | JUDGMENT/MANDATE of USCA as to 240 Notice of Appeal filed by Timothy Barton. The appeal is DISMISSED AS MOOT. Issued as Mandate: 10/7/2024. (axm) (Entered: 10/09/2024) |
| 10/10/2024 | 580 | ORDER denying without prejudice 558 Motion for Order to Show Cause. (Ordered by Judge Brantley Starr on 10/10/2024) (Attachments: # 1 Agreed Proposed Order) (frw) (Entered: 10/10/2024) |
| 10/16/2024 | 581 | ELECTRONIC ORDER: Notice of deficiency in Defendant Timothy Barton's 555 Motion for Leave to File Under Seal. Though Barton did conduct a page-by-page, line-by-line analysis as the Court instructed in Order 545 , the Fifth Circuit also requires all facts in motions to seal be verified by a signed declaration. Defendant has until October 23, 2024, to file such declaration to perfect his motion to seal. (Ordered by Judge Brantley Starr on 10/16/2024) (chmb) (Entered: 10/16/2024) |
| 10/25/2024 | 582 | Declaration of Micheal J. Edney filed by Timothy Barton re 581 Order, 555 (Document Restricted) Sealed Motion for Leave to File Documents Under Seal. (Edney, Michael) Modified title on 11/12/2024 (axm). (Entered: 10/25/2024) |
| 10/30/2024 | 583 | STATUS REPORT *Ninth Quarterly Status Report of Receiver (3Q24)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 10/30/2024) |

| | | |
|---|---|---|
| 11/06/2024 | 584 | ORDER denying 563 Motion To Modify Stay Provision Set Forth in Receiver Order. (Ordered by Judge Brantley Starr on 11/6/2024) (ndt) (Entered: 11/06/2024) |
| 11/06/2024 | 585 | MEMORANDUM OPINION AND ORDER DENYING BARTON'S 555 MOTION TO SEAL: The Court DENIES Barton's 555 motion to seal but GRANTS his request to refile the underlying document without the language at issue. (Ordered by Judge Brantley Starr on 11/6/2024) (kcr) (Entered: 11/07/2024) |
| 11/15/2024 | 586 | MOTION to Extend Time to File Fourth, Fifth, Sixth, Seventh, and Eighth Quarterly Fee Applications filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 11/15/2024) |
| 11/18/2024 | 587 | MOTION for Protective Order filed by Timothy Barton (Attachments: # 1 Proposed Order) (Edney, Michael) (Entered: 11/18/2024) |
| 11/19/2024 | 588 | ELECTRONIC ORDER: The Court requests expedited briefing on Receiver's 586 Motion to Extend Time to File Fourth, Fifth, Sixth, Seventh, and Eighth Quarterly Fee Applications. Any party who wishes to oppose must file a response by Monday, November 25, 2024. (Ordered by Judge Brantley Starr on 11/19/2024) (chmb) (Entered: 11/19/2024) |
| 11/26/2024 | 589 | NOTICE of *DEFENDANTS NON-OPPOSITION* re: 586 MOTION to Extend Time to File Fourth, Fifth, Sixth, Seventh, and Eighth Quarterly Fee Applications, 588 Order, filed by Timothy Barton (Edney, Michael) (Entered: 11/26/2024) |
| 12/02/2024 | 590 | ORDER granting 586 to Extend Time to File Fourth, Fifth, Sixth, Seventh, and Eighth Quarterly Fee Applications. Accordingly, the Receiver's deadline to file his Fourth, Fifth, Sixth, Seventh, and Eighth Quarterly Fee Applications is hereby EXTENDED until 2/14/2025. (Ordered by Judge Brantley Starr on 12/2/2024) (kcr) (Entered: 12/02/2024) |
| 12/09/2024 | 591 | RESPONSE filed by Receiver re: 587 MOTION for Protective Order (Koonce, Charlene) (Entered: 12/09/2024) |
| 12/23/2024 | 592 | REPLY filed by Timothy Barton re: 587 MOTION for Protective Order (Edney, Michael) (Entered: 12/23/2024) |
| 12/31/2024 | 593 | Partially Unopposed Fourth Quarterly Fee Application (3Q23) filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) Modified text on 1/15/2025 (axm). (Entered: 12/31/2024) |
| 12/31/2024 | 594 | Appendix in Support filed by Receiver re 593 MOTION Fourth Quarterly Fee Application (3Q23) (Thomas, Cort) (Entered: 12/31/2024) |
| 01/01/2025 | 595 | NOTICE of Attorney Appearance by Warren V Norred on behalf of Timothy Barton. (Filer confirms contact info in ECF is current.) (Norred, Warren) (Entered: 01/01/2025) |
| 01/02/2025 | 596 | OBJECTION filed by Timothy Barton re: 593 MOTION Fourth Quarterly Fee Application (3Q23) (Norred, Warren) (Entered: 01/02/2025) |
| 01/21/2025 | 597 | RESPONSE AND OBJECTION filed by Timothy Barton re: 593 Partially Unopposed Fourth Quarterly Fee Application (3Q23) (Attachments: # 1 Appendix) (Norred, Warren) (Entered: 01/21/2025) |
| 01/29/2025 | 598 | REPLY filed by Receiver re: 593 Partially Unopposed Fourth Quarterly Fee Application (3Q23) (Koonce, Charlene) (Entered: 01/29/2025) |
| 01/29/2025 | 599 | STATUS REPORT *Tenth Quarterly Report of Receiver (4Q24)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 01/29/2025) |

| | | |
|---|---|---|
| 02/14/2025 | 600 | Unopposed MOTION to Extend Time to File Fifth, Sixth, Seventh, Eighth and Ninth Quarterly Fee Applications filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 02/14/2025) |
| 02/17/2025 | 601 | NOTICE of Attorney Appearance by Douglas Steve Bird on behalf of City of Frisco, Texas. (Filer confirms contact info in ECF is current.). Party City of Frisco, Texas added. (Bird, Douglas) (Entered: 02/17/2025) |
| 02/17/2025 | 602 | NOTICE of Attorney Appearance by Ethan J Ranis on behalf of City of Frisco, Texas. (Filer confirms contact info in ECF is current.) (Ranis, Ethan) (Entered: 02/17/2025) |
| 02/18/2025 | 603 | ELECTRONIC ORDER granting the Receiver's 600 Motion to Extend Time. The Receiver's Fifth, Sixth, Seventh, Eighth, and Ninth Quarterly Fee Applications are now due May 15, 2025. (Ordered by Judge Brantley Starr on 2/18/2025) (chmb) (Entered: 02/18/2025) |
| 02/19/2025 | 604 | MOTION for More Definite Statement *in Response to the Tenth Quarterly Report* filed by Timothy Barton with Brief/Memorandum in Support. (Norred, Warren) (Entered: 02/19/2025) |
| 02/25/2025 | 605 | Unopposed MOTION to Withdraw as Attorney *and Substitute Counsel of Record* filed by McCormick 101 LLC (Attachments: # 1 Proposed Order) (Cheves, Phillip) (Entered: 02/25/2025) |
| 02/25/2025 | 606 | ELECTRONIC ORDER granting Interested Party McCormick 101, LLC's 605 Motion to Withdraw and Substitute Counsel of Record. Attorney Phillip Kyle Cheves terminated. (Ordered by Judge Brantley Starr on 2/25/2025) (chmb) (Entered: 02/25/2025) |
| 02/26/2025 | 607 | NOTICE of Attorney Appearance by Clay Marshall Taylor on behalf of McCormick 101 LLC. (Filer confirms contact info in ECF is current.) (Taylor, Clay) (Entered: 02/26/2025) |
| 02/26/2025 | 608 | NOTICE of Attorney Appearance by Spencer Dennis Hamilton on behalf of McCormick 101 LLC. (Filer confirms contact info in ECF is current.) (Hamilton, Spencer) (Entered: 02/26/2025) |
| 02/26/2025 | 609 | ORDER GRANTING RECEIVER'S SECOND FEE APPLICATION: The Court GRANTS the 593 application and ORDERS that the Receiver is authorized to pay from the Receivership assets the following fees and expenses. (Ordered by Judge Brantley Starr on 2/26/2025) (twd) (Entered: 02/27/2025) |
| 02/27/2025 | 610 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-15299788) filed by McCormick 101 LLC (Attachments: # 1 Certificate of Good Standing) (Nicholson, Jill) (Entered: 02/27/2025) |
| 02/28/2025 | 611 | ELECTRONIC ORDER granting 610 Application for Admission Pro Hac Vice of Jill L. Nicholson. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Brantley Starr on 2/28/2025) (chmb) (Entered: 02/28/2025) |
| 03/06/2025 | 612 | MOTION for (1) Immediate Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues and (2) Other Related Relief filed by McCormick 101 LLC (Attachments: # 1 Proposed Order) (Hamilton, Spencer) (Entered: 03/06/2025) |
| 03/06/2025 | 613 | Brief/Memorandum in Support filed by McCormick 101 LLC re 612 MOTION for (1) Immediate Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues and (2) Other Related Relief (Hamilton, Spencer) (Entered: 03/06/2025) |

| | | |
|---|---|---|
| 03/06/2025 | 614 | Appendix in Support filed by McCormick 101 LLC re 612 MOTION for (1) Immediate Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues and (2) Other Related Relief, 613 Brief/Memorandum in Support of Motion (Attachments: # 1 Exhibit(s) 1-72) (Hamilton, Spencer) (Entered: 03/06/2025) |
| 03/06/2025 | 615 | MOTION for Expedited Briefing re 612 MOTION for (1) Immediate Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues and (2) Other Related Relief filed by McCormick 101 LLC (Attachments: # 1 Proposed Order) (Hamilton, Spencer) (Entered: 03/06/2025) |
| 03/12/2025 | 616 | RESPONSE filed by Receiver re: 604 MOTION for More Definite Statement *in Response to the Tenth Quarterly Report* (Attachments: # 1 Exhibit(s) A) (Koonce, Charlene) (Entered: 03/12/2025) |
| 03/17/2025 | 617 | MOTION to Withdraw as Attorney *James E. Etri* filed by Securities and Exchange Commission (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 03/17/2025) |
| 03/20/2025 | 618 | REPLY filed by Timothy Barton re: 604 MOTION for More Definite Statement *in Response to the Tenth Quarterly Report* (Norred, Warren) (Entered: 03/20/2025) |
| 03/27/2025 | 619 | RESPONSE AND OBJECTION filed by Securities and Exchange Commission re: 612 MOTION for (1) Immediate Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues and (2) Other Related Relief (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 03/27/2025) |
| 03/27/2025 | 620 | RESPONSE filed by Receiver re: 615 MOTION for Expedited Briefing re 612 MOTION for (1) Immediate Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues and (2) Other Related Relief. (Wells, Tim) (Entered: 03/27/2025) |
| 03/27/2025 | 621 | Appendix in Support filed by Receiver re 620 Response/Objection, (Wells, Tim) (Entered: 03/27/2025) |
| 03/30/2025 | 622 | REPLY filed by McCormick 101 LLC re: 612 MOTION for (1) Immediate Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues and (2) Other Related Relief (Hamilton, Spencer) (Entered: 03/30/2025) |
| 03/30/2025 | 623 | REQUEST FOR HEARING re: 612 MOTION for (1) Immediate Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues and (2) Other Related Relief filed by McCormick 101 LLC (Hamilton, Spencer) Modified event and text on 3/31/2025 (kaf). (Entered: 03/30/2025) |
| 04/02/2025 | 624 | ELECTRONIC ORDER granting the SEC's 617 Motion to Withdraw as Attorney. Attorney James E Etri hereby terminated. (Ordered by Judge Brantley Starr on 4/2/2025) (chmb) (Entered: 04/02/2025) |
| 04/04/2025 | 625 | MOTION for Order to Show Cause *for Failure to Preserve Receivership Assets and Joinder to McCormick 101 LLC's Motion for Third-Party Inspection* filed by Timothy Barton with Brief/Memorandum in Support. (Norred, Warren) (Entered: 04/04/2025) |
| 04/09/2025 | 626 | REPLY filed by McCormick 101 LLC re: 612 MOTION for (1) Immediate Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues and (2) Other Related Relief (Hamilton, Spencer) (Entered: 04/09/2025) |
| 04/09/2025 | 627 | Appendix in Support filed by McCormick 101 LLC re 626 Reply (Hamilton, Spencer) (Entered: 04/09/2025) |
| 04/09/2025 | 628 | AMENDED REPLY filed by McCormick 101 LLC re: 612 MOTION for (1) Immediate Third-Party Inspection of Amerigold Suites Regarding Tenant Life Safety Issues and (2) |

| | | |
|---|---|---|
| | | Other Related Relief. . (Hamilton, Spencer) Modified text and linkage on 4/11/2025 (axm). (Entered: 04/09/2025) |
| 04/09/2025 | 629 | Amended Appendix in Support filed by McCormick 101 LLC re: 628 Amended Reply . (Hamilton, Spencer) Modified text and linkage on 4/11/2025 (axm). (Entered: 04/09/2025) |
| 04/10/2025 | 630 | MEMORANDUM OPINION AND ORDER: The Court GRANTS IN PART AND DENIES IN PART McCormick's motion at Doc. 612 . The Court grants the motion as to permitting a third-party inspection of Amerigold Suites, though the Receiver shall choose the third-party inspector. The Court denies the motion as to lifting the stay so that McCormick can foreclose on Amerigold Suites and go after Barton. The Court further FINDS AS MOOT McCormick's motions for expedited briefing and a hearing. (Docs. 615 & 623 ). (Ordered by Judge Brantley Starr on 4/10/2025) (kcr) (Entered: 04/10/2025) |
| 04/10/2025 | 631 | ORDER: The Court GRANTS both Barton's request for a protective order and the Receiver's request for a motion to compel. Barton presented two options to the Court for a protective order. The Court enters the second. ACCORDINGLY, it is hereby ORDERED that Defendant provide the Receiver with the information requested. But the Court also ORDERS Barton to turn all the relevant documents over to the Receiver: "documents evidencing payments or security agreements received from or for the benefit of Barton, and the due diligence, if any, conducted regarding the source of any fees paid on Barton's behalf." (Ordered by Judge Brantley Starr on 4/10/2025) (kcr) (Entered: 04/10/2025) |
| 04/23/2025 | 632 | ELECTRONIC ORDER denying 625 Motion for Order to Show Cause. The Court denies this motion for the reasons in its opinion at Doc. 630.(Ordered by Judge Brantley Starr on 4/23/2025) (Entered: 04/23/2025) |
| 04/25/2025 | 633 | MOTION to Ratify Settlement Agreements with Elite Jet Solutions, LLC and First Development Company of Ohio, LLC and Brief in Support filed by Receiver with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 04/25/2025) |
| 04/25/2025 | 634 | Appendix in Support filed by Receiver re 633 MOTION to Ratify Settlement Agreements with Elite Jet Solutions, LLC and First Development Company of Ohio, LLC and Brief in Support (Thomas, Cort) (Entered: 04/25/2025) |
| 04/29/2025 | 635 | AMENDED CERTIFICATE of Conference re 633 MOTION to Ratify Settlement Agreements with Elite Jet Solutions, LLC and First Development Company of Ohio, LLC and Brief in Support by Tim Wells on behalf of Receiver (Wells, Tim) (Entered: 04/29/2025) |
| 04/30/2025 | 636 | STATUS REPORT *Eleventh Quarterly Report of Receiver (1Q25)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 04/30/2025) |
| 05/13/2025 | 637 | Unopposed MOTION to Extend Time to File Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Quarterly Fee Applications filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 05/13/2025) |
| 05/14/2025 | 638 | ELECTRONIC ORDER. The Court GRANTS the Receiver's 637 Unopposed Motion for Extension of Time to File Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Quarterly Fee Applications. The applications are now due August 14, 2025. (Ordered by Judge Brantley Starr on 5/14/2025) (chmb) (Entered: 05/14/2025) |
| 05/14/2025 | 639 | ORDER granting 633 Motion to Ratify Settlement Agreements. (Ordered by Judge Brantley Starr on 5/14/2025) (ndt) (Entered: 05/14/2025) |

| | | |
|---|---|---|
| 05/19/2025 | 640 | NOTICE of *Barton's Continued Interference and Violations of Receivership Order* filed by Receiver (Koonce, Charlene) (Entered: 05/19/2025) |
| 05/21/2025 | 641 | ORDER re: 640 Notice of Barton's Continued Interference and Violations of Receivership Order. The Court ORDERS Timothy Barton to file a response by Tuesday, 5/27/2025, explaining how he and his counsel are not in violation of the Receivership Order. (Ordered by Judge Brantley Starr on 5/21/2025) (axm) (Entered: 05/21/2025) |
| 05/23/2025 | 642 | Unopposed MOTION to Extend Time Unopposed filed by Timothy Barton (Edney, Michael) (Entered: 05/23/2025) |
| 05/27/2025 | 643 | ELECTRONIC ORDER. The Court GRANTS Barton's 642 Motion for Extension of Time. Barton's response to the Court's order at Doc. 641 is now due June 4, 2025. (Ordered by Judge Brantley Starr on 5/27/2025) (chmb) (Entered: 05/27/2025) |
| 06/04/2025 | 644 | NOTICE of *Attorney Unavailability* filed by Timothy Barton (Norred, Warren) (Entered: 06/04/2025) |
| 06/04/2025 | 645 | RESPONSE *to the Court's Order Regarding Defendant's Compliance with the Receivership Order* filed by Timothy Barton re: 641 Order. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B) (Edney, Michael) Modified text on 6/5/2025 (axm). (Entered: 06/04/2025) |
| 06/04/2025 | 646 | RESPONSE filed by Timothy Barton re: 641 Order. (Norred, Warren) (Entered: 06/04/2025) |
| 06/11/2025 | 647 | REPLY *to Barton's Response to Order to Show Cause Compliance with the Receivership Order* filed by Receiver re: 645 Response/Objection, 646 Response/Objection. (Attachments: # 1 Exhibit(s) A) (Thomas, Cort) (Entered: 06/11/2025) |
| 06/20/2025 | 648 | MOTION Lift Litigation Stay filed by Receiver (Attachments: # 1 Proposed Order) (Carrillo, C) (Entered: 06/20/2025) |
| 06/23/2025 | 649 | ORDER: The Court MODIFIES the Receivership Order such that Barton and his counsel must obtain clearance from the Court before filing any future bar grievances to prevent the Receivership estate from being depleted for meritless grievances. (Ordered by Judge Brantley Starr on 6/23/2025) (kcr) (Entered: 06/24/2025) |
| 06/23/2025 | 650 | ORDER APPOINTING RECEIVER: IT IS HEREBY ORDERED THAT: The Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following entities that each received or benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation. Until further Order of this Court, Cortney C. Thomas is hereby appointed to serve without bond as receiver (the "Receiver") for the estates of the Receivership Entities. (Ordered by Judge Brantley Starr on 6/23/2025) (kcr) (Entered: 06/24/2025) |
| 06/23/2025 | 651 | Opinion of USCA in accordance with USCA judgment re 429 Notice of Appeal filed by Timothy Barton. We AFFIRM the imposition and scope of the receivership and the grant of a preliminary injunction. We DISMISS Barton's appeal of administrative orders unrelated to sales for lack of jurisdiction. And we DENY his request to reassign the case to another district-court judge. [USCA 23-11237] (axm) (Entered: 06/24/2025) |
| 06/23/2025 | 652 | JUDGMENT/MANDATE of USCA as to 429 Notice of Appeal filed by Timothy Barton. We AFFIRM the imposition and scope of the receivership and the grant of a preliminary injunction. We DISMISS Barton's appeal of administrative orders unrelated to sales for lack of jurisdiction. And we DENY his request to reassign the case to another district-court judge. Issued as Mandate: 06/23/2025. (axm) (Entered: 06/24/2025) |

| | | |
|---|---|---|
| 07/07/2025 | 653 | ORDER denying 604 Motion for More Definite Statement. (Ordered by Judge Brantley Starr on 7/7/2025) (axm) (Entered: 07/08/2025) |
| 07/08/2025 | 654 | MOTION Fifth Quarterly Fee Application (4Q23) filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 07/08/2025) |
| 07/08/2025 | 655 | Appendix in Support filed by Receiver re 654 MOTION Fifth Quarterly Fee Application (4Q23) (Thomas, Cort) (Entered: 07/08/2025) |
| 07/08/2025 | 656 | MOTION Sixth Quarterly Fee Application (1Q24) filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 07/08/2025) |
| 07/08/2025 | 657 | Appendix in Support filed by Receiver re 656 MOTION Sixth Quarterly Fee Application (1Q24) (Thomas, Cort) (Entered: 07/08/2025) |
| 07/22/2025 | 658 | NOTICE OF INTERLOCUTORY APPEAL as to 650 Order to the Fifth Circuit by Timothy Barton. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (kaf) (Entered: 07/23/2025) |
| 07/22/2025 | 659 | NOTICE OF INTERLOCUTORY APPEAL as to 649 Order, to the Fifth Circuit by Timothy Barton. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (kaf) (Entered: 07/23/2025) |
| 07/24/2025 | | ***Clerk's Notice of delivery: (see NEF for details) Docket No:658, 659. Thu Jul 24 12:09:21 CDT 2025 (crt) (Entered: 07/24/2025) |
| 07/28/2025 | 660 | ORDER granting 648 Motion Lift Litigation Stay. (Ordered by Judge Brantley Starr on 7/28/2025) (ndt) (Entered: 07/28/2025) |
| 07/29/2025 | 661 | NOTICE of Attorney Appearance by James Frederick Hopper, Jr on behalf of Receiver. (Filer confirms contact info in ECF is current.) (Hopper, James) (Entered: 07/29/2025) |
| 07/29/2025 | 662 | MOTION to Withdraw as Attorney filed by Timothy Barton. (Norred, Warren) Modified text on 8/11/2025 (axm). (Entered: 07/29/2025) |
| 07/30/2025 | 663 | STATUS REPORT *Twelfth Quarterly Status Report of Receiver (2Q25)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 07/30/2025) |
| 07/31/2025 | 664 | Unopposed MOTION to Withdraw as Attorney *for Receiver* filed by Receiver (Attachments: # 1 Proposed Order) (Wells, Tim) (Entered: 07/31/2025) |
| 08/04/2025 | 665 | AMENDED DOCUMENT *(Corrected Ex. A - SFAR)* by Receiver. Amendment to 663 Status Report. (Thomas, Cort) (Entered: 08/04/2025) |

| | | |
|---|---|---|
| 08/04/2025 | 666 | ELECTRONIC ORDER granting the Receiver's 664 Motion to Withdraw as Attorney. Attorney Tim Wells terminated. (Ordered by Judge Brantley Starr on 8/4/2025) (chmb) (Entered: 08/04/2025) |
| 08/04/2025 | 667 | ORDER granting 654 Fifth Quarterly Fee Application; granting 656 Sixth Quarterly Fee Application. (Ordered by Judge Brantley Starr on 8/4/2025) (kcr) (Entered: 08/05/2025) |
| 08/05/2025 | 668 | MOTION to Extend Time to File Seventh, Eighth, Ninth, Tenth, and Eleventh Quarterly Fee Applications filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 08/05/2025) |
| 08/05/2025 | 669 | ***STRICKEN PER 670 ELECTRONIC ORDER*** CONSOLIDATED OBJECTION TO RECEIVER'S FOURTH AND FIFTH INTERIM FEE APPLICATIONS AND REQUEST FOR ORAL ARGUMENT filed by Timothy Barton re: 667 Order on Fifth Quarterly Fee Application, 593 Partially Unopposed Fourth Quarterly Fee Application (3Q23) ***FILED PRO SE USING EMERGENCY FILING EMAIL*** (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s)) (cea) Modified on 8/7/2025 (axm). (Entered: 08/06/2025) |
| 08/07/2025 | 670 | ELECTRONIC ORDER: Though one of Barton's attorneys, Warren Norred, filed a motion to withdraw, Barton is still represented, both by Warren Norred and by Michael Edney, Solomon Norred, and Sean O'Connell. Barton cannot enter filings pro se when he is represented by counsel. See United States v. Alvarado, 321 Fed. App'x 399, 400 (5th Cir. 2009). Therefore, the Court STRIKES Barton's pro se filing at Doc. 669 . (Ordered by Judge Brantley Starr on 8/7/2025) (chmb) (Entered: 08/07/2025) |
| 08/07/2025 | 671 | ELECTRONIC ORDER. In light of the 5.5 month continuance recently granted in Barton's related criminal case, which must resolve before this case can, the Court ADMINISTRATIVELY CLOSES this matter. This order does not prevent any party from making appropriate filings in this case. And nothing in this Order shall preclude the Court-appointed Receiver from performing the duties and obligations, and from exercising the powers and rights, set forth in the Courts Order Appointing Receiver. (Ordered by Judge Brantley Starr on 8/7/2025) (chmb) Modified on 8/13/2025 (chmb). (Entered: 08/07/2025) |
| 08/07/2025 | 672 | ELECTRONIC ORDER The Court GRANTS the Receiver's 668 Motion to Extend Time. The deadline for the Receiver to file his Seventh, Eighth, Ninth, Tenth, and Eleventh Quarterly Fee Applications is hereby extended to November 14, 2025. (Ordered by Judge Brantley Starr on 8/7/2025) (chmb) (Entered: 08/07/2025) |
| 08/07/2025 | 673 | MOTION to Withdraw as Attorney filed by Timothy Barton (Norred, Warren) (Entered: 08/07/2025) |
| 08/07/2025 | | Civil Case Terminated per 671 Electronic Order. (axm) (Entered: 08/07/2025) |
| 08/11/2025 | | USCA Case Number 25-10871 in USCA5 for 658 Notice of Appeal filed by Timothy Barton, 659 Notice of Appeal filed by Timothy Barton. (axm) (Entered: 08/11/2025) |
| 08/21/2025 | 674 | ORDER denying 662 673 Motions to Withdraw as Attorney. (Ordered by Judge Brantley Starr on 8/21/2025) (cfk) (Entered: 08/21/2025) |
| 08/27/2025 | 675 | MOTION for Reconsideration *Order Denying Withdrawal* filed by Timothy Barton with Brief/Memorandum in Support re 673 MOTION to Withdraw as Attorney , 674 Order on Motion to Withdraw as Attorney. (Norred, Warren) Modified text on 8/29/2025 (axm). (Entered: 08/27/2025) |
| 08/28/2025 | 676 | ORDER granting 675 Motion for reconsideration and Motions to withdraw as counsel for Timothy Barton. (Ordered by Judge Brantley Starr on 8/28/2025) (kcr) (Entered: |

| | | |
|---|---|---|
| | | 08/28/2025) |
| 09/05/2025 | 677 | ORDER of USCA as to 658 Notice of Appeal filed by Timothy Barton, 659 Notice of Appeal filed by Timothy Barton. The appeal is dismissed for want of prosecution. The appellant failed to timely pay the fee. [USCA25-10871] (axm) (Entered: 09/08/2025) |
| 09/09/2025 | | Confirmation of receipt of payment from Timothy Barton in the amount of $605.00. Transaction posted on 9/8/2025. Receipt number 300019700 processed by km. (ali) Lifted restriction on 9/9/2025 (ali). (Entered: 09/09/2025) |
| 09/09/2025 | 678 | NOTICE OF APPEAL as to 660 Order on Motion for Miscellaneous Relief to the Fifth Circuit by Timothy Barton. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. ***FILED PRO SE USING EMERGENCY FILING EMAIL*** (cea) (Entered: 09/10/2025) |
| 09/09/2025 | 679 | NOTICE OF APPEAL as to 667 Order on Motion for Miscellaneous Relief, to the Fifth Circuit by Timothy Barton. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. ***FILED PRO SE USING EMERGENCY FILING EMAIL*** (cea) (Entered: 09/10/2025) |
| 09/12/2025 | 680 | CLERK ORDER of USCA: The court has granted appellant's motion to reinstate the appeal. [25-10871] (axm) (Entered: 09/12/2025) |
| 09/22/2025 | 681 | MOTION to Declare Lis Pendens Void filed by Marine Creek Ventures, LLC, DLP Real Estate Capital, Inc., DLP Winter Haven Ventures, LLC, Orchard Farms Ventures, LLC (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Proposed Order). Party DLP Real Estate Capital, Inc., DLP Winter Haven Ventures, LLC, Orchard Farms Ventures, LLC, Marine Creek Ventures, LLC added.Attorney Michael D Napoli added to party Marine Creek Ventures, LLC(pty:ip), Attorney Michael D Napoli added to party DLP Real Estate Capital, Inc.(pty:ip), Attorney Michael D Napoli added to party DLP Winter Haven Ventures, LLC(pty:ip), Attorney Michael D Napoli added to party Orchard Farms Ventures, LLC(pty:ip) (Napoli, Michael) (Entered: 09/22/2025) |
| 09/24/2025 | | USCA Case Number 25-11043 in USCA5 for 678 Notice of Appeal filed by Timothy Barton. (axm) (Entered: 09/24/2025) |
| 09/24/2025 | | USCA Case Number 25-11044 in USCA5 for 679 Notice of Appeal filed by Timothy Barton. (axm) (Entered: 09/24/2025) |
| 10/03/2025 | | Record on Appeal for USCA5 25-10871 (related to 658 , 659 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 6 Volume(s) electronic transcript, Sealed or ex parte electronic document number(s): 555 (circuit approval is required for access).<br>**PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an |

| | | |
|---|---|---|
| | | appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (axm) (Entered: 10/03/2025) |
| 10/06/2025 | | Record on Appeal for USCA5 25-10871 (related to 658 , 659 appeal): transmitted to Timothy Barton on disk only by hand delivery. (axm) (Entered: 10/06/2025) |
| 10/06/2025 | 682 | ELECTRONIC ORDER: The Court ORDERS Barton to respond to DLP Entities' Motion to Declare Lis Pendens Void [Doc. 681] by October 9, 2025 at 5 PM. DLP Entities shall file any reply by October 14, 2025 at 5 PM. (Ordered by Judge Brantley Starr on 10/6/2025) (chmb) (Entered: 10/06/2025) |
| 10/07/2025 | | Confirmation of receipt of payment from Timothy Barton in the amount of $605.00. Transaction posted on 10/6/2025. Receipt number 300020138 processed by km. (ali) Lifted restriction on 10/7/2025 (ali). (Entered: 10/07/2025) |
| 10/09/2025 | 683 | NOTICE of Attorney Appearance by Jules P Slim on behalf of Timothy Barton. (Filer confirms contact info in ECF is current.) (Slim, Jules) (Entered: 10/09/2025) |
| 10/09/2025 | 684 | RESPONSE filed by Timothy Barton re: 681 MOTION to Declare Lis Pendens Void (Attachments: # 1 Exhibit(s) EX 1 Supreme Court extension granted, # 2 Proposed Order Order Denying Motion to Expunge) (Slim, Jules) (Entered: 10/09/2025) |
| 10/14/2025 | 685 | REPLY filed by DLP Real Estate Capital Inc, DLP Winter Haven Ventures LLC, Marine Creek Ventures LLC, Orchard Farms Ventures LLC re: 681 MOTION to Declare Lis Pendens Void (Napoli, Michael) (Entered: 10/14/2025) |
| 10/15/2025 | | Confirmation of receipt of payment from Timothy Barton in the amount of $605.00. Transaction posted on 10/14/2025. Receipt number 300020268 processed by kb. (ali) Lifted restriction on 10/15/2025 (ali). (Entered: 10/15/2025) |
| 10/17/2025 | 687 | ORDER of USCA as to 658 Notice of Appeal filed by Timothy Barton. Appellant's motion for an administrative stay is GRANTED, which will continue until further order of this court. [USCA 25-10871] (axm) (Entered: 10/20/2025) |
| 10/19/2025 | 686 | NOTICE of *Administrative Stay Regarding Motion to Expunge Lis Pendens* filed by Timothy Barton re: 681 MOTION to Declare Lis Pendens Void. (Attachments: # 1 Exhibit(s) EX 1 Order Granting Administrative Stay, # 2 Exhibit(s) EX 2 Barton's Motion for Stay pending appeal) (Slim, Jules) Modified event text on 10/23/2025 (axm). (Entered: 10/19/2025) |
| 10/27/2025 | 688 | MOTION to Declare Lis Pendens Void filed by 3820 Illinois LLC, Tamamoi LLC. (Attachments: # 1 Declaration(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s), # 5 Exhibit(s), # 6 Exhibit(s), # 7 Proposed Order) Attorney Sarah Melissa Cox added to party 3820 Illinois LLC(pty:ip), Attorney Sarah Melissa Cox added to party Tamamoi LLC(pty:ip) (Cox, Sarah) Modified text on 10/28/2025 (axm). (Entered: 10/27/2025) |
| 10/30/2025 | 689 | *Thirteenth Quarterly* STATUS REPORT *of Receiver (3Q25)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 10/30/2025) |
| 11/06/2025 | 690 | NOTICE of Limited Termination of Counsel filed by Timothy Barton. ***FILED PRO SE USING EMERGENCY FILING EMAIL*** (cea) (Entered: 11/07/2025) |

| | | |
|---|---|---|
| 11/09/2025 | 691 | Emergency MOTION to Stay *Pending Appeal, or, Alternatively, for an Administrative Stay, with Expedited Consideration* filed by Timothy Barton re 687 USCA Order. (Attachments: # 1 Proposed Order) (Slim, Jules) Modified text on 11/19/2025 (axm). (Entered: 11/09/2025) |
| 11/10/2025 | | Record on Appeal for USCA5 25-11044 (related to 679 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 6 Volume(s) electronic transcript, Sealed or ex parte electronic document number(s): 555 (circuit approval is required for access), 1 Electronic Presentence Report/SOR certified to USCA.<br>**PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (axm) (Entered: 11/10/2025) |
| 11/10/2025 | | Record on Appeal for USCA5 25-11043 (related to 678 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 6 Volume(s) electronic transcript, Sealed or ex parte electronic document number(s): 555 (circuit approval is required for access).<br>**PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (axm) (Entered: 11/10/2025) |
| 11/11/2025 | 692 | MOTION for Extension of Time to File Seventh, Eighth, Ninth, Tenth, Eleventh, and Twelfth Quarterly Fee Applications filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 11/11/2025) |
| 11/12/2025 | 693 | ELECTRONIC ORDER granting 692 Motion for Extension of Time to File. The Court GRANTS the Receiver's 692 Motion to Extend Time. The deadline for the Receiver to file his Seventh, Eighth, Ninth, Tenth, and Eleventh Quarterly Fee Applications is hereby extended to February 14, 2026. (Ordered by Judge Brantley Starr on 11/12/2025) (chmb) (Entered: 11/12/2025) |
| 11/18/2025 | 694 | RESPONSE filed by Securities and Exchange Commission re: 691 Emergency MOTION to Stay *Pending Appeal, or, Alternatively, for an Administrative Stay, with Expedited Consideration*. (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 11/18/2025) |
| 11/21/2025 | 695 | STATUS REPORT filed by DLP Real Estate Capital Inc, DLP Winter Haven Ventures LLC, Marine Creek Ventures LLC, Orchard Farms Ventures LLC. (Napoli, Michael) (Entered: 11/21/2025) |
| 12/10/2025 | 696 | REPLY filed by Timothy Barton re: 691 Emergency MOTION to Stay *Pending Appeal, or, Alternatively, for an Administrative Stay, with Expedited Consideration* (Slim, Jules) |

| | | |
|---|---|---|
| | | (Entered: 12/10/2025) |
| 12/22/2025 | | Record on Appeal for USCA5 25-11043 (related to 678 appeal): transmitted to Timothy L Barton on disk only by hand delivery. (axm) (Entered: 12/22/2025) |
| 12/22/2025 | | Record on Appeal for USCA5 25-11044 (related to 679 appeal): transmitted to Timothy L Barton on disk only by hand delivery. (axm) (Entered: 12/22/2025) |
| 12/22/2025 | 697 | Request to Remove Attorney Michael J Edney from Docket filed by Timothy Barton. (cfk) (Entered: 12/22/2025) |
| 01/08/2026 | 698 | ELECTRONIC ORDER granting in part and denying in part 697 Motion to Withdraw as Attorney. Before the Court is Defendant Timothy Barton's Motion to Remove Michael J. Edney from the docket and to update the docket to reflect that he is proceeding pro se. The Court notes that after Mr. Barton submitted his Notice of Limited Termination of Counsel on November 6, 2025 (Doc. 690 ), he filed an Emergency Motion to Stay (Doc. 691 ) through his attorney, Jules Slim, on November 9, 2025. Ms. Slim has not sought leave from this Court to withdraw as counsel. Accordingly, the Court GRANTS Mr. Barton's motion to remove Mr. Edney from the docket, but DENIES his motion to proceed pro se. (Ordered by Judge Brantley Starr on 1/8/2026) (chmb) (Entered: 01/08/2026) |
| 01/08/2026 | 699 | ELECTRONIC Order Referring Motion re: 681 MOTION to Declare Lis Pendens Void, 688 MOTION to Declare Lis Pendens Void Motion(s) referred to Magistrate Judge Brian McKay. (Ordered by Judge Brantley Starr on 1/8/2026) (chmb) (Entered: 01/08/2026) |
| 01/08/2026 | 700 | ORDER: The Court concludes that Mr. Barton has not met his burden and DENIES 691 the motion. (Ordered by Judge Brantley Starr on 1/8/2026) (frw) (Main Document 700 replaced on 1/9/2026) (axm). (Entered: 01/08/2026) |
| 01/08/2026 | 701 | **** **DISREGARD DOCKETED IN ERROR** *** SCHEDULING ORDER: Jury Trial set for 11/6/2026 01:30 PM before Judge Brantley Starr. Deadline for mediation is on or before 7/21/2026. Amended Pleadings due by 1/29/2026. Discovery due by 5/8/2026. Pretrial Conference set for 11/2/2026 01:30 PM. Joinder of Parties due by 1/29/2026. Motions due by 7/28/2026. Pretrial Order due by 10/23/2026. Status Report due by 7/28/2026. (Ordered by Judge Brantley Starr on 1/8/2026) (frw) Modified on 1/8/2026 (frw). (Entered: 01/08/2026) |
| 01/16/2026 | 702 | Court Request for Recusal: Pursuant to instruction in Special Order 3-249, the Clerk has reassigned the case to Magistrate Judge David L. Horan for all further proceedings. Future filings should indicate the case number as: 22-CV-2118-X-BN. (frw) (Entered: 01/16/2026) |
| 01/16/2026 | 703 | Court Request for Recusal: Magistrate Judge David L. Horan recused. Pursuant to instruction in Special Order 3-249, the Clerk has reassigned the case to Magistrate Judge Rebecca Rutherford for all further proceedings. Future filings should indicate the case number as: 3:22-cv-02118-X-BT. (cea) (Entered: 01/20/2026) |
| 01/16/2026 | | CASE Returned to District Judge; Magistrate Judge Rebecca Rutherford no longer assigned to case. ***Case referred in error*** (cea) (Entered: 01/20/2026) |
| 01/20/2026 | 704 | STATUS REPORT filed by DLP Real Estate Capital Inc, DLP Winter Haven Ventures LLC, Marine Creek Ventures LLC, Orchard Farms Ventures LLC. (Napoli, Michael) (Entered: 01/20/2026) |

| | | |
|---|---|---|
| 01/20/2026 | 705 | ELECTRONIC Order Referring Motion re: 681 MOTION to Declare Lis Pendens Void, 688 MOTION to Declare Lis Pendens Void Motion(s) referred to Magistrate Judge Rebecca Rutherford. (Ordered by Judge Brantley Starr on 1/20/2026) (chmb) (Entered: 01/20/2026) |
| 01/21/2026 | 706 | ORDER of USCA as to 679 Notice of Appeal filed by Timothy Barton. Appellee's opposed motion to dismiss the appeal for lack of jurisdiction is GRANTED. Mandate issue date is 03/16/2026. [USCA 25-11044] (axm) Modified on 1/25/2026 (axm). (Entered: 01/25/2026) |
| 01/30/2026 | 707 | STATUS REPORT *Fourteenth Quarterly Status Report of Receiver (4Q25)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 01/30/2026) |
| 02/10/2026 | 708 | MOTION for Extension of Time to File Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, and Thirteenth Quarterly Fee Applications filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 02/10/2026) |
| 02/10/2026 | 709 | STATUS REPORT filed by DLP Real Estate Capital Inc, DLP Winter Haven Ventures LLC, Marine Creek Ventures LLC, Orchard Farms Ventures LLC. (Napoli, Michael) (Entered: 02/10/2026) |
| 02/10/2026 | 710 | Emergency MOTION to Modify Receivership Over Homestead filed by Timothy Barton re 650 Order. (Slim, Jules) (Entered: 02/10/2026) |
| 02/13/2026 | 711 | ELECTRONIC ORDER granting 708 Motion for Extension of Time to File Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, and Thirteenth Quarterly Fee Applications filed by Receiver. Before the Court is the Receiver's Motion to Extend Time to File the Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, and Thirteenth Quarterly Fee Applications. (Doc. 708 ). The Court GRANTS the motion. The applications shall be due May 14, 2025. (Ordered by Judge Brantley Starr on 2/13/2026) (chmb) (Entered: 02/13/2026) |
| 02/23/2026 | 712 | Second STATUS REPORT filed by DLP Real Estate Capital Inc, DLP Winter Haven Ventures LLC, Marine Creek Ventures LLC, Orchard Farms Ventures LLC. (Napoli, Michael) (Entered: 02/23/2026) |
| 02/26/2026 | 713 | NOTICE of Change in Role of Counsel filed by Timothy Barton. ***FILED PRO SE USING EMERGENCY FILING EMAIL*** (cea) (Entered: 02/27/2026) |
| 03/03/2026 | 714 | RESPONSE AND OBJECTION filed by Receiver re: 710 Emergency MOTION to Modify Receivership Over Homestead (Koonce, Charlene) (Entered: 03/03/2026) |
| 03/05/2026 | 715 | RESPONSE filed by Timothy Barton re: 712 Status Report. (knb) (Entered: 03/06/2026) |
| 03/05/2026 | 716 | RESPONSE *and Request to Evaluate* filed by Timothy Barton re: 712 Status Report. (knb) (Entered: 03/06/2026) |
| 03/16/2026 | 717 | MOTION for Leave to Proceed Pro Se *and Authorization to File Electronically (CM/ECF)* filed by Timothy Barton. (axm) (Entered: 03/17/2026) |
| 03/16/2026 | 718 | MANDATE of USCA as to 679 Notice of Appeal filed by Timothy Barton. Issued as Mandate: 3/16/2026. [USCA 25-11044] (axm) (Entered: 03/17/2026) |
| 03/24/2026 | 719 | RESPONSE filed by Securities and Exchange Commission re: 717 MOTION for Leave to Proceed Pro Se *and Authorization to File Electronically (CM/ECF)* filed by (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 03/24/2026) |
| 03/25/2026 | 720 | ELECTRONIC ORDER denying 717 Motion to Withdraw as Attorney. Before the Court is Defendant Barton's motion to proceed pro se. (Doc. 717 ) Because Mr. Barton is still |

| | | |
|---|---|---|
| | | represented by Ms. Slim, the Court DENIES the motion. (Ordered by Judge Brantley Starr on 3/25/2026) (chmb) (Entered: 03/25/2026) |
| 03/30/2026 | 722 | Received letter from USCA5: Supreme Court Order received denying petition for writ of certiorari. (axm) (Entered: 04/06/2026) |
| 04/01/2026 | 721 | Third STATUS REPORT filed by DLP Real Estate Capital Inc, DLP Winter Haven Ventures LLC, Marine Creek Ventures LLC, Orchard Farms Ventures LLC. (Attachments: # 1 Exhibit(s)) (Napoli, Michael) (Entered: 04/01/2026) |
| 04/08/2026 | 723 | ORDER denying 710 Emergency Motion to Modify Receivership over Homestead. (Ordered by Judge Brantley Starr on 4/8/2026) (cea) (Entered: 04/09/2026) |
| 04/14/2026 | 724 | Unopposed MOTION to Withdraw as Attorney *for Defendant Timothy Barton* filed by Timothy Barton (Attachments: # 1 Proposed Order) (Slim, Jules) (Entered: 04/14/2026) |
| 04/27/2026 | 725 | Emergency Motion to Lift Litigation Stay to Pursue Condemnation of Public Waterline Easements filed by Mountain Peak Special Utility District (Attachments: # 1 Exhibit(s) A). Party Mountain Peak Special Utility District added.Attorney Jordan Allen Miller added to party Mountain Peak Special Utility District(pty:mov) (Miller, Jordan) (Entered: 04/27/2026) |
| 04/28/2026 | 726 | Fourth STATUS REPORT filed by DLP Real Estate Capital Inc, DLP Winter Haven Ventures LLC, Marine Creek Ventures LLC, Orchard Farms Ventures LLC. (Hess, Michael) (Entered: 04/28/2026) |
| 04/30/2026 | 727 | Brief/Memorandum in Support filed by Mountain Peak Special Utility District re 725 MOTION Emergency Motion to Lift Litigation Stay to Pursue Condemnation of Public Waterline Easements (Miller, Jordan) (Entered: 04/30/2026) |
| 04/30/2026 | 728 | STATUS REPORT *Fifteenth Quarterly Report of Receiver (1Q26)* filed by Receiver. (Attachments: # 1 Exhibit(s) A - SFAR) (Thomas, Cort) (Entered: 04/30/2026) |
| 05/04/2026 | 729 | NOTICE of *Non-Opposition to Jules P. Slim's Motion to Withdraw as Counsel* re: 724 Unopposed MOTION to Withdraw as Attorney *for Defendant Timothy Barton* filed by Securities and Exchange Commission (Bernstein, Keefe) (Entered: 05/04/2026) |
| 05/11/2026 | 730 | MOTION for Extension of Time to File Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth and Fourteenth Quarterly Fee Applications filed by Receiver (Attachments: # 1 Proposed Order) (Thomas, Cort) (Entered: 05/11/2026) |
| 05/12/2026 | 731 | ORDER GRANTING RECEIVER'S PARTIALLY UNOPPOSED MOTION FOR EXTENSION OF TIME TO FILE SEVENTH, EIGHTH, NINTH, TENTH, ELEVENTH, TWELFTH, THIRTEENTH AND FOURTEENTH QUARTERLY FEE APPLICATIONS - Before the Court is the Receiver's Partially Unopposed Motion for Extension of Time to File Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth Quarterly Fee Applications. Having considered the Motion, the Court is of the opinion that it should be and hereby is GRANTED. Accordingly, the Receivers deadline to file his Seventh, Eighth, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, and Fourteenth Quarterly Fee Applications is hereby EXTENDED until August 14, 2026. (Ordered by Judge Brantley Starr on 5/12/2026) (chmb) (Entered: 05/12/2026) |
| 05/18/2026 | 732 | RESPONSE filed by Receiver re: 725 MOTION Emergency Motion to Lift Litigation Stay to Pursue Condemnation of Public Waterline Easements (Carrillo, C) (Entered: 05/18/2026) |
| 05/18/2026 | 733 | RESPONSE filed by Securities and Exchange Commission re: 725 MOTION Emergency Motion to Lift Litigation Stay to Pursue Condemnation of Public Waterline Easements (Attachments: # 1 Proposed Order) (Bernstein, Keefe) (Entered: 05/18/2026) |

| | | |
|---|---|---|
| 05/19/2026 | 734 | MOTION Status Conference Hearing re 681 MOTION to Declare Lis Pendens Void filed by DLP Real Estate Capital Inc, DLP Winter Haven Ventures LLC, Marine Creek Ventures LLC, Orchard Farms Ventures LLC (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s), # 5 Exhibit(s), # 6 Exhibit(s), # 7 Exhibit(s), # 8 Exhibit(s)) (Napoli, Michael) (Entered: 05/19/2026) |
| 05/26/2026 | 735 | ORDER granting 734 Motion Status Conference Hearing: Status Conference set for 6/11/2026 at 03:00 PM before Magistrate Judge Rebecca Rutherford re: 681 MOTION to Declare Lis Pendens Void. (Ordered by Magistrate Judge Rebecca Rutherford on 5/26/2026) (cea) (Entered: 05/26/2026) |
| 05/26/2026 | 736 | ELECTRONIC ORDER: The Court SETS Tamamoi, LLC and 3820 Illinois, LLC's 688 Motion to Declare Lis Pendens Void for an in-person status conference **on Thursday, June 11, 2026 at 3:00P.M.**, in Judge Rutherford's Courtroom on the 13th Floor of the Earle Cabell Federal Building, 1100 Commerce St., Dallas, Texas. Counsel for Tamamoi, LLC and 3820 Illinois, LLC, counsel for the Receiver, and counsel for Defendant Timothy Barton **must appear in-person**. All other counsel may attend, but are not required to do so. (Ordered by Magistrate Judge Rebecca Rutherford on 5/26/2026) (chmb) (Entered: 05/26/2026) |
| 05/27/2026 | 737 | RESPONSE filed by Mountain Peak Special Utility District re: 732 Response/Objection (Attachments: # 1 Exhibit(s) A, A-1, A-2) (Miller, Jordan) (Entered: 05/27/2026) |
| 05/29/2026 | 738 | ELECTRONIC ORDER: The Court ORDERS Defendant Barton to file a status report as to Attorney Sean O'Connell's representation of Barton by June 3, 2026, at 12 PM. (Ordered by Judge Brantley Starr on 5/29/2026) (chmb) (Entered: 05/29/2026) |
| 05/29/2026 | 739 | Opinion of USCA in accordance with USCA judgment re 554 Notice of Appeal filed by Timothy Barton. AFFIRMED. [USCA 24-10788] (axm) (Entered: 06/01/2026) |
| 05/29/2026 | 740 | JUDGMENT/MANDATE of USCA as to 554 Notice of Appeal filed by Timothy Barton. DISMISSED. Issued as Mandate: 5/29/2026. (axm) (Entered: 06/01/2026) |

## PACER Service Center

### Transaction Receipt

06/03/2026 12:05:35

| | | | |
|---|---|---|---|
| **PACER Login:** | Timothybarton | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:22-cv-02118-X |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

# END OF APPENDIX

**Total Appendix Pages: 733**